<small>
</small>

THOMAS R. BURKE (State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone:   (415) 276-6500
Facsimile:   (415) 276-6599

ROBERT RUBIN (State Bar No. 85084)
PHILIP HWANG (State Bar No. 185070)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
 OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:   (415) 543-9444
Facsimile:   (415) 543-0296

Attorneys for Plaintiff Lawyers' Committee
for Civil Rights of the San Francisco Bay Area

ORIGINAL FILED

MAY 16 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WDB

C 07 2590

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 et seq.** |

## INTRODUCTION

1.  The Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCR," or "Plaintiff") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, to enforce LCCR's right to access agency records regarding the Office of Foreign Assets Control's list of Specially Designated Nationals and Blocked Persons

1

("SDN list").

2. LCCR is a nonprofit organization devoted to advancing civil rights, with a particular focus on the rights of people of color, poor people, and immigrants and refugees.

3. OFAC is an agency within the Department of the Treasury ("DOT") that administers and enforces economic sanctions programs. OFAC maintains a publicly available list of suspected terrorists, drug traffickers, and other "specially designated nationals." Anyone engaging in business with a person named on the OFAC list may be subject to serious penalties, despite the fact that some of the entries on the list consist solely of an individual's first name, last name, and nationality with no additional identifying information. As a result of the expansive reach of OFAC's penalties, individuals are being denied business opportunities or asked for additional documentation because their names have been mistakenly identified as being on the SDN list maintained by OFAC. The extension of OFAC screening to employment and housing opportunities is of particular concern because of the historic prevalence of race and national origin discrimination in these areas and because of the ease by which decisions based on the list can be masked as something else. The likelihood of discrimination against people whose names seem similar to a name on the OFAC list is magnified because most names on the list are, or appear to be, Muslim, Middle Eastern, or Latino. Plaintiff seeks OFAC's hotline and other records in order to determine how frequently OFAC has been notified of such misidentifications, what procedures OFAC has in place to remedy those misidentifications, if any, and what steps a member of the public should take when he or she is mistakenly flagged as a suspected terrorist.

### JURISDICTION

4. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 701-706, and 28 U.S.C. § 1331.

### VENUE

5. Venue in the Northern District of California is proper under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(5) and 28 U.S.C. § 1391, and because LCCR maintains its office in San Francisco, California.

## PARTIES

6. Plaintiff LCCR is a nonprofit civil rights and legal services organization affiliated with the Lawyers' Committee for Civil Rights Under Law in Washington, D.C. LCCR distributes press releases to over 100 news outlets at least twice a month on civil liberties issues. It publishes a newsletter that is distributed at least twice a year to over 6,000 individuals and organizations; maintains a website, www.lccr.com, that provides information to the general public on issues pertaining to civil liberties; and publishes "know your rights" pamphlets on civil liberties topics that it distributes to affected communities. LCCR publicized the practice of companies' screening against OFAC watchlists in the media, in its spring 2005 newsletter, and in numerous "know your rights" presentations. On March 27, 2007, LCCR published a detailed report on the OFAC terrorist lists and their impact on individuals with no ties to terrorism. That report is attached as Exhibit A.

7. Defendant Department of the Treasury is a federal agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 552a(a)(1). The Office of Foreign Assets Control is a bureau within the Department of the Treasury's Office of Terrorism and Financial Intelligence. OFAC maintains records on individuals who have engaged in or who are suspected of having engaged in transactions and activities prohibited by Treasury Department regulations, and investigations and administrative actions taken with respect to individuals and organizations suspected of violating statutes and regulations administered and enforced by OFAC. OFAC has possession of the records sought by LCCR, and is responsible for responding to LCCR's records request.

## FACTS

8. OFAC administers and enforces economic sanctions. Under its sanctions programs, OFAC has designated individuals, banks, companies, and other entities who are considered a threat to national security or who participate in activities that are against U.S. foreign policy. Their names are placed on the Specially Designates Nationals and Blocked Persons list, which can be found on OFAC's website.

9. No U.S. person can engage in business with any individual or entity on the list. If they do, they may face civil monetary or criminal penalties.

COMPLAINT UNDER FOIA                                                   SFO 362097v1 0050062-082073

DAVIS WRIGHT TREMAINE LLP

10. Some of the entries on the SDN list contain a birth date, address, or other specific identifying information. Other entries consist only of an individual's name and nationality. While individuals who are actually on the SDN list can contest their designation, no procedure for redress exists for those who are mistakenly linked to the list.

