FROM :                              FAX NO. :                    Sep. 27 2007 07:26PM  P2
    09/26/2007 23:37 FAX 206 628 7699         Davis Wright Tremaine                    ☑002

1   THOMAS R. BURKE (State Bar No. 141930)
    DAVIS WRIGHT TREMAINE LLP
2   505 Montgomery Street, Suite 800
    San Francisco, California  94111-6533
3   Telephone:    (415) 276-6500
    Facsimile:     (415) 276-6599
4
    ROBERT RUBIN (State Bar No. 85084)
5   PHILIP HWANG (State Bar No. 185070)
    LAWYERS' COMMITTEE FOR CIVIL RIGHTS
6     OF THE SAN FRANCISCO BAY AREA
7   131 Steuart Street, Suite 400
    San Francisco, CA  94105
8   Telephone:    (415) 543-9444
    Facsimile:     (415) 543-0296
9
    Attorneys for Plaintiff Lawyers' Committee
10  for Civil Rights of the San Francisco Bay Area

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15
    LAWYERS' COMMITTEE FOR              )  No.  C07-2590 PJH
16  CIVIL RIGHTS OF THE SAN FRANCISCO   )
    BAY AREA,                           )  DECLARATION OF SHIRIN SINNAR IN
17                                      )  SUPPORT OF OPPOSITION TO UNITED
                                        )  STATES DEPARTMENT OF
18                   Plaintiff,         )  TREASURY'S MOTION TO DISMISS
                                        )
19       v.                             )  Hearing Date: October 24, 2007
                                        )  Time:              9:00 a.m.
20  UNITED STATES DEPARTMENT            )  Hon. Phyllis J. Hamilton
    OF THE TREASURY,                    )
21                                      )
                     Defendant.         )
22
23       I, Shirin Sinnar, declare:

24       1.      I am an attorney, licensed to practice before the courts of the State of California.  I

25  am currently an attorney with the Asian Law Caucus, and was formerly with the Lawyers'

26  Committee for Civil Rights of the San Francisco Bay Area ("LCCR"), the Plaintiff in this matter.

27  I have personal knowledge of the matters stated in this declaration and could competently testify

28

*DAVIS WRIGHT TREMAINE LLP*

FROM :                           FAX NO. :                    Sep. 27 2007 07:26PM  P3

09/26/2007 23:37 FAX 206 628 7699        Davis Wright Tremaine                        ☒003

1  to them if called as a witness.  I make this declaration in support of LCCR's Opposition to United

2  States Department of the Treasury's ("Treasury") Motion to Dismiss Complaint.

3      2.      On August 16, 2005, I sent a letter to Treasury requesting information regarding the

4  hotline operated by the Office of Foreign Assets Control ("OFAC") pursuant to the Freedom of

5  Information Act ("FOIA"), a true and correct copy of which is attached as Exhibit A.

6      3.      On August 2, 2006, I spoke by telephone with two OFAC representatives, who

7  initiated the telephone contact: Alexander Manfull, a senior OFAC compliance officer, and Sabina

8  Kook, who was also within the compliance division of OFAC.  We discussed the FOIA requests I

9  had sent on behalf of LCCR and the kinds of information OFAC had regarding those requests.

10      4.      Mr. Manfull and Ms. Kook told me that the OFAC call center received 95,000 calls

11  in the 2005-2006 time period, but that they could not tell me the number of blocked transactions

12  by year because that is protected for national security reasons.  I asked whether they planned to

13  formally invoke the national security exception to FOIA, and told them I expected any such

14  invocation in writing.  They responded that they did not handle such matters because they were

15  not FOIA officers.

16      5.      With regard to my FOIA requests numbers 5 and 6, Mr. Manfull and Ms. Kook told

17  me that there is no official complaint mechanism at OFAC and individual complaints are not

18  separately tracked because private companies handle the screening.  They indicated that

19  consumers who do have a complaint would probably choose the phone option for questions about

20  the Specially Designated Nationals list.

21      6.      With regard to my FOIA requests numbers 7 through 10, Mr. Manfull and Ms.

22  Kook said that they would not be providing OFAC policies or procedures, since they had been told

23  that such records were not covered by FOIA.  I challenged this interpretation, to which they

24  responded that they were not FOIA experts, and that OFAC FOIA officer Kathleen Lanham

25  should be able to speak to that.  They said they would contact Ms. Lanham and express any of my

26  concerns that remained unaddressed after my conversation with them.

