THOMAS R. BURKE (State Bar No. 141930)
 thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599

ROBERT RUBIN (State Bar No. 85084)
 rrubin@lccr.com
PHILIP HWANG (State Bar No. 185070)
 phwang@lccr.com
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, California 94105
Telephone:  (415) 543-9444
Facsimile:  (415) 543-0296

Attorneys for Plaintiff Lawyers' Committee
for Civil Rights of the San Francisco Bay Area

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA,<br><br>           Plaintiff,<br><br>     vs.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>           Defendants. | Case No. C07-2590 PJH<br><br>**LCCR'S SUR-REPLY TO DEPARTMENT OF TREASURY'S REPLY MEMORANDUM IN SUPPORT OF TREASURY'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date:  December 12, 2007<br>Time:              9:00 a.m.<br><br>Assigned to the Hon. Phyllis J. Hamilton |

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

Page

1.  INTRODUCTION ............................................................................................. 1

2.  ARGUMENT .................................................................................................... 2

    A.  LCCR's Complaint Is Not Moot Because Treasury Identified
        Documents that Are Responsive To LCCR'S Request But Has
        Failed To Produce Them. ...................................................................... 3

    B.  Treasury Ignored LCCR's Request For Qualitative Information,
        Allowing Treasury To Avoid Providing The Responsive E-Mails
        And Documents From Citizens Complaining About Being
        Misidentified On The OFAC List.......................................................... 6

    C.  The Lack Of Detail And Conclusory Statements Offered By
        Treasury Provide Indicia Of Bad Faith In Conducting The
        Search; The Experience Of Other Agencies With Their Terrorist
        Watch Lists Suggests That Treasury Is Being Less Than
        Forthcoming About The Inquiries And Complaints Related To
        Its List. ............................................................................................... 10

    D.  The Court Should Grant LCCR Limited Discovery To Inquire
        Into Treasury's Identification And Retrieval Process, Given
        Treasury's Repeated Obfuscations And Complete Failure To
        Turn Over Responsive Records............................................................ 14

3.  CONCLUSION ............................................................................................... 16

DAVIS WRIGHT TREMAINE LLP

i

# TABLE OF AUTHORITIES

Page

## Cases

Carney v. U.S. Dep't of Justice,
  19 F.3d 807 (2d Cir. 1994) ..................................................................15

Founding Church of Scientology of Washington v. NSA,
  610 F.2d 824 (D.C. Cir. 1979)..........................................................15

Gilmore v. U.S. Dep't of Energy,
  33 F. Supp. 2d 1184 (N.D. Cal. 1998) ............................................15

Hemenway v. Hughes,
  601 F. Supp. 1002 (D.D.C. 1985).......................................................9

Judicial Watch, Inc. v. U.S. Dep't of Commerce,
  127 F. Supp. 2d 228 (D.D.C. 2000) .................................................15

Katzman v. Freeh, 926 F. Supp.
  316 (E.D.N.Y. 1996)...........................................................................3

Long v. U.S. Dep't of Justice,
  10 F. Supp. 2d 205 (N.D.N.Y. 1998)...............................................15

Maydak v. U.S. Dep't of Justice,
  362 F. Supp. 2d 316 (D.D.C. 2005) ..............................................6, 11

Maynard v. CIA,
  986 F.2d 547 (1st Cir. 1993) ...........................................................10

Miller v. Department of State,
  779 F.2d 1378 (8th Cir. 1985) ......................................................4, 10

NARA v. Favish,
  541 U.S. 157 (2004)............................................................................7

Nation Magazine, Washington Bureau v. United States Customs Serv.,
  71 F.3d 885 (D.C. Cir. 1995)...........................................................5, 7

People for the Am. Way Found. v. National Park Serv.,
  503 F. Supp. 2d 284 (D.D.C. 2007)....................................................6

Perry v. Block,
  684 F.2d 121 (D.C. Cir. 1982).........................................................10

Public Citizen Health Research Group v. FDA,
  997 F. Supp. 56 (D.D.C. 1998)........................................................15

Ruotolo v. Dep't of Justice,
  53 F.3d 4 (2d Cir. 1995) ..................................................................15

Santos v. DEA,
  357 F. Supp. 2d 33 (D.D.C. 2004) .....................................................6

U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press,
  489 U.S. 749 (1989)............................................................................7

Weisberg v. U.S. Dep't of Justice,
  627 F.2d 365 (D.C. Cir. 1980)..........................................................15

Weisberg v. United States Dep't of Justice,
  705 F.2d 1344 (D.C. Cir. 1983).................................................2, 11, 14

DAVIS WRIGHT TREMAINE LLP

ii

*Weisberg v. Webster,*
   749 F.2d 864 (D.C. Cir. 1984) ...................................................................3

