IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LAWYERS' COMMITTEE FOR         )
CIVIL RIGHTS OF SAN            )    No. C-07-2590-PJH
FRANCISCO BAY AREA,            )
                               )
        Plaintiff,             )
                               )
    v.                         )
                               )
UNITED STATES DEPARTMENT OF    )
THE TREASURY,                  )
                               )
        Defendant.             )

## FOURTH DECLARATION OF VIRGINIA R. CANTER

I, Virginia R. Canter, declare as follows:

1. I am the Associate Director, Resource Management Division, of the Office of Foreign Assets Control (OFAC) at the United States Department of the Treasury (Treasury). I have served in this position since May 29, 2005. Generally, my duties include administering, developing, and managing programs that provide the necessary communication, management support, and resources for conducting OFAC's mission. These programs include records and forms management, information technology management, and Privacy Act and Freedom of Information Act (FOIA) administration. Therefore, my duties include supervisory responsibility for OFAC's processing of FOIA requests. Due to the nature of my official duties, I am familiar with the procedures followed by OFAC in responding to FOIA requests. The statements made in

this Declaration are based upon information within my personal knowledge or made available to me in the performance of my official duties.[1]

I. **INTRODUCTION**

   A. **Chronology**

2. By letter dated August 16, 2005 (FOIA request), plaintiff, the Lawyers' Committee for Civil Rights of the San Francisco Bay Area, requested that Treasury release certain OFAC records regarding the Specially Designated Nationals List (SDN List), which is administered by OFAC, for the period "from 2000 to the present."

3. As described below, OFAC conducted a search for, and located, records responsive to the FOIA request, and released such records to plaintiff by letter dated July 20, 2007 (Final Response).

   B. **The FOIA Request**

4. Items 1 to 6 of plaintiff's FOIA request generally sought OFAC records regarding "the number and nature" of "inquiries or complaints" made to OFAC with respect to a possible or actual match of a person's name (a name match) to a name on the SDN List. In particular, these items sought records regarding:

> 1. The number and nature of inquires made to the Office of Foreign Assets Control (OFAC) compliance hotline by companies regarding a possible name match to the SDN list or other watchlist.

---

[1] Due to security, harassment and privacy concerns, OFAC's general policy is not to disclose the specific individual names of its employees to the public. In this Declaration, I have therefore provided the title of each employee who assisted in processing the FOIA request that is the subject of this litigation.

2

2.      The distribution of calls to the OFAC compliance hotline based on industry (including but not limited to banks, travel/tourism agencies, insurance companies, credit reporting agencies, nonprofit organizations, and money service businesses).

3.      The number of calls received by the OFAC compliance hotline that resulted in an actual name match to the SDN list or other watchlist.

4.      The number and nature of inquiries from companies/individuals about a credit report submitted by an applicant stating that the applicant might be on a government watchlist.

5.      The number and nature of complaints from individuals whose names were flagged as similar to a name on the SDN list or other watchlist and any OFAC responses to such complaints.

6.      The number and nature of complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list or other watchlist, and any OFAC responses to those complaints.

5. Items 7 to 10 of the FOIA request generally sought OFAC records regarding the "policies and procedures" used by OFAC in connection with a possible or actual name match to the SDN List. In particular, these items sought records regarding:

7.      Policies or measure taken to protect the civil rights and privacy interests of individuals whose names are flagged as similar to a name on the SDN list or other watchlist.

8.      Procedures for individuals to remove their names from the SDN list or other watchlist or to establish that they are not actually on the watchlist.

9.      Policies and procedures used by OFAC to determine whether an individual about whom the agency has received an inquiry is actually the same person identified on a government watchlist.

10.     Policies and procedures used by OFAC once it has determined that an individual is actually on a government watchlist.

