UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF SAN FRANCISCO BAY
AREA,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
THE TREASURY,

    Defendant.
_____/

No. C 07-2590 PJH

**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; PLAINTIFF'S MOTION FOR DISCOVERY**

    Defendant's motion for summary judgment and plaintiff's motion for discovery came on for hearing before this court on December 12, 2007. Plaintiff Lawyers' Committee for Civil Rights of San Francisco Bay Area ("LCCR") appeared through its counsel, Thomas Burke. Defendant United States Department of Treasury ("defendant" or "Treasury") appeared through its counsel, Peter Wechsler. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court GRANTS IN PART AND DENIES IN PART defendant's motion for summary judgment and DENIES plaintiff's motion for discovery.

**BACKGROUND**

    This is an action brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for injunctive and declaratory relief. LCCR seeks declaratory and injunctive relief, requiring defendant to disclose numerous documents that LCCR claims it continues to improperly withhold, and declaring that Treasury is in violation of FOIA.

On August 16, 2005, LCCR submitted a FOIA request to Treasury, which included ten requests related to the Specially Designated Nationals List (SDN list) that is maintained and administered by Treasury's Office of Foreign Assets Controls ("OFAC"). OFAC's SDN list is a publicly available list of suspected terrorists, drug traffickers, and other "specially designated nationals," and includes individuals, banks, companies, and other entities deemed to be a threat to national security. Private businesses such as banks, mortgage companies, landlords, and employers screen potential customers and applicants against the SDN list. If an applicant's name is on the list – or is similar to a name on the SDN list – then an alert is generated, and businesses and/or employers may refuse to conduct business or employ the customer or applicant. The list casts a fairly wide net, and includes common names like Sanchez, Gonzalez, Ali, and Hussein.

In its FOIA request, LCCR sought disclosure of the following OFAC records from 2000 to the present:

(1) The number and nature of inquiries made to the OFAC compliance hotline by companies regarding a possible name match to the SDN list or other watchlist;

(2) The distribution of calls to the OFAC compliance hotline based on industry (including but not limited to banks, travel/tourism agencies, insurance companies, credit reporting agencies, nonprofit organizations, and money service businesses);

(3) The number of calls received by the OFAC compliance hotline that resulted in an actual name match to the SDN list or other watchlist;

(4) The number and nature of inquiries from companies/individuals about a credit report submitted by an applicant stating that the applicant might be on a government watchlist;

(5) The number and nature of complaints from individuals whose names were flagged as similar to a name on the SDN list or other watchlist and any OFAC responses to such complaints;

(6) The number and nature of complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list or other watchlist, and any OFAC responses to those complaints;

(7) Policies or measures taken to protect the civil rights and privacy interests of individuals whose names are flagged as similar to a name on the SDN list or other watchlist;

2

(8) Procedures for individuals to remove their names from the SDN list or other watchlist or to establish that they are not actually on the watchlist;

(9) Policies and procedures used by OFAC to determine whether an individual about whom the agency has received an inquiry is actually the same person identified on a government watchlist; and

(10) Policies and procedures used by OFAC once it has determined that an individual is actually on a government watchlist.

On August 29, 2005, an OFAC director acknowledged receipt of LCCR's request, and notified LCCR that it was experiencing a substantial backlog of FOIA requests, and that its response time would be delayed. LCCR subsequently filed a complaint with this court in May 2007, asserting one FOIA claim, seeking injunctive relief requiring Treasury to release the requested records and a declaration that Treasury had violated FOIA. At the time that LCCR filed its complaint, Treasury had not responded to its FOIA request.

