GREGORY G. KATSAS
Acting Assistant Attorney General

SCOTT N. SCHOOLS
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
PETER T. WECHSLER
Federal Programs Branch
Civil Division
United States Department of Justice
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel: (202) 514-2705
Fax: (202) 616-8470
Peter.Wechsler@usdoj.gov

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF SAN FRANCISCO BAY AREA, | ) ) ) ) | No. C 07-2590 PJH |
| Plaintiff, | ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION** |
| v. | ) ) | **FOR SUMMARY JUDGMENT ON ALL REMAINING ISSUES** |
| UNITED STATES DEPARTMENT OF THE TREASURY, | ) ) ) | DATE: July 13, 2008 TIME: 9:00 a.m. |
| Defendant. | ) ) ) | DEPT: Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................ 2

    A.    The Designation Process ................................................... 2

    B.    Delisting Petitions .......................................................... 4

    C.    OFAC's Initial Response to the FOIA Request ........................................ 4

    D.    Prior Proceedings and OFAC's Supplemental Responses ........................ 5

ARGUMENT ...................................................................................... 8

  I.    TREASURY CONDUCTED AN ADEQUATE SEARCH FOR DELISTING
       PETITIONS AND REMOVAL LETTERS ........................................ 8

    A.    The Standards for Conducting an Adequate Search ................................. 8

    B.    Treasury Established that it Conducted an Adequate Search for
         Delisting Petitions and Removal Letters .................................... 9

  II.   THE STANDARDS OF REVIEW FOR EXEMPTIONS ................................... 11

    A.    Judicial Review of Claims Seeking the Release of Records
         Under FOIA ................................................................ 11

    B.    Because Exemptions 7(A) and 7(F) Apply to the Delisting Petitions,
         the Court Need Not Address Treasury's Use of the Other Exemptions .. 14

  III.  EXEMPTIONS 7(A) AND 7(F) PROTECT EACH DELISTING PETITION
       IN ITS ENTIRETY ........................................................ 15

    A.    The Threshold for Exemption 7 Is Met Because the Release of the
         Delisting Petitions Could Reasonably be Expected to Interfere with
         Law Enforcement Proceedings ............................................. 15

    B.    Exemption 7(A) Applies Because Release of Delisting Petitions
         Could Reasonably be Expected to Interfere with Law Enforcement
         Proceedings ................................................................ 16

        1.    Exemption 7(A) ....................................................... 16

        2.    Treasury Properly Invoked Exemption 7(A) for the Pending
             Delisting Petitions .................................................. 18

3.    Treasury Properly Invoked Exemption 7(A) for the Closed
Delisting Petitions ................................................................... 20

C.    Exemption 7(F) Applies Because Release of the Delisting Petitions
Could Reasonably be Expected to Endanger a Person's Life or Safety .. 21

1.    Exemption 7(F) .......................................................................... 21

2.    Treasury Properly Invoked Exemption 7(F) for Delisting
Petitions ................................................................................... 22

IV.    EXEMPTIONS 6 AND 7(C) PROTECT INFORMATION THE
DISCLOSURE OF WHICH WOULD CONSTITUTE AN INVASION
OF PRIVACY, AND EXEMPTION 7(D) PROTECTS CONFIDENTIAL
SOURCE INFORMATION ...................................................................... 23

A.    Exemption 6 Protects Information the Disclosure of Which Would
Constitute a Clearly Unwarranted Invasion of Personal Privacy ........... 23

1.    Exemption 6 .............................................................................. 23

2.    Treasury Properly Invoked Exemption 6 for Delisting
Petitions ................................................................................... 25

3.    Treasury Properly Invoked Exemption 6 for Other
Information ................................................................................ 26

B.    Exemption 7(C) Protects Information the Disclosure of Which
Would Constitute an Unwarranted Invasion of Personal Privacy .......... 27

1.    Exemption 7(C) ......................................................................... 28

2.    Treasury Properly Invoked Exemption 7(C) for Delisting
Petitions ................................................................................... 29

3.    Treasury Properly Invoked Exemption 7(C) for Other
Information ................................................................................ 31

C.    Exemption 7(D) Protects Confidential Source Identity and
Information ............................................................................................. 31

1.    Exemption 7(D) ........................................................................ 31

2.    Treasury Properly Invoked Exemption 7(D) for Delisting
Petitions ................................................................................... 33

VI.    EXEMPTIONS 2 THROUGH 5 PROTECT INFORMATION ......................... 33

    A.    Exemption 2 Protects Information Related Solely to Treasury's
          Internal Rules and Practices ...................................................... 34

        1.    Exemption 2                    .................................................... 34

        2.    Treasury Properly Invoked Exemption 2 .................................... 35

    B.    Exemption 3 Protects Information Prohibited from Disclosure
          by the Foreign Narcotics Kingpin Designation Act ................................ 35

        1.    Exemption 3 ............................................................... 35

        2.    Treasury Properly Invoked Exemption 3 for Some Delisting
              Petitions .................................................................. 37

    C.    Exemption 4 Protects Commercial or Financial Information .................. 38

        1.    Exemption 4 ............................................................... 38

        2.    Treasury Properly Asserted Exemption 4 to Redact
              Information ............................................................... 40

    D.    Exemption 5 Protects Privileged Information ......................................... 40

        1.    Exemption 5 .............................................................. 40

        2.    Treasury Properly Invoked Exemption 5 to Redact Privileged
              Information ............................................................... 41

CONCLUSION ............................................................................... 45

## TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(s)**

Wiesenfelder v. Riley,
   959 F. Supp. 532 (D.D.C. 1997) .................................................................. 35

Air Force v. Rose,
   425 U.S. 352 (1976) ...................................................................................... 25

Alyeska Pipeline Serv. Co. v. EPA,
   856 F.2d 309 (D.C. Cir. 1988) ..................................................................... 17

Am. Airlines, Inc. v. Nat'l Mediation Bd.,
   588 F.2d 863 (2d Cir. 1978) ......................................................................... 38

American Jewish Cong. v. Kreps,
   574 F.2d 624 (D.C. Cir. 1978) ................................................................ 36, 37

Association of Retired R.R. Workers.,
   830 F.2d at 336 ............................................................................................. 37

Bevis v. Dep't of State,
   801 F.2d 1386 (D.C. Cir. 1986) ................................................................... 16

Binion v. DOJ,
   695 F.2d 1189 (9th Cir. 1983) ................................................................ 12, 15

Blanton v. DOJ,
   63 F. Supp. 2d 35 (D.D.C. 1999) ........................................................... 15, 29

Boyd v. DOJ,
   475 F.3d 381 (D.C. Cir. 2007) ..................................................................... 20

Brooks v. IRS,
   1997 WL 718473 (E.D. Cal. Aug. 28, 1997) ............................................... 13

Brunetti v. FBI,
   357 F. Supp. 2d 97 (D.D.C. 2004) ............................................................... 22

CIA v. Sims,
   471 U.S. 159 (1985) ................................................................................ 25, 36

CNA Fin. Corp. v. Donovan,
   830 F.2d 1132 (D.C. Cir. 1987) ................................................................... 39

Carter v. Dep't of Commerce,
    830 F.2d 388 (D.C. Cir. 1987) ........................................................................ 21

Center for Nat'l Security Studies v. DOJ,
    331 F.3d 918 (D.C. Cir. 2003) ........................................................................ 14

Chemical Mfrs. Ass'n v. CPSC,
    600 F. Supp. 114 (D.D.C. 1984) .................................................................... 41

Church of Scientology of Cal. v. Postal Serv.,
    633 F.2d 1311 (9th Cir. 1980) ................................................................... 36, 37

Church of Scientology v. Army,
    611 F.2d 738 (9th Cir. 1979) .................................................................... 12, 13

Church of Scientology v. IRS,
    792 F.2d 146 (D.C. Cir. 1986) ....................................................................... 36

Citizens Comm'n on Human Rights v. FDA,
    45 F.3d 1325 (9th Cir. 1995) ................................................................. 8, 10, 11

Cong. News Syndicate v. DOJ,
    438 F. Supp. 538 (D.D.C. 1997) .................................................................. 24, 28

Critical Mass Energy Project v. NRC,
    975 F.2d 871 (D.C. Cir. 1992) ....................................................................... 39

Crooker v. ATF,
    670 F.2d 1051 (D.C. Cir. 1981) ..................................................................... 34

DOJ v. Landano,
    508 U.S. 165 (1993) ............................................................................... 32, 33

DOJ v. Reporters Comm. for Freedom of the Press,
    489 U.S. 749 (1989) ............................................................................. passim

Dep't of Defense v. FLRA,
    510 U.S. 487 (1994) .................................................................................. 26

Dep't of State v. Washington Post Co.,
    456 U.S. 595 (1982) ............................................................................... 23, 25

Dirksen v. HHS,
    803 F.2d 1456 (9th Cir. 1986) ....................................................................... 34

Dow Jones & Co. v. DOJ,
       917 F.2d 571 (D.C. Cir. 1990) ...................................................... 32

FTC v. Grolier Inc.,
       462 U.S. 19 (1983) ................................................................... 41

Fiduccia v. DOJ,
       185 F.3d 1035 (9th Cir. 1999) ........................................... 29, 30, 31

Fitzgibbon v. CIA,
       911 F. 2d 755 (D.C. Cir. 1990) ............................................. 24, 36

Forest Serv. Employees for Environ. Ethics v. USFS,
       – F.3d –, 2008 WL 1902511 (9th Cir. May 1, 2008) ................................. passim

Founding Church of Scientology of Washington, D.C., Inc. v. Smith,
       721 F.2d 828 (D.C. Cir. 1983) .................................................. 34

GC Micro Corp. v. Def. Logistics Agency,
       33 F.3d 1109 (9th Cir. 1994) ................................................... 39

Garcia v. DOJ,
       181 F. Supp. 2d 356 (S.D.N.Y. 2002) .................................... 22, 23

Gen. Elec. Co. v. NRC,
       750 F.2d 1394 (7th Cir. 1984) ................................................. 39

Goland v. CIA,
       607 F.2d 339 (D.C. Cir. 1987) ................................................. 38

Gould Inc. v. GSA,
       688 F. Supp. 689 (D.D.C. 1988) ............................................ 18

Grace v. Navy,
       No. 99-4306, 2001 WL 940908 (N.D. Cal. Aug. 13, 2001) .......................... 11

