## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF SAN FRANCISCO BAY AREA, | ) ) ) | No. C 07 2590 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE TREASURY, | ) ) | |
| | ) | |
| Defendant. | ) | |

### FIFTH DECLARATION OF VIRGINIA R. CANTER

I, Virginia R. Canter, declare as follows:

1. I am the Associate Director, Resource Management, of the Office of Foreign Assets Control (OFAC) of the United States Department of the Treasury (Treasury). I have served in this position since May 29, 2005. Generally, my duties include administering, developing, and managing programs that provide the necessary communication, management support, and resources for conducting OFAC's mission. These programs include records and forms management and Privacy Act and Freedom of Information Act (FOIA) administration. Therefore, my duties include supervisory responsibility for OFAC's processing of FOIA requests. Due to the nature of my official duties, I am familiar with the procedures followed by OFAC in responding to FOIA requests, as well as the processing of plaintiff's request in this case. The statements made in this Declaration are based upon information within my personal knowledge, and information made available to me in the performance of my official duties.

**Treasury's Initial Response to the FOIA Request**

2.   By letter dated August 16, 2005 (FOIA request), plaintiff, the Lawyers' Committee for Civil Rights of the San Francisco Bay Area, requested that Treasury release certain OFAC records regarding the Specially Designated Nationals List (SDN List), which is administered by OFAC, for the period "from 2000 to the present."

3.   After OFAC conducted a search for records responsive to the FOIA request and located responsive records in paper and electronic form, OFAC released such records to plaintiff by letter dated July 20, 2007 (Initial Response).

4.   By Order dated February 14, 2008, this Court directed Treasury to supplement its Initial   Response as to several items, including "Delisting Petitions" received by OFAC, within thirty days of the Order.   The Court also entered a final judgment on February 14. Delisting Petitions, as discussed further below, are applications acknowledging that individuals or entities are included on the SDN List and requesting that their names be removed from the SDN List.   OFAC previously argued that the Delisting Petitions are not responsive to the FOIA request.   Pursuant to the court's request, however, OFAC processed the Delisting Petitions per plaintiff's FOIA request items 5 and 6.

5.   By letter dated March 14, 2008, Treasury supplemented its Initial Response in accordance with the February 14 Court Order.   A copy of the March 14 letter is attached hereto as Exhibit A.   In the letter, Treasury informed plaintiff as to the results of the search for Delisting Petitions as well as Treasury's determination that each of the Delisting Petitions was subject in its entirety to FOIA Exemptions.   Treasury also released certain letters sent by OFAC to petitioners who sought removal from the SDN list (Removal Letters) after OFAC

removed such petitioners' names and addresses from the letters that it located and also released information contained in the OFAC database of calls to the Congressional liaison, in the Foreign Assets Control Database (FACDB), and in the OFAC website.

### The Court Order Scheduling Further Proceedings

6.  By letter to the Court dated March 21, 2008, plaintiff alleged that Treasury had not complied with the February 14 Court Order. Plaintiff asserted that the Court Order prevented Treasury from asserting any FOIA exemptions as to the Delisting Petitions, or that Treasury waived any such exemptions, and that Treasury was required to release each Delisting Petition in full.

7.  By a Notice of Filing dated March 21, 2008, Treasury responded to plaintiff's March 21 letter and attached a copy of Treasury's March 14 letter, which plaintiff had neglected to file. In its response, Treasury stated that it had complied fully with the Court Order, as shown by Treasury's March 14 letter. In particular, Treasury stated that it had processed the additional documents referred to in the Court Order pursuant to the FOIA, identified applicable FOIA exemptions, and released all non-exempt information to plaintiff. Treasury also noted that plaintiff had not pursued any administrative appeal regarding access to records denied in whole or in part. See 31 C.F.R. § 1.5(i). Treasury argued that plaintiff therefore lacked any basis to assert that Treasury had not complied with the Court Order. Similarly, plaintiff lacked any basis to assert that Treasury waived the FOIA exemptions cited in its letter, since that letter was the first opportunity for Treasury to invoke exemptions as to such documents. For these reasons, Treasury requested that the Court deny plaintiff's request for any post-judgment relief,

or, if a hearing was contemplated regarding the issues raised in plaintiff's letter, Treasury requested the opportunity to brief the application of the FOIA exemptions to these documents, given that the case was previously limited to the adequacy of the search for records and that none of the briefs and/or declarations filed by the parties to date addressed exemptions.

