

DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

Thomas R. Burke, Esq.
Davis Wright Tremaine LLP
505 Montgomery Street
Suite 800
San Francisco, CA 94111

RE:   Lawyers' Committee For Civil Rights of San Francisco Bay Area v. United States Department of the Treasury, No. C 07-2590 (PJH)

Dear Mr. Burke:

This in response to that section of your letter of April 28, 2008 regarding the Office of Foreign Assets Control's (OFAC's) processing of Delisting Petitions in its supplemental FOIA response of March 14, 2008 (the Supplemental Response). OFAC has responded to the remainder of your April 28 letter, regarding the processing of other information, by separate letter.

An individual or entity who has been designated on the Specially Designated Nationals List (the SDN List) may seek to have the designation rescinded by filing a petition pursuant to regulations promulgated by OFAC at 31 C.F.R. § 501.807. This may be referred to as a "Delisting Petition." A person seeking to challenge a designation may submit to OFAC arguments and evidence showing why an insufficient basis exists for the designation or why the circumstances resulting in the designation no longer apply. There is a reasonable expectation that the information provided in a Delisting Petition will remain confidential and that it not be released publicly. After OFAC has conducted a review of the request for reconsideration, it will provide a written decision to the designated person. In certain cases, OFAC may act unilaterally or at the request of another agency (e.g., the Department of State) to remove an individual from the SDN list when, for example, the circumstances resulting in the designation no longer apply.

OFAC located 346 Delisting Petitions received by OFAC from 2000 to the date of the search, of which 291 remained pending and 55 had been concluded. OFAC determined that each of these Delisting Petitions was subject to one or more of the FOIA exemptions and should be withheld in its entirety. By letter dated March 14, 2008, OFAC supplemented its Initial Response. OFAC informed plaintiff as to the results of the search for Delisting Petitions, as well as OFAC's determination that each of the Delisting Petitions was subject in its entirety to one or more FOIA Exemptions.

It is my understanding that by letter to the Court dated March 21, 2008, plaintiff alleged that OFAC had not complied with the February 14 Court Order. Plaintiff asserted that the February 14 Court Order prevented OFAC from asserting any FOIA exemptions as to the Delisting Petitions, or that OFAC waived any such exemptions, and that OFAC was required to release each Delisting Petition in full.

By a Notice of Filing dated March 21, 2008, OFAC responded to plaintiff's March 21 letter and attached a copy of OFAC's March 14 letter, which I am informed, plaintiff had neglected to file. In its response, OFAC stated that it had complied fully with the Court Order, as shown by OFAC's March 14 letter. In particular, OFAC stated that OFAC had processed the additional documents referred to in the Court's order pursuant to the FOIA, identified applicable FOIA exemptions, and released all non-exempt information to plaintiff. OFAC also noted that plaintiff had not pursued any administrative appeal regarding access to records denied in whole or in part. See 31 C.F.R. § 1.5(i). It is my understanding, therefore, that plaintiff lacked any basis to assert that OFAC had not complied with the Court's order. Similarly I am informed that, plaintiff lacked any basis to assert that OFAC had waived the FOIA exemptions cited in its letter, since that letter was the first opportunity for OFAC to invoke exemptions as to such documents. For these reasons, OFAC, through its counsel, requested that the Court deny plaintiff's request for any post-judgment relief, or, if a hearing was contemplated regarding the issues raised in plaintiff's letter, OFAC requested the opportunity to brief the application of the FOIA exemptions to these documents, given that the case was previously limited to the adequacy of the search for records and that none of the briefs or declarations filed by the parties to date addressed exemptions.

It is my understanding that by Order dated March 25, 2008, the Court vacated the February 14 judgment, reopened the case, and set a briefing schedule with respect to any challenge by plaintiff to OFAC's assertion that the Delisting Petitions are subject to withholding under FOIA Exemptions, as well as any challenge of plaintiff to the redaction of the records released by OFAC. I am informed that the Court rejected plaintiff's contention that the February 14 Court Order prevented OFAC from asserting any FOIA exemptions as to the Delisting Petitions, or that OFAC waived any such exemptions, or that OFAC was required to release each Delisting Petition in full. As the Court stated in its March 25 Court Order, because "the posture of the case did not permit defendant to advance the exemptions previously, the court will permit defendant to do so now."

