# ALAN R. KABAT

# EXHIBIT A

## A-1 through A-41

LAW OFFICES
## BERNABEI & KATZ, PLLC
1773 T STREET, N.W.
WASHINGTON, D.C. 20009-7139
—
(202) 745-1942
TELECOPIER: (202) 745-2627
E-MAIL: BERKATZLAW@AOL.COM
WEBSITE: WWW.BERNABEIANDKATZ.COM

LYNNE BERNABEI
DEBRA S. KATZ °
LISA J. BANKS
ARI M. WILKENFELD +
ALAN R. KABAT +
GENA E. WILTSEK °
AVI L. KUMIN *
RASHIDA A. ADAMS

OF COUNSEL:

DAVID J. MARSHALL
ELAINE D. KAPLAN

+ ADMITTED IN MD ALSO
° ADMITTED IN NY ALSO
* ADMITTED IN CA ALSO

**By Hand Delivery**
May 14, 2004

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
ATTN: Licensing Division
1500 Pennsylvania Avenue, N.W. (Annex)
Washington, D.C. 20220

Re: <u>Al Haramain Islamic Foundation, Inc., SDG # 305 (License Request Pending)</u>

Dear Mr. Newcomb:

The assets of Al Haramain Islamic Foundation, Inc. ("AHIF"), were blocked pending investigation on February 18, 2004. On April 23, 2004, the Office of Foreign Assets Control ("OFAC") indicated by letter that it was considering designating AHIF as a Specially Designated Global Terrorist ("SDGT"), pursuant to Executive Order 13224 and the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* The letter gave AHIF twenty-one (21) days, until May 14, 2004, in which to respond to the unclassified administrative record.

I.    **Pending Procedural Matters.**

As you are aware, there are several procedural matters which remain unresolved. On May 3, 2004, we requested an extension of time within which to respond. Despite our follow-up inquiry on May 5, 2004, we have not received a response to that request. Furthermore, on March 10, 2004, our firm requested a license authorizing it to be paid legal fees and costs, and on April 30, 2004, the firm of Gessler, Hughes, Socol, Piers, Resnick & Dym requested a similar license to provide representation in conjunction with Bernabei & Katz, PLLC. OFAC has not yet responded to these requests, which I reiterated in my May 5, 2004 letter. We again request that OFAC grant AHIF additional time within which to prepare its response to the proposed designation and to assert its objections to the designation process.

On behalf of AHIF, we also object to OFAC making any designation decision prior to resolving the outstanding procedural matters. However, in light of OFAC's failure to promptly

PUBLIC-AR0361

KABAT Exhibit A-1

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 14, 2004
Page 2

resolve the procedural matters, AHIF provides the following preliminary response to the proposed designation and reserves the right to supplement this response at any time.

## II.    Absence of Legal Standards.

As an initial matter, AHIF objects to OFAC's failure to provide any clarification regarding the legal standards it utilizes in making designation decisions. As you are undoubtedly aware, two federal court rulings have found the Treasury Department's designation procedure to be constitutionally infirm. *See National Counsel of Resistance of Iran v. Department of State*, 251 F.3d 192 (D.C. Cir. 2001); *United States v. Rahmani*, 209 F. Supp. 2d 1045 (C.D. Cal. 2002), *appeal pending*.

Although the regulations at 31 C.F.R. § 594.101 *et seq.* articulate prohibitions governing SDGT's and procedures for licensing, AHIF is unaware of any statute, administrative rule or regulation, or any other source of law which provides standards for the designation of an entity as an SDGT after having its assets blocked pending investigation. For instance: (a) what "evidence" will be considered; (b) how does OFAC assure itself of the trustworthiness of that evidence; (c) how much evidence is required or what is the standard of proof required to establish that an entity should be designated; and, (d) how does OFAC assure itself that the entity being designated (AHIF, in this case) knew about and condoned actions by other affiliates of the al-Haramain Foundation (Saudi Arabia), if such conduct is the basis for the designation. This last factor is particularly essential here where OFAC designated the Somalian and Bosnian offices of the al-Haramain Foundation in March of 2002, and yet Treasury Secretary O'Neill expressly stated that the Saudi charity itself was not being designated because it "is dedicated to promoting Islamic teachings." See U.S. Department of State, "O'Neill Cites U.S.-Saudi Action Against Terror; Saudi Foundation's Somalia and Bosnia Offices Targeted" (Mar. 11, 2002).[1] This acknowledgment on the part of the Treasury Secretary that the Saudi al-Haramain Foundation was involved in reputable charitable work, without knowledge of the alleged bad acts of several of its overseas affiliates, undermines OFAC's position regarding AHIF, which is a wholly independent U.S. corporation, and had no relationship whatsoever with the Bosnia and Somalia affiliates.

## III.    OFAC's Improper Reliance on Classified Documents.

Next, AHIF objects to OFAC's reliance on classified documents. It is not possible for AHIF to rebut evidence of which it is not aware. This point is best illustrated by reviewing the

---

[1] See U.S. Department of State, "O'Neill Cites U.S.-Saudi Action Against Terror; Saudi Foundation's Somalia and Bosnia Offices Targeted" (Mar. 11, 2002), <http://usinfo.state.gov/topical/pol/terror/02031108.htm>.

PUBLIC-AR0362

KABAT Exhibit A-2

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 14, 2004
Page 3

administrative record produced in this matter. There is not a shred of evidence linking AHIF to terrorism in this administrative record. Therefore, the decision to block AHIF's assets pending investigation and the designation as an SDGT, if OFAC makes such a designation, will necessarily be based on evidence to which AHIF has had no opportunity to offer a direct and coherent response. Despite this opportunity to provide the present submission, AHIF will not have been afforded any real process to respond if it is not aware of the basis of the allegations. *See e.g.*, *Goss v. Lopez*, 419 U.S. 565, 580 (1975) ("Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights.") (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring)).

The use of secret or classified evidence raises serious due process problems, and should only be allowed in the most extreme circumstances. *See, e.g.*, *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995) ("Because of the danger of injustice when decisions lack the procedural safeguards that form the core of constitutional due process, the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] balancing suggests that use of undisclosed information in adjudications should be presumptively unconstitutional. Only the most extraordinary circumstances could support [such a] one-sided process."); *Rafeedie v. INS*, 880 F.2d 506, 516 (D.C. Cir. 1989) ("Rafeedie – like Joseph K. in *The Trial* – can prevail before the Regional Commissioner only if he can rebut the undisclosed evidence against him, i.e., prove that he is not a terrorist regardless of what might be implied by the Government's confidential information. It is difficult to imagine how even someone innocent of all wrongdoing could meet such a burden."). The circumstances that might warrant the use of secret or classified evidence are not present with respect to AHIF.

## IV.    OFAC's Improper Reliance on Hearsay Evidence.

As to the "unclassified" administrative record, AHIF strenuously objects to OFAC's reliance on the hearsay evidence.[2] Many of the items contained in the administrative record are news accounts and in at least one instance the source of the account is "unidentified."[3] Several of

---

[2] OFAC's inclusion in the administrative record, without explanation, of a multi-count indictment charging one Mohammad Ali Hassan Al-Moayad with providing material support to Hamas and al Qaeda between 1997 and 2002 is particularly troubling since there is no indication or allegation that he had any contact whatsoever with AHIF, or any person affiliated with AHIF.

[3] The U.S. Court of Appeals for the D.C. Circuit, in other contexts, has recognized the problems with relying on hearsay evidence, even that published in well-known sources. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 108 (D.C. Cir. 2001) (en banc) (per curiam) ("[W]e need to state a few words about the state of the record. All we have are the published accounts . . . . These accounts were not admitted in evidence. They may be hearsay."); *Metropolitan Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We seriously question whether a *New York Times* article is admissible evidence of the truthfulness of its contents.").

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 14, 2004
Page 4

the news articles from the 1990's concern an office in Albania which, according to the press accounts, called itself "Al Haramain" and an individual, allegedly associated with that organization, one Ahmed Ibrahim Assayed al-Nagar. While it appears that serious allegations have been made against Mr. al-Nagar, there is nothing in the record connecting Mr. al-Nagar or the alleged Albanian incident in 1998 to AHIF. Moreover, as AHIF was not formally incorporated until March 1999, there is no factual support for any allegation that AHIF was involved with these Albanian entities. Finally, OFAC has never designated this Albanian office as a terrorist, so it is impossible to divine what possible relevance this entity could have to the designation of AHIF.

## V.    OFAC's Administrative Record Does Not Support Designating AHIF.

Mr. Newcomb, in his April 23, 2004 letter, stated that OFAC was "considering designating AHIF as a Specially Designated Global Terrorist pursuant to Executive Order 13224 and the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*" Executive Order 13224 provides for the blocking of property of persons who commit, assist, sponsor, or support "acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States," or who are associated with such persons. *See* Exec. Order 13224, at § 1. There is no evidence, hearsay or not, that AHIF has committed or assisted acts of terrorism, or that it is knowingly associated with those who do so.

AHIF is literally at a loss as to how to respond given the paucity of relevant information contained in the "unclassified" administrative record. It has, however, come to AHIF's attention that allegations have surfaced in the media, clearly based on documents seized by the U.S. government, that AHIF has assisted in distributing translated Qur'ans to American prisoners which contain an addendum that one commentator claims "call[s] for jihad against the infidels and against the West."[4] First, AHIF objects to this misleading characterization of the addendum to the version of the Qur'an distributed by AHIF, since the publication does not constitute any immediate threat, as would be required to hold AHIF liable for its contents. *Brandenburg v. Ohio*, 395 U.S. 444, 448-49 (1969) (per curiam). Second, any designation on this basis would violate the First Amendment rights of AHIF, a United States corporation.[5] *Humanitarian Law Project v. Reno*, 352 F.2d 382, 403 (9th Cir. 2003) ("When a statute criminalizes activity

---

[4] To the extent that the appendix to this publication forms any basis for any designation of AHIF, we object and request leave to offer testimony from academic and religious scholar(s) on the meaning of this appendix.

[5] It would be manifestly improper for OFAC to designate AHIF on the basis of this publication since OFAC's regulations allow for the distribution of "information and informational materials" which are defined as "publications, films, posters . . . and informational articles" by Specially Designated Terrorists ("SDNs"). *See* 31 C.F.R. §§ 595.206, 594.305-594.306.

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 14, 2004
Page 5

safeguarded by the First Amendment, we are concerned with 'the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'") (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)); *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) ("Someone who advocates the cause of the PKK could be seen as supplying them with personnel . . . . But advocacy is pure speech protected by the First Amendment."), *cert. denied*, 532 U.S. 904 (2001). Finally, all AHIF did was to distribute publications that were written and prepared by others, and AHIF cannot be designated on that basis any more than a book dealer is responsible for the contents of every book available in its stores.

Based on the grand jury investigation conducted in Oregon, it appears that the potential designation may be based on AHIF's efforts in early 2000 to raise money for relief work in Chechnya and the subsequent transfer of approximately $180,000 from AHIF's bank account in March of 2000 to the al-Haramain Foundation in Saudi Arabia. If this is to be the basis of a designation, it is imperative that OFAC consider the evidence that follows, which demonstrates that this relief project was authorized at the highest levels of the Saudi and Russian governments.