11. The Department of the Treasury's "OFAC Update for Consumers" instructs consumers who seek to have an "OFAC alert" taken off their credit report to contact the credit reporting agency or bureau that issued the credit report. However, some credit reporting agencies tell consumers they cannot or will not remove the alerts. As a result, these incorrect and damaging flags continue to appear on consumers' credit reports. The "OFAC Update for Consumers" is attached as Exhibit B.

12. The Treasury Department has established no mechanism by which to track and address complaints from consumers regarding OFAC screening. The Treasury Department does not keep count of complaints received from individuals mistakenly flagged by OFAC screening, nor does it maintain any procedure by which people can file complaints. Asked about the existence of a complaint mechanism, an OFAC senior compliance officer told Plaintiff that private companies, not the government, bore responsibility for any problems facing consumers.

13. The expansive reach of many OFAC prohibitions – applicable to all U.S. persons and all U.S. transactions, regardless of risk, industry, or willful intent – encourages unrestrained watchlist screening across a vast range of businesses and transactions. Consumers with names that are identical to or even just similar to SDN names are suffering repeated damage to their credit and reputation, with nowhere to turn for a remedy. *See, e.g.,* Ellen Nakashima, *Ordinary Customers Flagged as Terrorists*, WASHINGTON POST, Mar. 27, 2007, at D1; *Critics Say U.S. "No Buy" List Snares Regular Citizens*, NPR ALL THINGS CONSIDERED, Mar. 28, 2007; Clif Burns, *Before You Name Your Kids, Check the SDN List*, INTERNATIONAL CLIENT ALERT, Apr. 2007; Anna Werner, *Feds' Terror Watch List Can Ruin Credit Report* (CBS-5 television broadcast, Oct. 17, 2006), *available at* http://cbs5.com/investigates/local_story_291012007.html; Anna Werner, *More Credit Reports Ruined by Feds' Terror List* (CBS-5 television broadcast, Mar. 27, 2007), *available at* http://cbs5.com/local/local_story_086143221.html.

## OFAC HAS FAILED TO PROVIDE RECORDS AS REQUIRED UNDER THE FOIA

14. On August 16, 2005, LCCR sent a letter to the Department of the Treasury requesting disclosure of the following records:

   a. The number and nature of inquiries made to the OFAC compliance hotline by companies regarding a possible name match to the SDN list or other watchlist.

   b. The distribution of calls to the OFAC compliance hotline based on industry (including but not limited to banks, travel/tourism agencies, insurance companies, credit reporting agencies, nonprofit organizations, and money service businesses).

   c. The number of calls received by the OFAC compliance hotline that resulted in an actual name match to the SDN list or other watchlists.

   d. The number and nature of inquiries from companies/individuals about a credit report submitted by an applicant stating that the applicant might be on a government watchlist.

   e. The number and nature of complaints from individuals whose names were flagged as similar to a name on the SDN list or other watchlist and any OFAC responses to such complaints.

   f. The number and nature of complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list or other watchlist, and any OFAC responses to those complaints.

   g. Policies or measures taken to protect the civil rights and privacy interests of individuals whose names are flagged as similar to a name on the SDN list or other watchlist.

   h. Procedures for individuals to remove their names from the SDN list or other watchlist or to establish that they are not actually on the watchlist.

   i. Policies and procedures used by OFAC to determine whether an individual about whom the agency has received an inquiry is actually the same person identified on a government watchlist.

   j. Policies and procedures used by OFAC once it has determined that an individual is actually on a government watchlist.

Attached as Exhibit C is a true and correct copy of LCCR's letter.

15. On August 29, 2005, Alana Johnson, Director of Disclosure Services for the Department of the Treasury, sent LCCR a letter stating that the DOT had received LCCR's FOIA request, that the office to which the request was assigned was "experiencing a substantial backlog of FOIA requests and cannot meet the normal time limits"; that the office had "established an

orderly procedure for responding to requests, which is generally on a first-in, first-out basis"; and that LCCR's request would "be answered as soon as possible." A true and correct copy of Ms. Johnson's letter is attached as Exhibit D.

16. On August 2, 2006, a senior OFAC compliance officer told LCCR that the agency did not separately track complaints from individuals and maintained no complaint mechanism for consumers mistakenly flagged by the watchlist. In addition, the agency indicated that it would not be providing policies or procedures, since such records were allegedly not covered by the Freedom of Information Act.