27      7.      On August 11, 2006, I called Ms. Lanham since I had not heard back from her after

28  my conversation with Mr. Manfull and Ms. Kook.  Regarding my request for policies or

DAVIS WRIGHT TREMAINE LLP

SINNAR DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07-2590 PJH                                                    SEA 2098358v1 082073

1   procedures on the civil rights of individuals flagged by OFAC screening, she said that the agency

2   was only responsible for "identical names," not "similar names." She said that other information

3   on their procedures was available on their website.

4       I declare under penalty of perjury under the laws of the State of California that this

5   Declaration was executed on September 28, 2007, at ~~San Francisco, California~~ *Washington, DC*, and that the

6   foregoing is true and correct.

7

8                      SHIRIN SINNAR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

SINNAR DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS COMPLAINT
Case No. C07-2590 PJH                                                    SHA 2098358v1 0R2073

# EXHIBIT A

Lawyers' Committee
for **CIVIL RIGHTS**
of the San Francisco Bay Area

**BOARD OF DIRECTORS**

*Co-Chairs*
  Kelly M. Dermody
  Lauri M. Shanahan
Michelle L. Alexander
Hunter L. Auyang
Michael I. Begert
James T. Caleshu
Diane R. Cash
Jude P. Damasco
Sarah G. Flanagan
Joan M. Haratani
Terry J. Helbush
Susan K. Jamison
Scott D. Karchmer
Loren Kieve
David B. Oppenheimer
Angela L. Padilla
Tracy M. Preston
Vincent A. Ruiz
Robert A. Thompson

*Emeritus Director*
  Neil Falconer

**LEGAL STAFF**
*Executive Director*
  Maria Blanco
*Legal Director*
  Robert Rubin
*Assistant Director*
  Michael Harris
*Staff Attorneys*
  Philip Hwang
  Oren Sellstrom
  Helen Smolinski
*Equal Justice Works Fellows*
  Elisa Della-Piana
  Shirin Sinnar
*Thurgood Marshall Fellow*
  Chhaya Malik
*Trafficking Project Director*
  Kathleen Kim

August 16, 2005

FOIA Request
Department of the Treasury
Washington, DC 20220

Dear Sir or Madam:

This letter is a request by the Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCR") under the Freedom of Information Act, 5 U.S.C. § 552.

Background

LCCR is a nonprofit organization devoted to advancing civil rights, with a particular focus on the rights of people of color, poor people, and immigrants and refugees. LCCR is a non-commercial requester.

In recent years, LCCR has heard increasing reports of people being denied business opportunities or asked for additional documentation because their names are purportedly on government watchlists, such as the list of Specially Designated Nationals and Blocked Persons (SDN list) maintained by the Treasury Department's Office of Foreign Assets Control. In most cases, the individuals affected are not actually on any government watchlist, but have names that are similar to individuals on a list. Nevertheless, the screening procedures used by companies to comply with government regulations frequently create practical difficulties, and stigma, for the individuals involved.

Request

We are therefore seeking the disclosure of agency records[1] regarding the following, from all time periods from 2000 to the present:

1) The number and nature of inquiries made to the Office of Foreign Assets Control (OFAC) compliance hotline by companies regarding a possible name match to the SDN list or other watchlist
2) The distribution of calls to the OFAC compliance hotline based on industry (including but not limited to banks, travel/tourism agencies,

---

[1] The term "records" includes, but is not limited to, charts, tables, graphs, spreadsheets, telephone logs, memos, correspondence, faxes, e-mails, guidances, training manuals, policy statements, reports, analyses, notes, audiotapes, videotapes, and records kept in electronic form.

131 Steuart Street, Suite 400
San Francisco, CA 94105
Tel: 415.543.9444
Fax: 415.543.0296
E-mail: info@lccr.com
Website: www.lccr.com

insurance companies, credit reporting agencies, nonprofit organizations, and money service businesses)

3) The number of calls received by the OFAC compliance hotline that resulted in an actual name match to the SDN list or other watchlist

4) The number and nature of inquiries from companies/individuals about a credit report submitted by an applicant stating that the applicant might be on a government watchlist

5) The number and nature of complaints from individuals whose names were flagged as similar to a name on the SDN list or other watchlist and any OFAC responses to such complaints

6) The number and nature of complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list or other watchlist, and any OFAC responses to those complaints

7) Policies or measures taken to protect the civil rights and privacy interests of individuals whose names are flagged as similar to a name on the SDN list or other watchlist

8) Procedures for individuals to remove their names from the SDN list or other watchlist or to establish that they are not actually on the watchlist

9) Policies and procedures used by OFAC to determine whether an individual about whom the agency has received an inquiry is actually the same person identified on a government watchlist

10) Policies and procedures used by OFAC once it has determined that an individual is actually on a government watchlist.