*Wilderness Society v. United States Dep't of the Interior,*
   344 F. Supp. 2d 1 (D.D.C. 2004) ..............................................................2

*Zemansky v. EPA,*
   767 F.2d 569 (9th Cir. 1985) ...................................................................3

## Other Authorities

United States Freedom of Information Act ....................................................passim

DAVIS WRIGHT TREMAINE LLP

SUR-REPLY TO MEMO ISO MOTION TO DISMISS COMPLAINT
LAX 489600v1 0050062-082073

## 1.    INTRODUCTION

The Department of Treasury asks this Court to dismiss Lawyers' Committee for Civil Right's ("LCCR") case at the outset of proceedings, a highly unusual and drastic measure in a Freedom of Information Act lawsuit.  Before taking such a step, the Court should have confidence beyond a material doubt that Treasury actually searched for and produced all responsive documents.  Treasury's response to LCCR's FOIA request, however, is suspect on its face – the turning over of a meager 9 pages of documents related to a terrorist watch list that generates 90,000 calls a year strains credulity, especially considering: (1) Treasury's acknowledgement that it located at least 53 responsive e-mails that it continues to withhold without asserting any exemptions under FOIA, Treasury's July 20, 2007 FOIA Response, at 2 (Ex. 1 in LCCR's Opposition); and (2) the internal practices and procedures followed by other government agencies responsible for the administration of watch lists that have highly developed policies and procedures and records of tens of thousands of complaints filed about mis-identifications.  Moreover, despite three successive declarations, Treasury has provided no clarification on how it construed LCCR's request, which explicitly sought records reflecting both the "number and *nature* of requests" by the tens of thousands of people annually affected by Treasury's watch list, nor has Treasury given any details on the search instructions that were sent out in an undisclosed memorandum to different offices within the Office of Foreign Asset Control bureaucracy.  Fundamentally, Treasury repeatedly fails to explain why Department officials felt they could merely summarize responsive data and e-mail rather than providing the actual database and e-mail records in electronic form.  The plain text of the FOIA law calls to make the "*records* promptly available to any person" and says nothing about describing the records in lieu of turning over the documents themselves.  *See* 5 U.S.C. § 552(a)(3)(A).  Treasury's steadfast refusal to produce these at least 53 e-mails and electronic data that it concedes are responsive to LCCR's request provides

LCCR'S SUR-REPLY TO MEMO ISO MOTION TO DISMISS COMPLAINT
LAX 489600v1 0050062-082073

1 ample reason for this Court to deny Treasury's motion and independently raises

2 serious questions about the veracity of the agency's representations about its search

3 for other responsive records.

4    Treasury's non-responsive, non-detailed and conclusory answers lead to only

5 one logical conclusion: Treasury ignored the part of LCCR's FOIA request that

6 called for qualitative information, which gave the Department the pretext to avoid

7 turning over the documents and e-mails that would expose the *nature* of the many

8 complaints from citizens worried about being misidentified on the terrorist list and

9 companies concerned about compliance.  The Court should not reward Treasury for

10 its bad faith and inadequate search.  Summarily dismissing this case at the outset,

11 particularly after LCCR has waited years for Treasury to even respond to its request,

12 would set a terrible precedent, allowing agencies like Treasury to avoid answering

13 FOIA requests by simply reading out of the request the portion that the agency finds

14 potentially embarrassing or objectionable.  Instead, the Court should immediately

15 order Treasury to produce the actual e-mails and electronic data that it identified in

16 its FOIA response, as well as the other requested records that discuss the training,

17 policies, and procedures for administering the watch list hotline.  At the very least,

18 the Court should deny the motion to dismiss and allow limited discovery to permit

19 LCCR to inquire into the scope of Treasury's search, its training, policies and

20 procedures, whether any documents were destroyed, and where Treasury maintains

21 the responsive records that it has not produced.

## 2.    ARGUMENT

23    In a FOIA case, the government must demonstrate that it conducted an

24 adequate search based on an objective standard of reasonableness.  *Wilderness*

25 *Society v. United States Dep't of the Interior*, 344 F. Supp. 2d 1, 20 (D.D.C. 2004),

26 *citing Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).

27 To meet this standard, the government bears the burden of showing beyond a

28 material doubt that it has conducted a search reasonably calculated to uncover all

DAVIS WRIGHT TREMAINE LLP

1  relevant documents. *Id.* Where challenged, as here, the facts concerning the

2  adequacy of the search will be viewed in the light most favorable to the requester.