## II. OFAC SEARCHED FOR RESPONSIVE RECORDS

6. After OFAC was assigned to process the FOIA request on behalf of Treasury, in my position as Associate Director of OFAC's Resource Management Division, I distributed an internal memorandum dated May 30, 2007, to the assistant directors of each of the OFAC divisions that were likely to have documents responsive to the FOIA Request (the Memorandum), namely the Designation and Investigations Division; the Compliance, Outreach and Implementation Division (the Compliance Division); and the Information Technology Division) attaching a copy of the FOIA request, and directing each division to search its records and collect any potentially responsive records resulting from such search. In addition, on May 31, 2007, I distributed the Memorandum to five other divisions (the Civil Penalties Division, the Enforcement Division, the Licensing Division, the Records Management Division, and the Policy Division) and the congressional liaison, in order to ensure a full and complete search. The Memorandum was, therefore, distributed to each division within OFAC except for the Budget and Human Resources Management Division, which, given its nature, I determined was unlikely to have responsive documents. In my position as Associate Director of OFAC's Resource Management Division, I administered and supervised OFAC's processing of the FOIA request.

7. The assistant directors of these OFAC divisions reviewed the request to determine whether potentially responsive records in paper or electronic form were likely to be maintained in their office. After consultation with these divisions, I determined that the Designations and Investigations Division, the Compliance Division, the Information Technology Division, the Records Management Division, and the congressional liaison were the only offices within OFAC

4

likely to have potentially responsive records. These divisions then conducted the requisite searches and forwarded potentially responsive records in paper and electronic form, as described below, to OFAC's Records Management Division.

### III. OFAC LOCATED RESPONSIVE RECORDS IN ELECTRONIC FORM

8. OFAC determined that it maintains some data in electronic form responsive to the FOIA request. As discussed below, OFAC conducted computer searches of that electronic data and derived information that is responsive to items 1 to 6 of the FOIA request, regarding "the number and nature" of "inquiries or complaints" made to OFAC with respect to name matches to the SDN List. As discussed below, OFAC determined that the electronic data did not contain any information responsive to items 7 to 10 of the FOIA request, regarding the "policies and procedures" used by OFAC in connection with name matches to the SDN List.

#### A. The Compliance Hotline

9. OFAC operates a Compliance Hotline (the Call Center), by which it receives telephone calls from individuals and companies regarding programs administered by OFAC. Items 1 through 3 of the FOIA request sought OFAC records regarding "the number and nature" of phone calls received by the Call Center from 2000 regarding a name match to the SDN List. Calls made to the Call Center include the majority of communications received by OFAC from individuals and companies regarding the SDN List.

10. The purpose of the Call Center is to provide automated call routing for telephone calls received by OFAC. The Call Center, including its integrated voice response system (the System), routes calls to the appropriate OFAC employees and accepts voice messages when employees are not immediately available to answer calls. The System also provides the

capability for "self-service" by enabling members of the public to check on the status of license applications. The Call Center and the System are not designed to qualify or quantify the "nature" of the calls received.

11. Some information regarding calls received by the Call Center is stored by OFAC in electronic form in log files (the Logs).[2] The System determines the caller's needs via menu options, presenting the caller with nine options (Queues) at the main menu prompt. After hearing the main menu, the caller selects a menu option, and the System automatically routes the call to the appropriate division and connects the caller to an OFAC employee (Agent), if one is available, or directs the caller to leave a voicemail message. During each call an Agent can transfer the call to another Queue or Agent, place the call on hold, or include a third party.

12. The System automatically tracks certain basic information about the call (the Call Record), displays such information to the Agent, and stores such information in electronic form in the Logs. Such information includes the caller's phone number (if available), the caller's OFAC license number if entered during the call, the time the call came in, the duration of the call, the Queue to which it was routed, and the disposition of the call (whether completed, disconnected by the caller, sent to voicemail, or transferred to another Queue).[3] By routing the call to the appropriate department and displaying such basic information on the Agent's computer screen, the System facilitates a direct response by the Agent to the caller's phone inquiry. The System does not permit Agents to input more specific information into the Logs

---

[2] Before OFAC deployed the Call Center in May of 2004, OFAC employees were required to manually analyze each incoming call or voice message and route it to the appropriate division.
[3] The Logs also contain the names of OFAC contacts at a limited number of financial institutions, but does not include the names of individuals or other institutions.

regarding the nature of the caller's inquiry. As mentioned above, the System allows callers to leave voicemail messages, but these are not converted to text or indexed in any way.