Shortly thereafter, on July 20, 2007, Treasury responded to LCCR's FOIA request, and produced several documents it deemed responsive. Treasury then filed a motion to dismiss the complaint on July 27, 2007, arguing that LCCR's complaint should be dismissed for lack of subject matter jurisdiction given its July 20, 2007 response to LCCR's FOIA request. On October 3, 2007, LCCR filed its opposition to Treasury's motion, contending that its FOIA claim was not mooted by Treasury's response because Treasury's search and its response were inadequate. LCCR also requested discovery regarding Treasury's response and search. Subsequently, on October 18, 2007, this court held a case management conference at which it noted that Treasury's motion to dismiss was mooted by plaintiff's challenge to the adequacy of the search, and set a further briefing schedule, affording plaintiff the opportunity to file a sur-reply. *See Snyder v. Central Intelligence Agency*, 230 F.Supp.2d 17, 19 n.1 (D.D.C. 2002) (a case is not moot where the plaintiff shows a cognizable interest in having the court decide whether or not the agency's search was adequate).

Treasury filed a reply on October 31, 2007, which was accompanied by the Third Canter Declaration that discussed the search conducted by OFAC. In its reply, Treasury

3

argues that to the extent that LCCR's FOIA claim is not mooted by its response to the FOIA request, it is entitled to summary judgment because the search was adequate. LCCR filed a sur-reply on November 14, 2007.

At the December 12, 2007 hearing on the parties' motions, the court advised the parties that, per the October 18, 2007 case management conference, it would be treating Treasury's motion as one for summary judgment. The court also found that the Third Canter Declaration submitted by Treasury in support of its motion was inadequate because it did not sufficiently explain and describe OFAC's search for responsive documents. The court noted that it was not sufficient for Treasury to simply assert that OFAC division directors were provided with a list of plaintiff's FOIA requests and asked to search for responsive documents. Accordingly, the court ordered Treasury to submit a supplemental declaration regarding the adequacy of the search, and deferred ruling on the parties' motions until it had reviewed the supplemental declaration. In response, Treasury filed the Fourth Canter Declaration on January 11, 2008.

## DISCUSSION

**A.     Legal Standards**

   1.     FOIA

FOIA requires, that unless an exemption applies, "each agency, upon any request for records which (i) reasonably describes such records, and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).

A FOIA request must be for a "record." O'Reilly, Federal Information Disclosure, § 4:18 (2000 ed. & 2007 suppl.). FOIA itself does not define the term "record." However, courts have looked to another statute, 44 U.S.C. § 3301, for the definition and have defined "record" as "materials that have come into the agency's possession in the legitimate conduct of its official duties." O'Reilly, Federal Information Disclosure, § 4:14 (2007 Suppl.).

An agency has a duty to construe a FOIA request liberally. *Truitt v. Dep't of State,* 897 F.2d 540, 544-45 (D.C. Cir. 1990) (citing Senate Report accompanying relevant provision of FOIA). The agency is under a duty to conduct a "reasonable" search for responsive records using methods that can be reasonably expected to produce the information requested to the extent they exist. 5 U.S.C. § 552(a)(3)(C); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Zemansky v. United States EPA*, 767 F.2d 569, 571 (9th Cir. 1985).

While there is no requirement that an agency search every record system, *Truitt,* 897 F.2d at 542, or that a search be perfect, *Meeropol v. Meese,* 790 F.2d 942, 955-56 (D.C. Cir. 1986), the search must be conducted in good faith using methods that are likely to produce the information requested if it exists. *See Campbell v. United States Department of Justice,* 164 F.3d 20, 27 (D.C. Cir. 1998). An agency is not, however, "required to reorganize its files in response to a plaintiff's request in the form in which it was made." *Church of Scientology v. IRS*, 792 F.2d 146, 150-151 (D.C. Cir. 1986). It is sufficient that the searching person identified the employees who might have responsive documents, reviewed certain documents, and requested that agency employees forward responsive documents to her. O'Reilly, Federal Information Disclosure, § 9:12 (2007 Suppl.).