Hardy v. ATF,
       631 F.2d 653 (9th Cir. 1980) .................................................. 34

Hronek v. DEA,
       16 F. Supp. 2d 1260 (D. Or. 1998) ......................................... 9, 11

Hunt v. CIA,
       981 F.2d 1116 (9th Cir. 1992) ................................................. 12

Mays v. DEA,
       234 F.3d 1324 (D.C. Cir. 2000) .................................................. 32, 33

John Doe Agency v. John Doe Corp.,
       493 U.S. 146 (1989) ................................................................ 17

Kamman v. IRS,
       56 F.3d 46 (9th Cir.1995) ........................................................ 12

Keys v. DOJ,
       830 F.2d 337 (D.C. Cir. 1987) .................................................. 15

Kissinger v. Reporters Comm. for Freedom of the Press,
       445  U.S. 136 (1980) .............................................................. 11

Lessner v. Dep't of Commerce,
       827 F.2d 1333 (9th Cir. 1987) .................................................. 36

Lewis v. IRS,
       823 F.3d 375 (9th Cir. 1987) ................................................... 10

Lion Raisins v. Dep't of Agric.,
       354 F.3d 1072 (9th Cir. 2004) .................................................. 12

Long v. IRS,
       742 F.2d 1173 (D.C. Cir. 1984) ................................................ 30

MacPherson v. IRS,
       803 F.2d 479 (9th Cir. 1986) ................................................... 13

McGehee v. CIA,
       697 F.2d 1095 (D.C. Cir. 1983) ................................................ 12

Mendoza v. DEA,
       2006 WL 3734365 (D.D.C. 2006) ............................................. 17

Minier v. CIA,
       88 F.3d 796 (9th Cir. 1996) ............................................ 11, 12, 13

Mobil Oil Corp. v. EPA,
       879 F.2d 698 (9th Cir. 1989) ................................................... 41

NLRB v. Robbins Tire & Rubber Co.,
       437 U.S. 214 (1978) .................................................... 16, 17, 18, 20

NLRB v. Sears, Roebuck & Co.,
   421 U.S. 132 (1975) ............................................................... 40

Nat'l Inst. of Military Justice v. Dep't of Defense,
   404 F. Supp. 2d 325 (D.D.C. 2005) ........................................ 14

Nat'l Parks & Conservation Ass'n v. Morton,
   498 F.2d 765 (D.C. Cir. 1974) ................................................ 39

Nation Magazine v. Customs Serv.,
   71 F.3d 885 (D.C. Cir. 1995) ............................................. passim

National Archives & Records Admin. v. Favish,
   541 U.S. 157 (2004) ........................................................... 25, 29

National Ass'n of Retired Fed. Employees v. Horner,
   879 F.2d 873 (D.C. Cir. 1989) ................................................ 24

New York Times v. NASA,
   920 F.2d 1002 (D.C. Cir. 1990) .............................................. 23

Oglesby v. Army,
   920 F.2d 57 (D.C. Cir.1990) ............................................. 8, 9, 10

Owens v. DOJ,
   2007 WL 778980 (D.D.C. March 9, 2007) .............................. 14

PHE, Inc. v. Dep't of Justice,
   983 F.2d 248 (D.C. Cir. 1993) ................................................ 13

Painting & Drywall Work Pres. Fund, Inc. v. HUD,
   936 F.2d 1300 (D.C. Cir. 1991) .......................................... 15, 24

Painting Indus. Of Hawaii Fund v. Air Force,
   26 F.3d 1479 (9th Cir. 1994) ................................................ 20

Pollard v. FBI,
   705 F.2d 1151 (9th Cir. 1983) ................................................ 13

Pratt v. Webster,
   673 F.2d 408 (D.C. Cir. 1982) ................................................ 16

Pub. Citizen Health Research Group v. FDA,
   704 F.2d 1280 (D.C. Cir. 1983) .............................................. 38

Quinon v. FBI,
 86 F.3d 122 (D.C. Cir. 1996) ........................................................ 13

Reed v. NLRB,
 927 F.2d 1249 (D.C. Cir. 1991) .................................................. 25

Schiffer v. FBI,
 78 F.3d 1405 (9th Cir. 1996) ........................................ 28, 29, 31

Schiller v. NLRB,
 964 F.2d 1205 (D.C. Cir. 1992) .................................................. 34

Schrecker v. DOJ,
 349 F.3d 657 (D.C. Cir. 2003) ...................................................... 8

Schwarz v. FBI,
 161 F.3d 18, 1998 WL 667643 (10th Cir. 1998) .......................... 11

Seized Property Recovery Corp. v. Customs,
 502 F. Supp. 2d 50 (D.D.C. 2007) ...................................... 21, 26, 27

Solar Sources v. United States,
 142 F.3d 1033 (7th Cir. 1998) ...................................................... 18

Spannaus v. DOJ,
 813 F.2d 1285 (4th Cir. 1987) ...................................................... 18

Spurlock v. FBI,
 69 F.3d 1010 (9th Cir. 1995) .................................................. 12, 25

Steinberg v. DOJ,
 23 F.3d 548 (D.C. Cir. 1994) .................................................. 9, 11

Swan v. SEC,
 96 F.3d 498 (D.C. Cir. 1996) ...................................................... 17

Texas Indep. Producers Legal Action Ass'n v. IRS,
 605 F. Supp. 538 (D.D.C. 1984) .................................................... 9

Timken Co. v. Customs Serv.,
 531 F. Supp. 194 (D.D.C. 1981) .............................................. 17, 21

United States v. Weber Aircraft Corp.,
 465 U.S. 792 (1984) ...................................................................... 41

Weisberg v. DOJ,
　　745 F.2d 1476 (D.C. Cir. 1984) ............................................................ 6, 9, 11

Western Ctr. for Journalism v. IRS,
　　116 F.Supp. 2d 1 (D.D.C. 2000), aff'd, 2001 WL 1699416 (D.C. Cir. Dec. 18,
　　2001) (per curiam) ............................................................................. 9

Wiener v. FBI,
　　943 F.2d 972 (9th Cir. 1991) ............................................................ 12, 13

Williams v. FBI,
　　69 F.3d 1155 (D.C. Cir. 1995) ............................................................ 32, 33

Zemansky v. EPA,
　　767 F.2d 569 (9th Cir. 1985) ............................................................ 8, 9, 10

Defendant, the United States Department of the Treasury (Treasury), seeks summary judgment on the remaining issues in this case brought by plaintiff under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. By Order dated February 14, 2008, the Court directed Treasury to process the Delisting Petitions received by Treasury's Office of Foreign Assets Controls (OFAC), and certain other records. By Order dated March 25, 2008, after Treasury invoked FOIA exemptions to protect the Delisting Petitions in their entirety and to withhold or redact information from other records, the Court set a schedule for the parties to meet and confer, and to brief any challenges made by plaintiff to Treasury's use of these exemptions.

First, Exemptions 7(A) and 7(F) protect the Delisting Petitions in their entirety. As a result, although Exemptions 2, 3, 4, 6, 7(C), and 7(D) also protect information in the Petitions as discussed below, the Court need not address Treasury's use of these other exemptions.

Second, after the parties conferred as to the other records withheld or redacted, Treasury released additional information in these records. Exemptions 6 and 7(C) protect the personal information that remains withheld or redacted, and other exemptions also protect information in these records, as discussed below. To the extent that plaintiff did not challenge Treasury's use of exemptions, the Court need not address them. The Court should therefore grant summary judgment to Treasury on all remaining issues.

## INTRODUCTION

### A.    The Designation Process

OFAC is an office within Treasury's Office of Terrorism and Financial Intelligence. See 31 U.S.C. § 313(a)(6). OFAC's functions include combating terrorist financing and offenses threatening the integrity of the financial systems. See the Fifth Declaration of Virginia R. Canter ("Decl."), ¶ 12. By statute, OFAC is designated as a law enforcement agency. 31 U.S.C. § 313(d). OFAC administers key U.S. economic sanctions programs, which are primarily directed against foreign states and nationals, including sponsors of global terrorism, to further U.S. foreign policy and national security goals. Decl. ¶ 13. OFAC acts under Presidential wartime

and peacetime national emergency powers, including authority granted by specific legislation, to impose controls on transactions and to freeze, or "block," certain interests in property.  Id.

The International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706 ("IEEPA"), grants the President a broad spectrum of powers to deal "with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat."  50 U.S.C. § 1701(a).  The President has exercised these powers through Executive orders that impose economic sanctions to address particular emergencies, and has identified specific countries, entities, or individuals who are responsible for, or contribute to, the emergency set forth in the Executive order, and subjected them to the sanctions set forth in the Executive order.  Decl. ¶ 15-17.  If individuals or entities are made subject to the sanctions of an Executive order, they are "designated" under that program.  The President generally delegates the task of determining who meets the standards for designation under an Executive order to Treasury.  Id. ¶ 17.

OFAC administers twenty economic sanctions programs against foreign governments, entities, and individuals.  Decl. ¶ 17.  Most of these programs are administered under the authority of IEEPA and Executive orders.  Id. ¶ 16.  Examples include programs against narcotics traffickers and kingpins; and terrorism-related governments, entities, and individuals.  Id.  Several "list-based programs" affect members of government regimes and other individuals and groups whose activities conflict with U.S. national security and foreign policy interests.  All individuals and entities whose property interests are blocked pursuant to a "list-based program" are included in the Specially Designated Nationals and Blocked Persons List (SDN List) maintained by OFAC.  Id. ¶ 14.

The designation process begins with an extensive investigation that draws on a broad range of classified and unclassified information.  Decl. ¶ 19.  OFAC employees draft an evidentiary memorandum summarizing the evidence, which is reviewed by OFAC officials.  Id.

¶ 20.  OFAC typically does not provide prior notice of a pending investigation or impending blocking action, in order to avoid the significant risk that assets would be transferred or records destroyed before the investigation is completed.  Id. ¶ 18.  Once this process has been completed, the evidentiary package is presented for signature to OFAC's Director.  Id.