8. By Order dated March 25, 2008, the Court vacated the February 14 judgment and reopened the case and set a briefing schedule with respect to any challenge by plaintiff to Treasury's assertion that the Delisting Petitions are subject to withholding under FOIA Exemptions, as well as any challenge by plaintiff to the redaction of the records released by OFAC. The Court stated in its March 25 Court Order that because "the posture of the case did not permit defendant to advance the exemptions previously, *the court will permit defendant to do so now.*" In addition, the Court stated that, with respect to the Delisting Petitions, "if defendant is unable to convince plaintiff as to the validity of the claimed exemptions, defendant will file a motion for summary judgment."

9. By letter dated April 28, 2008, plaintiff asserted that "[t]he withholding of the Delisting Petitions in their entirety directly contradicts the Court's February 14, 2008 Order. . . ." Plaintiff also challenged some of the redactions to records released by Treasury, while declining to challenge other redactions. In particular, plaintiff requested that Treasury release the names and addresses of the applicants redacted from the Removal Letters and the name of a Congressional liaison and other information redacted from the database of calls.

10. By letters dated May 22 and June 5, 2008, Treasury responded to plaintiff's April 28 letter. Copies of these letters are attached hereto as Exhibits B and C, respectively. Treasury continued to withhold the Delisting Petitions in their entirety pursuant to Exemptions 7(A) and

7(F).  Treasury released the names of individuals to whom OFAC sent Removal Letters, while continuing to redact their addresses from those letters under Exemptions 6 and 7(C).  Treasury also released additional responsive information in the database of calls to the Congressional liaison, while continuing to redact personal information from those letters under Exemptions 6 and 7(C) and continuing to withhold records or redact some information under Exemptions 2, 4, 5, and 7(A).

11.  The purpose of this declaration is to explain OFAC's search for and processing of the Delisting Petitions and other records pursuant to the Court Orders of February 14 and March 25, 2008.  In order to explain the grounds for withholding information pursuant to FOIA Exemptions, I will first provide a brief overview of the sanctions programs pursuant to which OFAC designates persons for inclusion on the SDN List and the process by which OFAC evaluates Delisting Petitions.

## The Designation Process and Delisting Petitions

12.  OFAC is an office within Treasury's Office of Terrorism and Financial Intelligence (TFI).  See 31 U.S.C. § 313(a)(6).  OFAC's functions include administering and implementing sanctions to combat terrorist financing, narco-trafficking, offenses threatening the integrity of the banking and financial systems, and other enforcement matters.  By statute, TFI, including OFAC, is designated as a "law enforcement organization of" the Treasury.  Id. § 313(d).

13.  OFAC is responsible for administering key U.S. economic sanctions programs.  These programs are primarily directed against foreign states and nationals, including but not limited to sponsors of global terrorism, to further U.S. foreign policy and national security goals.

Pursuant to authority delegated by the President of the United States to the Secretary of the Treasury, OFAC acts under Presidential wartime and peacetime national emergency powers, including authority granted by specific legislation, to impose controls on transactions and to freeze, or "block," certain property and interests in property.

14. OFAC currently administers over 20 economic sanctions programs against foreign governments, entities, and individuals. Several of these sanction programs are "list-based programs," affecting members of government regimes and other individuals and groups whose activities conflict with U.S. national security and foreign policy interests. All individuals and entities whose property and interests in property are blocked ("blocked persons") pursuant to a "list-based program" are included in the SDN list.

15. The International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706 ("IEEPA"), grants the President a broad spectrum of powers to deal "with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). The President typically exercises these powers through Executive orders that impose economic sanctions to address particular emergencies.

16. An Executive order blocking property and interests in property constitutes one of the most potent elements of an economic sanctions program. Most of OFAC's economic sanctions programs are administered under the authority of IEEPA and various Executive orders. By way of example, OFAC implements sanctions programs against: narcotics traffickers and

kingpins; terrorism-related governments, entities, and individuals; and proliferators of weapons of mass destruction.