By letter dated April 28, 2008, plaintiff asserted that "[t]he withholding of the Delisting Petitions in their entirety directly contradicts the Court's February 14, 2008 Order. . . ."

OFAC has determined that it properly complied with the Court's February 14, 2008 Order based on the Court's rejection of plaintiff's contention that OFAC was prevented from asserting any FOIA exemptions as to the Delisting Petitions, or that OFAC waived any such exemptions, or that OFAC was required to release each Delisting Petition in full. Upon further review, OFAC has determined that Exemptions 7(A) and 7(F) apply to each Delisting Petition in its entirety. Therefore, OFAC's withholding in full of the Delisting Petitions was proper. In addition, OFAC need not determine the extent to which any of the other applicable exemptions also apply to the information included in each specific Delisting Petition.

Specifically, upon further review, the Delisting Petitions, in addition to 7(A) and 7(F), are subject to the following FOIA Exemptions:

| | |
|---|---|
| Exemption 2 | Information related solely to the agency's internal rules and practices |

2

| | |
|---|---|
| Exemption 3 | Information prohibited from disclosure by statute |
| Exemption 4 | Commercial or financial information |
| Exemption 5 | Privileged information |
| Exemption 6 | Clearly unwarranted invasion of personal privacy |
| Exemption 7(A) | Pending law enforcement investigation |
| Exemption 7(C) | Unwarranted invasion of personal privacy |
| Exemption 7(D) | Confidential source identity and information |
| Exemption 7(E) | Techniques and procedures of law enforcement investigations |
| Exemption 7(F) | Information that could endanger a person's life or safety. |

### **Exemption 7(A) Applies**

Exemption 7(A) protects from disclosure each of the 291 pending Delisting Petitions. First, Delisting Petitions received by OFAC were compiled for law enforcement purposes during OFAC's performance of its law enforcement mission, including the designation process and consideration of Delisting Petitions. These records thus meet the threshold for invoking Exemption 7. Second, these documents are part of OFAC's ongoing investigation of persons who were placed on the SDN List. A Delisting Petition is a request from an individual or entity that has been designated pursuant to one of the designation programs administered by OFAC to be removed from the SDN List. *See* 31 C.F.R. § 501.807. Typically, an individual or entity filing a Delisting Petition will include evidence that the individual or entity has not engaged in the conduct giving rise to the designation, that the individual or entity is no longer engaged in that conduct, or that the individual or entity should not have been designated previously. That evidence can include information regarding the individual and his or her associates, family members, and employers.

A decision by OFAC to grant or deny a Delisting Petition has serious implications for national security. It is of great importance that such a request be given careful consideration, that the determination be grounded in the best information available, and that the agency be protected from outside attempts to influence the decision. Release of the Delisting Petitions, in whole or in part, could have a chilling effect on the willingness of designated persons, witnesses, and other sources to provide the reliable, detailed information that is crucial to OFAC's consideration of a Delisting Petition. Additionally, the investigation processes used with respect to a delisting determination are in some cases similar to those used for a designation. Disclosing a Delisting Petition prior to resolving the Delisting Petition could reveal the direction of the inquiry as well

3

as the agency's predecisional processes and investigative techniques; this could result in tampering with witnesses or other informational sources relevant to the inquiry.

Further, OFAC determined that release of any of the Delisting Petitions, whether open or concluded, would jeopardize the pending investigation and any future investigations or prosecutive efforts that have already begun or are anticipated. Once a release is made to a party under the FOIA, his use and dissemination of the information to third parties is unrestricted. OFAC also determined that release of these Delisting Petitions would jeopardize other pending investigations of related persons or entities and any future investigations or prosecutive efforts that have already begun or are anticipated. OFAC's designation and delisting processes necessarily involve the investigation of networks of individuals and entities (e.g., familial or business networks) that are closely related. OFAC's ability to investigate one individual or entity and its relationship to a larger network is a key tool of its sanctions programs. For these reasons, OFAC determined that each Delisting Petition, open or concluded, should be withheld in full under Exemption 7(A).