Beginning in the fall of 1999, Dr. Al Swailem, the chair of the Saudi Arabian Red Crescent Society ("Saudi Red Crescent"), an affiliate of the International Red Cross, was in contact with the Russian Ambassador to Saudi Arabia about the war in Chechnya (the second in five years) and its devastating impact on the Muslim community, including the refugees who were displaced to camps elsewhere in the northern Caucasus. The Saudi Joint Relief Committee on Kosovo and Chechnya ("SJRC") was negotiating the provision of humanitarian aid to the region through a consortium of charitable organizations, including the Saudi Red Crescent.[6]

Crown Prince Abdullah bin Abdulaziz Al-Saud, the *de facto* ruler of Saudi Arabia, by memorandum dated November 9, 1999 to Prince Naif (Saudi Minister of Interior and General Advisor to SJRC), reported that the Russian Ambassador to Saudi Arabia "has assured that his government welcomes the Saudi support" of providing humanitarian aid to the Chechnya refugees. Prince Abdullah also stated that the Russian Ambassador will ensure that Russia will favorably present and support the Saudi relief efforts. Thus, Prince Abdullah concluded and ordered that:

---

[6] The United Nations Secretary General has acknowledged the SJRC's ongoing work in Kosovo, and has requested that the SJRC provide further humanitarian aid. <u>See</u> Letter from K. Annan to HRH Crown Prince Abdullah (Mar. 20, 2001) (attached hereto as Exhibit 1); <u>see also</u> United Nations High Commissioner for Refugees, "UNHCR-NGO PARinAC Country Report (Saudi Arabia)" (Sept. 24, 2000) (summarizing operations of and contacts with SJRC and several other charities) (attached and incorporated hereto as Exhibit 2).

PUBLIC-AR0365

KABAT Exhibit A-5

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 14, 2004
Page 6

I appreciate your suggestion that we should provide support under the supervision of the Saudi Joint Relief Committee for Kosovo and Chechnya, and it should be reflected by the media and internationally documented.

I am informing you that I approved that. So, proceed accordingly.

See Letter from HRH Prince Abdullah to Prince Naif (Nov. 9, 1999) (attached and incorporated hereto as Exhibit 3).[7]

Several weeks later, on November 30, 1999, Prince Turki bin Fahd bin Jilawi Al-Saud, Chair of the Chechnya Committee of the SJRC for Kosovo and Chechnya, sent a letter to the al-Haramain Foundation (Saudi Arabia), requesting that it collect donations for Kosovo and Chechnya. This letter established various guidelines for raising and accounting for funds, *e.g.*, use of logo, official receipts, monies to be deposited in one of two bank accounts, receipts sent to general treasury, weekly audits of accounts. See Letter from Prince Turki to al-Haramain Foundation (Nov. 30, 1999) (attached and incorporated hereto as Exhibit 4).[8]

In December 1999, the Russian Ministry for Civil Defense Affairs, Emergency and Removing Natural Disasters and the SJRC for Kosovo and Chechnya signed a Memorandum of Accord for providing humanitarian aid to the needy people of Northern Chechnya. See Memorandum of Accord (Dec. 1999) (attached and incorporated herein as Exhibit 5). Pursuant to the Accord, the Russian Ministry agreed to provide facilities for transporting aid from Saudi Arabia to Russia, exempt the aid from import taxes, and help obtain the goods from the local markets if needed. The SJRC agreed to coordinate its work with the Russian Ministry, provide detailed information about the relief delivered, and place its logos on the Russian Ministry's trucks. Id.

According to notes from an SJRC Chechnya Committee meeting on January 1, 2000, the funds collected from Al Haramain and three other Saudi charities were to be distributed over the next three months. The Committee adopted an "Action Plan for Relief in Chechnya" which set forth various tasks to be implemented, including the establishment of an administrative team to execute and supervise the action plan, preparing a budget, planning for housing, feeding centers, medical care, and education in the field. All requests for services were to be presented to Prince Turki, the Chechnya Committee chair, who would present them to the SJRC for review, advice,

---

[7] An unofficial translation of Prince Abdullah's memorandum is included as part of Exhibit 3.

[8] As for Exhibits 4-8, we do not have official, complete translations of the Arabic originals.

PUBLIC-AR0366

KABAT Exhibit A-6

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 14, 2004
Page 7

and approval. <u>See</u> Meeting minutes, SJRC Chechnya Committee (Jan. 1, 2000) (attached and incorporated herein as Exhibit 6).

Accordingly, on January 4, 2000, the al-Haramain Foundation made a preliminary deposit of 5,250,000 in Saudi Riyals in the Saudi Joint Relief Committee account at Al Rajhi Bank for the Chechnya project. <u>See</u> Deposit slip (Jan. 4, 2000) (attached and incorporated herein as Exhibit 7).

On February 14, 2000, the Chechnya Committee of the SJRC reported to Dr. Al Swailem that funds were received from Saudi charities, including the al-Haramain Foundation, with funds being transferred to the Saudi Embassy in Moscow for the Chechnya humanitarian aid projects. The Chechnya committee had a series of meetings with the Russian Ambassador to Saudi Arabia and other embassy representatives. <u>See</u> SJRC Chechnya Committee report (Feb. 14, 2000) (attached and incorporated hereto as Exhibit 8). Later that month, Dr. Al-Fiki of Cairo (Egypt) made a donation of $150,000 to AHIF for the Chechnya relief efforts. It is these funds that are the subject of the Oregon investigation into AHIF. These funds were transported, along with smaller donations that AHIF had received for Chechnya humanitarian relief, from AHIF's Oregon bank account, using travelers' checks and cashiers' checks, to the al-Haramain Foundation in Riyadh. The al-Haramain Foundation issued receipts for these funds, which totaled 703,514 Saudi Riyals, and confirmed that the money was spent in humanitarian relief work for the Chechen refugees. <u>See</u> Affidavit of Al Haramain Islamic Foundation (May 3, 2004) (attached and incorporated hereto as Exhibit 9).

Therefore, the funds that AHIF collected and transferred on behalf of the Chechnya refugees were part of a Saudi government project which was approved at the highest levels of both the Saudi and Russian governments. Even if there were some reliable evidence that a portion of this money was misspent – information of which AHIF is unaware – that information cannot form the basis for any designation of AHIF without any evidence showing that persons associated with AHIF knowingly participated in this misappropriation. In fact, the opposite is true: AHIF directors specifically took precautions to ensure that the money collected for Chechnya relief was transferred to a Saudi government entity that itself ensured that the funds went to Chechen refugees, all with the approval and assistance of the Russian government.

In conclusion, there is absolutely no evidence that we are aware of in the administrative record that indicates that AHIF knowingly aided any terrorist or terrorist organization. Therefore, we respectfully request that OFAC lift the blocking of AHIF's assets and vacate the pending designation. As we stated earlier, this is a preliminary response, and we renew our request for an additional thirty (30) day period to submit a further response.

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 14, 2004
Page 8

Sincerely,

Lynne Bernabei

Enc.

cc: Cari Stinebower, Esquire
    Mary Rowland, Esquire

**Exhibit List**

1.   Letter from K. Annan to HRH Prince Abdullah (Mar. 20, 2001).

2.   United Nations High Commissioner for Refugees, "UNHCR-NGO PARinAC Country
     Report (Saudi Arabia)" (Sept. 24, 2000).

3.   Letter from HRH Prince Abdullah to Prince Naif (Nov. 9, 1999).

4.   Letter from Prince Turki to al-Haramain Foundation (Nov. 30, 1999).

5.   Memorandum of Accord, Russian Ministry for Civil Defense Affairs, Emergency and
     Removing Natural Disasters and the SJRC for Kosovo and Chechnya (Dec. 1999).

6.   Meeting minutes, SJRC Chechnya Committee (Jan. 1, 2000).

7.   Deposit slip (Jan. 4, 2000).

8.   SJRC Chechnya Committee report (Feb. 14, 2000).

9.   Affidavit of Al Haramain Islamic Foundation (May 3, 2004).

PUBLIC-AR0369

KABAT Exhibit A-9

بسم الله الرحمن الرحيم

المملكة العربية السعودية

هيئة الهلال الأحمر السعودي

مكتب الرئيس

| | |
|---|---|
| رقم الوارد : | _____ |
| التاريخ : | _____ |
| رقم الاحالة : | _____ |
| التاريخ : | _____ |
| المرفقات : | _____ |

### مذكرة داخلية

| | | | |
|---|---|---|---|
| ☐ المكتب | | ☐ سعادة النائب | |
| ☐ سعادة المراقب المالي | | ☐ سعادة مدير عام الشئون المالية والادارية | |
| ☐ سعادة مدير المتابعة | | ☐ سعادة مدير عام الاصناف والاغاثة | |
| ☐ سعادة مدير العلاقات العامة | | ☐ سعادة مدير عام التخطيط والميزانية | |
| ☐ _____ | | ☐ سعادة مدير عام الاتصالات والنقل | |
| | | ☐ سعادة مدير عام التدريب والتطوير | |
| | | ☐ سعادة مدير عام التموين | |
| | | ☐ سعادة مدير عام المشاريع | |

| | | | |
|---|---|---|---|
| ☐ لإرفاق الاســـــاس | | ☐ لإكمال الـــــــــلازم | |
| ☐ للحفظ | | ☐ لإبداء الرأى والافادة | |
| ☐ _____ | | ☐ للتفاهــــــــــم | |

### الشرح :

PUBLIC-AR0370

**Exhibit 1**
Al Haramain Islamic Foundation, Inc.

KABAT Exhibit A-10

FROM :

Your Royal Highness,

20 March, 2001

In my name and in the name of United Nations in Kosovo, I would like to thank you and the Kingdom of Saudi Arabia for its humanitarian efforts that is represented in its work in Kosovo. This information that I have from our UN office in Kosovo reflects the respect, and gratitude of the United Nations.

The United Nations Interim Mission In Kosovo (UNMIK) have brought to my knowledge a worthwhile opportunity for the Kingdom of Saudi Arabia to. collaborate with the UNMIK on a program to provide an opportunity to educate a group of young and qualified students of Kosovo in universities outside Kosovo.

I am confident that you share my belief that the education of the youth holds the key to a multi-ethnic, tolerant, and peaceful Kosovo. Due to the inadequacy of the local university education in Kosovo, these young people need help in getting their education and to help them overcome a dangerous unemployment that has exceeded 80% between the youth in Kosovo.

This program will have a long-term effect on the Kosovar's society and will also have the respect of the world society and the United Nations.

The representatives of UNMIK will be very happy to collaborate with the Saudi Joint Relief committee in Kosovo, or whomever you elect, in choosing the appropriate students and locating their study countries.

With your help and support, the Kingdom of Saudi Arabia lends critical support to provide these young men and women with the tools for developing the social, economic, and moral fabric of their community, eventually leading to region-wide stability.

Please accept, your highness, the assurances of my highest consideration.