17. On August 11, 2006, LCCR contacted an OFAC FOIA officer. The OFAC FOIA officer told LCCR that the agency was only responsible for names that were identical, not similar, to individuals on the OFAC list and that information on the agency's other procedures was on its website. The officer said that the agency had a very long backlog and was not meeting the 20-day response requirement. The officer said that that the agency had a target date of November 2006 for responding to LCCR's request, and that LCCR would not receive anything in writing until then. The officer promised to get back to LCCR with additional information in one week's time. The OFAC FOIA officer did not call back, as promised, despite receiving two additional phone messages from LCCR.

18. Since Ms. Johnson's August 29, 2005 letter, DOT has not sent any further correspondence or produced any documents to LCCR.

19. FOIA provides that, upon receiving a request for records, an agency shall make the records promptly available, shall determine within twenty days after receipt of the request whether to comply with the request, and shall immediately notify the person making the request of the agency's determination and the reasons therefore. 5 U.S.C. §§ 522(a)(3)(A), (a)(6)(A)(i), (a)(6)(c). More than 20 working days have passed since the DOT received Plaintiff's FOIA request, and Plaintiff has not received a determination regarding that request, or any notice of the date on which OFAC or the DOT intend to make a determination regarding Plaintiff's request. *See* 5 USC 552(a)(6)(B)(i)-(ii).

20. DOT has not asserted any statutory basis for withholding the records LCCR

COMPLAINT UNDER FOIA                                                    SFO 362097v1 0050062-082073

requested. Instead, DOT has cited a backlog of paperwork. There is a strong public interest in the disclosure of the records requested. DOT's failure to promptly release responsive documents that are believed to be within its custody and control constitutes an abuse of its discretion.

21.  OFAC's purported lack of records tracking complaints from individuals does not excuse the DOT's failure to produce any documents in response to LCCR's FOIA request. LCCR has requested a specific documents, including documents regarding company inquiries to the OFAC compliance hotline, company inquiries regarding credit reports, and policies and procedures to determine whether an individual is a match for the SDN list. OFAC has not denied that such records exist. Indeed, given that OFAC maintains a compliance hotline and instructs companies to call that hotline to verify matches with the SDN list, presumably OFAC must have some procedures in place to respond to such calls. *See* OFAC Frequently Asked Questions, Question 5 ("When should I call OFAC's compliance 'hotline'?"), at http://www.treas.gov/offices/enforcement/ofac/faq/index.shtml; *see also* Testimony of Secretary of Treasury Henry M. Paulson Jr., 3/28/07 FDCH CAP. TRANSCRIPTS, attached as Exhibit E (noting that OFAC's hotline received an estimated 90,000 calls in the last year, that mistaken flags "get answered and cleared up very quickly," and that "Treasury's doing everything they can to make sure [the SDN list] is used properly").

22.  Under 5 U.S.C.§ 552(a)(6)(C), DOT's claimed "substantial backlog of FOIA requests" does not constitute an exceptional circumstance meriting additional time to comply with LCCR's requests. The substantial backlog is part of a long-standing pattern on the part of DOT to fail to respond in a timely fashion, if at all, to requests for disclosure of documents. DOT has itself acknowledged that it has a long-standing backlog of FOIA requests and that is has been unable to reduce the response time to those requests to the FOIA time limits. In its FOIA Improvement Report dated June 14, 2005, DOT noted the average pending total of FOIA requests was 6,607 requests for the last five years. DOT's "FOIA Improvement Report June 14, 2006" is attached as Exhibit F.

## FIRST CAUSE OF ACTION

### Violation of FOIA for Failure to Make Promptly Available the Records Sought by Plaintiff's Requests

23. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 22 above, inclusive.

24. LCCR has a legal right under FOIA to obtain the agency records it requested on August 16, 2005, and there exists no legal basis for DOT's failure to make available such records.

25. DOT's failure to make promptly available the records sought by Plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(3)(A) and (a)(6)(A)(ii), and applicable regulations promulgated thereunder.

26. This Court should enjoin DOT from withholding the requested records and order the production of the records that are improperly being withheld from LCCR. 5 U.S.C. § 552(a)(4)(B).

**WHEREFORE**, Plaintiff requests the Court award it the following relief:

1. Declare that Defendant violated FOIA;

2. Declare that LCCR qualifies as a "representative of the news media" for purposes of assessing processing fees associated with LCCR's FOIA requests;

3. Order Defendant to immediately disclose the requested records and make copies available to Plaintiff;

4. Award Plaintiff its reasonable costs and attorneys' fees;

5. Grant such other relief as the Court may deem just and proper.

DATED this 16th day of May, 2007.

DAVIS WRIGHT TREMAINE LLP

By: _____
THOMAS R. BURKE

Attorneys for Plaintiff
Lawyers' Committee for Civil Rights of the San Francisco Bay Area