<u>Waiver of Fees in the Public Interest</u>

LCCR requests a waiver of fees for search and duplication based on 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the information requested is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest" of LCCR. *Id.*; 31 C.F.R. § 1.7(d)(1). This request meets all the criteria for a public interest waiver enumerated in the Department of Justice fee waiver policy guidance dated April 2, 1987, and adopted by the Department of Treasury. *See* 31 C.F.R. § 1.7(d)(1).

First, the subject matter of this request concerns identifiable operations and activities of the government. We are requesting records pertaining to the Office of Foreign Assets Control and the compliance hotline that it maintains. The records concern the activities of OFAC in receiving and responding to calls from companies and individuals regarding name matches to watchlists maintained by the agency. The requested records would address the manner in which OFAC determines whether individuals about which it receives inquiries are actually the same individuals on watchlists, and the manner in which OFAC would respond to an actual name match. The records also address the measures that the agency takes to respond to complaints of civil rights violations.

Second, the requested information is likely to contribute to an understanding of the agency's operations and activities. The general public is largely unaware of the role played by OFAC, or even its existence. More specifically, there is little, if any, information in the public domain[2] about the number or nature of inquiries made to the OFAC compliance hotline by companies engaged in screening customers against watchlists. Similarly, there is little, if any, information about the civil rights complaints received by OFAC or the manner in which the agency responds to them. In addition, there is little information available about the manner in which OFAC determines whether individuals are actually named on a watchlist or what procedures it follows once it has established an actual match. None of this information is available through OFAC's website. The requested information would contribute to understanding on all of these issues.

Although this information is not currently available, it is clear that there is public interest in these issues, as illustrated by the number of articles published in mainstream media regarding the practice of companies' screening customers against government watchlists.[3] Statistical information about the number and nature of calls to the OFAC compliance hotline is notably absent in these articles, as is information about the other subjects identified in this request. Therefore, disclosure of these records would meaningfully contribute to public understanding of OFAC's operations and activities.

---

[2] An agency "should also consider whether the requested information is already in the public domain." U.S. Department of Justice, Fee Waiver Policy Guidance, Apr. 2, 1987.

[3] Dave Pizer, *Allegations Wrecked Life*, Ottawa Sun, May 30, 2005; Mike Ahlers, *Fingerprinting of Hazmat Truckers Begins*, CNN.com, January 31, 2005; Eunice Moscoso, *Demand For Data By Feds On Rise*, The Federal Observer, November 17, 2004; Leela Jacinto, *Is a Muslim Name Bad for Business?*, ABCNews.com, November 11, 2004; Michael Scherer, *Business Blacklists: the Bush Administration is Deputizing Business to Track Terrorists - But Consumers Are Getting Snared*, Mother Jones, November 1, 2004; Sara B. Miller, *Blacklisted By The Bank*, The Christian Science Monitor, September 30, 2004; Amy Lee, *Blues, Aetna Help Hunt Terrorists*, The Detroit News, September 30, 2004; *Charity Screening; Patriot Act's Rules May Stifle Legitimate Programs*, The Detroit Free Press, September 9, 2004; Sarah Gebhardt, *Check the Occupancy Limits*, The Washington Post, August 21, 2004; Richard Newman, *Bankers Share Feelings on Patriot Act*, The Record, April 28, 2004; Adam Geller, *High-tech Background Checks Hit Store*, MSNBC.com, March 8, 2004; Toni Locy, *Anti-Terror Law Puts New Demands on Businesses*, USA Today, February 26, 2004 at 5A; Michael Isikoff, *Show Me The Money; Patriot Act Helps the Feds in Cases With No Tie To Terror*, MSNBC.com, December 1, 2003; Lisa Carricaburu, *Big Brother Scrutinizing Your Money*, The Salt Lake Tribune, October 19, 2003 at E1; Dennis Hevisi, *When the Credit Check Is Only The Start*, The New York Times, October 12, 2003; George Lopez, *Pirates of the World? Freedom? Civil Rights*, Foreign Policy Association, September 17, 2003; Paul Adams, *Customers Face Banks' Scrutiny*, Chicago Tribune, September 16, 2003; Rick Miller, *Knowing Clients: How Much is Enough?*, Investment News, July 14, 2003; Mary Beth Sheridan, *Muslims in U.S. Feel Targeted by Anti-Terror Business Policies*, The Washington Post, July 9, 2003 at A01; *Leave Home Without It; Credit-Card Companies Cancel on Muslim New Yorkers*, City Limits Monthly, May 2003; Kelly Mills, *Terror Funds*, The Australian, March 25, 2003 at 27; Robert O'Harrow, Jr., *In Terror War, Privacy vs. Security; Search for Illicit Activities Taps Confidential Financial Data*, The Washington Post, June 3, 2002; Antonio Fins, *Closer Watch on Clients Ordered; Institutions Face Tough '02 Rules*, South Florida Sun-Sentinel, December 23, 2001; Scott Bernard Nelson, *Patriot Act Would Make Watchdogs of Firms*, The Boston Globe, November 18, 2001; Susan Kuczka, *Public Urged to Look For Suspect Trucks*, Chicago Tribune, November 7, 2001 at 1.