3  *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985), *citing Weisberg v. Webster*,

4  749 F.2d 864 (D.C. Cir. 1984). Only if the government shows an adequate search

5  does the burden shift to the plaintiff to provide evidence that the government has

6  acted in bad faith in responding to the request. *Id.* Using these standards, the Court

7  should reject Treasury's motion to dismiss because (1) construing the facts in the

8  light most favorable to LCCR Treasury cannot show it made an adequate search and

9  (2) evidence indicates bad faith by Treasury officials in conducting its  response to

10  LCCR's FOIA request.

**A.  LCCR's Complaint Is Not Moot Because Treasury Identified Documents that Are Responsive To LCCR'S Request But Has Failed To Produce Them.**

13  Treasury's search for documents was not complete by any credible reading of

14  its FOIA responses. The Department did not produce the actual documents and

15  electronic data that fell within LCCR's request, even though Treasury used those

16  agency records to craft the narrative answers for its July 20, 2007, FOIA Response.

17  Treasury did not exert any FOIA exemptions and utterly failed to even address the

18  issue even though LCCR has repeatedly raised it, most recently in LCCR's

19  Opposition to Treasury's Motion to Dismiss. When an agency references additional

20  documents within its FOIA response, the Court should not grant summary judgment

21  – and by logical extension, a motion to dismiss – "until defendant releases those

22  documents or demonstrates that they either are exempt from disclosure or cannot be

23  located." *Katzman v. Freeh*, 926 F. Supp. 316, 320 (E.D.N.Y. 1996). Treasury's

24  repeated acknowledgement that it has responsive records, FOIA Response, at 2;

25  Second Canter Decl. ¶ 6; Third Canter Decl. ¶ 13-24, combined with its failure to

26  explain why the records are exempt from disclosure, is reason enough to deny

27  Treasury's motion to dismiss and is grounds to question the veracity of Treasury's

28  search for documents responsive to LCCR's FOIA request.

DAVIS WRIGHT TREMAINE LLP

LCCR'S SUR-REPLY TO MEMO ISO MOTION TO DISMISS COMPLAINT
LAX 489600v1 0050062-082073

1    LCCR pointed out in its October 3, 2007 Opposition that "Treasury *expressly*

2  *admits* that it has records that fall within [LCCR's FOIA request] because it

3  describes how it looked at those documents in preparing the narrative answers."

4  LCCR's Opp., at 5. As LCCR explained, instead of actually turning over the

5  responsive agency records, Treasury had summarized the relevant electronic data

6  after searching electronic databases that it maintains. Thus, Treasury reported to

7  LCCR that it had conducted a selective and limited word search of a database

8  containing e-mails and come up with 53 e-mail matches for "credit report" and like

9  terms. Yet Treasury did not turn over any of these e-mails. Similarly, Treasury

10  reported to LCCR that it had located 63,409 calls in which callers chose option two

11  of the OFAC Call Center "hotline," which was reserved for callers with questions

12  about a possible "SDN name match"; 6 calls to OFAC's congressional liaison

13  regarding a possible name match to OFAC's SDN list; and 67 relevant entries on

14  OFAC's Foreign Assets Control Database. Yet Treasury did not produce *any*

15  agency records related to the "hotline" complaints, congressional liaison calls, or the

16  entries in the Foreign Assets Control Database.

17    LCCR laid out in its Opposition why this response was deficient. "Having

18  conceded that there are such documents," LCCR noted, "Treasury is obligated to

19  produce them, in redacted form if necessary. The fact that it did not and instead

20  merely claims to have counted the number of calls, correspondence, and emails —

21  when LCCR's requests expressly sought the documents themselves — renders

22  Treasury's response wholly inadequate." *Id.* at 6. The text of FOIA itself mandates

23  that the Treasury Department "make *the records* promptly available to any person,"

24  LCCR explained, adding that "[t]he statute says nothing about permitting the

25  substitution of mere descriptions of the records in lieu of the documents

26  themselves." *Id.* at 7. *See also Miller v. Department of State*, 779 F.2d 1378, 1383-

27  87 (8th Cir. 1985) (finding that when "an agency becomes reasonably clear as to the

28

DAVIS WRIGHT TREMAINE LLP

LCCR'S SUR-REPLY TO MEMO ISO MOTION TO DISMISS COMPLAINT
LAX 489600v1 0050062-082073

materials desired, FOIA's text and legislative history make plain the agency's
obligation to bring them forth").