13. Item 1 of the FOIA request sought records regarding "the number and nature of inquiries made to the . . . hotline by companies regarding a possible name match to the SDN list . . . ." Item 2 sought records regarding the "distribution of calls to the . . . hotline based on industry. . . ." Item 3 sought records regarding the "number of calls received by the . . . hotline that resulted in an actual name match" to the SDN List.

14. On the Call Center's main menu, Option 2, which transfers calls to the Call Center's Second Queue, is designed to assist callers with a question with reference to an "SDN name match." Calls placed in this Queue include, but are not limited to, calls from companies regarding a possible name match to the SDN List. The System routes those callers who choose the Second Queue to Agents from OFAC's Compliance Division. On May 30, 2007, an IT Specialist from OFAC's Information Technology Division conducted a computer search of the Logs, deriving the number of calls that selected the Second Queue during the period from April 1, 2004 (the date on which the System was deployed), to the date of the search. That search yielded a total of 63,409 calls in the Second Queue, of which 9,957 were answered live, and 43,614 were answered with a phone call in response to the caller's voicemail message.[4] OFAC provided this number to the requestor in its Final Response.

15. OFAC determined that the Logs do not contain further information regarding: "the number and nature of inquires" made to the Call Center by companies regarding a possible name match to the SDN List (item 1), "the distribution of calls" to the Call Center based on industry

---

[4] The remainder of the calls were not completed or did not result in a voicemail message.

(item 2), or "the number of calls" received by the Call Center "that resulted in an actual name match" to the SDN List (item 3), from 2000.

16. OFAC also determined that the Logs, which are limited to phone calls made to the Call Center, do not contain further information regarding "the number and nature" of "inquiries and complaints" made to OFAC from 2000 regarding a credit report alert or any other indication of a possible name match to the SDN List (items 4 to 6).

### B.    The Foreign Assets Control Database

17. OFAC maintains the Foreign Assets Control Database (FACDB), an electronic database that tracks certain data in several OFAC departments regarding incoming and outgoing correspondence, the status of OFAC cases relating to licensing, civil penalties, enforcement, and FOIA requests, as well as scanned images of certain paper records related to those cases. FACDB was first deployed in 1995, and OFAC integrated the individual department applications into a single database application in 2001. Items 4 to 6 of the FOIA request sought OFAC records regarding "the number and nature" of certain "inquiries and complaints" made to OFAC from 2000 regarding a credit report alert or any other indication of a possible name match to the SDN List.

18. On June 12, 2007, the Supervisory Program Specialist from OFAC's Records Division conducted a computer word search of the subject field of FACDB, deriving the number of entries during the period from 1995 to the date of the search that include at least one of the following terms: "credit report," "credit bureau," "Experian," "Equifax," "Transunion" (the three major credit bureaus), and "removal from SDN list." OFAC determined that a search of the subject field and the use of these search terms would derive the maximum information from

FACDB regarding correspondence received by OFAC with respect to a credit report alert or other indication of a possible name match to the SDN List, in response to items 4 to 6 of the FOIA request. That search yielded 67 data entries that include at least one of those search terms. OFAC provided this number to the requestor in its Final Response.

19. OFAC determined that FACDB does not contain further information regarding "the number and nature" of: "inquiries . . . about a credit report" indicating that the applicant might be on the SDN List (item 4), "complaints from individuals whose names were flagged as similar to a name on the SDN list" (item 5), "complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list" (item 6), or "any OFAC responses to such complaints" (items 5 and 6), from 2000.

20. The 67 data entries in FACDB discussed above relate to letters received by OFAC, and such letters constitute "inquiries and complaints" made to OFAC regarding a credit report alert or other indication of a possible name match to the SDN List. However, items 4 to 6 of the FOIA request do not seek copies of any such inquiries or complaints. Instead, these items seek records regarding "**the number and nature** of inquiries and complaints" made to OFAC, or "**the number and nature** of any OFAC responses to such complaints" (emphasis added). OFAC has therefore interpreted these items as seeking records that aggregate or compile more than one written inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response. As a result, OFAC has not processed or released each individual letter associated with the 67 data entries.

9

21. OFAC also determined that FACDB, which is limited to correspondence, case files, and other records in paper form, does not contain further information regarding "the number and nature" of phone calls received by the Call Center from 2000 (items 1 to 3).