The production of missing records is not within the purview of FOIA. O'Reilly, Federal Information Disclosure, § 9:8 (2007 Suppl.). The Act compels disclosure only of existing records. *Id.* The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. *Id.* The fact that a document once existed does not mean that it now exists; nor does the fact that an agency once created a document necessarily imply that the agency has retained it. The agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records. *Id.* However, an agency cannot withhold a record that is reasonably within the scope of the

5

request on the grounds that the record has not been specifically named by the requester. *Id; see also Citizens Com'n on Human Rights v. Food and Drug Admin.*, 45 F.3d 1325, 1329 (9th Cir. 1995) (rejecting FDA's argument that plaintiffs had not properly requested a particular report); *LaCedra v. Executive Office for U.S. Attorneys,* 317 F.3d 345, 348 (D.C. Cir. 2003) (FOIA request which first generally asked for "all documents pertaining to" criminal case that was prosecuted by agency office, but which then enumerated certain specifically requested items, should have been construed by the agency as requesting all documents concerning the case, not just the enumerated documents).

2. Summary Judgment in FOIA Cases

As a general rule, all FOIA determinations should be resolved on summary judgment. *See Nat'l Wildlife Fed'n v. U.S. Forest Service,* 861 F.2d 1114 (9th Cir. 1988); O'Reilly, Federal Information Disclosure, § 8:21 (2007 Suppl.) (numerous citations); *Sakamoto v. U.S. Environmental Protection Agency*, 443 F.Supp.2d 1182, 1188 (N.D. Cal. 2006). Before it can obtain summary judgment in a FOIA case, an agency must show beyond a material doubt, and viewing the facts in the light most favorable to the requester, that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. United States Department of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. United States Department of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen,* 484 F.2d 820, 826-28 (D.C. Cir. 1973). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *SafeCard Services,* 926

6

F.2d at 1200. Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982), they must "describe what records were searched, by whom, and through what processes," *Steinberg,* 23 F.3d at 552, and must show "that the search was reasonably calculated to uncover all relevant documents." *Weisberg v. United States Department of Justice,* 705 F.2d 1344, 1350-51 (D.C.Cir. 1983); *see Campbell,* 164 F.3d at 27. Conclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment. *Nation Magazine v. U.S. Customs*, 71 F.3d 885, 890 (D.C. Cir. 1995).

  3. Discovery

Procedurally, district courts typically decide FOIA cases on summary judgment before a plaintiff can conduct discovery. *Jones v. Federal Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994). Discovery is usually not permitted in a FOIA case if the government's affidavits were made in good faith and provide specific detail about the methods used to produce the information. O'Reilly, Federal Information Disclosure, § 8:20 (2007 Suppl.). The decision whether to allow discovery rests within the district court judge. *Id.* It is "sparingly granted," and is most often limited "to investigating the scope of the agency search for responsive documents, the agency's indexing procedures, and the like." *Id.* (citing *Schiller v. INS*, 205 F.Supp.2d 648 (W.D. Tex. 2002)). It "is only appropriate when an agency has not taken adequate steps to uncover responsive documents," and will be denied "where an agency's declarations are reasonably detailed, submitted in good faith, and the court is satisfied that no factual dispute exists." *Id.* (citing *Schrecker v. U.S. Dept. of Justice*, 217 F.Supp.2d 29, 35 (D.D.C. 2002).

Discovery is not warranted "when it appears that discovery would only . . . afford [the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn

7

the affidavits." *Military Audit Project*, 656 F.2d at 751-52.  If a court is satisfied that the affidavits supplied by the agency meet the established standards for summary judgment in a FOIA case and the plaintiff has not adequately called these submissions into question, no factual dispute remains, and discovery is inappropriate. O'Reilly, Federal Information Disclosure, § 8:20 (2007 Suppl.).  An exception to limiting the scope of discovery is made if the plaintiff has made a sufficient showing that the agency acted in bad faith.  *Id.*  In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate.  *Id.* (citing *Voinche v. FBI*, 2006 WL 177399 (D.D.C. 2006)).

**B.     Treasury's Search and Response to Plaintiff's FOIA Requests**

Treasury separated its written responses to LCCR's FOIA requests into two categories, one pertaining to requests 1-6 and one pertaining to requests 7-10, as discussed below.   *See* 3rd Canter Decl., Exh. C.