**B.      Delisting Petitions**

A designated individual (or entity) may seek to have the designation rescinded by filing a Delisting Petition pursuant to regulations promulgated by OFAC at 31 C.F.R. § 501.807.  Decl. ¶ 22.  The petitioner may present evidence that an insufficient basis exists for the designation or that the prior circumstances no longer apply.  Id.  In some cases, OFAC may act unilaterally or at the request of another agency to remove an individual from the SDN List.  Id.  After OFAC conducts a review of the Petition, OFAC may grant the petition and remove the person from the SDN List, providing notice by sending that person a Removal Letter.  Id.

**C.      OFAC's Initial Response to the FOIA Request**

By letter dated August 16, 2005, plaintiff requested that Treasury release certain agency records regarding its administration of the SDN List.  See Complaint (Comp.) ¶¶ 1, 14 & Ex. C; see also Decl. ¶ 2.  Items 1 through 6 of that FOIA request generally sought agency records regarding the "number and nature" of inquiries made by persons or companies with respect to possible or actual matches of a person's name to a name on the SDN List.  Items 7 through 10 of the FOIA request generally sought agency records regarding the "policies and procedures" used by OFAC in connection with name matches.  See Comp., Ex. C.

Plaintiff brought this action on May 16, 2007, asserting that Treasury had not released responsive records.  See Comp. ¶ 18.  The Complaint seeks an order requiring Treasury to release records, and a declaration that Treasury "violated FOIA."  Id. ¶¶ 1, 24-26 & p. 8.  By letter dated July 20, 2007, Treasury released records responsive to the FOIA request.  Decl. ¶ 3.

**D.    Prior Proceedings and OFAC's Supplemental Responses**

By Order dated February 14, 2008, this Court directed Treasury to supplement its Initial Response as to several items in the FOIA request within thirty days of the Order, including Delisting Petitions received by OFAC, as well as data entries regarding the SDN List in the OFAC database of calls to the Congressional liaison, in the Foreign Assets Control Database (FACDB), and in the OFAC website.  The Court also entered a final judgment.[1]

OFAC determined that any Delisting Petitions that it received would be maintained by its Designations and Investigations Division.  See Decl. ¶ 23.  In March of 2008, that division conducted a search for Delisting Petitions and Removal Letters for the period from 2000 to the date of the search and forwarded potentially responsive records to OFAC's Records Management Division.  Id.  As a result of that search, OFAC identified 346 Delisting Petitions received from 2000 to the date of the search, of which 291 were pending, and 55 were concluded, as of the date of the search.[2]  Id. ¶¶ 26, 28.  OFAC determined that Exemptions 7(A) and 7(F) protected each of the Delisting Petitions in its entirety; and that Exemptions 2, 3, 4, 6, 7(C), and 7(D) also applied to information in the Petitions.  Id. ¶ 29.  OFAC also located and processed 42 Removal Letters sent in response to those Petitions that were concluded.  OFAC was unable to locate the remaining 13 Removal Letters.  Id. ¶¶ 26, 27.

By letter dated March 14, 2008, Treasury supplemented its Initial Response in accordance with the February 14 Court Order.  Decl. ¶ 5.  Treasury informed plaintiff as to the results of the search for Delisting Petitions, as well as Treasury's determination that these

---

[1] As discussed above, Delisting Petitions are applications acknowledging that persons or entities are included on the SDN List and requesting that their names be removed from it. Therefore, Delisting Petitions are not: (a) inquiries regarding a credit report "stating that the application *might* be on" the SDN List (FOIA Request, item 4), (b) complaints from individuals whose names "were flagged as *similar* to a name on the SDN List" (item 5), or (c) complaints from individuals whose credit reports contained an alert "regarding a *possible* name match" to the SDN List (item 6) (emphasis added).  For the same reason, Removal Letters sent by OFAC to a petitioner are not "responses" to any such "complaints" (items 5, 6).

[2] After that date, Treasury continued to review these 346 Delisting Petitions.  Decl. ¶ 28.

Petitions were subject in their entirety to FOIA exemptions.  Id.  Treasury also released, as

redacted under FOIA exemptions, the Removal Letters that it located, as well as data entries in

the OFAC database of calls to the Congressional liaison, in the FACDB, and in the OFAC

website.  Id.

By letter to the Court dated March 21, 2008, plaintiff alleged that Treasury had not

complied with the February 14 Court Order.  Decl. ¶ 6.  Plaintiff asserted in part that the Court

Order prevented Treasury from asserting any FOIA exemptions as to the Delisting Petitions, or

that Treasury waived any such exemptions, and was required to release each Petition in full.  Id.

By a Notice of Filing dated March 21, 2008, Treasury responded to plaintiff's March 21

letter, stating that Treasury released non-exempt information, and noting that plaintiff did not

pursue any administrative appeal.  Decl. ¶ 7; see also 31 C.F.R. § 1.5(i).  Treasury did not waive

any FOIA exemptions, because the case was previously limited to the adequacy of the search for

records.  Decl. ¶ 7.

By Order dated March 25, 2008, the Court vacated the February 14 judgment and set a

briefing schedule with respect to any challenge by plaintiff to Treasury's assertion that the

Delisting Petitions are subject to withholding under FOIA exemptions, as well as any challenge

to the redaction of records released by OFAC.  The Court rejected plaintiff's contention that

Treasury waived any exemptions.  The March 25 Order stated that "the posture of the case did

not permit defendant to advance the exemptions previously, the court will permit defendant to do

so now," and that, with respect to the Delisting Petitions, "if defendant is unable to convince

plaintiff as to the validity of the claimed exemptions, defendant will file a motion for summary

judgment."

By letter dated April 28, 2008, plaintiff asserted that "[t]he withholding of the Delisting

Petitions in their entirety directly contradicts the Court's February 14, 2008 Order. . . ."  See

Decl. ¶ 9.  Plaintiff also challenged some of the redactions to records released, while declining to

challenge other redactions.  In particular, plaintiff sought the names and addresses of the

applicants to whom OFAC sent Removal Letters, and the name of a Congressional liaison and other information redacted from the database of calls.  Id.

By letters dated May 22 and June 5, 2008, Treasury responded to plaintiff's April 28 letter.  Decl. ¶ 10 & Exs. B, C.  Treasury continued to withhold the Delisting Petitions in their entirety under Exemptions 7(A) and 7(F).  Treasury released the names of individuals to whom OFAC sent Removal Letters, while continuing to redact their addresses under Exemptions 6, 7(C), and 7(F).  Id.  Treasury also released additional responsive information in the database of calls to the Congressional liaison, while continuing to withhold personal information under Exemptions 6 and 7(C), and other information under additional exemptions.  Id. ¶ 10, 30 & Exs. D-G (Vaughn indexes).  Treasury determined that there was no additional reasonably segregable information.  Id. ¶ 59.

## ARGUMENT

## I.  TREASURY CONDUCTED AN ADEQUATE SEARCH FOR DELISTING PETITIONS AND REMOVAL LETTERS

### A.  The Standards for Conducting an Adequate Search

If a requester challenges the adequacy of the agency's search for responsive records, the reviewing court determines whether the agency has made "*reasonable efforts* to search for the records."  5 U.S.C. § 552(a)(3)(C) (emphasis added); see also Citizens Comm'n on Human Rights v. FDA, 45 F.3d 1325, 1328 (9th Cir. 1995), citing Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985).  The adequacy of an agency's search for records "is measured by a 'standard of reasonableness,' and is dependent upon the circumstances."  Schrecker v. DOJ, 349 F.3d 657, 662 (D.C. Cir. 2003) (citation omitted).  In order for an agency to show that it has discharged its obligations under the FOIA, the agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."  Zemansky v. EPA, 767 F.2d at 571 (citing Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  A search is reasonable where the agency used "methods reasonably expected to produce the information requested."  Oglesby

v. Army, 920 F.2d 57, 68 (D.C. Cir.1990); see also Weisberg v. DOJ, 745 F.2d at 1485.

Courts have stated that an agency's search "need only be reasonable; it does not have to be exhaustive." Hronek v. DEA, 16 F. Supp. 2d 1260, 1268 (D. Or. 1998); see also Oglesby v. Army, 920 F.2d at 68. Thus, the agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. See Western Ctr. for Journalism v. IRS, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), aff'd, 2001 WL 1699416 (D.C. Cir. Dec. 18, 2001) (per curiam). In determining whether a search for responsive records was reasonable, the relevant inquiry is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original), quoting Weisberg v. v. DOJ, 745 F.2d at 1485.

Agency declarations are the appropriate means to show that a reasonable search was conducted. See Citizens Comm'n v. FDA, 45 F.3d at 1328; Zemansky v. EPA, 767 F.2d at 571-72; Nation Magazine v. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995). Although such a declaration should be "sufficiently detailed," the standard "is not 'meticulous documentation [of] the details of an epic search.'" Texas Indep. Producers Legal Action Ass'n v. IRS, 605 F. Supp. 538, 547 (D.D.C. 1984) (citation omitted). The agency "need only provide affidavits explaining in 'reasonable detail' the scope and method of the search, in absence of countervailing evidence." Id. (citation omitted).

### B. Treasury Established that it Conducted an Adequate Search for Delisting Petitions and Removal Letters

Because Treasury determined that any Delisting Petitions that it received would be maintained by OFAC's its Designations and Investigations Division, that division conducted a search for Delisting Petitions for the period from 2000 to the date of the search and forwarded responsive records to OFAC's Records Management Division. Canter Decl. ¶¶ 23, 24. As a result of the search, Treasury identified 346 Delisting Petitions received from 2000 to the date of

the search.[3]  Id. ¶ 25.  Treasury also conducted a search for the Removal Letters issued by OFAC

for the 55 Delisting Petitions that were concluded.  Id. ¶ 26.  Treasury located 42 of the

Removal Letters and was unable to locate the remaining 13 Removal Letters.  Id. ¶ 27.

As shown by the Canter Declaration, Treasury conducted an adequate search for the

Delisting Petitions and the Removal Letters because Treasury made a "good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested."  Nation Magazine v. Customs Serv., 71 F.3d at 890; see also

Citizens Comm'n v. FDA, 45 F.3d at 1328 (the agency declaration "specifically outlined the

agency's efforts to locate documents" responsive to the request); Zemansky v. EPA, 767 F.2d at

571 (the agency discharged its obligations under the FOIA where it "conducted a search

reasonably calculated to uncover all relevant documents"); Oglesby v. Army, 920 F.2d at 68 (a

search is reasonable where the agency used "methods reasonably expected to produce the

information requested").  Treasury has therefore established that it conducted an adequate search

for responsive records.  Id.