17.  In addition to identifying a particular threat in an Executive order, the President may also identify for blocking specific entities and individuals who pose or contribute to the threat as to which an emergency has been declared in the Executive order and set forth standards pursuant to which additional entities and individuals may be designated for blocking.  The President typically delegates the task of identifying/designating such additional entities and individuals to a cabinet official, usually the Secretary of the Treasury.  Those who are determined to meet these standards are "designated" and thus made subject to the Executive order's blocking restrictions.

18.  OFAC typically does not provide prior notice of a pending investigation or impending blocking action.  If persons were to learn that they are the subject of an ongoing sanctions investigation, there is a significant risk that they would transfer, hide, sell, or destroy assets that could be blocked, destroy or alter records relevant to the investigation, or otherwise frustrate or obstruct the sanctions investigation before the investigation, and the potential blocking of assets, can be completed.  Such an outcome would frustrate OFAC's law enforcement efforts.

19.  The process by which OFAC designates individuals or entities appropriate for blocking, and thus places their names on the SDN List, begins with an extensive investigation.  OFAC investigations draw on a broad range of information, which historically has included both publicly available and non-publicly available information, as well as classified and unclassified information.

20. Once the evidence is collected, OFAC staff draft an evidentiary memorandum summarizing the various exhibits acquired through their investigation. After an evidentiary package has been reviewed within OFAC, it is then reviewed for legal sufficiency by OFAC's attorneys. Based on that legal review, the analyst or investigator may engage in further investigation and revise the package to address any legal concerns. The Department of Justice also provides legal review of evidentiary packages under certain programs.

21. In some programs there is interagency coordination throughout the designation process, and this interagency coordination is a critical part of the designation process. This interagency process helps to ensure that OFAC's proposed designations are consistent with the operational and policy interests of other agencies, as well as with the strategic national security and foreign policy goals of the United States. Once this interagency process has been completed, the final evidentiary package is presented for signature to the Director of OFAC pursuant to authority delegated from the Secretary of the Treasury.

22. A designated individual or entity may seek to have the designation rescinded by filing a Delisting Petition pursuant to regulations promulgated by OFAC at 31 C.F.R. § 501.807 which presents in writing arguments and evidence showing why an insufficient basis exists for the designation or why the circumstances resulting in the designation no longer apply. After OFAC has conducted a review of the Delisting Petition, it will generally provide a written decision to the designated person. In certain cases, OFAC may act unilaterally or at the request of another agency (i.e., the Department of State) to remove an individual from the SDN list when, for example, the circumstances resulting in the designation no longer apply.

### The Search for and Processing of Delisting Petitions

23. After consulting with OFAC divisions, I determined that any Delisting Petitions received by OFAC would be maintained by the Designations and Investigations Division, which is responsible for the designation process and the delisting process. In March of 2008, that division, with assistance from other OFAC employees, conducted a search for Delisting Petitions for the period from 2000 to the date of the search and forwarded a list of potentially responsive records to OFAC's Records Management Division (the FOIA-related functions of that division are now performed by the newly created Disclosure Services Division). As a result of that search, OFAC identified 346 Delisting Petitions received by OFAC from 2000 to the date of the search.

24. In order to comply expeditiously with the February 14 Court Order given the volume of records and the deadline imposed, initially OFAC did not conduct a page-by-page review of each of the 346 Delisting Petitions that it identified. At that time, OFAC conducted a page-by-page review of a representative sample consisting of approximately 102 Delisting Petitions. The review process was conducted by the Senior Program Analyst, FOIA, Records Management Division (now known as the Assistant Director for Disclosure Services).

25. OFAC determined that each of the 346 Delisting Petitions was subject to one or more of the FOIA Exemptions (discussed below) and should be withheld in its entirety. OFAC determined that 291 of the 346 Delisting Petitions were then pending, and that 55 were concluded.

26. OFAC located 42 of the Removal Letters it issued to the applicants whose petitions were concluded. In accordance with the February 14 Court Order, OFAC processed the 42

Removal Letters, redacting information from those Removal Letters pursuant to one or more FOIA Exemptions.