### Exemption 7(F) Applies

OFAC has asserted Exemption 7(F) to withhold the Delisting Petitions and other information on the Foreign Assets Control Database. Individuals and entities designated by OFAC include terrorists and narco-traffickers involved in violent activities. The release of information included in the Delisting Petitions would expose individuals--including not only the applicant but also other individuals who have provided statements or other information or are mentioned in a Delisting Petition--to threats against their life and would endanger their physical safety. Such danger is presented by the fact that an individual applied for delisting, as an inference may be drawn that such individual has provided information (possibly incriminating information) related to associates or other persons or entities.

### Other Exemptions, Such as Exemptions 6 and 7(C), Also Apply

In order to respond to plaintiff's general objection to OFAC's redaction of names from responsive documents, OFAC hereby specifically addresses the exemptions applicable as to any names in the Delisting Petitions. OFAC asserted Exemption 6, often in conjunction with Exemption 7(C), to withhold the names of individuals and other personal information in which the individuals would have a reasonable expectation of privacy, including compilations of personal data submitted as part of a Delisting Petition. There is a reasonable expectation that the information provide in a Delisting Petition will remain confidential and that it not be released publicly.

OFAC has determined that there is no public interest in the names and other personal information of these individuals, that they have a protectable privacy interest, and that the privacy interest outweighs any arguable public interest in disclosure. OFAC has determined that disclosure of the names or other personal identifying information could reasonably be expected to constitute an unwarranted invasion of privacy or would constitute a clearly unwarranted invasion of personal privacy, because such disclosure could result in their public association with a sanctions investigation, have a stigmatizing effect on their personal and professional character,

4

and/or pose a threat to their safety. OFAC has determined that the disclosure of this information would reveal sensitive personal information about individuals and their relationship to or role in providing investigative information or assisting in the administration of sanctions programs. Because of the inherent nature of the sanctions investigations, any disclosure could engender comment and speculation about those individuals, and could result in unwarranted public scrutiny or potential harassing phone calls to elicit sensitive investigation information.

Let us know if you have any additional questions or comments.

Sincerely,

Virginia R. Canter
Associate Director, Resource Management
Office of Foreign Assets Control


Cc:    Peter Wechsler, Esq.



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

Thomas R. Burke, Esq.
Davis Wright Tremaine LLP
505 Montgomery Street
Suite 800
San Francisco, CA 94111

RE:   Lawyers' Committee For Civil Rights of San Francisco Bay Area v. United States
      Department of the Treasury, No. C 07-2590 (PJH)

Dear Mr. Burke:

This is in response to your letter of April 28, 2008 regarding the redactions made and exemptions asserted by the Office of Foreign Assets Control (OFAC) in its supplemental FOIA response of March 14, 2008 (the Supplemental Response). In a separate letter, we address the provisions in your April 28 letter regarding OFAC's processing of delisting petitions.

OFAC's Supplemental Response included data entries regarding the Specially Designated Nationals List (SDN List) in the OFAC database of calls to the Congressional liaison (item 1), in the Foreign Assets Control Database (FACDB) (item 2), and in the OFAC website (item 3), as well as removal letters sent by OFAC granting a delisting petition (Removal Letters) (item 4). You challenged the scope of some redactions made by OFAC for each of these four items. Upon a new review of the redacted information, OFAC affirms the initial determinations in its Supplement Response, as discussed further below.

You objected to OFAC's redaction of certain information as follows: the name of a Congressional liaison (item 1) and the names of the individuals to whom OFAC sent its responses to delisting petitions (item 4). OFAC made each of these redactions pursuant to Exemption 6 (as well as Exemption 7(c) and 7(F), as discussed below) which permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(6). If it has been determined that a privacy interest is threatened by a requested disclosure, Exemption 6 calls for the agency to balance any public interest in release of the information against the subject's privacy interest. The only recognized public interest under the FOIA is that which sheds light on the agency's performance of its statutory duties. In this case, OFAC determined that each of the individuals maintains a privacy interest, and that such interests outweigh any arguable public interest in the release of his or her name because the release of this information would not shed light on the activities of the government. Finally, OFAC determined that there is no public interest in the release of the names of the individuals mentioned in the records at issue and, after balancing the relevant factors, the release of the information would "constitute a clearly unwarranted invasion of personal privacy."