Kofie Anan
UN Secretary General

His Royal Highness
Crown Prince Abdullah Bin Abdul Aziz Al-Saud
First Deputy Prime Minister
Al-Riyadh
Kingdom of Saudi Arabia

PUBLIC-AR0371

KABAT Exhibit A-11

UNITED NATIONS
HIGH COMMISSIONER
FOR REFUGEES
*Kingdom of Saudi Arabia*

P. O. Box 94003 Riyadh 11693
Tel : 482-8635 / 488-0049
Fax : 482-8737
Telex : 4C7994 UNS SJ



الأمــم المتحـــدة
المفوضيــة العليــا
لشــؤون اللاجئيــن
المملكة العربية السعودية

ص.ب ٩٤٠٠٣ الرياض ١١٦٩٣
تلفون : ٤٨٨٠٠٤٩ / ٤٨٢٨٦٣٥
فاكس : ٤٨٢٨٧٣٧
تلكس : UNS SJ ٤٠٧٩٩٤

التاريــخ : ٢٠٠٠/٩/٢٣
الموافــق : ١٤٢١/٦/٢٥
الرقــم : EO/SJRC/607 /00 ٦٠٧/٠٠

معالي الدكتور عبد الرحمن السويلم

رئيس اللجنة السعودية المشتركة للإغاثة

ورئيس جمعية الهلال الأحمر السعودي

تحية طيبة وبعد:

وعطفاً على خطابنا رقم ٦٠١/٠٠ بتاريخ ٢٠٠٠/٩/٢٠ بشأن عقد الإجتماع الإقليمي الثاني للشراكة
(PARINAC) في الفترة ما بين ٦-٩ نوفمبر ٢٠٠٠ في تونس نتشرف بأن نرفق لكم طية تقرير حول الشراكة بين
مفوضية الأمم المتحدة لشؤون اللاجئين والمنظمات غير حكومية .

برجاء تكرمكم بالإطلاع والإفادة برؤيتكم حول ذلك التقرير لنتم تغذيته أثناء الإجتماع المذكور أعلاه .

شاكرين لكم حسن تعاونكم وتقضلوا بقبول فائق الإحترام والتقدير.

المخلـــص

د. مصطفى عمـــر

رئيس بعثة المفوضية بالمملكـــة

ومنسق نشاطاتها في منطقة الخليـــج

PUBLIC-AR0372

**Exhibit 2**
Al Haramain Islamic Foundation, Inc.

KABAT Exhibit A-12

## UNHCR-NGO PARinAC Country Report
### ( Saudi Arabia)

### A.    Introduction

NGOs in the Gulf region had been in existence for a long time. The core of their activities tended to be nationally and/or regionally oriented and did not in general extend to refugees and IDPs worldwide. However, during the past period international and regional developments have generated not only increasing interest and greater involvement of Gulf states and NGOs in the international relief work, but also considerable cooperation with UNHCR. UNHCR recent presence in the region built on this evolving interest and tremendous potential through various forms of cooperation aimed at achieving shared objectives.

Presently several Gulf NGOs with substantial human and financial resources are involved in international aid and relief programs and important contributors to UNHCR projects in several areas such as Chychnya and Kosovo, chief among them are:

- International Islamic Relief Organization (IIRO): one of the largest Saudi NGOs and a leading contributor to humanitarian aid programs worldwide. During 1998 IIRO spent approximately USS 3 million on relief operations alone. At present IIRO maintains 26 external offices and 24 missions in more than 75 countries.
- Saudi Joint Relief Committee (SJRC): formed in 1999 to coordinate the humanitarian and relief activities and to act as an umbrella for other NGOs active on the international level including the International Islamic Relief Organization(IIRO),Saudi Red Crescent(SRC),Muslim World League(MWL),Muslim Youth Assembly(MYA),Al-Haramain Foundation(HF),Islamic Affairs Foundation(IAF)and Mekkah Charitable Foundation(MCF). SJRC was fully involved in providing humanitarian aid during the Kosovo crises that mounted to US$ 41.5 million.
- Qatar Charitable Society (QCS): emerged in Qatar as the main provider to humanitarian causes and quickly became  a successful organizer of relief and aid activities. QCS annual average operational activities amount to USS 4 million covering projects in more than 27 countries.
- Saudi Red Crescent (SRC): one of the oldest Saudi NGOs, which has been involved in relief activities on a wide scale in Chechnya and Kosovo.
- Al Eslah Society in Bahrain : directed by Sheikh Issa Bin Mohamed Bin Abdullah Al Khalifa is the most prominent NGO in Bahrain.  The society has been nominated as  NGO focal point for Bahrain.

It was against this background , that UNHCR mandate and activities were introduced early on to NGOs and joint efforts have since continued to develop a long term constructive and operational partnership.

PUBLIC-AR0373

KABAT Exhibit A-13

**B.    Basic Country Information:**

Saudi Arabia, like its neighbouring Gulf countries, is not party to any international instrument relating to refugees and has no asylum policy. However, the Saudi Government has accepted, following signature of MOU in 1993, that UNHCR extends its mandate to refugees in KSA.

UNHCR's presence in Saudi Arabia goes back to 1987 when a Liaison Office was created for fund raising and public relations purposes. In 1992, the office was elevated to the level of Branch Office in order to deal with the humanitarian emergency and to provide protection to the 33,000 Iraqi refugees in Rafha camp who were granted temporary asylum by Saudi Arabia. On September 1998, BO Riyadh became a Regional Co-ordination Centre (RCC) assigned with the role of coordinating and overseeing UNHCR operations and overall activities in the Gulf region.

**C.    Refugees/Returnees statistics and general overview**

In the aftermath of the Gulf war and civil unrest in the Iraqi southern provinces, KSA granted asylum to about 33,000 Iraqi refugees and UNHCR was then authorised to monitor their protection and assistance in the Rafha refugee camp.

As local integration was not feasible and voluntary repatriation was difficult to promote, UNHCR has focused its efforts mainly on resettlement and was so far able to resettle 24,854 and in parallel to monitor the self induced return of 3,157. But resettlement from Rafha, which used to be the largest world-wide from 1992 to 1996, was stopped in 1997 due to circumstances beyond UNHCR's control.

However, thanks to tremendous efforts deployed by UNHCR, resettlement resumed in June 2000 with the arrival of the US mission and a Swedish mission in August/September. This renewed interest in resettlement will hopefully open new prospects to greater burden-sharing amongst the traditional resettlement countries and enable UNHCR to smoothly implement its Exit strategy in reasonable time-frame.

Since September 1998 RCC Riyadh has, in addition to its coordinating and supervisory role of UNHCR's activities in the Gulf region, started extending its protection mandate in KSA, Qatar, Bahrain and Oman to include asylum seekers and persons of concern to UNHCR like Iraqis outside Rafha camp, Somalis, Sudanese, Ethiopians, Eritreans, Afghans. Local authorities have demonstrated their willingness to see UNHCR implement its full mandate in their respective countries. They also showed their readiness to accept the refugees pending their resettlement in third countries. RCC managed to successfully expand its protection role as it was so far able to intervene with the concerned authorities to stay any

PUBLIC-AR0374

recognized refugees under UNHCR mandate and to ensure that basic refugees' human rights are respected.

## D.  UNHCR and NGOs

Cooperation with NGOs in the Gulf region is relatively new. It dates back to 1994 after the conclusions of the Oslo meeting in June 1994. UNHCR and its activities were introduced to the NGOs community in Saudi Arabia and the region. NGOs with operational capacities to work with UNHCR in addition to areas of common interest were identified. It was also acknowledged that partnership between NGOs and UNHCR requires mutual respect, optimal use of resources, full benefit from expertise and concentrated efforts to implement assistance programs for refugees.

Despite the fact that UNHCR's presence and activities in the region are still in the early stage of development, UNHCR was able to establish close relationship with major NGOs. Hence, regular and periodic contacts are being maintained with NGOs on matters of common concern. Several NGOs have become regular dynamic attendants in the EXCOM yearly meetings. Also many NGOs participate and benefit from training offered by UNHCR in the CASWANAME region. Furthermore, training programs have been tailored to address NGOs requirements in matters related to protection, refugee law, familiarization with UNHCR's mandate, rules and procedures, emergency management, etc...

Recently a framework agreement was signed between UNHCR and Qatar Charitable Society on 3 march 2000. The agreement calls for building an active operational partnership through common commitment to understanding each other's role and responsibilities.

A proposed cooperation agreement with Saudi Joint Relief Committee (SJRC) is being pursued. RCC is confident that continued efforts in this direction will further cement cooperation with NGOs and eventually systematize bilateral relations.

## E.  Accomplishments

### 1.  Awareness

Recent awareness activities continued to build on the out come of the awareness campaign of 1997/98 in which UNHCR's profile and credibility in Saudi Arabia and other GCC countries had improved. Awareness appreciation of UNCHR's mandate ,regional and global operations and accomplishments and more importantly the need for cooperation and support for UNHCR were created within government and non government sectors.

PUBLIC-AR0375

KABAT Exhibit A-15

As such communications and regular meetings continued with major Gulf NGOs during which UNHCR's operations, emergency situations and financial needs were discussed.

Public information material and fund raising requirements were distributed to NGOs

Press interviews (incl. Saudi Radio-French section) on UNHCR world wide activities highlighting NGOs contributions were given to several major Arabic and English dailies.

2.    **Fund Raising**

In the year 1999 the total amount of contributions to UNHCR programs raised by RCC has reached US$ 1,400,355 , of which US$ 1,050,500 are from NGOs :

Qatar Charitable Society contributed to UNHCR the amount of US$ 400,500 for buying tents for refuges in Chechnya and US$ 250,000 for UNICEF through UNHCR (not included in the overall sum of contributions).

Saudi Joint Relief Committee (SJRC) contributed to UNHCR the amount of US$ 600,000 for the school repair/rehabilitation project of 30 schools in Kosovo and they signed and MOU in this context.

AGFUND (HRH Prince Talal Bin Abdul Aziz) contributed to UNHCR the amount of US$ 50,000 to the Relief Assistance Program to the refugees victims of Kosovo catastrophic events.

As for the year 2000 the amount of contributions and pledges have reached the amount of US$ 1,359,604 of which US$ 655,826 are from NGOs :

Qatar Charitable Society contributed US$ 200,000 for water and sanitation sector within the UN Inter-Agency Appeal for Northern Caucasus and pledged to contribute the amount of US$ 250,000 for water and sanitation program in Chechnya and US$ 134,000 to UNHCR activities in Kosovo.

Saudi Red Crescent (SRC) contributed to UNHCR the amount of US$ 21,826 to cover the expenses of the EMPT which was held in Riyadh in December 99.

AGFUND (HRH Prince Talal bin Abdul Aziz) contributed to UNHCR the amount of US$ 50,000 to support displaced women and children in Chechnya.

PUBLIC-AR0376

KABAT Exhibit A-16

### 3.    Constituency Building

In order to motivate their interest to further support UNHCR operations, RCC has fostered ties with major local and Gulf donor NGOs like Saudi Joint Relief Committee (SJRC), Saudi Red Crescent Society (SRCS), Arab Gulf Program for United Nations Development Organizations (AGFUND) and Qatar Charitable Society (QCS), by disseminating timely and relevant reports, updates, statistics and sit reps on refugees' situation and needs in the areas of conflict. Consequently, positive results have been produced due to intensive and consolidated coordination with a/m NGOs especially Qatar Charitable Society which arose as a firm supporter to humanitarian relief work when it showed deliberate interest in funding some of UNHCR's operations.