Third, the disclosure would contribute to the understanding of the public at large because it would be effectively disseminated to a broad audience. LCCR is well-positioned to undertake this task because of its special expertise on this topic and its capacity to publicize information. The organization has a fully-funded project on "post-9/11 discrimination in the private sector" that focuses, *inter alia*, on the issue of companies screening individuals against government watchlists. Furthermore, LCCR has strong ties to national and local media by which it regularly publicizes civil rights issues. LCCR distributes press releases to over 100 news outlets at least twice a month on important and timely civil liberties issues. It regularly publishes op-ed pieces in newspapers across the country and is regularly quoted in print and broadcast media.[4] It publishes a newsletter, *Voices for Justice*, that is distributed at least twice a year to over 6,000 individuals and organizations. It maintains a website, www.lccr.com, that provides information to the general public on issues pertaining to civil liberties. It publishes "know your rights" pamphlets on civil liberties topics that it distributes to affected communities.

LCCR plans to use all of the above channels in publicizing the information that is the subject of this FOIA request. LCCR has already publicized the practice of companies' screening against OFAC watchlists in the media, in its spring 2005 newsletter, and in numerous "know your rights" presentations to the Muslim, Middle Eastern, and South Asian communities in California. This demonstrated track record suggests the seriousness of LCCR's plans to publicize the information requested in this letter. Furthermore, LCCR is in the process of producing a "know your rights" pamphlet that advises individuals on what to do when faced with a mistaken name match to a government watchlist; this pamphlet would benefit from inclusion of the requested information. LCCR will print approximately 10,000 copies of the pamphlet in several languages and distribute them via community presentations, ethnic grocery stores and restaurants, places of worship, ethnic media, and other avenues.

Fourth, the contribution to public understanding will be significant. As noted above, the information requested in this letter is not currently available through the OFAC website or other channels. Therefore, disclosure of the records at issue would substantially broaden the public's understanding of how OFAC works to prevent terrorist financing and safeguards the civil liberties of individuals. These are issues of significant public concern in light of the continuing threat of terrorism and concern over the effect of antiterrorism policies on the civil liberties of individuals in the United States. The information requested would give the public much greater insight into the activities and operations of OFAC on this topic than is currently available.

---

[4] In 2004, LCCR published op-ed pieces in newspapers including the *San Francisco Chronicle*, *The Recorder*, and the *Oakland Post*. LCCR was quoted in news media including the *New York Times*, *Los Angeles Times*, *San Francisco Chronicle*, *Ohio Plain Dealer*, *Columbus Dispatch*, MSNBC, *San Jose Mercury News*, KQED Forum with Michael Krasney, KGO Radio, KPFA Evening News, the *Daily Journal*, and other sources.

Finally, LCCR is a nonprofit 501(c)(3) organization dedicated to the public interest, and does not seek the records requested for any commercial use. LCCR does not intend to charge the public for obtaining the information resulting from this request.

Conclusion

Thank you for your prompt attention to this matter. Please furnish all applicable records to Shirin Sinnar, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 131 Steuart St., Suite 400, San Francisco, CA 94105. I may be contacted at 415-543-9444 x 233 with any questions.

Sincerely yours,

Shirin Sinnar