Despite the clear language in LCCR's Opposition, neither the Reply nor the
third declaration by Treasury employee Virginia Canter address why Treasury did
not produce the actual documents, e-mails, data and other records that it has
identified. Nor does Treasury cite *any* case – nor could it – for the proposition that
an agency may summarize responsive records instead of actually producing them.
The only two sentences in the Third Canter Declaration that even discuss the issue
say the following: "To the extent that plaintiff alleges that the inclusion of this
information derived from electronic data in the Final Response suggests there are
additional records responsive to the FOIA request in paper or electronic form, and
that Treasury failed to release such additional records [citation omitted], *those
assertions are incorrect*. After OFAC conducted searches of potentially responsive
records, Treasury released all responsive records in paper and electronic form."[1]
Third Canter Decl. ¶ 11 (emphasis added). Such conclusory and wholly
argumentative statements fall far short of meeting the objective standard of
reasonableness necessary to sustain a motion to dismiss. *See, e.g., Nation
Magazine, Washington Bureau v. United States Customs Serv.*, 71 F.3d 885, 890
(D.C. Cir. 1995) (finding that "[c]onclusory statements that the agency has reviewed

---

[1] The Reply contends that "OFAC determined that it does not maintain
responsive records in paper form regarding the FACDB [Foreign Assets Control
Database]. Plaintiff thus errs in asserting that Treasury 'substitut[ed] mere
descriptions of the records in lieu of the documents themselves." Treasury's Reply
at 19. LCCR dealt with this issue in its Opposition, noting that it does not matter
that the records are not in paper form. "Nor does the fact that the documents or
information are stored *electronically* excuse Treasury's lack of production. LCCR's
FOIA request broadly defined 'record' to include all records kept in electronic form.
[Citation omitted.] Consequently, Treasury was obligated to produce any records it
has in whatever format possible. Importantly, Treasury has not asserted that it
*cannot* produce these records in electronic format." LCCR's Opp., at 6. Once
again, Treasury was not responsive, failing to explain in its third attempt why it
could not produce the records in electronic form as required under FOIA.

LCCR'S SUR-REPLY TO MEMO ISO MOTION TO DISMISS COMPLAINT
LAX 489600v1 0050062-082073

DAVIS WRIGHT TREMAINE LLP

relevant files are insufficient to support summary judgment" and logically should not support a motion to dismiss); *Santos v. DEA*, 357 F. Supp. 2d 33, 37 (D.D.C. 2004) ("Conclusory statements that the agency has reviewed the relevant files are insufficient to support summary judgment" and by extension, a motion to dismiss). Where, as here, an agency fails to specify the process by which it searched for records and instead makes the bald claim that it has released "all responsive records," courts have found the FOIA search inadequate and denied summary judgment (which would apply, by logical extension, to a motion to dismiss). *See, e.g., People for the Am. Way Found. v. National Park Serv.*, 503 F. Supp. 2d 284 (D.D.C. 2007) (even though agency affidavit averred that 100 employees had searched for and produced 5,000 documents, finding FOIA search inadequate because official's affidavit did not "identif[y]why the scope of defendant's search was limited to the files or personnel listed"); *Maydak v. U.S. Dep't of Justice*, 362 F. Supp. 2d 316, 326 (D.D.C. 2005) (holding that search was inadequate because Bureau of Prisons gave no information about the specific files searched for each request). Canter's repeated conclusory claims that Treasury has released "all responsive documents" and her failure to give even one reason why LCCR's "assertions" to the contrary "are incorrect" demonstrate the inadequacy of the Treasury search and provide evidence of bad faith on the part of Treasury in responding to LCCR's FOIA request.

**B.    Treasury Ignored LCCR's Request For Qualitative Information, Allowing Treasury To Avoid Providing The Responsive E-Mails And Documents From Citizens Complaining About Being Misidentified On The OFAC List.**

The only logical answer for Treasury's failure to produce the requested electronic data, e-mails and documents is that the Department improperly misconstrued or outright ignored one half of LCCR's FOIA request. While LCCR asked for both the number *and nature* of requests for information regarding individuals on the SDN watch list, Treasury focused on and produced only

information regarding the number of inquiries.  This impermissibly narrow

construction of LCCR's FOIA request enabled Treasury to avoid turning over the

responsive e-mails and documents that would shed light on the specific complaints

made by citizens concerned about being misidentified on the list and companies

worried about compliance.  By not "liberally" construing LCCR's FOIA request

when it was determining which records are responsive to it, Treasury breached both

its duty under FOIA, *Nation Magazine,* 71 F.3d at 890, and the underlying purpose

of the statute to allow "citizens to know 'what their government is up to,'" which "is

a structural necessity in a real democracy," *NARA v. Favish,* 541 U.S. 157, 171-72

(2004), *quoting U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*,

489 U.S. 749, 773 (1989).

A review of LCCR's FOIA request and Treasury's response is instructive.