### C. Data Regarding Emails Sent to OFAC's Website

22. OFAC operates two email accounts on its website: a "feedback" account allows individuals to send questions or comments to OFAC regarding the sanctions programs administered by OFAC, and a "hotline" account linked to a form on OFAC's website allows individuals to submit questions about specific transactions where there is an indication of a potential name match to the SDN List or a potential sanctions violation.

23. In June of 2007, the Chief of Compliance Implementation for OFAC's Compliance Division conducted a computer word search of the data contained in these two accounts with respect to emails that were received by OFAC from November 1, 2001 (the earliest date on which these accounts were created), to the date of the search. Compliance officers searched this electronic data for one or more of the following terms: "credit report," "credit bureau," "Experian, "Equifax," "Transunion," "remove," and "list." OFAC determined that the use of these terms would derive the maximum information regarding emails received by OFAC with respect to a credit report alert or other indication of a possible or actual name match to the SDN List, in response to items 4 to 6 of the FOIA request. That search yielded 53 data entries that include at least one of those search terms. OFAC provided this number to the requestor in its Final Response.

24. OFAC determined that this data does not contain other information regarding "the number and nature" of: inquiries about a credit report indicating that the applicant might be on the SDN List (item 4), complaints from individuals whose names were flagged as similar to a name on the SDN list (item 5), complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list (item 6), or OFAC responses to such complaints (items 5 and 6), from 2000.

25. The 53 data entries relate to emails received by OFAC, and such emails constitute "inquiries and complaints" made to OFAC regarding a credit report alert or other indication of a possible name match to the SDN List. However, items 4 to 6 of the FOIA request do not seek copies of any such inquiries or complaints. Instead, items 4 to 6 seek records regarding "**the number and nature** of inquiries and complaints" made to OFAC, or "**the number and nature** of any OFAC responses to such complaints" (emphasis added). OFAC has therefore interpreted these items as seeking records that aggregate or compile more than one emailed inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response. As a result, OFAC has not processed or released each individual email associated with the 53 data entries.

26. OFAC also determined that this data, which is limited to emails, does not contain further information regarding "the number and nature" of phone calls received by the Call Center from 2000 (items 1 to 3).

### D.     Data Regarding Calls Received by OFAC's Congressional Liaison

27. Some telephone calls received by OFAC's congressional liaison relate to possible or actual names matches to the SDN List. OFAC maintains data in electronic form that contains some information regarding telephone calls made to the congressional liaison.

28. On June 17, 2007, OFAC's congressional liaison conducted a computer word search of this electronic data, deriving the number of entries reflecting telephone calls received by the liaison from January of 2005 (the date on which the data was first tracked) to the date of the search regarding a possible or actual name match to the SDN List. That search yielded 6 data entries. OFAC provided this number to the requestor in its Final Response.

29. OFAC determined that this data does not contain other information regarding "the number and nature" of: inquiries about a credit report indicating that the applicant might be on the SDN List (item 4), complaints from individuals whose names were flagged as similar to a name on the SDN list (item 5), complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list (item 6), or OFAC responses to such complaints (items 5 and 6), from 2000.

30. The 6 data entries discussed above relate to telephone calls received by OFAC's congressional liaison, and some of these calls are associated with communications received by OFAC. Such communications constitute "inquiries and complaints" made to OFAC regarding a credit report alert or any other indication of a possible name match to the SDN List. However, items 4 to 6 of the FOIA request do not seek copies of any such inquiries or complaints. Instead, items 4 to 6 seek records regarding **"the number and nature** of inquiries and complaints" made

to OFAC, or "**the number and nature** of any OFAC responses to such complaints" (emphasis added). OFAC has therefore interpreted these items as seeking records that aggregate or compile more than one written inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response. As a result, OFAC has not processed or released each individual record associated with the 6 data entries.

31. OFAC also determined that this data, which is limited to phone calls made to its congressional liaison, does not contain further information regarding "the number and nature" of phone calls received by the Call Center from 2000 (items 1 to 3).