   1.      Responses to FOIA Requests 1-6

In response to requests 1-6, Treasury initially asserted that it did not maintain records in paper form that were responsive to the requests, but noted that it possessed some data in electronic form.  Treasury then attempted to summarize the electronic data related to four sources: (1) OFAC's Compliance Hotline, by which it receives telephone calls from individuals and companies related to programs administered by OFAC; (2) telephone calls received by OFAC's congressional liaison; (3) correspondence received by OFAC's Foreign Assets Control Database ("FACDB"); and (4) emails sent to OFAC's website.

               a.      Compliance Hotline

In its response, Treasury noted that from April 1, 2004 (the date the call center was

implemented) to May 30, 2007, a total of 63,409 callers selected the queue for the call center option designed to assist callers with a question related to an SDN "name match." However, OFAC determined that the call logs did not contain information regarding the "number and nature of inquiries," "the distribution of calls," or the number of calls that resulted in an actual name match to the SDN list.  *See* 4th Canter Decl. at ¶¶ 9-16.

    b.  Calls to Congressional Liaison

In its response to LCCR's FOIA request, Treasury noted that a search of this database revealed six entries related to telephone calls received between 2005 and June 2007 regarding a possible name match to the SDN list.  Treasury noted that the data did not concern further information related to the "number and nature" of the calls.

However, of the six data entries, Treasury noted that some of the entries were associated with "inquiries and complaints" made to OFAC regarding a credit report alert or possible name match to the SDN list.  4th Canter Decl. at ¶ 30.  However, Treasury did not interpret LCCR's relevant FOIA requests to seek *copies* of the inquiries and complaints - but simply to seek "the number and nature" of such inquiries and complaints.  *Id.*  In other words, Treasury interpreted LCCR's requests as "seeking records that aggregate or compile more than one written inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response."  *Id.*  Accordingly, Treasury did not release each individual record associated with the data entries.  *Id.*

    c.  Foreign Assets Control Database

OFAC's FACDB is an electronic database that contains information regarding the volume of correspondence received by OFAC.  OFAC's search of the database from 1995 to June 2007 yielded 67 data entries that included at least one of the following terms used by OFAC to search the database for responsive records: "credit report," "credit bureau," "Experian," "Transunion," and "removal from SDN list."

Treasury has subsequently explained that the 67 data entries relate to letters

9

received by OFAC, and that the letters constitute "inquiries and complaints" made to OFAC regarding a credit report alert or possible name match to the SDN list. 4th Canter Decl. at ¶ 20. However, like the congressional liaison call data, Treasury interpreted LCCR's requests as "seeking records that aggregate or compile more than one written inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response," and did not release each individual record associated with the data entries. *Id.*

Treasury further notes that the FACDB did not contain any information responsive to plaintiff's requests regarding the number and nature of the inquiries.

### d.   Emails Sent to OFAC's Website

A computer search of this electronic database revealed 53 entries from November 2001 to June 2007 that included at least one of the following terms used by OFAC to search the database for responsive records: "credit report," "credit bureau," "Experian," "Transunion," and "removal from SDN list." Again, like the data related to the FACDB and the calls to the congressional liaison, Treasury interpreted LCCR's requests as "seeking records that aggregate or compile more than one written inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response," and did not release each individual record associated with the data entries. 4th Canter Decl. at ¶ 25. Treasury also further notes that the website database did not contain any information responsive to plaintiff's requests regarding the number and nature of the inquiries.

Although Treasury initially asserted in its response that it does "not maintain records in paper form responsive to requests 1 to 6," 3rd Canter Decl. at Exh. C, it has since noted that OFAC possesses "delisting petitions," which are applications filed by an individual acknowledging that his or her name is on the SDN list and seeking to remove his or her name from the SDN list. 4th Canter Decl. at ¶ 38. Treasury explains, though, that it did not

release the delisting petitions because it did not consider the petitions to be "inquiries" or "complaints" pursuant to LCCR's FOIA requests nos. 4, 5, and 6.