Although Treasury was unable to locate some responsive records, the relevant inquiry is

not "whether there might exist any other documents possibly responsive to the request, but rather

whether the *search* for those documents was *adequate*."  Steinberg v. DOJ, 23 F.3d at 551

(emphasis in original), quoting Weisberg v. v. DOJ, 745 F.2d at 1485.  The mere fact that

Treasury was unable to locate some of the Removal Letters it issued does not render its search

unreasonable.  See Schwarz v. FBI, 161 F.3d 18 (10th Cir. 1998), 1998 WL 667643 at *3 (the

fact that the agency failed to turn up three documents is insufficient to contradict the

reasonableness of the FBI's search, without evidence of bad faith ); Nation Magazine v. Customs

Serv., 71 F.3d at 892 n.7 (agency's failure to turn up a specified document does not render the

---

[3] Although OFAC did not locate five Petitions that were referred to in a database, OFAC
determined from the data entries that those five Petitions were filed prior to January 1, 2000, and
thus were non-responsive to the FOIA request.  Decl. ¶ 24.  Although OFAC was unable to
locate 13 of the 346 Delisting Petitions, these Petitons were reflected in OFAC's records.  Id.
¶ 28 n.1.

search inadequate); Citizens Comm'n v. FDA, 45 F.3d at 1328 (adequacy of agency's search was

not undermined by its inability to locate 137 out of 1000 volumes of responsive material, absent

evidence of bad faith); Grace v. Navy, No. 99-4306, 2001 WL 940908, at * 4 (N.D. Cal. Aug.

13, 2001) (finding agency's search for misplaced records adequate).

## II.   THE STANDARDS OF REVIEW FOR EXEMPTIONS

### A.   Judicial Review of Claims Seeking the Release of Records Under FOIA

The FOIA mandates the disclosure of government records unless the requested

information falls within one of the nine statutory exemptions. 5 U.S.C. § 552(b); see also Minier

v. CIA, 88 F.3d 796, 800 (9th Cir. 1996); Hronek v. DEA, 16 F. Supp. 2d at 1265. Subject-

matter jurisdiction under the FOIA is dependent upon a showing that a federal agency has

improperly withheld agency records. 5 U.S.C.§ 552(a)(4)(B) (providing jurisdiction to "enjoin

the agency from withholding agency records and to order the production of any agency records

improperly withheld"); see also Kissinger v. Reporters Comm. for Freedom of the Press, 445

U.S. 136, 150 (1980); Minier v. CIA, 88 F.3d at 803; McGehee v. CIA, 697 F.2d 1095, 1105

(D.C. Cir. 1983). Where a record falls within a FOIA exemption, the agency is authorized to

withhold the record, and the district court thus lacks authority to order its disclosure. See

Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir. 1995) ("Requiring an agency to disclose exempt

information is not authorized by FOIA.").

Where, as here, the agency submits a declaration identifying the information withheld

and establishing the grounds for withholding such information, courts generally resolve the case

at the summary judgment stage based upon the agency's submission, without reviewing the

information. See Church of Scientology v. Army, 611 F.2d 738, 742 (9th Cir. 1979); Lion

Raisins v. Dep't of Agric., 354 F.3d 1072, 1082 (9th Cir. 2004). In a FOIA case, "the facts are

rarely in dispute." Minier v. CIA, 88 F.3d at 800. An agency may satisfy its burden by

submitting a declaration that adequately describes the information withheld and provides the

grounds for non-disclosure. See DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S.

749, 753 (1989); <u>Minier</u>, 88 F.3d at 800; <u>Lion Raisins v. Dep't of Agric.</u>, 354 F.3d at 1082.  In a case seeking records under FOIA, the district court should accord "substantial weight" to an agency's declaration where there is no evidence of bad faith on the part of the agency.  <u>Hunt v. CIA</u>, 981 F.2d 1116, 1119 (9th Cir. 1992); <u>Kamman v. IRS</u>, 56 F.3d 46, 48 (9th Cir.1995).  The sufficiency of the agency's declaration is a question of law.  <u>Binion v. DOJ</u>, 695 F.2d 1189, 1193 (9th Cir. 1983).  An agency need not submit a Vaughn index unless necessary to restore the adversary process and to permit effective judicial review of the agency's decision.  <u>Wiener v. FBI</u>, 943 F.2d 972, 977-78 (9th Cir. 1991).  A Vaughn index is not required where "the entire class of documents requested is exempt from disclosure regardless of the content of individual documents."  <u>Brooks v. IRS</u>, 1997 WL 718473 (E.D. Cal. Aug. 28, 1997), at *4 (emphasis in original); <u>Wiener</u>, 943 F.2d at 978 n.5.  The agency "need not specify its objections in such detail as to compromise the secrecy of the information."  <u>Lewis v. IRS</u>, 823 F.3d 375, 378 (9th Cir. 1987) (citation omitted).  Otherwise, the purpose and benefit of the exemptions would be nullified.

For these reasons, Treasury is entitled to summary judgment on the remaining issues, and the Court should not review the Delisting Petitions <u>in</u> <u>camera</u>.  Courts have recognized that the statutory exemptions to FOIA "are intended to relieve the district courts" of the burdens of conducting <u>in</u> <u>camera</u> inspections.  <u>Lewis v. IRS</u>, 823 F.2d at 378, citing <u>MacPherson v. IRS</u>, 803 F.2d 479, 482 (9th Cir. 1986).  Because a district court's review of a FOIA case should be limited to the agency's submissions, <u>in</u> <u>camera</u> review of withheld documents is "generally disfavored."  <u>See</u> <u>PHE, Inc. v. Dep't of Justice</u>, 983 F.2d 248, 253 (D.C. Cir. 1993).  Courts have repeatedly emphasized that <u>in</u> <u>camera</u> inspection of information withheld "should not be resorted to lightly."  <u>Church of Scientology</u>, 611 F.2d at 743.  Courts "need not and should not make in camera inspections where the government has sustained its burden of proof on the claimed exemption by public testimony or affidavits."  <u>Lewis</u>, 823 F.2d at 378, citing <u>Pollard v. FBI</u>, 705 F.2d 1151, 1153-54 (9th Cir. 1983).  Indeed, <u>in</u> <u>camera</u> review should not be "resorted to as a

matter of course, simply on the theory that 'it can't hurt.'"  Quinon v. FBI, 86 F.3d 122, 1228 (D.C. Cir. 1996).

> **B.**    **Because Exemptions 7(A) and 7(F) Apply to the Delisting Petitions, the Court Need Not Address Treasury's Use of the Other Exemptions**

Treasury identified the Delisting Petitions and invoked FOIA exemptions for withholding them.  Canter Decl. ¶ 10 & Exs. B-G.  As discussed below, Treasury properly determined that Exemption 7(A), which applies to information compiled for a law enforcement proceeding, and Exemption 7(F), which applies to information that could endanger a person's life or safety protect, protect each Delisting Petition in its entirety.  Id. ¶ 29.

Where the court determines that a record falls within one FOIA exemption, the court need not determine whether other exemptions also apply.  See, e.g., Center for Nat'l Security Studies v. DOJ, 331 F.3d 918, 925 (D.C. Cir. 2003) (Because Exemption 7(A) applied, the court did not address other exemptions invoked by the government); Lewis v. IRS, 823 F.2d at 380 (Because Exemption 7(A) applied, the court did not address Exemption 3); see also Nat'l Inst. of Military Justice v. Dep't of Defense, 404 F. Supp. 2d 325, 332 n. 3 (D.D.C. 2005) (Because plaintiff did not challenge defendant's withholding of documents pursuant to Exemption 6, the court did not address that exemption); Owens v. DOJ, 2007 WL 778980 (D.D.C. March 9, 2007) (Because Exemptions 7(D) and 7(C) applied, the court did not address Exemptions 2 and 6).

Thus, although Treasury also determined that other FOIA exemptions also protect information in the Delisting Petitions, as discussed below, the Court need not determine the extent to which these other exemptions also apply to the Delisting Petitions.  With respect to the records released in redacted form, Exemptions 6 and 7 protect information the disclosure of which would constitute an invasion of personal privacy.  Although other exemptions also protect some redacted information, plaintiff did not challenge such redactions, and the Court need not address Treasury's use of these other exemptions for this information.

SUMMARY JUDGMENT MEMORANDUM   No. C 07-2590 PJH                         11

### III.    EXEMPTIONS 7(A) AND 7(F) PROTECT EACH DELISTING PETITION IN ITS ENTIRETY

Treasury properly determined that Exemptions 7(A) and 7(F) protect each Delisting Petition in its entirety, as well as other information withheld or redacted under those exemptions. The threshold for Exemption 7 is met because OFAC is a law enforcement agency and the Delisting Petitions were compiled for law enforcement purposes.  Exemption 7(A) applies because release of the Delisting Petitions could reasonably be expected to interfere with pending or prospective enforcement proceedings.  Exemption 7(F) applies because the release of the Delisting Petitions could reasonably be expected to endanger a person's life or safety.

### A.    The Threshold for Exemption 7 Is Met Because the Release of the Delisting Petitions Could Reasonably be Expected to Interfere with Law Enforcement Proceedings

Records "compiled for law enforcement purposes" are exempt from disclosure if they fall within one of the six categories set forth in Exemption 7.  See 5 U.S.C. § 552(b)(7).  A record is compiled for law enforcement purposes if the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security, and the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim" of its rationality.  See Binion v. DOJ, 695 F.2d at 1194; Keys v. DOJ, 830 F.2d 337, 340 (D.C. Cir. 1987); Blanton v. DOJ, 63 F. Supp. 2d 35, 44 (D.D.C. 1999).  In the Ninth Circuit, law enforcement agencies are accorded "special deference" in making determinations as to the application of Exemption 7, Binion, 695 F.2d at 1193, and such agencies "need establish only a 'rational nexus' between its law enforcement duties and the document for which Exemption 7 is claimed."  Id. at 1194.  Courts defer to an agency's assertion that the investigation had  a law enforcement purpose where that assertion is not "pretextual or wholly unbelievable."  See Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982).