27. Despite conducting a search, OFAC was unable to locate the remaining 13 Removal Letters. In conducting the search for the Removal Letters, a Records/FOIA Analyst was assigned to conduct a comprehensive search of the records located in the records room. Upon completion of that search the Records/FOIA Analyst contacted an employee in the Designation Investigation Division (DID Employee) for further assistance with a list of the missing Removal Letters. The DID Employee sent an email to the various persons that worked in the Designation Investigation Division requesting that they conduct a search of their records for the missing Removal Letters. Upon completion of that search, each individual reported back to the DID Employee with the results of his or her search. Finally, the DID Employee assigned personnel to check the common files of the division for the missing Removal Letters. None of the missing Removal Letters were found.

28. Following the "meet and confer" period with plaintiff ordered in the March 25 Court Order, OFAC conducted a review to verify the pending or closed status of each Delisting Petition.[1] Pursuant to that search, OFAC found that the number of the Delisting Petitions that remained pending changed over time because OFAC continues to review and process Delisting Petitions.[2]

---

[1] OFAC was unable to locate approximately 13 Delisting Petitions at the time of this filing. However, each of those 13 Delisting Petitions is listed as pending in OFAC's internal records.

## FOIA EXEMPTIONS

As discussed below, the Delisting Petitions are subject to the following FOIA Exemptions:

| | |
|---|---|
| Exemption 2 | Information related solely to the internal rules and practices of OFAC |
| Exemption 3 | Information prohibited from disclosure by statute |
| Exemption 4 | Commercial or financial information |
| Exemption 5 | Privileged information |
| Exemption 6 | Clearly unwarranted invasion of personal privacy |
| Exemption 7(A) | Pending law enforcement investigation |
| Exemption 7(C) | Unwarranted invasion of personal privacy |
| Exemption 7(D) | Confidential source identity and information |
| Exemption 7(F) | Information that could endanger a person's life or safety. |

29.  As explained below, Exemptions 7(A) and 7(F) apply to each of the Delisting Petitions in its entirety.  Exemptions 2, 3, 4, 6, 7(C), and 7(D) also apply to information in some or all of the Delisting Petitions and each of these exemptions is discussed below.

30.  As to the other records withheld or released in redacted form, Exemptions 6 and 7(C) protect the personal information redacted by Treasury and challenged by plaintiff.  In addition, plaintiff challenged certain redactions made pursuant to Exemptions 2 and 5.  It is my understanding that plaintiff did not challenge OFAC's other redactions.  Attached hereto as Exhibits D-G are Vaughn indices of these other records withheld or released in redacted form, with those redactions challenged by plaintiff listed in bold type.

---

[2] As of today, 238 of the 346 Delisting Petitions identified as of the search date of July 20, 2007, are pending and 138 are concluded.  Most recently, on June 16, 2008, OFAC removed from the SDN List 60 individuals who were previously designated as specially designated narcotics traffickers pursuant to OFAC authority.

**Exemption 2**

31. Exemption 2 "allows for the withholding of information that is related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(4). Exemption 2 protects internal information, the disclosure of which would risk circumvention of a legal requirement ("High 2" information). Disclosure of this information could impede the effectiveness of OFAC's internal law enforcement procedures. Exemption 2 also protects internal information of a less significant nature, such as administrative routing notations and agency rules and practices ("Low 2" information).

32. OFAC asserted Exemption 2, often in conjunction with Exemption 7(C), to protect both "High 2" and "Low 2" information in Delisting Petitions and in records released in redacted form. There is no public interest in the disclosure of such internal procedures and clerical information that would justify the administrative burden that would be placed upon OFAC and the risk of circumvention of legal requirements.

33. OFAC has withheld as "High 2" information such as OFAC case tracking numbers. OFAC case tracking numbers are for internal use by OFAC employees for filing, retrieving, and tracking investigative files. The disclosure of OFAC case tracking numbers might result in their use by an unauthorized entrant into OFAC's file room or databases as a means to gain access to information contained in or relating to sensitive law enforcement records.

34. OFAC has also withheld "Low 2" information such as non-public telephone numbers and fax numbers in the documents. The disclosure of the non-public fax and telephone number information likely would result in OFAC receiving unwarranted faxes and telephone calls from businesses and individuals that would adversely affect OFAC's ability to perform its functions.