The congressional liaison mentioned in the OFAC database of calls as well as other low-level government employees have an expectation of privacy, and that expectation is not waived merely by virtue of his or her employment with the government. Public officials or public figures do not, by virtue of their position, surrender all rights to personal privacy. Other individuals connected with an investigation file or other sanctions administration functions have a protectable privacy interest. OFAC has determined that the disclosure of these names could result in them being publicly associated with, for example, a narco-trafficking or terrorism sanctions investigation, having a stigmatizing effect on their personal and professional character and/or posing a threat to their safety.

With respect to the removal letters, you err in asserting that they should not be redacted because they are "form letters" that "expressly note that the individuals' names are to be published in the Federal Register and on OFAC's website." April 28 Letter at 1-2. The removal letters state, "A notice of your removal ... will appear on the Office of Foreign Assets Control Website." The *contents* of the removal letters are not published in the Federal Register or on the OFAC website. Although OFAC publishes the *names* of persons who are removed from the SDN list, OFAC does not publish the removal letter or otherwise disclose whether the removal of the name resulted from the filing of a delisting petition. Accordingly, OFAC has determined that the individuals retain an expectation of privacy in their names being associated with a specific removal letter.

In redacting personal information from the removal letters, OFAC relied upon Exemption 6 in conjunction with two law enforcement exemptions, 7(F) and 7(C). Exemption 7(F) permits the withholding of law enforcement related information necessary to protect the physical safety of individuals. OFAC determined that, due to the nature of the designation process and the SDN List, release of the names of individuals who submitted delisting petitions could reasonably pose a threat to their lives and physical safety. Exemption 7(C) is the law enforcement exemption that is most comparable to Exemption 6, and it permits the withholding of personal information in law enforcement records the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. OFAC used Exemption 7(C) to redact the names, addresses, and other personally identifiable information appearing in these records. The courts have recognized that there is a strong privacy interest in one's name appearing in law enforcement records. As stated above, OFAC has determined that the privacy interest in the names and other personally identifiable information in these records outweighs any arguable public interest in the disclosure of that specific information. OFAC used this exemption in its recognized law enforcement capacity.

You asserted that OFAC improperly redacted "excessive narrative information," which you describe as "whole paragraphs" or "sentences," from some data entries related to Congressional inquiries (item 1) and the OFAC website (item 3). After reviewing the redacted information, OFAC determined that the information was not "narrative information" submitted by a person regarding the effect of being designated on the SDN List. OFAC determined that the information was appropriately redacted under Exemptions 2 and 5 (as well as Exemption 6 for the reasons stated above) and that no part of that information was reasonably segregable.

2

Exemption 2 allows for the withholding of information that is related solely to the internal personnel rules and practices of an agency. Exemption 2 protects internal information, the disclosure of which would risk circumvention of a legal requirement (commonly known as "High 2" information). Exemption 2 also protects internal information of a less significant nature, such as administrative routing notations and agency rules and practices (commonly known as "Low 2" information), where there is no legitimate pubic interest in its release and its release would pose an undue burden on the agency. OFAC properly relied upon Exemption 2 to redact certain information.

Exemption 5 exempts from release "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been construed to exempt those documents normally privileged in the civil discovery context, including documents protected by the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege. The deliberative process privilege, which guards against the chilling effect that disclosure might have on frank and open discussions within deliberative governmental bodies, protects from release records that are predecisional and a direct part of the process by which governmental decisions and policies are made. OFAC properly relied upon Exemption 5 to redact information related solely to OFAC's internal deliberative and predecisional processes, intra-agency discussions, opinions as to the nature of the transactions and internal pre-decisional recommendations as to how these transactions should be processed.[1]

Let us know if you have any additional questions or comments.

Sincerely,

*[signature]* 5/22/08

Virginia R. Canter
Associate Director, Resource Management
Office of Foreign Assets Control

Cc:    Peter Wechsler, Esq.

---

[1] OFAC also relied on other exemptions to redact other information as appropriate (e.g., Exemption 4 as to commercial or financial information.)

3