RCC enhanced co-operation with NGOs by arranging a visit for Sheikh Abdullah Al Dabbagh, President, Qatar Charitable Society to RCC Riyadh as well as a visit for Dr. Abdul Rahman Al Sweilam , Secretary General, Saudi Joint Relief Committee (SJRC) to HQ. The Representative visit to Kosovo with the Saudi Minister of Labour and Social affairs as well as a visit to Qatar Charitable Society led to more understanding and co-operation between UNHCR and NGOs in various fields.

Also RCC is building upon its co-operation arrangements with AGFUND to finance joint projects.

### 4.    Assistance for Refugees

*   RCC continued its coordination with International Islamic Relief Organization (IIRO) in the field of registration of refugees in Rafha camp, update of Government records, clearance of refugees before they leave the camp as well as the periodic survey for refugees on behalf of the Government.
*   The Saudi Joint Relief Committee (SJRC) and Qatar Charitable Society (QCS) extended assistance to refugee projects in Kosovo and Chechnya.
*   Qatar Charitable Society (QCS) has agreed to provide assistance to a needy refugee family under UNHCR's mandate in Qater.

### 5.    Training

An Emergency Management Training Program organized by RCC Riyadh and attended by 54  government officials in Saudi Arabia was held on 22 – 26 January 2000 in cooperation with EMS and Interworks in USA with the support of SJRC and SRC .  The Seminar achieved its goal of sitting a common ground of understanding in this particular field. The attendance exceeded expectations and the attendees great interest was clearly demonstrated in requesting an advanced training workshop.

PUBLIC-AR0377

KABAT Exhibit A-17

6.    Identification of NGOs national focal points

Dr. Abdul Rahman Al Sweilam, Secretary General of SJRC and SRC was appointed as the NGO national focal point for KSA.

Mr. Abdullah Al Dabbagh, President of Qatar Charitable Society, was also appointed as NGO national focal point for Qatar.

Sheikh Eissa Bin Mohamed Bin Abdullah Al Khalifa, President of Al Eslah Society in Bahrain was appointed as NGO national focal point for Bahrain.

F.    Plans For 2000/2001

1.    Conclusion of sub- agreement with SJRC
UNHCR has approached Saudi Joint Relief Committee (SJRC) to consider signing a Standby Agreement which is meant to improve UNHCR and NGOs' capacities to assist and protect refugees and other persons of concern to UNHCR in emergency situations. Discussions will continue until such agreement is realized and implemented.

2.    Constituency Building

RCC will continue to build an effective partnership with Gulf NGOs in order to ensure appropriate support to UNHCR activities in the area of financial contribution to address humanitarian crisis.  Meetings will be held regularly with the assistance of NGOs' focal points.

RCC has initiated a discussion with NGOs in the GCC region in order to organize a regional meeting of local NGOs with a view to strengthening cooperation.

3.    Public Awareness

Efforts to consolidate and strengthen current awareness activities will continue. They will include among other things:

-    Establishing more influential communication links with the mass media through regular press releases & information, press and audio/visual interviews/debates and advertisements.
-    Expanding the distribution network of relevant PI publications to include both government bodies and non government concerns such as NGOs, corporations, educational &social institutions, commercial entities and the mass media.
-    Increasing visibility of UNHCR in the civil society at large (i.e. direct interaction) through the participation in cultural/book fairs, bazaars, public and private sector exhibitions and lectures/seminars.
-    Organizing special events on the occasion of UNHCR 50th anniversary.

PUBLIC-AR0378

KABAT Exhibit A-18

**4.    Training/Capacity building**

RCC plans to conduct a workshop on Refugee Law in co-operation with the Qatar Charitable Society (QCS) in October 2000 that will be designed for QCS's staff. A similar workshop is planned in cooperation SJRC.

**5.    Fund Raising**

Efforts will continue to develop a framework for fund raising in KSA and GCC countries which include:
- Enhancing NGOs contributions through timely identification and presentation of appropriate UNHCR projects that require funding and/or implementation to interested NGOs.
- Organizing an annual fund raising function to be sponsored by NGOs and NGOs focal points at which distinguished supporters of UNHCR activities will be honored.



بسم الله الرحمن الرحيم

المملكة العربية السعودية

ديوان رئاسة مجلس الوزراء

الرقم ١٧ / ب س / ٣٨٩١ / م . ش

التاريخ ١٤٢٠/٨/٣

المرفقات

برقية

صاحب السمو الملكي وزير الداخلية
المشرف العام على اللجنة السعودية المشتركة لإغاثة شعب كوسوفا
نسخة لصاحب السمو الملكي وزير الخارجية
نسخة لمعالي وزير الإعلام
نسخة لمعالي وزير المالية والاقتصاد الوطني

اطلعنا على برقية سموكم الخطية رقم ٧٣٣ / ر وتاريخ ١٤٢٠/٧/٢٢هـ المشار
فيها إلى ماخلفته الحرب في الشيشان من آثار على المسلمين هناك إذ تركت وراءها
أكثر من مائتي ألف لاجئ على الحدود الشيشانية مع انغوشيا وداغستان.

وماأوضحتموه ـ سموكم ـ من أنه قد اتصل باللجنة السعودية المشتركة لإغاثة شعب
كوسوفا العديد من المواطنين والمؤسسات الإغاثية يؤكدون رغبتهم في تقديم
المساعدات لإخوانهم المسلمين هناك، وقد أيد ذلك كل من معالي وزير الشؤون
الإسلامية والأوقاف والدعوة والإرشاد ومعالي الأمين العام لرابطة العالم الإسلامي.. كما
أن معالي رئيس جمعية الهلال الأحمر السعودي اجتمع مع سعادة السفير الروسي بالمملكة
بناءً على طلبه وبموافقة سموكم على ذلك، وقد أكد السفير الروسي بأن الحكومة الروسية
سوف ترحب بقبول المساعدات السعودية بل أنها ستؤكد على الصورة المشرقة لعطاء
المملكة وإسهاماتها الإغاثية الإنسانية وتفند الصورة التي تثيرها بعض وسائل الإعلام في
تشويه سمعة المملكة وعلاقاتها مع روسيا، كما أن المؤسسات الإغاثية قد بدأت تتواجد
في الساحة لتقديم المعونات والمساعدات للمشردين الشيشان.. واقتراح سموكم السماح
بتقديم المساعدات وأن يناط باللجنة السعودية المشتركة الإشراف على أعمال الإغاثة هذه
وإبراز ماتقدمه المملكة إعلامياً وتوثيق هذه المساعدات دولياً..،

ونخبركم بموافقتنا على ذلك.. فأكملوا مايلزم بموجبه.،،،

عبدالله بن عبدالعزيز
نائب رئيس مجلس الوزراء



PUBLIC-AR0380

Exhibit 3
Al Haramain Islamic Foundation, Inc.

KABAT Exhibit A-20

Ref # 7 /B/12089

Date : 1/8/1420 H[*]

To:      His Royal highness, Minister of Interior
            General Adviser, Saudi Joint Relief Committee for Kosovo and
            Chechnya
CC:      His Royal highness, Minister of Foreigner Affairs.
CC:      His Excellency, Minister of Information
CC:      His Excellency, Minister of Finance & National Economy

I have received your highness's written telegram No. 733/R dated in 22/07/1420H, which explained the war caused effects on Muslims in Chechnya, where more than two hundred thousand refugees were displaced to the border areas of Chechnya with Angoshya and Dagistan.

I have also informed that many citizens and relief institutions have called the Joint Relief Committee for Kosovo and Chechnya to express their desire to provide the required support for their Muslim brothers there. This was also assured by his Excellency Minister of Islamic Affairs, Endowment, Dawah and Guidance, and his Excellency the Secretary General of the Muslim World League. I was also informed that his Excellency the chairman of the Saudi Red Crescent Association called the Excellency of Russian ambassador to the kingdom as per his request and your kind approval, and that the Russian ambassador has assured that his government welcomes the Saudi support.

He also assured that his government will highlight the shining picture of the kingdom's generosity and humanitarian relief contributions, and that they will disperse the distorting picture against the kingdom being portrayed by the media and the attempts to deteriorate the Saudi-Russian relations. He also said that the relief organizations started to provide supports for the displaced Chechens.

I appreciate your suggestion that we should provide supports under the supervision of the Saudi Joint Relief Committee for Kosovo and Chechnya, and it should be reflected by the media and internationally documented.

I am informing you that I approved that.. So, proceed accordingly.


Abdullah Bin Abdul Aziz
**Deputy Prime Minister**


[*] Tuesday, 09 November 1999 A.D.

PUBLIC-AR0381

KABAT Exhibit A-21



اللجنة السعودية المشتركة

لإغاثة كوسوفا والشيشان

( لجنة الشيشان )

٦٠٢/رش/٣
١٤٢٠/٨/٢١ هـ

بسم الله الرحمن الرحيم

الحمد لله رب العالمين والصلاة والسلام على رسوله الأمين

الأخ الفاضل / مدير عام مؤسسة الحرمين الخيرية        حفظه الله

السلام عليكم ورحمة الله وبركاته ، وبعد:

إشارة إلى خطاب معالي رئيس اللجنة السعودية المشتركة رقم ١/ر٢/٩٤م تاريخ ١٤٢٠/٨/١٩هـ بخصوص تكليفنا برئاسة لجنة الشيشان باللجنة السعودية المشتركة وحيث أن قضية الشيشان تتطلب ما نفعل كثيراً خلال هذه الأيام ، نقرر الآتي :

أن تقوم كل مؤسسة خيرية بجمع التبرعات عاجلاً ، باسم اللجنة السعودية المشتركة لإغاثة كوسوفا والشيشان حسب الضوابط الآتية :

١-    يوضع شعار اللجنة السعودية المشتركة وضعار المؤسسة الخيرية حسب النموذج المرفق .

٢-    لا يتم الجمع إلا بمطبقات وضعة تحمل شعار اللجنة المشتركة وضعار المؤسسة ( مرفق نموذج ) .

٣-    جميع المطبوعات الإعلامية بأنواعها وصناديق التبرعات يوضع عليها شعار اللجنة السعودية المشتركة وشعار المؤسسة الخيرية .

٤-    يتم إيداع المبالغ في حساب رقم ٤٨ للزكاة ورقم ٤٩ للتبرعات العامة في مصرف الراجحي المصرفية والبنك الأهلي التجاري للخدمات المصرفية الإسلامية يوم الأحد من كل شهر وترسل التحاويل خلال ذلك إلى الأمانة العامة .

٥-    توافي الإدارة المالية بالأمانة العامة للجنة المؤسسات بكشف حساب يوم الثلاثاء من كل أسبوع ورصيد كل مؤسسة .

٦-    يتم إعلامكم عن التحويلات كل يوم سبت .

وجزاكم الله خيراً

والسلام عليكم ورحمة الله وبركاته ...