LCCR expressly asked for agency records[2] regarding:

"(1)    The number *and nature of* inquiries made to the OFAC

compliance hotline by companies regarding a possible name match to

the SDN list or other watch list;

(4)    The number *and nature of* inquiries from

companies/individuals about a credit report submitted by an applicant

stating that the applicant might be on a government watchlist

(5)    The number *and nature of* complaints from individuals

whose names were flagged as similar to a name on the SDN list or

other watchlist and any OFAC responses to such complaints

(6)    The number *and nature of* and complaints from

individuals whose credit reports contained an alert regarding a possible

---

[2] In its FOIA Request, LCCR stated that agency records "includes, but is not limited to, charts, tables, graphs spreadsheets, telephone logs, memos, correspondence, faxes, e-mails, guidances, training manuals, policy statements, reports, analyses, notes, audiotapes, videotapes, and records kept in electronic form."  LCCR's Request, at 1.

DAVIS WRIGHT TREMAINE LLP

name match to the SDN list or other watchlist, and any OFAC

responses to those complaints."

LCCR's Request, at 1-2 (emphasis added).  Merriam Webster's dictionary defines

"nature" as "the inherent character or basic constitution of a person or thing."  "And

nature of," then, refers to the *inherent character* of the inquiries/complaints

referenced above.  LCCR plainly was asking not just for the number of inquiries, but

also for documents and e-mails that capture the "inherent character" of inquiries and

complaints made by individuals and companies regarding the SDN list.

Nevertheless, Treasury looked only for numerical data and not for the qualitative

information regarding the "nature of" the inquiries/complaints about the SDN list, as

its July 20, 2007, FOIA Response and three declarations prepared for this litigation

demonstrate.  For example, Treasury references "computer search[es]" for "data"

four times within a few paragraphs in its response to FOIA Requests 1-6.  FOIA

Response, at 2.  The response includes sentences such as:  "OFAC does not maintain

*data*…"; "This *data* does not include…"; "A computer search of this *data*…."  *Id.*[3]

Similarly, the Third Declaration of Treasury official Virginia Canter states:

"Treasury included this information regarding the *number of emails*…"; "These

terms were selected in order to derive information … regarding the *volume of*

*correspondence* received by the agency…"; "Items 5 and 6 of the FOIA request

sought agency records regarding the *number of* 'complaints from individuals'

_____

[3] Treasury's Reply memo in support of its motion to dismiss is also filled with
similar sentences, illustrating that the agency impermissibly edited out the
qualitative information from LCCR's inquiry and turned it into a request for
numerical data.  For example, the Reply states with regard to Treasury's database
search for e-mails that have terms within them such as "credit report": "These terms
were selected in order to derive information from the email account regarding the
*number of emails* received through OFAC's website with respect to name matches
to the SDN list."  Reply at 6. The Reply memo also repeated the numbers-only
language of Treasury's July 20, 2007 FOIA response – "OFAC *maintains electronic*
*data*…"; "OFAC's congressional liaison…derived *the number* of entries related to
calls…"; "[t]he Call Center logs contain electronic data regarding *the number* of
telephone calls and correspondence received by the agency…."  *Id.* at 10.

DAVIS WRIGHT TREMAINE LLP

regarding a possible name match…"; "OFAC's congressional liaison conducted a computer word search of this *electronic data*, deriving the *number of entries* related to telephone calls…." Third Canter Decl. ¶ ¶ ¶ ¶ 19, 21, 23, 23 (emphasis added). Not surprisingly, the results from these *data* searches produced only numbers like the 53 e-mails, 67 entries on OFAC's Foreign Assets Control database, and the 63,409 "hotline" calls about a possible "SDN name match" discussed above.

By searching for and producing only numerical data, Treasury failed to address the second half of LCCR's request, which asked for the actual agency records related to this data that could explain the "nature of" ("the inherent character of") these inquiries/complaints.[4]  This truncation is impermissible because all government agencies – including Treasury – "must be careful not to read [a FOIA] request so strictly that the requester is denied information *the agency well knows exists in its files*." *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985) (emphasis added).  Treasury's impossibly narrow interpretation of LCCR's FOIA request allowed the Department not only to avoid searching for and producing the above referenced documents that it "well knows exists in its files," but also to avoid looking in other obvious areas.  *See id.*  For example, Treasury has an e-mail form on its web site allowing citizens and companies to make inquiries about pending wire transfers and possible name matches to the SDN list.  All of those forms would

---

[4] Treasury cannot plead ignorance, as Treasury's own materials demonstrate that the Department knows the difference between a request for "number" of records and a request into the "nature of" records.  Treasury's web page on how to write a FOIA request, for example, counsels requesters to "provide enough information (i.e., the *nature* of the record sought…," which indicates the Department is seeking information related to the inherent character of the record and not just the number of records sought. *See* https://www.treasury.gov/foia/how-to.html (emphasis added). Similarly, an office within Treasury states on the Department website that it reports to a top official "on the number *and nature of*" complaints regarding compliance with certain Treasury Department guidelines.  The official receives not only the number of complaints, but also "nature of" information "*concerning the quality, objectivity, utility, and integrity of information, and how such complaints were resolved.*"  *See* http://www.ots.treas.gov/docs/4/48914.html (emphasis added).