### IV. OFAC LOCATED RESPONSIVE RECORDS IN PAPER FORM

32. After the eight OFAC divisions noted above conducted a search for records in paper form, all responsive records located by OFAC, described below, were forwarded to OFAC's Records Management Division.

#### A. Items 1 to 6 of the FOIA Request

33. For each of the eight OFAC divisions listed above, the Assistant Director within OFAC determined whether the division maintained any paper records potentially responsive to the FOIA request that were not annotated in FACDB or the other data bases described above. OFAC's congressional liaison made such a determination as well.

34. After the assistant directors and the congressional liaison made such determinations, OFAC, in turn, determined that it does not maintain records in paper form responsive to items 1 to 6 of the FOIA request, regarding "the number and nature" of "inquiries or complaints" made to OFAC from 2000 with respect to name matches to the SDN List.

35. As stated above, OFAC has not located any records in paper form regarding "the number and nature" of phone calls received by the Call Center from 2000 (items 1 to 3).

36. As stated above, OFAC has not located any records in paper form regarding "**the number and nature** of inquiries and complaints" made to OFAC, or "**the number and nature** of any OFAC responses to such complaints" (emphasis added) (items 4 to 6).

37. In general, any records related to written communications received by OFAC from individuals are logged into and monitored through the four databases described above. The computer word searches of these four databases located any paper records that were potentially responsive to the FOIA request. As stated above, OFAC has interpreted items 4 to 6 as seeking records that aggregate or compile more than one written inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response. As a result, OFAC has not processed or released each individual letter associated with the data entries in FACDB, each individual email associated with the 53 data entries regarding OFAC's email accounts, or each individual record associated with the 6 data entries regarding phone calls received by OFAC's congressional liaison.

38. Under regulations promulgated by OFAC, an individual may file a petition to remove his or her name from the SDN List (Delisting Petitions). Delisting Petitions are applications acknowledging that the person is named on the SDN list and requesting that his or her name be removed from the SDN List. Therefore, such petitions, are not: (a) inquiries regarding a credit report "stating that the application **might** be on" the SDN List (Item 4), (b) complaints from individuals whose names "were flagged as **similar** to a name on the SDN List" (Item 5), or (c) complains from individuals whose credit reports contained an alert "regarding a **possible** name

14

match" to the SDN List (Item 6) (emphasis added). Accordingly, OFAC has interpreted items 4 through 6 as not seeking records regarding delisting petitions, and OFAC has not processed or released such records.

39. To the extent that items 1 to 6 sought records regarding inquiries or complaints made to OFAC with respect to any "watch list" other than the SDN List, OFAC determined that it does not maintain records in any form, paper or electronic, regarding any watch list other than the SDN List. In particular, to the extent that plaintiff makes allegations regarding "terrorist watch lists" purportedly administered by "other agencies," see Plaintiff's Opposition to Treasury's Motion to Dismiss (Pl. Opp.) at 7, 12, 13, OFAC does not maintain records in any form, paper or electronic, regarding any such "terrorist watch list."

**B.    Items 7 to 10 of the FOIA Request**

40. As a result of the searches conducted by the eight OFAC divisions, the then Assistant Director of OFAC's Designations and Investigations Division located nine pages of OFAC records responsive to items 7 to 10 of the FOIA request, regarding the "policies and procedures" used by OFAC from "2000 to the present" in connection with name matches to the SDN List. Such records were then released in full to the requestor.

41. To the extent that plaintiff speculates that "responsive records may have been destroyed" in connection with OFAC's processing of the FOIA request, see Pl. Opp. at 4, that assertion is incorrect. OFAC released all responsive records that it located.

### V.   OFAC RELEASED RESPONSIVE INFORMATION IN PAPER AND ELECTRONIC FORM

42. On July 20, 2007, OFAC released in full to plaintiff the nine pages of records in paper form responsive to items 7 to 10 of the FOIA request, along with the Final Response, as described above. At that time, OFAC also released all responsive information in electronic form that OFAC derived from the Call Center Database, from FACDB, from the data regarding OFAC's email accounts, and from the data regarding phone calls received by OFAC's congressional liaison, as discussed above.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 11, 2008

_____
Virginia R. Canter
Associate Director, Resource Management
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220