2.   Responses to FOIA Requests 7-10

In its response to requests 7-10, Treasury stated that it is "releasing with this letter 4 documents, totaling 9 pages of material, that have been determined to be responsive to this portion of your client's FOIA request." *See* 3rd Canter Decl., Exh. C.   The documents produced included:  (1) a print-out from OFAC's website of "frequently asked questions and answers;" (2) a "brochure" entitled "foreign assets control regulations for the credit reporting industry;" (3) a one and one-half page informational document entitled "OFAC update for consumers: what is this information on my credit report"; and (4) a copy of C.F.R. § 501.807.  *Id.*

**C.   Parties' Motions**

1.   Treasury's Motion for Summary Judgment

a.   Parties' Arguments

Treasury argues that it is entitled to summary judgment on LCCR's FOIA claim because it conducted an adequate search in good faith for responsive records in both paper and electronic form.  Treasury contends that LCCR lacks countervailing evidence as to the adequacy of its search for records, suggesting that LCCR can merely speculate that additional responsive documents exist.  Treasury argues that LCCR is unable to offer any evidence that a different search method would have located additional responsive records, or that documents were located but not released.  Treasury further contends that it did not inappropriately narrow the scope of its search.

LCCR counters that Treasury's search was inadequate and that Treasury has not shown that it made a good faith effort to conduct the necessary search for responsive records.  In terms of the adequacy of Treasury's responses to LCCR's FOIA requests 1-6, LCCR notes that Treasury has admitted that it has additional responsive documents

11

maintained in electronic form. It argues that rather than summarize the documents, Treasury is required to produce the records in whatever form possible, and notes that Treasury has not asserted that it cannot produce the responsive documents themselves in *electronic* form. It argues that there is nothing in FOIA that permits Treasury to simply describe responsive documents in lieu of providing copies of the documents themselves. LCCR emphasizes that Treasury failed to produce any *qualitative* responses to FOIA requests 1-6. It notes the requests asked for the number *and* nature of complaints and inquiries, and that Treasury improperly narrowed its responses to the *number* and did not provide any information regarding the *nature.*

In terms of the adequacy of Treasury's responses to requests 7-10, LCCR argues that in its response and supporting declarations, Treasury did not offer any description of the search undertaken to locate documents responsive to those requests. LCCR further argues that none of the four documents respond to its requests 9 and 10, which asked for policies and procedures used by OFAC to determine whether an individual is actually the same person on the SDN list.

LCCR also suggests that other responsive documents must exist. It notes that it was not provided with any OFAC employee training materials or written policies and procedures for handling complaints. It further argues that the documents that Treasury did provide suggest that there are other documents, and that LCCR has other countervailing evidence that rebuts Treasury's assertion that all responsive documents were produced. In support, it points to a Senate hearing transcript in which the Secretary of Treasury testified that the OFAC hotline received over 90,000 calls over the last year, and during which two United States senators eluded to the hardships that SDN misidentifications posed on innocent people. Complaint, Exh. 8. LCCR argues that this suggests that Treasury is undertaking some type of tracking. LCCR also cites to a September 27, 2004 congressional report of the nonproliferation committee, which provided more detailed statistics regarding calls to the OFAC hotline than those provided in response to LCCR's

FOIA requests, and the 9/11 Commission report. Burke Decl, Exh. 4 at 40; Exh. 5 at 185.[1]

  b. Analysis

Having reviewed the Fourth Canter Declaration filed by Treasury following the hearing on its summary judgment motion, the source of Treasury's difficulty in responding to LCCR's FOIA requests has become apparent to the court. As compared with the Third Canter Declaration, the Fourth Canter Declaration explains more thoroughly Treasury's construction and/or interpretation of plaintiff's FOIA requests. As noted in the Fourth Canter Declaration, Treasury encountered difficulty in its interpretation of many of LCCR's requests. This is understandable given that most of LCCR's requests are actually improper FOIA requests, more akin to interrogatories than requests for documents and/or records. The law is clear that FOIA requests properly seek *records* - and *not* information or *answers.* O'Reilly, Federal Information Disclosure, § 4:18 (2000 ed. & 2007 suppl.). An agency need not respond to a series of questions, nor is it required to create records, in order to respond to FOIA requests. *Id.*