OFAC is designated by statute as a law enforcement agency.  31 U.S.C. § 313(a)(6) & (d).  The functions of OFAC include combating terrorist financing and offenses threatening the integrity of the financial systems.  Canter Decl. ¶¶ 12, 45.  The Delisting Petitions and other records at issue were compiled for criminal law enforcement purposes during the performance of Treasury's law enforcement mission, including the designation process and OFAC's consideration of Delisting Petitions.  Id. ¶ 46.  The threshold for Exemption 7 is thus met.

### B.    Exemption 7(A) Applies Because Release of Delisting Petitions Could Reasonably be Expected to Interfere with Law Enforcement Proceedings

Exemption 7(A) protects each of the Delisting Petitions in its entirety, and to other information withheld or redacted, because Treasury properly determined that their release could reasonably be expected to interfere with pending or prospective enforcement proceedings.

### 1.    Exemption 7(A)

Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."   5 U.S.C. § 552(b)(7)(A).  As discussed above, the Delisting Petitions were compiled for law enforcement purposes.  Exemption 7(A) thus applies if there is a pending or prospective law enforcement proceeding and a reasonable expectation that release of the information would interfere with that proceeding.  See NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978); Bevis v. Dep't of State, 801 F.2d 1386, 1389 (D.C. Cir. 1986).  Congress enacted Exemption 7(A) because it "'recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases'" in court.  John Doe Agency v. John Doe Corp., 493 U.S. 146, 156 (1989) (quoting Robbins Tire, 437 U.S. at 224).

Exemption 7(A) applies to records when their disclosure could reasonably be expected to impede either a pending or a prospective law enforcement investigation or proceeding. See, e.g., Robbins Tire, 437 U.S. at 232 ("the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against"); Swan v. SEC, 96 F.3d 498, 500 (D.C. Cir. 1996) (finding documents exempt under 7(A) where disclosure "could reveal much about the focus and scope of the Commission's investigation"); Mendoza v. DEA, 2006 WL 3734365, *4 (D.D.C. 2006) ("Exemption 7(A) is properly applied to criminal investigative files of an ongoing criminal investigation"); Timken Co. v. Customs Serv. 531 F. Supp. 194 (D.D.C. 1981) (Exemption 7(A) remains applicable as long as determination could be appealed).

In 1986, Congress broadened the scope of Exemption 7(A) and relaxed the standard for an agency to demonstrate interference with law enforcement proceedings. While section 552(b)(7)(A) originally provided for the withholding of information that "*would* interfere with enforcement proceedings," the Freedom of Information Reform Act of 1986 substituted the phrase "*could reasonably be expected to* interfere with" enforcement proceedings. See Pub. L. No. 99-570 § 1802, 100 Stat. 3207 (emphasis added). Courts have consistently recognized that this change in the statutory language substantially broadened the scope of Exemption 7(A). See, e.g., Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 311 n.18 (D.C. Cir. 1988) (holding that the district court's improper reliance on the pre-amendment version of Exemption 7(A) "required EPA to meet a higher standard than FOIA now demands"); see also Gould Inc. v. GSA, 688 F. Supp. 689, 703 n.33 (D.D.C. 1988).

Agencies are permitted to apply Exemption 7(A) to a category of records, rather than on a document-by-document basis. See Robbins Tire, 437 U.S. at 236. Thus, courts have routinely accepted an affidavit that specifies the categories of documents at issue and the harm that could result from their release, rather than requiring extensive, detailed itemizations of each document. See, e.g., Spannaus v. DOJ, 813 F.2d 1285, 1288 (4th Cir. 1987) (the Supreme Court "rejected

the argument" that Exemption 7(A) "requires particularized showings of interference"); see also Solar Sources v. United States, 142 F.3d 1033, 1037 (7th Cir. 1998) ("The Government need not establish that release of a particular document would *actually* interfere with an enforcement proceeding," but rather that "with respect to particular kinds of enforcement proceedings, disclosure of particular *kinds* of investigatory records while a case is pending would generally interfere with enforcement proceedings.") (quoting Robbins Tire, 437 U.S. at 236).

### 2.    Treasury Properly Invoked Exemption 7(A) for the Pending Delisting Petitions

Exemption 7(A) protects from disclosure the Delisting Petitions that were pending when Treasury conducted the search for records, because Treasury established that the release of this category of records "could reasonably be expected to interfere with [law] enforcement proceedings." See 5 U.S.C. § 552(b)(7)(A).  OFAC implements sanctions programs against narcotics traffickers and kingpins; and terrorism-related governments, entities, and individuals. Canter Decl. ¶ 16.  After OFAC has designated a person on a list-based program and placed his or her name on the SDN List, the person may submit a Delisting Petition.  See 31 C.F.R. § 501.807.  Such Petitions may include evidence that the individual has not engaged in the conduct giving rise to the designation or is no longer engaged in that conduct.  Petitions may include information regarding not only the petitioner but also members of his or her family, associates, and employers.  Decl. ¶¶ 22, 48.  A decision by OFAC to place a person's name on the SDN List, or to remove the name from the SDN List, has serious implications for national security.  Id. ¶ 49.  In order to base such decisions on all available information, OFAC must be insulated from any outside attempts to influence the decision.  Id.

Treasury established that release of the pending Delisting Petitions and other information withheld or redacted under Exemption 7(A) could reasonably be expected to interfere with a pending investigation and any future investigations or prospective efforts that have already begun or are anticipated.  Decl. ¶ 50.  Once a release is made to a requester under the FOIA, his use and dissemination of the information to third parties is unrestricted.  See Painting & Drywall

SUMMARY JUDGMENT MEMORANDUM   No. C 07-2590 PJH                                    15

<u>Work Pres. Fund, Inc. v. HUD</u>, 936 F.2d 1300, 1302 (D.C. Cir. 1991). The release of a pending Delisting Petition could well reveal the agency's investigative techniques and could create a risk of tampering with witnesses or other sources of information. <u>Id</u>. ¶ 49. In addition, the release of a Delisting Petition could have a chilling effect on the willingness of designated persons, witnesses, and other sources to provide the information that is crucial to OFAC's consideration of Delisting Petitions. <u>Id</u>. ¶ 49.

Treasury therefore established that the release of a pending Delisting Petition and other information withheld or redacted under exemption 7(A) would frustrate OFAC's law enforcement efforts. In <u>Boyd v. DOJ</u>, 475 F.3d 381 (D.C. Cir. 2007), the court held that Exemption 7(A) applies where release of the requested information would reveal the size, scope or direction of an investigation and thereby allow the targets to destroy or alter evidence or take other actions to frustrate the government's case in potential criminal proceedings. <u>Id</u>. at 386. The same rationale applies to the pending Delisting Petitions here.

### 3.    Treasury Properly Invoked Exemption 7(A) for the Closed Delisting Petitions

Exemption 7(A) also protects from disclosure the Delisting Petitions that were closed as of the date Treasury conducted the search for records, because Treasury established that the release of this category of records "could reasonably be expected to interfere with [law] enforcement proceedings." <u>See</u> 5 U.S.C. § 552(b)(7)(A). OFAC's designation and delisting investigations necessarily involve the investigation of family or business networks of closely related persons and entities. Canter Decl. ¶ 50. The ability of OFAC to investigate one person or entity and any relationship to a larger network is a key tool of its sanctions programs. <u>Id</u>. Once a particular delisting investigation has been completed and the petitioner has been removed from the SDN List, *that* investigation could no longer be obstructed.

But Treasury properly determined that the release of the closed Delisting Petitions could reasonably be expected to interfere with *other* pending or prospective investigations of related persons or entities. Decl. ¶ 50. The scope of Exemption 7(A) is not limited to pending

SUMMARY JUDGMENT MEMORANDUM   No. C 07-2590 PJH                    16

investigations, and courts apply this exemption to prospective investigations.  See, e.g., Robbins Tire, 437 U.S. at 232 (Exemption 7(A) applies to a contemplated enforcement proceeding); Timken Co. v. Customs Serv. 531 F. Supp. 194 ( Exemption 7(A) remains applicable where an agency determination could be appealed).  In Seized Property Recovery Corp. v. Customs, 502 F. Supp. 2d 50 (D.D.C. 2007), the court applied Exemption 7(A) to the names and addresses of individuals whose property had been seized by the government, where the agency established that release of the information could reasonably be expected to interfere with prospective law enforcement proceedings that would be separate and distinct from the forfeiture proceeding.  Id. at 62.  In that case, the court applied Exemption 7(A) to the information where the court was "satisfied that the proceedings are not merely foreseeable or imagined."  Id. at 63.

OFAC's processes for designation and delisting involve the investigation of  networks of closely related persons and entities allegedly involved in narcotics trafficking or terrorism-related activities.  Decl. ¶¶ 16, 50.  Delisting Petitions may include information regarding past or present activities of not only the petitioner but also members of his or her family, associates, and employers.  Id. ¶¶ 22, 48.  Treasury properly determined that the release of closed Delisting Petitions could reasonably be expected to interfere with other pending or future investigations or prosecutions of related persons or entities, and could have a chilling effect on the willingness of designated persons, witnesses, and other sources to provide the reliable, detailed information that is crucial to OFAC's consideration of Delisting Petitions.  Id. ¶¶ 49, 50.

### C.    Exemption 7(F) Applies Because Release of the Delisting Petitions Could Reasonably be Expected to Endanger a Person's Life or Safety

Exemption 7(F) protects each of the Delisting Petitions in its entirety, and to other information withheld or redacted under this exemption, because Treasury established that their release could reasonably be expected to endanger a person's life or safety.

1.    <u>**Exemption 7(F)**</u>

Exemption 7(F) protects from disclosure "information that was compiled for law enforcement purposes and that could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  Exemption 7(F) has a broad reach to protect the physical safety of a wide range of individuals.  <u>See</u> <u>Garcia v. DOJ</u>, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) (the government "is entitled to invoke this exemption where the safety of the individual in question would be jeopardized if his or her identity were revealed"); <u>see</u> <u>also</u> <u>L.A. Times v. Army</u>, 442 F. Supp. 2d 880, 898-90 (C.D. Cal. 2006).  No balancing of interests is required under Exemption 7(F).  <u>See</u> <u>Raulerson v. Ashcroft</u>, 271 F. Supp. 2d 17, 29 (D.D.C. 2002) ("Exemption 7(F) is an absolute ban against certain information" and does not involve a balancing of societal and individual privacy interests).  "In evaluating the validity of an agency's invocation of Exemption 7(F), the court should, within limits, defer to the agency's assessment of danger."  <u>Garcia</u> at 378 (internal quotation marks and citations omitted).