OFAC has publicly available fax and telephone numbers that can be utilized by the general public. The non-public numbers are for internal use by OFAC employees to carry out official business.

### Exemption 3

35. Exemption 3 allows the withholding of information prohibited from disclosure by another statute if the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

36. OFAC asserted Exemption 3 to protect certain Delisting Petitions covered by the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. 1901-1908 (the Kingpin Act). The Kingpin Act provides authority for the application of sanctions on a worldwide basis to significant foreign narcotics traffickers whose activities threaten the national security, foreign policy, and economy of the United States. Therefore, the Kingpin Act is another tool pursuant to which the President and the Secretary of the Treasury can designate individuals and entities. Specifically, under the Kingpin Act, FOIA "shall not apply to any record or information obtained or created in the implementation of [the Kingpin Act]." 21 U.S.C. § 1904(e)(3) . Here, certain Delisting Petitions, because they relate to a Kingpin Act designation and were obtained in the implementation of the act, are exempted from disclosure by statute because the Kingpin Act "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(B). As a result, such Delisting Petitions are subject to Exemption 3(B).

**Exemption 4**

37. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

38. In determining whether commercial or financial information contained in responsive documents constitutes confidential information, OFAC considered the potential impairment to OFAC if the documents or information were released to the public, the competitive harm to the submitters that would result from release, and the public interest in the submitted information.

39. OFAC asserted Exemption 4 to protect in Delisting Petitions, and in the other records withheld or released in redacted form, commercial and/or financial information related to the petitioners (and, in certain cases, their companies, other business interests, and personal banking information). If such information were made public, such individuals could be harmed in their business and/or financial situations through fraud and/or identity theft. On balance, the public interest in the information is minimal. Moreover, the potential impairment to OFAC, in its investigative capabilities, is substantial if such information is released. Specifically, individuals would likely not provide the same amount of financial and business information which facilitates OFAC's ability to accurately target narco-trafficking, terrorist, and other networks subject to U.S. sanctions.

**Exemption 5**

40. Exemption 5 exempts from release "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been construed to exempt those documents normally privileged in the civil discovery context, including the deliberative

process privilege, the attorney-client privilege, and the attorney work product privilege. The deliberative process privilege, which guards against the chilling effect that disclosure might have on frank and open discussions within deliberative governmental bodies, protects from release records that are predecisional and a direct part of the process by which governmental decisions and policies are made.

41. OFAC asserted Exemption 5 to protect intra-agency and inter-agency documents that contained predecisional analysis and discussions that were provided to assist OFAC in its decision-making process. If such materials were made public, the chilling effect on future predecisional discussion and debate would harm OFAC's deliberative process.

**Exemption 6**

42. Exemption 6 permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). Exemption 6 requires a balancing of the subject's privacy interests against the public interest in disclosure. Once it has been determined that a privacy interest is threatened by a requested disclosure, the second step in the balancing process requires an assessment of the public interest in disclosure. The only recognized public interest under the FOIA is that which sheds light on the agency's operations and activities. In this case, in each instance where information was withheld under Exemption 6, OFAC conducted a balancing of these interests and determined that the privacy interest outweighed such public interest, and, after balancing these factors, that release of the information would "constitute a clearly unwarranted invasion of personal privacy."

43. OFAC asserted Exemption 6, often in conjunction with Exemption 7(C) and sometimes in conjunction with Exemption 2, to protect in Delisting Petitions, and in the other records withheld or released in redacted form, the names of individuals, including low level government employees, witnesses, and other individuals connected with an investigation file or other sanctions administration function, as well as other personal information in which the individuals would have a reasonable expectation of privacy, including compilations of personal data compiled for investigative purposes or submitted as part of a Delisting Petition.