وثيس لجنة إغاثة الشيشان

عضو اللجنة السعودية المشتركة لإغاثة كوسوفا والشيشان

تركي بن فهد بن جلوي آل سعود

Exhibit 4
Al Haramain Islamic Foundation, Inc.

PUBLIC-AR0382

هيئة الإغاثة الإسلامية العالمية ٠٣/٨٤٢٩٧٥٨    الفلاح الأحمر السعودي ٠١/٤٧٤٠٠٢٧    مؤسسة الوقف الإسلامي ٠١/٤٦٤٦٩٦٥
الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣    مؤسسة الحرمين الخيرية ٠١/٤٦١١٠٢٤
الأمانة العامة الرياض هاتف : ٠١/٤١٩٣٥٣٠    فاكس : ٠١/٤١٩٣٥٤٢
حساب موحد رقم ٤٨ للزكاة ٤٩ للتبرعات العامة يـ شركة الراجحي المصرفية فرع ٠١١

**Меморандум о взаимопонимании между Министерством Российской Федерации по делам гражданской обороны, чрезвычайным ситуациям и ликвидации последствий стихийных бедствий (МЧС России) и Межведомственным Саудовским Комитетом по оказанию гуманитарной помощи Косово и Чечне о мерах по оказанию саудовской гуманитарной помощи нуждающимся в Северо-Кавказском регионе**

مذكرة تفاهم بين وزارة روسيا الاتحادية لشؤون الدفاع المدني والطوارئ وإزالة عواقب الكوارث الطبيعية (وزارة الطوارئ لروسيا) واللجنة السعودية المشتركة لإغاثة كوسوفو والشيشان حول تقديم المساعدة الإنسانية للمحتاجين إليها في منطقة القوقاز الشمالي

Исходя из того, что десятки тысяч людей нуждаются в гуманитарной помощи,

انطلاقا من حاجة عشرات الألوف من الناس للمساعدة الإنسانية،

Основываясь на желании саудовской стороны принять участие в облегчении их участи,

وبناء على رغبة الجانب السعودي في الإسهام لتخفيف معاناتهم،

Учитывая понимание российской стороной благородства целей саудовской инициативы,

ونظرا لتفهم الجانب الروسي للأهداف السامية للمبادرة السعودية،

Выполняя желание двух сторон надлежащим образом организовать предоставление помощи, было достигнуто взаимопонимание между министерством по чрезвычайным ситуациям РФ (далее МЧС России) и Межведомственным Саудовским Комитетом по оказанию гуманитарной помощи Косово и Чечне (далее Комитет) о мерах по предоставлению гуманитарной помощи в соответствии с нижеследующим:

وتلبية لرغبة الطرفين في تنظيم تقديم هذه المساعدات بصورة مناسبة، قدم التفاهم بين وزارة الطوارئ لروسيا الاتحادية (سيرمز اليها لاحقا وزارة الطوارئ) من جهة، واللجنة السعودية المشتركة لإغاثة كوسوفا والشيشان (سيرمز اليها لاحقا اللجنة) من جهة أخرى حول إجراءات خاصة بترتيب تقديم مساعدات إغاثية وفق الآتي:

1. Комитет организует свою работу в тесном взаимодействии с МЧС России и другими представителями федеральных органов российской власти, также в координации со структурами Н в России.

أولا، تقوم اللجنة السعودية المشتركة بتنظيم عملها بالتعاون الوثيق مع وزارة الطوارئ لروسيا وغيرها من الهيئات الفدرالية للسلطة الروسية، وكذلك بالتنسيق مع ممثليات الأمم المتحدة في روسيا.

2. Комитет будет предоставлять гуманитарную помощь нуждающимся в Северо-Кавказском регионе.

ثانيا، تقدم اللجنة مساعداتها الإغاثية الإنسانية للمحتاجين المتواجدين في منطقة القوقاز الشمالي.

3. Комитет будет осуществлять контроль за процессом оказания помощи : распределения среди нуждающихся

ثالثا، تشرف اللجنة على عملية تقديم

PUBLIC-AR0383

Exhibit 5
Al Haramain Islamic Foundation, Inc.

KABAT Exhibit A-23

через рабочую группу, уполномоченную Комитетом.

4. МЧС России предоставит льготы при организации доставки помощи из Королевства, включая освобождение от таможенных пошлин, и, по запросу саудовской стороны, будет оказывать содействие в приобретении товаров на российском рынке с освобождением товаров от НДС и налога с продаж.

5. Комитет, при взаимодействии с МЧС России и органами местной власти в регионе, будет принимать участие в восстановлении мечетей и других объектов в Дагестане и Чечне после определения на месте необходимых объемов работ.

6. Комитет, при координации и содействии российской стороны, будет освещать через прессу и телевидение процесс оказания помощи.

7. Комитет обязуется обеспечивать МЧС России подробной информацией о гуманитарной помощи, а также информировать МИД России (Посольство Российской Федерации в г.Эр-Рияд) о всех составляющих помощи.

8. Комитет будет осуществлять транспортировку помощи до складского мещения за свой счет. Доставка санитарного груза до мест раздачи будет осуществляться с помощью транспортных средств МЧС России в сопровождении представителей рабочей группы Комитета, которые имеют право обозначать транспортные средства МЧС эмблемой Комитета.

9. Комитет, при координации с МЧС России, может создать новый палаточный городок для переселенцев или взять полностью на себя обеспечение всем необходимым одного из существующих палаточных городков.

10. МЧС России и Комитет будут тесно сотрудничать в открытии бюро Комитета в Москве и Владикавказе для

2

لمساعدات وتوزيعها على المحتاجين من خلال فريق عمل بكلفة اللجنة.

رابعا، إن وزارة الطوارئ تقدم تسهيلات في تنظيم نقل المساعدات من المملكة، بما في الإعفاء من الضرائب الجمركية، وتساهم، في حالة طلب الطرف السعودي ، في اقتناء البضائع من السوق الروسية مع إعفائها من ضريبة القيمة المضافة والضريبة المحلية.

خامسا، تسهم اللجنة، بالتنسيق مع وزارة الطوارئ في روسيا وهيئات السلطات المحلية في المنطقة، في إعادة إعمار المساجد وغيرها من المنشآت في داغستان والشيشان، بناء على مسح ميداني تقوم به اللجنة لتقدير الاحتياجات.

سادسا، تقوم اللجنة، بالتنسيق مع الطرف الروسي ومساعدته، بالتغطية الإعلامية (صحفيا وتلفزيونيا) على عملية تقديم المساعدات.

سابعا، تلتزم اللجنة بموافاة وزارة الطوارئ بيانات مفصلة عن المساعدات الإغاثية ، واطلاع وزارة الخارجية الروسية (سفارة روسيا الاتحادية بالرياض) على تفاصيل المساعدات.

ثامنا،تقوم اللجنة بنقل المساعدات الى المستودع على نفقتها الخاصة وتعين بسيارات الشحن التابعة لوزارة الطوارئ لنقل المساعدات الى أماكن توزيعها برفق ممثلي فريق عمل حيث يحق لهم لصق شعار اللجنة على سيارات وزارة الطوارئ.

تاسعا، يمكن للجنة بالتنسيق مع وزارة الطوارئ لإنشاء مخيم للنازحين أو كفالة مخيم قائم يكون تحت إشرافها المباشر مع تلبية كافة احتياجات المخيم.

عاشرا، تتعاون اللجنة ووزارة الطوارئ بصورة

PUBLIC-AR0384

KABAT Exhibit A-24

реализации положений меморандума.

11. МЧС России окажет содействие Комитету в аренде подходящего склада.

12. Настоящий документ служит юридической защитой рабочей группы Комитета и ее деятельности по реализации рабочей программы согласно настоящему меморандуму.

13. Меморандум составлен в двух подлинных экземплярах на арабском и русском языках, по одному каждой из сторон, и оба экземпляра имеют одинаковую юридическую силу.

Обе стороны будут сотрудничать в достойном осуществлении этого благородного дела, стремясь достичь намеченных целей.

From right column (Arabic):

بيقة في فتح مكتب للجنة في موسكو وفلاديقوقاز لإشراف على تنفيذ أحكام هذه المذكرة.

حادي عشر: تساعد وزارة الطوارئ الجنة على استئجار مستودع مناسب.

ثاني عشر: تعد هذه الوثيقة حماية قانونية لفريق اللجنة وبرامج عملها وفقا لهذه المذكرة.

ثالث عشر: حررت المذكرة على نسختين أصليتين باللغة العربية والروسية ويحتفظ كل طرف بنسخة منها وللنسختين نفس القوة القانونية.

وسوف يتعاون الطرفان على تحقيق هذا العمل النبيل بصورة مشرفة معا منهما للبلوغ الأهداف المرجوة.

**От Министерства Российской Федерации по делам гражданской обороны, чрезвычайным ситуациям и ликвидации последствий стихийных бедствий (МЧС России)**

عن/ وزارة روسيا الإتحادية لشؤون الدفاع المدني والطوارئ وإزالة عواقب الكوارث الطبيعية (وزارة الطوارئ لروسيا)

**От Межведомственного Саудовского Комитета по оказанию гуманитарной помощи Косово и Чечне Ген.секретарь д-р Маджед Ат-Турки**

عن/اللجنة السعودية المشتركة لإغاثة كوسوفا والشيشان الأمين العام الدكتور ماجد عبد العزيز التركي

**Москва, " " декабря 1999 года**

موسكو، " " ديسمبر ١٩٩٩م

PUBLIC-AR0385

KABAT Exhibit A-25



اللجنة السعودية المشتركة

لإغاثة كوسوفا والشيشان

( لجنة الشيشان )

الرقم :                                    التاريخ : ٢٤ / ٩ / ١٤٢٠هـ

بسم الله الرحمن الرحيم

---

**إجتماع لجنة الشيشان**

**السبت ٢٤/٩/١٤٢٠هـ - الأمانة العامة للجنة السعودية المشتركة**

---

بدأ الإجتماع في تمام الساعة ٩:٣٠ مساءً يوم السبت ٢٤/٩/١٤٢٠ هـ ، وقد تم استعراض جــدول
الأعمال واحتوى على النقاط التالية :

١ –   الإطلاع على الرصيد المالي الموجود لدى المؤسسات والأمانة العامة لصالح الشيشان .

٢ –   الإطلاع على ترتيبات الشحن للمواد العينية .

٣ –   الإطلاع على ما تم حول الوفد المعتمد للعمل الميداني .

٤ –   الإطلاع على الإجراءات المالية المعتمدة للمبالغ المالية المخصصة .

٥ –   مناقشة خطة العمل والإطلاع على مسودة خطاب إلى السفارة الروسية ووزارة
       الطوارئ .

٦ –   أي أعمال مستجدة .

وقد بدأ الإجتماع بما يلي :

١ –   تم استعراض الأرصدة الموجودة في حسابات المؤسسات للشيشان وحسابات الأمانــة
       العامة , وهي كالتالي :

١ –   الأمانة العامة ٦٢,٥٢٣,٦٧١ ريال " اثنان وستون مليوناً وخمسمائة وثلاثــة
       وعشرون ألفاً وستمائة وواحد وسبعون ريال " .