DAVIS WRIGHT TREMAINE LLP

relate to the "nature of" the inquiries into the SDN list, which falls squarely within
LCCR's FOIA Request.  Nevertheless, Treasury did not produce *any* of the e-mail
forms sent in by citizens or companies, nor did Treasury provide any Department
responses. *See* Ex. C.  Tellingly, Treasury advertises on its website an e-mail
address for OFAC-related questions – <u>ofac_feedback@do.treas.gov</u> – yet Treasury
turned over no e-mails sent to that address involving the OFAC list, and no
responses from Treasury.  Those e-mails, too, fall well within LCCR's request, and
even a marginally competent search would have located them.

Treasury's failure to look for even a single document or e-mail that goes to
the "nature of" the inquiries and complaints about the SDN list demonstrates the
inadequacy of the search and provides a strong indication of the agency's bad faith.
The Department's search was not "reasonably calculated to discover the requested
information," which is the "crucial" issue in terms of the search's adequacy.
*Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993)  Because it is objectively
unreasonable for Treasury to interpret a request for records on the number and
nature of SDN watchlist inquiries as asking for only the former, the Court should
reject Treasury's motion to dismiss.

**C.    The Lack Of Detail And Conclusory Statements Offered By Treasury Provide Indicia Of Bad Faith In Conducting The Search; The Experience Of Other Agencies With Their Terrorist Watch Lists Suggests That Treasury Is Being Less Than Forthcoming About The Inquiries And Complaints Related To Its List.**

Affidavits submitted by agency officials are inadequate unless they "are
relatively detailed, non-conclusory, and submitted in good faith." *Miller v. U.S.
Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1986).  These affidavits "must explain
in reasonable detail the scope and method of the search conducted by the agency …
to demonstrate compliance with the obligations imposed by the FOIA." *Perry v.
Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).  The Third Declaration from Virginia
Canter, like the two earlier ones, falls well below this standard because Canter fails

*DAVIS WRIGHT TREMAINE LLP*

to explain in a relatively detailed, non-conclusory manner how Treasury conducted its search.

A typical conclusory response from Canter notes: "Treasury did not adopt a narrow reading of the FOIA request, but instead searched for any records in paper or electronic form that were potentially responsive." Canter Decl. ¶ 10. Yet nowhere within the Third Declaration, as in the earlier ones, does Canter explain Treasury's "reading" of the FOIA request, nor its definition of a "potentially responsive" record. This omission is particularly telling since LCCR previously argued in its Opposition that Treasury was interpreting its request too narrowly. Along the same vein, Canter declares that "OFAC's Resource Management office distributed *an internal memorandum* to the assistant directors of each division likely to have documents responsive to the FOIA Request...." Third Canter Decl. ¶ 8. Never does Canter describe what the memorandum stated or how LCCR's record requests were to be interpreted, depriving the Court of potentially dispositive documentary material on how Treasury construed the requests. If the memorandum called for looking up numerical data and not the actual documents with the qualitative information, for example, it would be useful for the Court to know that fact, as the Court must decide whether the search was reasonably calculated to uncover all relevant documents. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d at 1351. *See also Maydak*, 362 F. Supp. 2d at 326 (holding that search was deficient where Bureau of Prisons in a declaration identified the individuals who conducted the searches but did not explain how those individuals conducted their searches or introduce separate declarations from those individuals). By repeatedly not providing this basic information about the process in which Treasury went about making its request, by refusing to explain how Treasury "read" LCCR's FOIA request and how it determined the scope of "potentially responsive" records, Treasury officials have exhibited the kind of bad faith tendencies that can cause courts to hold off on granting a motion to dismiss.

DAVIS WRIGHT TREMAINE LLP

1    Moreover, Treasury also failed to explain why it limited its search for e-mails
2    received by OFAC to those involving "credit report," "credit bureau," "Experian,"
3    "Equifax," "Transunion," "remove" and "list." LCCR's request broadly called for
4    all records – including e-mails – related to companies that had possible name
5    matches to the SDN list or other watchlists, and many e-mails responsive to that
6    request may have fallen outside the "credit report" context. Similarly, LCCR asked
7    for records – including e-mails – regarding complaints from individuals whose
8    names were flagged as being similar to a name on the SDN list or other watchlist.
9    Some of those e-mails also likely would have fallen outside the "credit report"
10   context, since, as LCCR earlier documented in its investigation, problems with
11   Treasury's watch list have caused individuals to be denied apartments and loans and
12   to learn of problems created by the list in ways other than from their credit report.
13   Complaint Ex. A, at 3-7. Finally, by omission, Treasury concedes that it did not
14   search for any Treasury responses to e-mail complaints, which were squarely called
15   for in LCCR's FOIA request. The highly selective and perfunctory e-mail database
16   query by Treasury illustrates the inadequacy of its search and confirms the bad faith
17   nature of Treasury's response.
18        Further evidence of Treasury's bad faith in handling LCCR's FOIA request
19   comes from the mere 9 pages of documents on policies and procedures that Treasury
20   turned over in response to LCCR's request. In the "frequently asked questions"
21   section of OFAC's website, which OFAC produced as one of the only examples of a
22   responsive policy or procedure, OFAC twice calls for reporting possible matches to
23   the SDN list by dialing OFAC's "hotline."[5] During testimony before Congress