That is *exactly* what most of plaintiff's FOIA requests seek here. The court finds that plaintiff's requests 2, 3, and 4 are nothing short of interrogatories and are incapable of construction otherwise. If the attempted FOIA request does not actually request that specific documents be produced, but instead seeks abstract information in addition to answers to pointed questions, this is not the type of "agency record" covered by FOIA. *Id.* (citing *Smilde v. Rossotti*, 2002 WL 849797 (N.D. Ill. 2002) (letters that asked the IRS to state "in what manner" operating funds were used during fiscal year 1992 were not appropriate FOIA requests for records)). It is impossible to construe - even liberally- plaintiff's FOIA requests 2 and 3 as requests for *records.* Additionally, the court finds request 4 to be incomprehensible. Treasury's refusal to produce records that were not

---

[1]LCCR also argued that the Third Canter Declaration was too conclusory. However, as noted, at the hearing on the parties' motions, this court ordered that Treasury submit a supplemental declaration; accordingly, this argument is mooted by Treasury's filing of the Fourth Canter Declaration.

13

requested was entirely proper.  Moreover, Treasury was under no obligation to provide the summary responses to the requests for information that it did provide.  Accordingly, the court concludes that it lacks jurisdiction to enforce these improper and ambiguous FOIA requests.  *Id.*

However, the court finds that FOIA requests 1, 5, and 6 present a closer issue.  Compared to FOIA requests 2, 3, and 4, requests 1, 5, and 6, are slightly more comprehensible, and could arguably be liberally construed as requests for records - e.g., requests for "inquiries" and "complaints."  However, as Treasury points out, plaintiff, lawyers who are presumably familiar with FOIA and its requirements, has failed entirely to specify that it is seeking "copies" of these inquiries and/or complaints, but has indeed phrased its requests in a manner that supports Treasury's interpretation that plaintiff is simply "seeking records that aggregate or compile more than one written inquiry, complaint, or response to a complaint, rather than seeking copies of each individual inquiry, complaint, or response."  4th Canter Decl. at ¶ 30.  The court finds this interpretation not unreasonable given plaintiff's level of sophistication in making FOIA requests.  Nevertheless, given the mandate that FOIA requests be interpreted liberally and the fact that an agency cannot withhold a record that is reasonably within the scope of the request on the grounds that the record has not been specifically named by the requester, the court finds that the records identified by Treasury in the Fourth Canter Declaration must be disclosed to plaintiff pursuant to its FOIA requests 1, 5, and 6.  *See Truitt,* 897 F.2d at 544-45; *see also Citizens Com'n on Human Rights*, 45 F.3d at 1329.

Specifically, in terms of Treasury's electronic records, the court finds that: (1) the inquiries and/or complaints associated with the six data entries revealed by OFAC's search of the electronic database for calls to the congressional liaison; (2) the letters associated with the 67 data entries resulting from OFAC's search of the FACDB; and (3) the 53 entries resulting from OFAC's search of the electronic database for its website, are responsive to LCCR's FOIA requests nos. 5 and 6, which ask for records regarding:

(5) The number and nature of complaints from individuals whose names were flagged as similar to a name on the SDN list or other watchlist and any OFAC responses to such complaints;

(6) The number and nature of complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list or other watchlist, and any OFAC responses to those complaints;

Additionally, the court finds that the delisting petitions, which exist in paper form, may liberally be construed as "complaints," and are therefore also responsive to LCCR's FOIA requests 5 and 6 above.