2.    <u>**Treasury Properly Invoked Exemption 7(F) for Delisting Petitions**</u>

Exemption 7(F) protects from disclosure the Delisting Petitions in their entirety and other information withheld or redacted under this exemption because Treasury established that their release "could reasonably be expected to endanger the life or physical safety of any individual." <u>See</u> 5 U.S.C.  § 552(b)(7)(F).  The sanctions programs administered by OFAC involve narcotics traffickers and kingpins, and persons and entities involved in terrorism.  Decl. ¶¶ 16, 58.  The persons placed on the SDN List therefore include terrorists and narcotics traffickers who are involved in violent activities.  <u>Id</u>.  The Delisting Petitions contain extensive personal information from which the identity of the petitioner or other persons may be derived.  <u>Id</u>.. ¶¶ 48, 50, 53.  Treasury determined that release of the Delisting Petitions and the other information withheld or redacted under Exemption 7(F) could reasonably be expected to expose the petitioners and other persons who are mentioned in the Petitions to threats against their life and would endanger their physical safety.  <u>Id</u>.

In Brunetti v. FBI, 357 F. Supp. 2d 97 (D.D.C. 2004), the court held that Exemption 7(F) protected the names, identifying information and information provided by third parties during the course of an FBI investigation involving the La Cosa Nostra organization.  The court deferred to the agency's determination that, given the given the violent nature of that organization, these individuals could be endangered as a result of their cooperation with the agency if their identities were made known.  Id. at 109.  The same rationale applies here.  As in Brunetti, the Court should defer to OFAC's reasonable assessment of this danger to the applicants and other individuals mentioned in the Delisting Petitions.  See also Garcia, 181 F. Supp. 2d at 378.

## IV.    EXEMPTIONS 6 AND 7(C) PROTECT INFORMATION THE DISCLOSURE OF WHICH WOULD CONSTITUTE AN INVASION OF PRIVACY, AND EXEMPTION 7(D) PROTECTS CONFIDENTIAL SOURCE INFORMATION

Exemptions 6 and 7(C) protect information in the Delisting Petitions and the other records withheld or redacted under these exemptions, the disclosure of which would constitute an invasion of personal privacy.  Exemption 7(D) protects law enforcement information from a confidential source in the Delisting Petitions.

### A.    Exemption 6 Protects Information the Disclosure of Which Would Constitute a Clearly Unwarranted Invasion of Personal Privacy

Treasury properly invoked Exemption 6, in conjunction with Exemption 7(C), to protect personal information in the Delisting Petitions and the other records withheld or redacted under these exemptions, because the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.

#### 1.    Exemption 6

Exemption 6 protects from disclosure information located in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The Supreme Court has broadly interpreted Exemption 6's reference to "similar files," holding that it encompasses "information which applies to a

particular individual." Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982). Thus, the threshold inquiry in determining Exemption 6's applicability is minimal. See New York Times v. NASA, 920 F.2d 1002, 1006 (D.C. Cir. 1990).

In DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989), the Court rejected a "cramped notion of personal privacy" under the FOIA's exemptions and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." Id. at 763. Although that case was decided under Exemption 7(C), which concerns privacy interests in law enforcement records, the definition of the public interest to be considered is the same as for Exemption 6. See National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989). Privacy is of particular importance in the context of the FOIA because a disclosure required by the FOIA is a disclosure to the public at large. See Painting & Drywall Fund v. HUD, 936 F.2d at 1302 (if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

The release of information that would associate third parties with a criminal or national security investigation would invade their privacy and damage their reputations. Cf. Reporters Committee, 489 U.S. at 772-773 (revealing the existence of a criminal law enforcement record implicates the privacy interests of third parties about whom an agency receives a FOIA request). Individuals have a "strong interest . . . in not being associated unwarrantedly with alleged criminal activity." Fitzgibbon v. CIA, 911 F. 2d 755, 767 (D.C. Cir. 1990). Indeed, "an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo." Cong. News Syndicate v. DOJ, 438 F. Supp. 538, 541 (D.D.C. 1997). Those whose names may surface in an investigation, even if they are not targets, have a strong privacy interest. See Nation Magazine, 71 F. 3d at 896 (portions of law enforcement investigatory records that would reveal subjects, witnesses, and/or informants are categorically exempt from disclosure). Even the revelation of names and addresses alone may constitute a "significant" invasion of privacy. See Painting Indus. Of Hawaii v. Air Force,

26 F.3d 1479, 1483 (9th Cir. 1994).  The primary purpose for Exemption 6 was "to  protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  Dep't of State v. Washington Post Co., 456 U.S. at 599.

Against these privacy interests, the agency must weigh any public interest in disclosure of the information.  See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991); Air Force v. Rose, 425 U.S. 352, 372 (1976); National Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004).  "Congress enacted FOIA 'to open agency action to the light of public scrutiny'."  Spurlock, 69 F.3d at 1015 (quoting Rose, 425 U.S. at 372).  The public interest purpose of the FOIA is "not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  Reporters Comm., 489 U.S. at 773.  With respect to the requisite balancing of interests, it is doubtful that the competing interest in "open agency action to the light of public scrutiny" would be furthered by revealing the names of private citizens.  Congress recognized that "public disclosure is not always in the public interest."  CIA v. Sims, 471 U.S. 159, 166-167 (1985).  When the subject of the information requested under the FOIA is a private citizen and "when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest . . . is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir."  Reporters Comm., 489 U.S. at 780.

## 2.    Treasury Properly Invoked Exemption 6 for Delisting Petitions

The requestor bears the burden of demonstrating that disclosure of the personal identifying information would serve the public interest and would outweigh the established privacy interests of these third-parties.  See Carter v. Dep't of Commerce, 830 F.2d 388, 391-92 nn.8 & 13 (D.C. Cir. 1987).  Plaintiff cannot meet that burden because this personal information regarding third parties would not lead to any "public understanding of the operations or activities of the government."  See Dep't of Defense v. FLRA, 510 U.S. 487, 495 (1994) (internal quotation marks and citation omitted).  Treasury determined, after weighing the significant

privacy interests of third-parties whose names appear in these records against any public interest in the information, that the balance overwhelmingly favors non-disclosure.

Exemption 6 protects personal information in the Delisting Petitions.  Such personal information will not directly advance the public interest because the information relates to the activities of the petitioner and other third parties mentioned in the Delisting Petitions, rather than relating to OFAC's performance of its duties.  See Seized Property Recovery Corp. v. Customs, 502 F. Supp. 2d at 59 (applying Exemptions 6 and 7(C) to the names and addresses of individuals whose property has been seized by the government).  Nor would it matter if plaintiff were able to obtain some of the information through other means.  See DOJ v. Reporters Comm., 489 U.S. at 769.  And, to the extent that plaintiff seeks the Delisting Petitions in order to contact the petitioners or other third parties, Exemption 6 protects against such "derivative use" of the records.  See Forest Serv. Employees for Environ. Ethics v. USFS, – F.3d – , 2008 WL 1902511 at * 7-8 (9th Cir. May 1, 2008).

### 3.    Treasury Properly Invoked Exemption 6 for Other Information

Exemption 6 protects personal information in the other records withheld or released in redacted form.  Treasury released each of the Removal Letters that it located, including the names of the petitioners who were removed from the SDN List, while redacting their addresses and other personal information.  See Canter Decl. ¶ 10, 43 & Exs. B, C (letters dated May 22 and June 5, 2008).  Although OFAC publishes the names of persons who are removed from the SDN list, OFAC does not publish the Removal Letters.  Id., Ex. B.  The release of the petitioners' addresses will not directly advance the public interest because the information does not relate to OFAC's performance of its duties.  See Seized Property Recovery Corp., 502 F. Supp. 2d at 59.  To the extent that plaintiff seeks such personal information in order to contact the petitioners, Exemption 6 protects against such "derivative use" of the records.  See Forest Serv. Employees, 2008 WL 1902511 at * 7-8.

Treasury also withheld "personal identifying information" from data entries related to Congressional inquiries and the OFAC website.  See Order dated March 25, 2008 at 1.  In withholding this information, Treasury balanced the individual's privacy interest against the public interest in disclosure.  Decl. ¶ 44.  After the parties met and conferred, Treasury released additional information and determined that the remaining redactions did not involve "purely anecdotal or narrative information" submitted by a person regarding the effect of being designated on the SDN List.  Id. ¶ 10, Exs. B, C.  In each instance where information was withheld, Treasury determined that the individual privacy rights outweighed the public interest.  Id. ¶ 44.  Exemption 6 applies because Treasury established that the release of such information would constitute a clearly unwarranted invasion of personal privacy.

### B.    Exemption 7(C) Protects Information the Disclosure of Which Would Constitute an Unwarranted Invasion of Personal Privacy

Treasury properly invoked Exemption 7(C), in conjunction with Exemption 6, to protect personal information in the Delisting Petitions and the other records withheld or redacted under this exemption, because the disclosure of such information would constitute an unwarranted invasion of personal privacy.

### 1.    Exemption 7(C)

Exemption 7(C) applies to "records or information compiled for law enforcement purposes" which, if released, "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  As with Exemption 6, this determination requires the court to balance the privacy interests of those individuals whose information might be disclosed and the asserted public interest, if any, in disclosure of that information.  See Reporters Comm., 489 U.S. at 762.  Agencies are permitted to apply Exemption 7(C) to a category of records, rather than on a document-by-document basis.  Id. at 777-80.

The Supreme Court has concluded that, "as a categorical matter," a third party's request for law enforcement records or information about a private citizen "can reasonably be expected to invade that citizen's privacy," and that, when the request seeks no official information about an agency, "but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted'." Reporters Comm., 489 U.S. at 780. Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity, and that disclosure could infringe upon this interest." Schiffer v. FBI, 78 F.3d 1405, 1410 (9th Cir. 1996) (citation omitted). Members of the public may draw adverse inferences from the mere fact that an individual is mentioned in the files of a law enforcement agency. See, e.g., Congressional News Syndicate v. DOJ, 438 F. Supp. 538 at 541. As explained above for Exemption 6, third parties mentioned in law enforcement materials have a presumptive privacy interest in having their names and other personal information withheld from public disclosure. See, e.g., Reporters Comm., 489 U.S. at 780. The public-interest component "must be assessed in light of FOIA's central purpose," and that this purpose "'is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.'" Nation Magazine, 71 F.3d at 894. In National Archives and Records Admin. v. Favish, 541 U.S. 157 (2004), the Supreme Court articulated the public interest that a requestor must demonstrate before even reaching the balancing test under Exemption 7(C). The requestor must show that "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." Id. at 172. "Otherwise, the invasion of privacy is unwarranted." Id.

In assessing an agency's reliance on Exemption 7(C), courts weigh "the public interest in disclosure against the possible invasion of privacy caused by the disclosure." Schiffer, 78 F.3d at 1409 (internal quotations omitted). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their

government is up to'." <u>Blanton</u>, 63 F. Supp. 2d at 45 (quoting <u>Reporters Comm.</u>, 489 U.S.
at 773). The privacy interests of third parties mentioned in law enforcement files are
"substantial," while the public interest in the release of information regarding third party "is
insubstantial." <u>Blanton</u>, 63 F. Supp. 2d at 45.

**2.    Treasury Properly Invoked Exemption 7(C) for Delisting Petitions**

The Delisting Petitions contain extensive personal information that is protected by
Exemption 7(C), in conjunction with Exemption 6. <u>See</u> Canter Decl. ¶¶ 48, 50, 53. The Ninth
Circuit has rejected attempts by FOIA requesters to troll for data about third parties in
government files. <u>See</u> <u>Fiduccia v. DOJ</u>, 185 F.3d 1035 (9th Cir. 1999). Among the documents
sought in that case were FBI records relating to searches of third parties. Plaintiff asserted that
the public interest in FBI searches of their homes outweighed any privacy concerns. <u>Id.</u> at 1046-
47. The FBI issued a Glomar response to those FOIA requests, even though the FBI itself had
disclosed to the press that it had searched the home of one individual and the second had spoken
to the press about the search of her home. <u>Id.</u> at 1047. The Court held that "these individuals did
not lose their statutory interest in privacy by reason of the earlier publicity," whether by their own
press releases or those of the FBI. <u>Fiduccia</u>, 185 F.3d at 1047. Nor did the possibility that some
information in the files was also available "in various courthouses" reduce the privacy interest of
these third parties, since the march of time had rendered them a degree of "practical obscurity."
<u>Id.</u> The Court rejected plaintiffs' contention that the requested information regarding third parties
in FBI files was of "public interest." Citing to the Supreme Court's holding in <u>Reporters</u>
<u>Committee</u>, 489 U.S. 749 (1989), the Court held that the FBI's Glomar response concerning its
files was "categorically protected from disclosure under the individual privacy exemption for law
enforcement information, even though the information has previously been divulged to the public,
without regard to individual circumstances. . . regardless of whether the person seeking it is a
reporter, a neighbor, or a prospective employer, and regardless of whether it had one time been
made public." <u>Id.</u> (internal quotations omitted). The Court concluded that the individuals'

privacy interests "outweighed (categorically, regardless of individual circumstances) the FOIA purpose of contributing significantly to understanding of the operations or activities of the government."  <u>Id.</u> at 1047-48 (internal quotations omitted).

Plaintiff also errs in asserting that, if some information regarding a petitioner's identity or claims was previously divulged, or if plaintiff could obtain such information through other means, that would defeat the privacy interests at issue under Exemption 7(C).  In <u>Schiffer v. FBI</u>, 78 F.3d 1405, the Ninth Circuit affirmed the FBI's use of Exemption 7(C) to withhold information that had been used in litigation and was thus made public, noting that the Supreme Court "explicitly rejected" the argument that the use of information in one trial "necessarily diminishes the privacy interests at stake."  <u>Id.</u> at 1410-11, citing <u>Reporters Comm.</u>, 489 U.S. 749, 769 (1989).  Similarly, in <u>Fiduccia v. DOJ</u>, 185 F.3d 1035 (9th Cir. 1999), the Ninth Circuit held that individuals "did not lose their statutory interest in privacy by reason of the earlier publicity," whether by their own press releases or those of the agency.  <u>Id.</u> at 1047.  In <u>Fiduccia</u>, the Ninth Circuit held that information at issue there was protected from disclosure "regardless of whether it had one time been made public."  <u>Id.</u>

### 3.  <u>Treasury Properly Invoked Exemption 7(C) for Other Information</u>

For the same reasons, Exemption 7(C) protects personal information in the other records withheld or redacted.  Canter Decl. ¶¶ 53-54.  Treasury released the Removal Letters that it located, including the names of the petitioners who were removed from the SDN List, while redacting their addresses and other personal information.  <u>Id</u>. ¶¶ 10, 30.  Treasury also properly withheld or redacted personal information in some data entries related to Congressional inquiries and the OFAC website.  <u>Id</u>.

### C.  <u>Exemption 7(D) Protects Confidential Source Identity and Information</u>

Treasury properly invoked Exemption 7(D) to protect law enforcement information in the Delisting Petitions that was obtained from a confidential source.

1.     **Exemption 7(D)**

Exemption 7(D) protects from disclosure law enforcement records, the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  Exemption 7(D) does not require any balancing of public and private interests. See Dow Jones & Co. v. DOJ, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  Agencies are permitted to apply Exemption 7(D) to a category of records, rather than on a document-by-document basis. DOJ v. Landano, 508 U.S. 165, 179-80 (1993).

Exemption 7(D) applies if the agency establishes that a source has provided information under either an express or implied promise of confidentiality.  See Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995).  The term "confidential" is not defined so narrowly as to be lost by potential use in a future law enforcement proceeding.  Landano, 508 U.S. at 174.  A confidential source thus includes a person who provided information in circumstances from which an assurance of confidentiality could be reasonably inferred, id. at 172, such as when "the nature of the crime investigated and the witness' relation to it support an inference of confidentiality."  Id. at 179, 181 (for example, "[m]ost people would think that witnesses to a gang-related murder likely would be unwilling to speak to the [FBI] except on the condition of confidentiality").  In such circumstances, the government is entitled to a presumption of inferred confidentiality.  Id.; see also Mays v. DEA, 234 F.3d 1324, 1331(D.C. Cir. 2000) (found inference of implied confidentiality for sources to conspiracy to distribute cocaine, which " is typically a violent enterprise, in which a reputation for retaliating against informants is a valuable asset"); Williams v. FBI, 69 F.3d 1155 (inference of confidentiality found for sources to the crimes of rebellion, insurrection, or sedition).

### 2.    Treasury Properly Invoked Exemption 7(D) for Delisting Petitions

Here, the investigations conducted by OFAC under list-based sanctions programs involve terrorists and narcotics traffickers and kingpins.  Canter Decl. ¶¶ 16, 58.  In order to facilitate these investigations, Treasury and the other agencies involved in these investigations must obtain the cooperation of sources with an express or implied promise of confidentiality, including persons who submit Delisting Petitions and other persons who provide information for or are referred to in them.  Id. ¶¶ 19, 56.  Due to the type of investigations and the violent nature of the persons involved, confidentiality can be inferred.  See Landano, 508 U.S. at 179, 181; Mays v. DEA, 234 F.3d at 1331; Williams, 69 F.3d 1155.  Without such assurances, it is doubtful that Treasury could obtain such cooperation; such sources would understandably fear retribution to themselves or their families.  Decl. ¶ 56, 58.  The Delisting Petitions and the other records withheld or redacted under Exemption 7(D) contain information relating to the identity of, or information provided by, such confidential sources.  Id.  The release of a source's identity would likely eliminate that source as a means of obtaining information.  In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources.  Id.  It is only with the understanding of confidentiality that the aid of such sources can be persuaded to continue providing assistance.  Id.

## VI.    EXEMPTIONS 2 THROUGH 5 PROTECT INFORMATION

Treasury properly invoked Exemption 2 to protect information that is related solely to Treasury's internal personnel rules and practices in the Delisting Petitions and the other records withheld or redacted under this exemption; Exemption 3 to withhold those Petitions that are prohibited from disclosure by the Narcotics Kingpin Designation Act; Exemption 4 to protect commercial or financial information in the Petitions and the records withheld or redacted under this exemption; and Exemption 5 to protect privileged information in the records withheld or redacted under this exemption.

### A.    Exemption 2 Protects Information Related Solely to Treasury's Internal Rules and Practices

Exemption 2 protects information in the Delisting Petitions and in the other records withheld or redacted under this exemption, that is related solely to Treasury's internal personnel rules and practices.

### 1.    Exemption 2

Exemption 2 protects from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  Exemption 2 applies to information that is "used for predominantly internal purposes." Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting Crooker v. ATF, 670 F.2d 1051, 1073 (D.C. Cir. 1981)). Information is "predominately internal" if it was developed predominantly for internal use and does not constitute "secret law," in other words,  it does not purport to regulate conduct among members of the public.  See Crooker, 670 F.2d at 1073-74.  Law enforcement materials, "disclosure of which may risk circumvention of agency regulation, are exempt from disclosure" under Exemption 2.  Hardy v. ATF, 631 F.2d 653, 656 (9th Cir. 1980); see also Dirksen v. HHS, 803 F.2d 1456, 1458 (9th Cir. 1986) (Medicare manual that could be used to avoid audits).

Exemption 2 has been held to exempt two types of information: (1) information the release of which would risk circumvention of agency regulations or statutes, see Dirksen, 803 F.2d at 1458, and (2) "routine matters of merely internal interest," Crooker, 670 F.2d at 1069 (citation omitted); Founding Church of Scientology of Washington, D.C., Inc. v. Smith, 721 F.2d 828, 830 n.4 (D.C. Cir. 1983) (material is exempt if it "relates to trivial administrative matters of no genuine public interest").  The former application of the exemption is known as "high 2," while the latter is known as "low 2."  Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997).

SUMMARY JUDGMENT MEMORANDUM   No. C 07-2590 PJH                                    29

2.    <u>Treasury Properly Invoked Exemption 2</u>

Treasury properly invoked Exemption 2, along with Exemption 7(D), to protect information in the Delisting Petitions regarding sources who reported information to OFAC under an express or implied grant of confidentiality, and to protect such information in the Removal Letters and the data entries related to Congressional inquiries and the OFAC website.  Canter Decl. ¶ 32-34.  Release of such information could reveal the source's identity, thereby subjecting that person and his or her family to physical harm, including death.  Id. ¶¶ 56, 58.  The disclosure of a source's identity could also neutralize that individual as a future source of vital information.  In addition, when the identity of one source is revealed, that revelation has a "chilling" effect on the activities and cooperation of other sources.  It is only with the understanding of confidentiality that such sources can be persuaded to continue providing valuable assistance.  <u>Id</u>.

B.    **Exemption 3 Protects Information Prohibited from Disclosure by the Foreign Narcotics Kingpin Designation Act**

Exemption 3 protects certain Delisting Petitions because these records are prohibited from disclosure by the Narcotics Kingpin Designation Act.

1.    <u>Exemption 3</u>

Exemption 3 protects information that is prohibited from disclosure by another statute if that statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  Because Exemption 3 incorporates the nondisclosure provisions contained in other federal statutes, <u>see</u> <u>Reporters Comm.</u>, 489 U.S. at 755, the application of Exemption 3 presents considerations "distinct and apart from the other eight exemptions."  <u>Fitzgibbon v. CIA</u>, 911 F.2d at 761 (quoting <u>Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.</u>, 830 F.2d 331, 336 (D.C. Cir. 1987)).  Under Exemption 3, judicial review is limited to whether the withholding statute qualifies as an Exemption 3 statute, and, if so, whether the records fall within the statute's scope.  <u>Sims</u>, 471 U.S. at 167; <u>Fitzgibbon</u>, 911 F.2d at 761.  "Exemption 3 differs from other FOIA exemptions in that its

applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Fitzgibbon, 911 F.2d at 761-62 (quoting Ass'n of Retired R.R. Workers, 830 F.2d at 336). Agencies are permitted to apply Exemption 3 to a category of records, rather than on a document-by-document basis. Church of Scientology v. IRS, 792 F.2d 146 (D.C. Cir. 1986).

Exemption 3 incorporates "only those statutes where it is clear that the basic policy decision in favor of nondisclosure has been made by the Legislative rather than by the Executive Branch." Long v. IRS, 742 F.2d at 1179, citing American Jewish Cong. v. Kreps, 574 F.2d 624, 628 (D.C. Cir. 1978); see also Church of Scientology of Cal. v. Postal Serv., 633 F.2d 1311, 1329 (9th Cir. 1980). When Congress has enacted statutes that identify categories of information that are exempt from public disclosure notwithstanding the requirements of FOIA, Congress makes "manifest" its intent to require the withholding of documents falling within the terms of those statutes. Fitzgibbon, 911 F.2d at 762.

Exemption 3(B) "necessarily contemplates some exercise of administrative discretion." Church of Scientology, 633 F.2d at 1330; see also Lessner v. Dep't of Commerce, 827 F.2d 1333, 1336 (9th Cir. 1987). Under Exemption 3(B), the exempting statute "can either limit discretion to a particular item or to a particular class of items that Congress has deemed appropriate for exemption, or it can limit it by prescribing guidelines for its exercise." Long v. IRS, 742 F.2d 1173, 1179 (D.C. Cir. 1984) (citation omitted).[4] A statute "providing for limited unguided discretion may qualify" under Exemption 3(B) where the legislative history supports the view that Congress intended it to be such a statute and where the identified class of nondisclosable

---

[4] The "crucial distinction" under subsection 3(B) is "between statutes that in some manner told the official what to do about disclosure and those that did not significantly inform his discretion in that regard." American Jewish Cong., 574 F.2d at 629. Nondisclosure is countenanced if the statute "is the product of congressional appreciation of the dangers inherent in airing particular data and incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." Id. at 628-29, cited in Church of Scientology, 633 F.2d at 1330.

matters is narrow." Id., citing Church of Scientology, 633 F.2d at 1331.  "In effect, the purpose of

Exemption 3 – to assure that Congress, not the agency, makes the basic nondisclosure

determination – is met once B-2 is found to apply."  Association of Retired R.R. Workers.,

830 F.2d at 336.

### 2.     <u>Treasury Properly Invoked Exemption 3 for Some Delisting Petitions</u>

Treasury properly invoked Exemption 3(B) for certain Delisting Petitions that are covered

by the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. 1901-1908 (the Kingpin Act).

Canter Decl. ¶ 36.  This Act provides authority for the application of sanctions on a worldwide

basis to significant foreign narcotics traffickers whose activities threaten the national security,

foreign policy, and economy of the United States.  Id.  Therefore, the Act is another tool pursuant

to which the President of the United States and Treasury can designate individuals and entities.

Specifically, under the Kingpin Act, any record or information "obtained  or created in the

implementation of" the Kingpin Act "is not subject to disclosure under" the FOIA.  21 U.S.C.

1904; see also 31 C.F.R. sect. 598.802 (OFAC implementing regulations).  Here, certain Delisting

Petitions are exempted from disclosure by the Kningpin Act, because these records involve

significant foreign narcotics traffickers whose activities threaten the national security, foreign

policy, and economy of the United States, and these records were obtained in the implementation

of the Kingpin Act.  Decl. ¶ 36.

Such Delisting Petitions constitute "[m]atters that are specifically exempted from

disclosure by statute, because the Act "establishes particular criteria for withholding or refers to

particular types of matters to be withheld."  See Goland v. CIA, 607 F.2d 339, 350  (D.C. Cir.

1987) (under Exemption 3, "the sole issue for decision is the existence of a relevant statute and

the inclusion of withheld material within the statute's coverage").  As a result, Exemption 3(B)

protects those Delisting Petitions that are governed by the Kingpin Act.

C.    **Exemption 4 Protects Commercial or Financial Information**

Treasury properly invoked Exemption 4 to protect confidential commercial or financial information in the Delisting Petitions and the data entries related to Congressional inquiries and the OFAC website.

1.    **Exemption 4**

Exemption 4 protects from disclosure records that contain "commercial or financial information obtained from a person" that is "privileged or confidential."  5 U.S.C. § 552(b)(4). Court recognize that the terms "commercial and financial information" should be given their "ordinary meanings," and merely require that the submitter has a "commercial interest" in the information.  Pub. Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citations omitted); Am. Airlines, Inc. v. Nat'l Mediation Bd., 588 F.2d 863, 870 (2d Cir. 1978).

Information is "confidential" for purposes of Exemption 4 if disclosure is likely either "to impair the Government's ability to obtain necessary information in the future," or "to cause substantial harm to the competitive position of the person from whom the information was obtained."  Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974); see also GC Micro Corp. v. Def. Logistics Agency, 33 F.3d 1109, 1113 (9th Cir. 1994).  Exemption 4 thus protects both the government's interest in the continued availability and reliability of commercial or financial information obtained from third parties, and the submitter's interests in the confidentiality of such information.  Critical Mass Energy Project v. NRC, 975 F.2d 871, 877-79 (D.C. Cir. 1992).[5]

While a submitter's views are not especially germane to the first ("impairment") prong of this test, see Gen. Elec. Co. v. NRC, 750 F.2d 1394, 1402 (7th Cir. 1984) (the question of whether disclosure will impair government information-gathering is a "quintessentially managerial

_____

[5] In Critical Mass Energy Project, 975 F.2d at 878-79, the D.C. Circuit reaffirmed the National Parks test but limited its application to information involuntarily submitted to the government.  The court held that, where information is furnished voluntarily to the government, it is confidential if it is of a kind that the submitter would not customarily make public.  Id.

judgment" of the agency), a submitter's input could be determinative as to the "competitive harm" prong." To satisfy this prong, the decisionmaker need not find actual competitive harm; evidence of "actual competition and a likelihood of substantial competitive injury" is sufficient. CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1152 (D.C. Cir. 1987).

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). In determining whether commercial or financial information contained in responsive documents constitutes confidential information, OFAC considered the potential impairment to OFAC if the document or information were released to the public, the competitive harm to the submitters that would result from release, and the public interest in the submitted information.

### 2.   Treasury Properly Asserted Exemption 4 to Redact Information

Treasury asserted Exemption 4 to protect commercial or financial information contained in Delisting Petitions and some data entries related to Congressional inquiries and the OFAC website. Canter Decl. ¶ 39. If such information were made public, such individuals would be harmed by such release and, on balance, the public interest in the information is minimal. Id. Moreover, the potential impairment to OFAC, in its investigative capabilities, is substantial if such information is released. Id. Specifically, individuals would likely not provide the same information which facilitates OFAC's ability to target narcotics traffickers and terrorists. Id.

### D.   Exemption 5 Protects Privileged Information

### 1.   Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 applies to those documents "that are normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975), cited in Carter v. Dep't of Commerce, 307 F.3d 1084, 1088 (9th Cir. 2002). Exemption 5

thus covers the attorney-client privilege, the work-product doctrine, and the deliberative-process privilege. United States v. Weber Aircraft Corp., 465 U.S. 792, 800 (1984); Mobil Oil Corp. v. EPA, 879 F.2d 698, 700 n.1 (9th Cir. 1989).  Agencies are permitted to apply Exemption 5 to a category of records, rather than on a document-by-document basis. FTC v. Grolier Inc., 462 U.S. 19 (1983).  "There should be considerable deference to the [agency's] judgment as to what constitutes. . . 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made'" Chemical Mfrs. Ass'n v. CPSC, 600 F. Supp. 114, 118 (D.D.C. 1984) (citation omitted).  The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'" Id. at 118 (citation omitted).

> ### 2. Treasury Properly Invoked Exemption 5 to Redact Privileged Information

Treasury properly invoked Exemption 5 to withhold privileged information regarding the Congressional inquiries and the OFAC website.  Canter Decl. ¶ 41.  Such records contain confidential information regarding privileged communications.  Id.  The unauthorized disclosure of such information would harm Treasury.  Id.

## CONCLUSION

For these reasons, the Court grant summary judgment to Treasury on all remaining issues in the Complaint.  First, the Delisting Petitions are protected in their entirety by Exemptions 7(A) and 7(F).  Thus, although other exemptions also protect information in the Delisting Petitions, the Court need not address Treasury's use of these other exemptions.  Second, as to the other records withheld or released in redacted form, Exemptions 6 and 7(C) protect personal information in the Removal Letters and in the data entries related to Congressional inquiries and the OFAC website, and other exemptions also protect information in such records.

Dated: June 18, 2008                          Respectfully submitted,


/s/
PETER T. WECHSLER (MA # 330559)