44. OFAC determined that there is no public interest in the names and other personal information of the low-level government employees or other individuals; that these employees and other individuals have a protectable privacy interest; and that the privacy interest outweighs the public's interest in disclosure. OFAC determined that any disclosure of the names and other personal identifying information could reasonably be expected to constitute an unwarranted invasion of privacy or would constitute a clearly unwarranted invasion of personal privacy and could result in the individuals being publicly associated with a sanctions investigation, having a stigmatizing effect on their personal and professional character or posing a threat to their safety. OFAC determined that the disclosure of this information would reveal sensitive personal information about individuals and their relationship to or role in providing investigative information or assisting in the administration of sanctions programs. Because of the inherent nature of the sanctions investigations, any disclosure could engender comment and speculation about those individuals, and could result in unwarranted public scrutiny, potential harassing phone calls to elicit sensitive information, and a deterrent or safety

risk to those government employees preparing evidentiary files recommending that certain persons or individuals be sanctioned.

## EXEMPTION 7
## THRESHOLD

45. Exemption 7 protects from disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption, which are discussed below.  See 5 U.S.C. § 552(b)(7).  Before an agency can invoke any of the harms enumerated in Exemption 7, it must demonstrate that the records or information at issue were compiled for law enforcement purposes.  As an office within Treasury's Office of TFI, OFAC is a law enforcement agency, see 31 U.S.C. § 313(d), and has a clear law enforcement mission.  Among OFAC's functions are combating terrorist financing, offenses threatening the integrity of the banking and financial systems, and other enforcement matters.

46. The Delisting Petitions received by OFAC were received in connection with OFAC's performance of its law enforcement mission, including the designation process and OFAC's consideration of Delisting Petitions, therefore such Delisting Petitions can be considered to be compiled for law enforcement purposes.  Because these records meet the threshold for invoking Exemption 7, the remaining inquiry is whether their disclosure would interfere with law enforcement proceedings (Exemption 7(A)), invade personal privacy (Exemption 7(C)), reveal the identity of confidential sources (Exemption 7(D)), or disclose law enforcement information that could endanger the life or physical safety of any individual (Exemption 7(F)).

Each of these harms is discussed below. The same points apply to the other records withheld or released in redacted form.

**Exemption 7(A)**

47. Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to interfere with enforcement proceedings…." 5 U.S.C. § 552(b)(7)(A). Application of this exemption requires: the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a reasonable expectation that release of the information would interfere with the enforcement proceeding.

48. OFAC asserted Exemption 7(A) to withhold each of the Delisting Petitions that is currently pending and each that is closed in its entirety. These documents are part of OFAC's ongoing criminal investigation of persons who were placed on the SDN List. A Delisting Petition is a request from an individual or entity that has been designated pursuant to one of the designation programs administered by OFAC to be removed from the SDN List. *See* 31 C.F.R. § 501.807. Typically, an individual or entity filing a Delisting Petition will include evidence that the individual or entity has not engaged in the conduct giving rise to the designation, that the individual or entity is no longer engaged in that conduct, or that the individual or entity should not have been designated previously. That evidence can include information regarding the individual and his or her associates, family members, and employers.

49. A decision by OFAC to grant or deny a designated person's request to be removed from the SDN List has serious implications for national security. It is of great importance that

such a request be given careful consideration, that the determination be grounded in the best information available, and that the agency be protected from outside attempts to influence the decision. Release of these Delisting Petitions could have a chilling effect on the willingness of designated persons, witnesses, and other sources to provide the reliable, detailed information that is crucial to OFAC's consideration of a Delisting Petition. Additionally, the investigation processes used with respect to a delisting determination are in some cases similar to those used for a designation. Disclosing a Delisting Petition prior to completion of OFAC's review could reveal the direction of the investigation and could result in tampering with witnesses or other informational sources relevant to the inquiry.

   50. OFAC determined that release of the Delisting Petitions, whether pending or concluded, would jeopardize the pending investigation and/or any future investigations or prosecutive efforts that have already begun or are anticipated. Once a release is made to a party under the FOIA, his or her use and dissemination of the information to third parties is unrestricted. OFAC also determined that release of these Delisting Petitions that were concluded would jeopardize other pending investigations of related persons or entities and any future investigations or prosecutive efforts that have already begun or are anticipated. OFAC's designation and delisting processes necessarily involve the investigation of networks of individuals and entities (i.e., familial or business networks) that are closely related. OFAC's ability to investigate one individual and/or entity and its relationship to a larger network is a key tool of its sanctions programs. For these reasons, OFAC determined that each Delisting Petition, whether pending or concluded, should be withheld in full under Exemption 7(A). The same rationale applies to the other records for which OFAC invoked Exemption 7(A).

**Exemption 7(C)**

51.  Exemption 7(C) protects from disclosure "matters that … are records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … (C) could reasonably be expected to constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7)(C).

52.  Once it has been determined that a personal privacy interest is threatened by a requested disclosure, the balancing process requires an assessment of the public interest in disclosure.  The only recognized public interest under the FOIA is that which sheds light on the agency's operations and activities.  In this case, where information was withheld, it was determined that individual privacy interests outweighed any public interest in disclosure.

53.  OFAC asserted Exemption 7(C), often in conjunction with Exemption 6 and sometimes in conjunction with Exemption 2, to protect information in the Delisting Petitions, and in the other records withheld or released in redacted form, including the names of individuals, including low-level government employees, witnesses, and other individuals connected with an investigation file or other sanctions administration function, as well as other personal information in which the individuals would have a reasonable expectation of privacy, including compilations of personal data compiled either for investigative purposes or submitted as part of a Delisting Petition.

54.  OFAC determined that there is no public interest in the names and other personal information of the low-level government employees or other individuals; that these employees and other individuals have a protectable privacy interest; and that the privacy interest outweighs the public's interest in disclosure.  OFAC determined that any disclosure of the

names and other personal identifying information could reasonably be expected to constitute an unwarranted invasion of privacy or would constitute a clearly unwarranted invasion of personal privacy and could result in the individuals being publicly associated with a sanctions investigation, having a stigmatizing effect on their personal and professional character, or posing a threat to their safety. OFAC determined that the disclosure of this information would reveal sensitive personal information about individuals and their relationship to or role in providing investigative information or assisting in the administration of sanctions programs. Because of the inherent nature of the sanctions investigations, any disclosure could engender comment and speculation about those individuals and could result in unwarranted public scrutiny, potential harassing phone calls to elicit sensitive information, and a deterrent or safety risk to those government employees preparing evidentiary files recommending that certain entities or individuals be sanctioned.

### **Exemption 7(D)**

55. Exemption 7(D) protects from disclosure "matters that … are records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis…." 5 U.S.C. § 552(b)(7)(D).

56. OFAC asserted Exemption 7(D) to protect information in the Delisting Petitions, and in the other records withheld or released in redacted form, regarding confidential sources. OFAC treats Delisting Petitions as law enforcement sensitive information because they are

obtained in circumstances under which there is at least an implied promise of confidentiality.

The release of the source's identity or information furnished by the source that could

reasonably be expected to disclose the source's identity would possibly forever eliminate that

source as a future means of obtaining information and would pose a threat of retaliation against

that source. In addition, when the identity of one source is revealed, that revelation has a

chilling effect on the activities and cooperation of other sources. It is only with the

understanding of complete confidentiality (whether express or implied) that the aid of such

sources can be enlisted, and only through this confidence that these sources can be persuaded

to continue providing valuable assistance in the future.

### Exemption 7(F)

57. Exemption 7(F) protects from disclosure "information that was compiled for law

enforcement purposes and that could reasonably be expected to endanger the life or physical

safety of any individual."

58. OFAC asserted Exemption 7(F) to withhold each of the Delisting Petitions in its

entirety and to protect information in the other records withheld or released in redacted form.

Individuals (and entities) designated by OFAC include terrorists and narcotics traffickers who

are involved in violent activities. The release of the Delisting Petitions would reasonably be

expected to expose individuals (including the applicant but also other individuals who have

provided statements and/or other information pursuant to a Delisting Petition or are mentioned

in the petition) to threats against their life and would endanger their physical safety. Such

danger is presented by the mere fact that an individual applied for delisting as others may infer

by such an action that such individual has provided information related to his or her associates.

22

## Segregation of non-exempt material

59.  OFAC determined that each of the Delisting Petitions is subject, in its entirety, to Exemptions 7(A) and 7(F), and that the other exemptions discussed above also apply to information in some or all of the Delisting Petitions.  OFAC also reviewed the information withheld from the records released in redacted form.  OFAC determined that there was no reasonably segregable information that could be released.


I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June ___, 2008.

Virginia R. Canter
Associate Director, Resource Management
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C.  20220

23