٢ –   مؤسسة الحرمين الخيرية ١٣ مليون ريال .

٣ –   هيئة الإغاثة الإسلامية العالمية ١٤ مليون ريال .

٤ –   الندوة العالمية لشباب الإسلامي ٦ ملايين ريال .          PUBLIC-AR0386

---

هيئة الإغاثة الإسلامية العالمية ٣/٨٤٢٩٧٥٨ ·   اغلال الأحمر السعودي ٠١/٤٧٤٠٠٢٧ ·   مؤسسة الوقف الإسلامي ٠١/٤٦٤٦٩٦٥
الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣ ·   مؤسسة الحرمين الخيرية ٠١/٤٦١١٥٢٤
الأمانة العامة الرياض هاتف : ٠١/٤١٩٣٥٣٠   فاكس : ٠١/٤١٩٣٥٤٢
لحساب الموحد رقم ٤٨ الزكاة ٤٩– للتبرعات العامة بـ شركة الراجحي المصرفية فرع الزويعه – البنك الأهلي التجاري للخدمات المصرفية الإسلامية

Exhibit 6
Al Haramain Islamic Foundation, Inc.

KABAT Exhibit A-26



<div dir="rtl">

**اللجنة السعودية المشتركة**

**لإغاثة كوسوفا والشيشان**

**( لجنة الشيشان )**

S.I.R.C

الرقم :                                التاريخ :    /    / ١٤ هـ

٥ –    مؤسسة الوقف الإسلامي ٢ مليونا ريال .

٢ – تم تحديد مبلغ سلفة مالية لمدير المكتب مخصصة للطوارئ مقدارها ١٠٠٠٠٠ دولار
" مائة ألف دولار " مع تبنيد هذا المبلغ .

٣– تم تكليف مؤسسة الحرمين الخيرية بوضع نظام مالي للجنة الشيشان ويحال إلى منسق لجنة
الشيشان لدراسته مع الإدارة المالية بالأمانة العامة .

٤– يعد المبلغ الإجمالي لرصيد لجنة الشيشان ٣٠٠٠٠٠٠٠ ريال " ثلاثون مليون ريال "
خلال ثلاثة أشهر موزع على المؤسسات بالنسب التالية :

١–    مؤسسة الحرمين الخيرية ٣٥% .

٢–    هيئة الإغاثة الإسلامية العالمية ٣٥ % .

٣–    الندوة العالمية للشباب الإسلامي ٢٥ % .

٤–    مؤسسة الوقف الإسلامي ٥ % .

حسب الجدول الزمني التالي :

٥٠% فور افتتاح الحساب من نسبة كل مؤسسة في موعد أقصاه ١٤٢٠/٩/٢٨هـ .

٢٥ % في موعد أقصاه ١٤٢٠/١١/١هـ .

٢٥ % في موعد أقصاه ١٤٢٠/١٢/١هـ .

٥ –    وافق المجتمعون على الأسماء المرشحة لفريق العمل وهم :

١–    الأستاذ / عبدالله الريس        ( مسؤول المكتب التنفيذي )

٢–    الأستاذ / صالح أحمد الذيبان    ( مسؤول الخدمات الإجتماعية والإغاثة )

٣–    الأستاذ / عبدالله الحازمي        ( المسؤول الطبي )

٤–    الأستاذ / سليمان محمد المسلم    ( المسؤول الإداري والمالي )

٥–    الأستاذ / ناصر عبدالرزاق العارضي    ( المسؤول الإعلامي )

٦–    الأستاذ / عبدالله غانم الجهني .    ( مسؤول الإحصاء والتوثيق )

</div>

<div dir="rtl">

هيئة الإغاثة الإسلامية العالمية ٠١/٤٧٤٠٠٢٧    الهلال الأحمر السعودي ٠٣/٨٤٢٩٧٥٨    مؤسسة الوقف الإسلامي ٠١/٤٦٤١٩٦٥

الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣    مؤسسة الحرمين الخيرية ٠١/٤٦١١٥٢٤

الأمانة العامة الرياض هاتف : ٠١/٤١٩٣٥٣٠    فاكس : ٠١/٤١٩٣٥٤٢

الحساب الموحد رقم ٤٨ للزكاة ٤٦– لتفريعات العامة بـ شركة الراجحي المصرفية فرع الورعه – البنك الأهلي التجاري للخدمات المصرفية الإسلامية

</div>

PUBLIC-AR0387

KABAT Exhibit A-27



اللجنة السعودية المشتركة

لإغاثة كوسوفا والشيشان

( لجنة الشيشان )

٣

الرقم :        التاريخ :   /   / ١٤هـ

٧ –    الأستاذ / عبدالكريم محمد اليازجي    ( مسئول المستودعات والشحن )

٨ –    الأستاذ / سليمان الفنيم

٦ –    تم ترشيح الشيخ عقيل العقيل نائباً لرئيس لجنة الشيشان في حالة غياب سمو الأمير تركي بن فهد بن جلوي آل سعود رئيس اللجنة .

٧ –    تم تحديد يوم الأربعاء بعد صلاة المغرب موعداً أسبوعياً لاجتماع اللجنة في الأمانة العامة .

## المجتمعون

| التوقيع | الاسم |
|---|---|
| ٢٤/٩/٢٨ | الشيخ / عقيل بن عبدالعزيز العقيل |
|  | الأستاذ / علي بن عبدالله الجريس |
|  | الأستاذ / عبدالإله بن يحيى اليغبي |
|  | الأستاذ / لياس بن طارق اليحيى |
|  | الأستاذ / وائل بن عبدالعزيز العقيل |
|  | الأستاذ / محمد بن حمد الهويدي |
|  | رئيس لجنة الشيشان الأمير تركي بن فهد بن جلوي آل سعود |

تصديق معالي رئيس اللجنة السعودية المشتركة الدكتور عبدالرحمن السويلم

---

هيئة الإغاثة الإسلامية العالمية ٣/٨٤٢٩٧٥٨ .   افلال الأجر السعودي ٠١/٤٧٤٠٠٢٧ .   مؤسسة الوقف الإسلامي ٠١/٤٦٤٦٩٦٥ .

الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣ .       مؤسسة الحرمين الخيرية ٠١/٤٦١١٥٢٤ .

الأمانة العامة الرياض هاتف : ٠١/٤١٩٣٥٣٠ .   فاكس : ٠١/٤١٩٣٥٤٢ .

الحساب الموحد رقم ٤٨ للزكاة ٤٩ - للتبرعات العامة بـ شركة الراجحي المصرفية فرع الزبيرة ـ البنك الأهلي التجاري لخدمات المصرفية الإسلامية

PUBLIC-AR0388

KABAT Exhibit A-28



**Exhibit 7**
Al Haramain Islamic Foundation, Inc.

PUBLIC-AR0389

KABAT Exhibit A-29



اللجنة السعودية المشتركة
لإغاثة كوسوفا والشيشان
( لجنة الشيشان )

الرقم : ٣ث/ ١١١٧            التاريخ : / ١٧ / ١٤٢٨هـ

بسم الله الرحمن الرحيم

الحمد لله رب العالمين والصلاة والسلام على رسوله الأمين

معالي الدكتور عبد الرحمن بن عبد العزيز السويلم            حفظه الله
رئيس جمعية الهلال الأحمر السعودي
رئيس اللجنة السعودية المشتركة لإغاثة كوسوفا والشيشان

السلام عليكم ورحمة الله وبركاته وبعد :

مرافق لمعاليكم تقريراً مختصراً عما تم إنجازه في لجنة الشيشان داخلياً وخارجياً .

وجزاكم الله خيرا      ،،
والسلام عليكم ورحمة الله وبركاته

وكيل لجنة الشيشان
المشرف على مكاتب الهيئة بالمنطقة الشرقية

تركي بن فهد بن جلوي آل سعود

PUBLIC-AR0390

هيئة الإغاثة الإسلامية العالمية ٠٣/٨٤٢٩٧٥٨        الهلال الأحمر السعودي ٠١/٤٧٤٠٠٢٧        مؤسسة الوقف الإسلامي ٠١/٤٥٤٦٩٦٥
الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣        مؤسسة الحرمين الخيرية ٠١/٤٦١١٥٧٤
الأمانة العامة بالرياض هاتف : ٠١/٤١٩٣٥٢٤  فاكس : ٠١/٤١٩٣٥٤٢
احتساب الوحد رقم ٤٨ للزكاة – ٤٩ للتبرعات العامة بـ شركة الراجحي المصرفية فرع المزرعة – البنك الأهلي التجاري للخدمات المصرفية الإسلامية

**Exhibit 8**
Al Haramain Islamic Foundation, Inc.

KABAT Exhibit A-30



اللجنة السعودية المشتركة

لإغاثة كوسوفا والشيشان

( لجنة الشيشان )

الرقم : ٣ ل/١          التاريخ :   /   / ١٤هـ

## تقرير مختصر عما تم إنجازه في لجنة الشيشان ( داخلياً )

منذ تشكيل لجنة الشيشان بقرار من مجلس اللجنة في اجتماعها الخامس عشر تم عقد اجتماعات يومية من السبت ١٩/٨/١٤٢٧هـ حتى الأربعاء ٢٣/٨/١٤٢٧هـ وبعد ذلك بشكل أسبوعي وتم الاتفاق على الأمور التالية :

١- وضع آلية لجمع التبرعات لصالح الشيشان من المؤسسات تشتمل على التالي :

– إصدار بطاقات للمتعاونين في جمع التبرعات تحمل شعار اللجنة والمؤسسة .

– صناديق التبرعات تحمل شعاري اللجنة والمؤسسة .

– عدم تكليف صغار السن لجمع التبرعات .

– الالتزام بالتوزيع الجغرافي لنطاق جمع التبرعات بين المؤسسات .

– إيداع التبرعات في الحساب الموحد للجنة ٤٨ للزكاة و ٤٩ للتبرعات العامة .

٢- عقد اجتماع أسبوعي طوال شهر رمضان لمعالجة ما يطرأ من مستجدات على جمع التبرعات في الميدان .

٣- الاطلاع على الأرصدة المالية الموجودة في المؤسسات لصالح الشيشان .

٤- اعتماد فريق للعمل في الشيشان من منسوبي المؤسسات الأعضاء والدوائر الحكومية ذات الاختصاص .

٥- تم توزيع إعداد خطط العمل بين المؤسسات كالتالي :

– مؤسسة الحرمين الخيرية .         اللائحة المالية – الخدمات الاجتماعية .

– مؤسسة الوقف الإسلامي .        اللائحة الإدارية .

– جمعية الهلال الأحمر السعودي .   البرامج الصحية .

– الندوة العالمية للشباب الإسلامي .   الخطة الإعلامية .

– هيئة الإغاثة الإسلامية العالمية .   خطة العمل الإغاثي .

وتم تقديم جميع هذه الخطط في إجتماع اللجنة المنعقد يوم الخميس ٢٩ رمضان

هيئة الإغاثة الإسلامية العالمية ٣/٨٤٢٩٧٥٨   الهلال الأحمر السعودي ٠١/٤٧٤٠٠٢٧   مؤسسة الوقف الإسلامي ٠١/٤٦٤٦٥٨٥
الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣   مؤسسة الحرمين الخيرية ٠١/٤٦٦١٥٢٤
الأمانة العامة وللريوش هاتف : ٠١/٤١٩٣٥٣٠   فاكس : ٠١/٤١٩٣٥٤٢
الحساب الموحد رقم ٤٨ للزكاة ٤٩ – للتبرعات العامة بـ شركة الراجحي المصرفية فرع الزرعة – البنك الأهلي التجاري للخدمات المصرفية الإسلامية

PUBLIC-AR0391

KABAT Exhibit A-31



اللجنة السعودية المشتركة

لإغاثة كوسوفا والشيشان

( لجنة الشيشان )

الرقم : ٣ ش /          التاريخ :   /   /   ١٤     هـ

٦ – تم الإتفاق على فتح حساب للجنة الشيشان واستكمال الإجراءات على أن يكون الرصيد ٣٠ مليون ريال موزعة كتالي :

| ٣٥% هيئة الإغاثة الإسلامية العالمية | ١٠,٥٠٠,٠٠٠ ريال |
| ٣٥% مؤسسة الحرمين الخيرية | ١٠,٥٠٠,٠٠٠ ريال |
| ٢٥% الندوة العالمية للشباب الإسلامي | ٧,٥٠٠,٠٠٠ ريال |
| ٥% مؤسسة الوقف الإسلامي | ١,٥٠٠,٠٠٠ ريال |

ويتم إيداعها حسب البرنامج الزمني التالي :

٥٠% فور افتتاح الحساب ( وتم إيداع النسبة من كل مؤسسة )

٢٥ % يتم إيداعها في حساب لجنة الشيشان بتاريخ ١٤٢٠/١١/١هـ

( وقت عطاءه المؤسسات للإيداع حسب الموعد وقد تم الإيداع من بعض الأعضاء ).

٢٥% يتم إيداعها في حساب لجنة الشيشان بتاريخ ١٤٢٠/١٢/١هـ

٧ – التعميم على جميع المؤسسات بالية جمع التبرعات العينية والمواصفات اللازمة لإستقبالها .

٨ – تحديد النسبة المئوية للتصاريف التشغيلية .

٩ – تحويل مبلغ ٥٠٠,٠٠٠ ( مليون دولار) إلى حساب السفارة السعودية في موسكو لتكون بداية للعمل هناك إضافة إلى ٢٠٧,٠٠٠ مائة ألف دولار) متناولة الدفعة الأولى من الوفد بصحبة الأمين العام والتي قدرت إلى الميزانية يوم الخلافاء ١٤٢٠/١٠/١٨هـ .

١٠ – اجتماع سمو رئيس لجنة الشيشان بفريق العمل للتأكيد على بعض الأمور التنظيمية والمحاذير وتوقيع جميع أعضاء الوفد عليها .

١١ – اجتماع سمو رئيس لجنة الشيشان وزميلين اللجنة التحضيرية مع مستشار السفارة الروسية .

١٢ – عقد اجتماع بين سمو رئيس لجنة الشيشان مع القائم بالأعمال في السفارة الروسية والسفير الروسي .

PUBLIC-AR0392

هيئة الإغاثة الإسلامية العالمية ٠٣/٨٤٤٩٧٥٨    الهلال الأحمر السعودي ٠١/٤٧٤٠٠٢٧    مؤسسة الوقف الإسلامي ٠١/٤٦٤٩٩٢٥

الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣    مؤسسة الحرمين الخيرية ٠١/٤٦١١٥٢٤

الأمانة العامة بالرياض هاتف : ٠١/٤٦٩٣٥٣٠    فاكس : ٠١/٤٦٩٣٥٤٢

الحساب الموحد رقم ٤٨ للزكاة – ٤٩ للتبرعات العينية بـ شركة الراجحي المصرفية فرع المزيعة – البنك الأهلي التجاري للخدمات المصرفية الإسلامية



اللجنة السعودية المشتركة
لإغاثة كوسوفا والشيشان
(لجنة الشيشان)

الرقم : /٣ش/　　　التاريخ :　/　/　١٤هـ

١٣- عقد اجتماع بين سمو رئيس لجنة الشيشان ورئيس لجنة المتابعة والأمين العـــام ومديـــر مؤسسة الحرمين يوم الأحد ١٤٢٠/١٠/١٦هـ لإطلاع الجميع على آخر المستجدات .

١٤- عقد عدة اجتماعات تنظيمية وتنسيقية بين الأمين العام ورئيس لجنة الشيشان .

١٥- عقد اجتماع مع السفير الروسي بمقر السفارة بالرياض وكان الإجتماع مثمر وأبـــدت السفارة الروسية استعدادها لتذليل الصعوبات ولمست كل تعاون ورغبة في التعاون مــع اللجنة السعودية المشتركة .

١٦- زيارة المستودع العام للجنة والإطلاع على محتوياته وتوجيه مسؤول المستودع لعمل جرد بمحتوياته تمهيداً لشحن المناسب منها إلى الشيشان عبر طائرة الشحن وكان برفقة رئيس اللجنة مندوب من السفارة الروسية .

١٧- حصر الأدوية المتوفرة في المستودع وتصنيفها تمهيداً لشحنها .

١٨- إعداد خطاب بتوقيع معالي الرئيس بشأن الترتيبات اللازمة للعمل من قبـــل الســـفارة السعودية في روسيا .

هيئة الإغاثة الإسلامية العالمية ٠٣/٨٤٢٩٧٥٨　الهلال الأحمر السعودي ٠١/٤٧٤١٠٢٧　مؤسسة الوقف الإسلامي ٠١/٤٦٤٦٩٦٥
الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣　مؤسسة الحرمين الخيرية ٠١/٤٦١١٥٢٤
الأمانة العامة بالرياض هاتف : ٠١/٤١٩٣٥٣٠　فاكس : ٠١/٤١٩٣٥٤٢
الحساب الموحد رقم ٤٨ للزكاة - ٤٦ للتبرعات العامة بـ شركة الراجحي المصرفية فرع المروءة - البنك الأهلي التجاري للخدمات المصرفية الإسلامية

PUBLIC-AR0393

KABAT Exhibit A-33



لإغاثة كوسوفا والشيشان

(لجنة الشيشان)

الرقم : ٣ش/     التاريخ : / / ١٤ هـ

( تقرير مختصر عما تم إنجازه في لجنة الشيشان خارجياً )

١- طلبنا تعاون السفارة السعودية في النقاط التالية :

١- المشاركة في (إعادة صياغة الإتفاقية مع وزارة الطوارئ الروسية بشـــأن فتح مكتب في أنغوشيا عوضاً عن فلادي قفقاز .

٢- الإكتفاء بعمل في فلادي قفقاز .

٣- مشاركة مندوب من السفارة السعودية في بداية توزيع المساعدات .

٤- الإستفادة من ما يتوفر لدى السفارة بإستخدام السيارات الدبلوماسـية للمهام الرسمية .

٥- طلب مترجم من السفارة السعودية .

٢- زيارة الشركات وإجراء نسخ على جميع الإحتياجات المطلوبة من مواد غذائية وإعاشيــة وأدوية وتجهيزات وحدود الإحتياجات وجاري الترتيبة لرفع التسعيرات لرئيــس لجنــة الشيشان ومن ثم رفعها لمعالي الرئيس .

٣- ترتيب شراء سيارات كالتالي :

١- ٢ جيب

٢- باص (٢٤ راكب) .

٣- سيارة ميناء .

٤- ٣ سيارات إسعاف كاملة التجهيزات .

٥- ٤ شاحنات للتوزيع .

سترفع التسعيرات حسب الإجراءات المتبعة

هيئة الإغاثة الإسلامية العالمية ٣/٨٤٢٩٧٥٨    الهلال الأحمر السعودي ٠٢٧/٤٧٤٠ ٠١    مؤسسة الوقف الإسلامي ٠١/٤٦٢٦٦٦٥

الندوة العالمية للشباب الإسلامي ٠١/٤٩٤١٦٦٣    مؤسسة الحرمين الخيرية ٦/٤٦١١٥٢٤ ٠١

الأمانة العامة بالرياض هاتف : ٠١/٤١٩٣٥٣٠    فاكس : ٠١/٤١٩٣٥٤٢

الحساب الموحد رقم ٤٨ للزكاة - ٤٩ للتبرعات العامة يـ شركة الراجحي المصرفية فرع الزرعة - البنك الأهلي التجاري للخدمات المصرفية الإسلامية

PUBLIC-AR0394

KABAT Exhibit A-34



الرقم : ٣ ش / ١               التاريخ :  /  / ١٤    هـ

- تم الإتفاق على تعديل الشعار ليناسب الوضع هناك ليكون اللجنة السعودية المشتركة للإغاثة وعدم ذكر كوسوفا والشيشان لحساسية الوضع هناك لما يترتب على ذلك من مضايقات واستفزازات .

٥- الإجتماع مع الجهات المختصة لمناقشة الأعضاء من القبائل وتنسيق جميع المتطلبات لخدمة العمل الميداني .

٦- تم إجراء مقابلات شخصية مع كثير من المتقدمين للعمل وسيتم اختيارهم بناءً على التخصص والخبرة .

٧- التنسيق مع وزارة الطوارئ الروسية لتوجيه فرع وزارة الطوارئ بأنغوشيا للتعاون .

٨- التنسيق مع وزارة الطوارئ حول المطار والمتطلبات لنزول الطائرات السعودية .

٩- الإجتماع مع السفارة السعودية وأخذ صورة من الاتفاقيات السابقة وأي متعلقات سابقة .

١٠- تعديل مضمون الفقرة ( ١٢ ) من الإتفاقية بحيث يصبح مدير مكتب اللجنة أو نائبه في موسكو هو المسؤول أمام وزارة الطوارئ وليس شخص بعينه .

١١- العمل على تنسيق استقبال المساعدات التي سيتم إرسالها من المملكة أما الأدوية والأجهزة الطبية لابد من ترتيب إجازاتها من وزارة لصحة الروسية .

١٢- الإجتماع مع المدير الإقليمي لدار القمم في موسكو .

١٣- زيارة عدد من المؤسسات المحلية للتعرف على الأسواق المحلية لتغطية احتياجات تأثيث المكتب في موسكو والمكاتب الفرعية في أنغوشيا والشيشان مستقبلاً .

هيئة الإغاثة الإسلامية العالمية ٠٣/٨٤٢٩٧٥٨          الهلال الأحمر السعودي ٠١/٤٧٤٠٠٢٧          مؤسسة الوقف الإسلامي ٠١/٤٦٤٦٩٦٥
الندوة العالمية للشباب الإسلامي ٠١/٤٦٤١٦٦٣          مؤسسة الحرمين الخيرية ٠١/٤٦٦١٥٤٤
الأمانة العامة بالرياض هاتف : ٠١/٤١٩٣٥٣٠          فاكس : ٠١/٤١٩٣٥٤٢
الحساب الموحد رقم ٤٨ للزكاة – ٤٩ للتبرعات العامة بـ شركة الراجحي المصرفية فرع المزرعة – البنك الأهلي التجاري للخدمات المصرفية الإسلامية

PUBLIC-AR0395

KABAT Exhibit A-35

**AL-HARAMAIN ISLAMIC FDN.**

Head Office - Riyadh

بسم الله الرحمن الرحيم

Ref : ـــــــــــــــــــ

Date : ـــــــــــــــــــ

مؤسسة الحرمين الخيرية

المكتب الرئيسي – الرياض

الرقم : ـــــــــــــــــــ

التاريخ : ـــــــــــــــــــ

## إفادة من مؤسسة الحرمين الخيرية

١. لقد بدأت مؤسسة الحرمين الخيرية حملة جمع تبرعات لإغاثة مسلمي الشيشان في عام ١٩٩٩م.

٢. عادة تجمع التبرعات النقدية والشيكات في الصندوق وفق الخطوات التالية:

أ‌- تحرير سند قبض للمتبرع باستلام المبالغ.

ب‌- تودع المبالغ النقدية والشيكات في الحساب الخاص بالمؤسسة في شركة الراجحي المصرفية للاستثمار.

ت‌- تُسلم سندات الإيداع مع صورة من سند القبض للإدارة المالية بالمؤسسة للتدقيق والمتابعة، وتُبلغ اللجان العاملة بذلك لتنفيذ ومتابعة الأعمال الإغاثية والإنسانية وفقاً لذلك.

٣. في شهر مارس من عام ٢٠٠٠م استلم الصندوق من سليمان بن حمد البطحي مناولة مبلغ نقدي قدره (٧٠٣٥١٤ ريال)، عبارة عن إجمالي قيمة التبرعات التي جمعت بواسطة مكتب المؤسسة في أمريكا لصالح إغاثة مسلمي الشيشان

٤. بناءً عليه تم إتباع الخطوات التي تم ذكرها أعلاه وحررت مبندات قبض برقم (٣٦٢٧٤٠) ورقم (٢٦٣٨٦٧). وقد صرف المبلغ المذكور في الأعمال الإغاثية والإنسانية للاجئين الشيشانيين.

٥. حرر في يوم الأحد الموافق ٣ مايو من عام ٢٠٠٤م

مساعد المدير العام للشئون المالية والإدارية

خالد بن عبيد الظاهري

PUBLIC-AR0396

**Exhibit 9**
Al Haramain Islamic Foundation, Inc.

ص.ب ٦٩٦٠٦ الرياض ١١٥٥٧ – المملكة العربية السعودية – هاتف : ٤٦٥٢٢١٠ - ٤٦٣٤٤١٤ - ٤٦٢٤٩٠٨ فاكس : ٤٦٢٣٣٠٦
P. O. Box 69606 Riyadh 11557 - Saudi Arabia - Tel : 4652210 - 4634414 - 4624908 Fax : 4623306

LAW OFFICES
## BERNABEI & KATZ, PLLC
1773 T STREET, N.W.
WASHINGTON, D.C. 20009-7135

<table>
<tr><td>
LYNNE BERNABEI<br>
DEBRA S. KATZ °<br>
LISA J. BANKS<br>
ARI M. WILKENFELD +<br>
ALAN R. KABAT ✦<br>
GENA E. WILTSEK °<br>
AVI L. KUMIN *<br>
RASHIDA A. ADAMS
</td><td>
(202) 745-1942<br>
TELECOPIER: (202) 745-2627<br>
E-MAIL: BERKATZLAW@AOL.COM<br>
WEBSITE: WWW.BERNABEIANDKATZ.COM<br>
•☒•
</td><td>
OF COUNSEL:<br><br>
DAVID J. MARSHALL<br>
ELAINE D. KAPLAN<br><br>
✦ADMITTED IN MD ALSO<br>
°ADMITTED IN NY ALSO<br>
*ADMITTED IN CA ALSO
</td></tr>
</table>

**By Telecopier and First Class Mail**
May 28, 2004

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
ATTN: Licensing Division
1500 Pennsylvania Avenue, N.W. (Annex)
Washington, D.C. 20220

Re:   Al Haramain Islamic Foundation, Inc.,
     Case No. SDG # 305 / FAC No. SDG-222819 (License Request Pending)

Dear Mr. Newcomb:

I am writing to supplement the May 14, 2004 response submitted on behalf of Al Haramain Islamic Foundation, Inc. ("AHIF"), regarding OFAC's pending consideration of the designation of AHIF as a Specially Designated Global Terrorist ("SDGT"), pursuant to Executive Order 13224 and the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*

### I.    Pending Procedural Matters.

As you are aware, there are several procedural matters which remain unresolved. On May 27, 2004, we inquired as to the status of the request made on April 30, 2004 by the firm of Gessler, Hughes, Socol, Piers, Resnick & Dym for a license to provide representation in conjunction with Bernabei & Katz, PLLC. OFAC has not yet responded to these requests. We also requested that OFAC supplement its administrative record to provide us with all information and documents relied upon by OFAC.

We are also writing to confirm that undersigned counsel, and the Gessler Hughes firm, can continue to represent Perouz Sedaghaty and Soliman H.S. Al-Buthi in any civil or criminal proceeding, and that accepting payment for those services is not at issue in this OFAC proceeding, or that it does not otherwise concern OFAC. Please notify us immediately if this is not accurate.

PUBLIC-AR0411

KABAT Exhibit A-37

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 28, 2004
Page 2

On behalf of AHIF, we continue to object to OFAC making any designation decision prior to resolving the outstanding procedural matters. However, in light of OFAC's failure promptly to resolve the procedural matters, AHIF provides the following supplemental response to the proposed designation, but reserves the right to supplement this response at any time.

## II.    Absence of Legal Standards.

In our May 14, 2004 letter, we previously objected to OFAC's failure to provide any clarification regarding the legal standards it utilizes in making designation decisions. We also object on the ground that the applicable statute, regulations, and Executive Orders do not provide any definition of what constitutes a "SDGT." In the absence of such definition, or any clear standards, the designation process is impermissibly void for vagueness, since entities who are being considered for the designation as a SDGT are unable to challenge that designation. See, e.g., Rogers v. Tennessee, 532 U.S. 451, 457 (2001) ("this Court has often recognized the 'basic principle that a criminal statute must give fair warning of the conduct that it makes a crime'") (quoting Bouie v. City of Columbia, 378 U.S. 347, 350 (1964)); Forbes v. Napolitano, 236 F.3d 1009, 1011 (9th Cir. 2000) ("In addition to defining a core of proscribed behavior to give people constructive notice of the law, a criminal statute must provide standards to prevent arbitrary enforcement."). The U.S. Supreme Court explained in the seminal Kolender decision that:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

Kolender v. Lawson, 461 U.S. 352, 357 (1983) (holding statute to be unconstitutionally vague). In essence, a SDGT is whatever OFAC says it is, which constitutes impermissible "arbitrary and discriminatory enforcement." In the absence of clear standards and definitions, it is not possible for AHIF to provide a meaningful response to OFAC's proposed designation as a SDGT.

Moreover, to have any meaningful due process, in addition to clear standards, and access to the full record evidence, AHIF must be provided with an opportunity to counter the charges raised against it, through presenting evidence, and rebutting the government's evidence, at an evidentiary hearing. National Council of Resistance of Iran v. Department of State, 251 F.3d 192, 205 (D.C. Cir. 2001); see generally Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Here, AHIF does not know what if any basis there is for the government's proposed designation, as there is nothing in the administrative record which remotely links AHIF to any terrorist activities.

Mr. R. Richard Newcomb
Office of Foreign Assets Control
May 28, 2004
Page 3

III.    **AHIF's Conduct Is Protected Under The First Amendment.**

Although AHIF does not know what conduct it is alleged to have engaged in that could form the basis for designation as a SDGT, AHIF submits that its conduct consists primarily of protected First Amendment activity, *i.e.*, the distribution of publications. AHIF was well known in its local community for maintaining a public reading room at which any individual could come and borrow, keep, or exchange publications, including books and magazines. AHIF also distributed various publications to libraries and individuals across the United States and Canada. AHIF, just like any other public library, made publications readily available to the general public. Indeed, several of these publications, including the Noble Qur'an, were also donated to various public and college libraries in the United States, including the Library of Congress and the U.S. Air Force Academy. See Donation acknowledgment letters (attached and incorporated hereto as Exhibit I). OFAC cannot base any designation of AHIF on its making available publications that are also in the stacks of major institutional libraries, unless it similarly designates these libraries as terrorist organizations.

For the foregoing reasons and those set forth in the May 14, 2004 letter, we respectfully request that OFAC lift the blocking of AHIF's assets and vacate the pending designation. The absence of clear standards for the designation of entities as a SDGT renders the designation process unconstitutional, as there exists no method by which AHIF can contest the proposed designation.

Sincerely,

*Lynne Bernabei/AIC*

Lynne Bernabei

Enc.

cc:  Cari Stinebower, Esquire
     Mary Rowland, Esquire

PUBLIC-AR0413

KABAT Exhibit A-39



**THE LIBRARY OF CONGRESS**
WASHINGTON, D.C. 20540-4142

ORDER DIVISION

AMEAS - 2
September 12, 1995
Reference : AM-SAUDI ARABIA

AL-Haramain Foundation
P.O. Box 92684
Riyadh 11663
Saudi Arabia

Dear Colleagues:

It is my pleasure to acknowledge, with many thanks, receipt of the material

mentioned below.  We deeply appreciate your kindness in sending this material to the Library

of Congress.

Sincerely,

for        Michael W. Albin
Chief

The material received:

1. Interpretation of the meanings of the Noble Qur'an in the English language / Dr. Muhammad Taqi-ud-Din Al-Hilali & Dr. Muhammad Muhsin Khan.
2. Islam in focus / by Hammudah Abdalati.
3. Shia & Sunni perspective on Islam / by Dr. Ahmad Abdullah Salamah.

PUBLIC-AR0414

TOTAL P.01

KABAT Exhibit A-40



**DEPARTMENT OF THE AIR FORCE**
THE ACADEMY LIBRARIES
UNITED STATES AIR FORCE ACADEMY
USAF ACADEMY, COLORADO 80840-5701

15 September 1995

HQ USAFA/DFSEL
2354 Fairchild Drive, Suite 3A10
USAF Academy CO  80840-6214

The Book Council
AL-Haramain Foundation
P. O. Box 92684 Riyadh 11663
Riyadh, Saudi Arabia

Dear Council Members

　　Thank you for the copies of <u>Interpretation of the Meanings of the Noble Qur'an in the English Language</u>, <u>Shia & Sunni Perspective on Islam</u>, and <u>Islam in Focus</u>, which you sent for the Library.  I am pleased to accept them on behalf of the Superintendent, Lt Gen Paul E. Stein.

　　The books will be of interest to patrons wishing to obtain an understanding of Islam and Muslim beliefs.  We will place a commemorative bookplate in each volume to acknowledge your contribution to future users.  We are enclosing the completed acknowledgement form which you requested we return.

Sincerely

EDWARD ALDERMAN SCOTT, Ph.D.
Director of Academy Libraries