24

25   _____

26   [5] "Are there a number of similarities or exact matches?" OFAC asks. "If yes,
     please call the hotline at 1-800-540-6322." Two lines later, OFAC counsels, "If you
27   have reason to know or believe that processing this transfer or operating this account
     would violate any of the Regulations, you must call the hotline and explain this
28   knowledge and belief." In another document titled "OFAC Update for Consumers:
     What is This Information on My Credit Report?," OFAC states that "if the person

DAVIS WRIGHT TREMAINE LLP

earlier this year, Treasury Secretary Henry Paulson reported that this "hotline"
receives about 90,000 calls a year, and, according to Treasury, some 63,409 callers
have picked the option for questions related to possible name matches to the SDN
watch list. LCCR's Opp., at 5; Treasury's FOIA Response, at 2. Yet if one is to
believe Treasury's FOIA Response and its claims in these proceedings, Treasury
keeps *no* records related to the "hotline." Citizens call up and tell their tales of woe.
Companies call in to check if they are in compliance, or if they possibly are dealing
with a person who could be named on the list. Yet in Treasury's telling, the
Department does nothing to record it. Nor, if Treasury's claims are to be believed,
does the Department maintain any materials – training or substantive – regarding
responding to those *tens of thousands* of calls, which would fall within LCCR's
FOIA Request for OFAC responses. Apparently Treasury provides absolutely no
written training or instruction to its employees regarding how to respond to the
90,000 calls the agency annually receives from the public. In the history of
government call centers, Treasury would be the first to have nothing written down,
giving new meaning to the term "paperless" agency.

Treasury's stance, of course, is patently absurd, undermined both by
Treasury's own representations of searching electronic databases and by the
experience of other agencies in administering their own watchlists. While Treasury
officials hold to the pretense of having no OFAC policies and procedures to work
with people who contend they are erroneously on the SDN list, other agencies have
at least acknowledged the problem by establishing entire offices – such as the FBI's
Terrorist Screening Center or the Transportation Security Agency's "Traveler
Redress Inquiry Program" ("TRIP") – to deal with the enormous volume of
complaints. *See, e.g.*, Mimi Hall, *15,000 Want Off The U.S. Terror Watch List*,
USA TODAY, November 6, 2007; Ellen Nakashima, *Terrorism Watch List is Faulted*

checking your credit believes you are the person on the SDN list, then he or she
should call the OFAC Hotline to verify and report it." FOIA Response, at 7, 9-10.

DAVIS WRIGHT TREMAINE LLP

LCCR'S SUR-REPLY TO MEMO ISO MOTION TO DISMISS COMPLAINT
LAX 489600v1 0050062-082073

1 | *for Errors; Justice Dept. Official Urges Improvement*, THE WASHINGTON POST,

2 | September 7, 2007, at A12; Ellen Nakashima, *Terror Suspect List Yields Few*

3 | *Arrests; 20,000 Detentions in '06 Riles Critics*, THE WASHINGTON POST, August 25,

4 | 2007, at A1; Angie Marek, *Escaping the Watch List*, U.S. NEWS & WORLD REPORT,

5 | February 19, 2007; Ellen Nakashima and Alec Klein, *U.S. Agency Tries to Fix No-*

6 | *Fly List Mistakes; False Positives Still Cause Travel Delays*, THE WASHINGTON

7 | POST, January 20, 2007, at D1; Leslie Miller, *Report: Thousands Are Misidentified*

8 | *on Terror Watch Lists*, ASSOCIATED PRESS, October 7, 2006. As discussed in

9 | LCCR's earlier-filed Opposition, Treasury's claim to no documents contrasts

10 | sharply with the FBI's detailed procedures that include percentage of matches and

11 | take into account that if there is a warrant against the person, then the individual will

12 | be taken into custody, whereas if no exigent circumstances exist, the individual is

13 | released, but the file is updated. LCCR's Opp., at 9, 13. Similarly, Treasury's

14 | fallacious assertions stand in contrast to the TSA procedures for dealing with

15 | problems concerning the much-maligned "no-fly list." TSA, for example, has

16 | established a web page to administer the TRIP inquiries about "watch list

17 | misidentification issues," with a button for citizens to push regarding "Complaints."

18 | *See* www.dhs.gov/TRIP. Given these FBI and TSA procedures and the claim of no

19 | such measures by Treasury, this may be one of those "times when [Treasury's]

20 | inability to retrieve documents known or thought to be in its files is *inherently*

21 | *unbelievable.*" *Weisberg v. U.S. Dep't of Justice*, 705 F.2d at 1351 (emphasis

22 | added). Accordingly, the Court should view Treasury's claims in this regard as

23 | made in bad faith and reject Treasury's motion to dismiss.

24 | **D.     The Court Should Grant LCCR Limited Discovery To Inquire Into Treasury's Identification And Retrieval Process, Given Treasury's Repeated Obfuscations And Complete Failure To Turn Over Responsive Records.**

25 |

26 |

27 | Contrary to the claims made by Treasury in the Reply, discovery in a FOIA

28 | case is *not* disfavored if conducted for the limited purpose of ascertaining the

DAVIS WRIGHT TREMAINE LLP

14

adequacy of an agency's search, its scope, the agency's indexing and classification procedures, and similar factual matters. *See, e.g., Founding Church of Scientology of Washington v. NSA*, 610 F.2d 824, 836-37 (D.C. Cir. 1979) ("To accept its claim of inability to retrieve the requested documents in the circumstances presented is to raise the specter of easy circumvention of the Freedom of Information Act...and if, in the face of well-defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, the Act will inevitably become nugatory"); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 127 F. Supp. 2d 228, 230 (D.D.C. 2000) (permitting depositions to be taken about parameters of FOIA search); *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 11 (2d Cir. 1995) (holding that discovery on scope of burden that search would entail should have been granted); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (finding discovery appropriate to inquire into the adequacy of the document search); *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205, 210 (N.D.N.Y. 1998) (discovery appropriate to test adequacy of search); *Public Citizen Health Research Group v. FDA*, 997 F. Supp. 56, 72 (D.D.C. 1998), *rev'd in part on other grounds in Public Citizen Health Research Group v. FDA*, 185 F.3d 898 (D.C. Cir. 1999) (holding that discovery is limited to "investigating the scope of the agency search for responsive documents, the agency's indexing procedures, and the like"). Moreover, broader discovery is permitted when the plaintiff raises a sufficient question as to the agency's good faith in processing documents. *See, e.g., Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (plaintiff may take discovery upon a "showing of bad faith on the part of the agency sufficient to impugn agency's affidavits or declarations..."); *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1190 (N.D. Cal. 1998) (permitting discovery when plaintiff claimed existence of pattern and practice of unreasonable delay in responding to FOIA requests).

DAVIS WRIGHT TREMAINE LLP

As LCCR's Opposition and this sur Reply demonstrate, the scope of Treasury's search is genuinely in issue, meaning that limited discovery is appropriate.  Moreover, LCCR has produced evidence of bad faith by Treasury in not producing documents that plainly exist, in providing conclusory, non-detailed responses, and in clinging to a claim of no responsive "call center" records that is patently unbelievable and contrasts sharply with the experience of other government agency watchlists.  Under these circumstances, LCCR again requests that it be permitted to seek discovery in the form of documents and testimony from the person or persons most knowledgeable about the following categories:

1.     Training of the persons who answer calls to the OFAC hotline and respond to e-mails submitted to the e-hotline and other responsive e-mail accounts;

2.     Documentation retained by the hotline and e-hotline of calls, e-mails and other documents received regarding possible matches and responses thereto, such as but not limited to the amount of transactions stopped, which have been documented in other reports as described above;

3.     Procedures used to determine whether there is a true match to a person on the OFAC list;

4.     Procedures and policies for actions OFAC takes when there is a true match; and

5.     Documents and procedures concerning complaints from individuals regarding name mis-matches or credit report flags.

### 3.     CONCLUSION

Treasury has repeatedly failed to demonstrate how its search for records responsive to LCCR's 2005 FOIA request was appropriate, let alone why the agency continues to withhold responsive documents that it located.  This Court should deny this motion and instead, allow LCCR to fully explore the fundamental deficiencies in Treasury's handling of LCCR's FOIA requests and compel Treasury to produce the numerous documents it is improperly withholding.

DAVIS WRIGHT TREMAINE LLP

DATED: November 14, 2007

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
ROBERT RUBIN
PHILIP HWANG


By: */s/ Thomas R. Burke*
            Thomas R. Burke

Attorneys for Plaintiff
Lawyers' Committee for Civil Rights of the
San Francisco Bay Area

DAVIS WRIGHT TREMAINE LLP

17