Accordingly, Treasury is ORDERED to disclose the above records to plaintiff whether they exist in paper or electronic format. *See* 5 U.S.C. § 552(a)(3)(B) ("an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format"); *see also* O'Reilly, Federal Information Disclosure § 4:16, Computerized Files (3d ed. 2000 & 2007 Suppl.).

Turning to the adequacy of Treasury's search, the court finds that the Fourth Canter Declaration cures any prior deficiencies associated with the Third Canter Declaration, and sufficiently describes the records searched, by whom, and the processes utilized. *See Steinberg*, 23 F.2d at 552. In that declaration, Canter notes that she distributed an internal memorandum to the assistant directors of the OFAC divisions that were likely to possess documents responsive to plaintiff's FOIA request, and further distributed it to an additional five divisions in order to ensure a full and complete search. The division directors reviewed the memorandum and the FOIA request, and subsequently consulted with Canter. Canter thereafter determined that four divisions and the congressional liaison were the only OFAC offices with responsive documents. These divisions subsequently conducted both electronic and paper records searches for responsive records. This search was undertaken with respect to *all* of plaintiff's FOIA requests. Based upon that declaration, the court concludes that Treasury's search was indeed reasonably calculated to uncover all relevant documents as to all FOIA requests, and GRANTS Treasury summary judgment on

15

this basis.  *See Weisberg*, 705 F.2d at 1350-51.

Finally, regarding Treasury's responses to request nos. 7-10, the court rejects plaintiff's argument that other responsive documents exist, and finds no evidence that Treasury acted in bad faith in turning over only the four responsive documents that it did. *See* O'Reilly, Federal Information Disclosure at § 9:8 (an agency's failure to turn up a particular document or mere speculation that an uncovered document might exist will not undermine the determination that an agency conducted an adequate search for the requested records).

For the above reasons, Treasury's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  The court concludes that Treasury's search with respect to all FOIA requests was adequate, that Treasury's responses to requests 7-10 are adequate, but that Treasury is required to disclose the existing documents referenced above and in the Fourth Canter Declaration with respect to requests 1, 5, and 6.

2.      Plaintiff's Motion for Discovery

LCCR contends that Treasury's identification and retrieval process are genuinely at issue, and seeks discovery of documents and testimony on the following categories:

(1)     Training of the persons who answer calls to the OFAC hotline and respond to emails submitted to the e-hotline;

(2)     Documentation retained by the hotline and the e-hotline of calls and emails received regarding possible matches and responses thereto, such as but not limited to the amount of transactions stopped, which have been documented in other reports as described above;

(3)     Procedures used to determine whether there is a true match to a person on the OFAC list;

(4)     Procedures and policies for actions OFAC takes when there is a true match; and

(5)     Documents and procedures regarding complaints from individuals regarding name mismatches or credit report flags.

1  Treasury counters that because it conducted an adequate search and is entitled to
2  summary judgment, the court should deny LCCR's request for discovery.  It also contends
3  that the proposed discovery is not limited to ascertaining whether responsive documents
4  have not been released, and argues that LCCR actually seeks to use the discovery to
5  obtain information regarding Treasury's administration of its programs.

6  Because the court finds that Treasury's search was adequate, the court DENIES
7  plaintiff's motion for discovery.  Additionally, as noted on the record, the court finds that
8  plaintiff's discovery requests, which essentially reiterate its initial FOIA requests, are
9  improper because they seek information beyond merely investigating the scope of
10 Treasury's search for responsive documents and instead seek under the guise of
11 discovery, the same records which its FOIA requests ostensibly seek.  *See Schiller*, 205
12 F.Supp.2d at 648.

### CONCLUSION

For the above reasons, the court GRANTS IN PART AND DENIES IN PART defendant's motion for summary judgment, and DENIES plaintiff's motion for discovery.  The production required by this order must be made by defendant within thirty days.  This order fully adjudicates the complaint for FOIA relief and the motion listed at no. eleven of the clerk's docket for this case.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 14, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge