# THOMAS R. BURKE

# EXHIBIT B

## B-67 through B-101

JAN-25-2002  17:48        OFAC                                      P.01/02



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**LICENSE No. SDGT-15**

### LICENSE

(Granted under the authority of 50 U.S.C. §§ 1701 et seq., 22 U.S.C. § 287c, Executive Order 13224, and 31 C.F.R. Part 501.)

To: **Fredrikson & Byron, P.A.**              **Associated Bank Minnesota**
    c/o John W. Lundquist, Esq.         **984 East Hennepin**
    **1100 International Centre**          **Minneapolis, MN 54414**
    **900 Second Avenue South**            **Att: Kim Duitsman**
    **Minneapolis, MN 55402-3397**
    **(Collectively, the "Licensees")**

1. Based on letters of December 5, 2001 and January 8, 2002 from the Firm of Fredrikson & Byron, P.A., on behalf of Global Services International, Inc. (the "Application"), the transactions and activities delineated on the reverse hereof are hereby authorized.

2. This License is granted upon the statements and representations made in the Application, or otherwise filed with or made to the Treasury Department as a supplement to the Application, and is subject to the conditions, among others, that the Licensees comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 et seq.), the National Emergencies Act (50 U.S.C. §§ 1601 et seq.), section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. § 287c), section 301 of title 3 of the United States Code, Executive Order 13224 of September 23, 2001, and the terms of this License.

3. The Licensees shall furnish and make available for inspection any relevant information, records, or reports requested by the Secretary of the Treasury, or any other duly authorized officer or agency.

5.   This License expires on January 31, 2003, is not transferable, and is subject to the provisions of Executive Order 13224 of September 23, 2001, 31 C.F.R. Part 501, and any regulations and rulings issued pursuant thereto.  This License may be revoked or modified at any time at the discretion of the Secretary of the Treasury.

5.   This License does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions herein licensed, nor does it release Licensees or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

OFFICE OF FOREIGN ASSETS CONTROL

By  _R. Richard Newcomb_                          1/29/02
    /R. Richard Newcomb
    Director

Attention is directed to 18 U.S.C. § 1001 and 50 U.S.C. § 1705 for provisions relating to penalties.

**EXH. M**

**LICENSE No. SDGT-15**

**SECTION I - LICENSEES:** The Firm of Fredrikson & Byron, P.A. (the "Firm") is hereby authorized to receive legal fees and reimbursement of expenses from Global Services International, Inc. ("GSI") in connection with the Firm's representation of GSI before the Treasury Department's Office of Foreign Assets Control ("OFAC"), and other U.S. government agencies and/or courts, regarding OFAC's designation of GSI as a Specially Designated Global Terrorist organization and with GSI's efforts to obtain the release of assets blocked at the direction of OFAC.

**SECTION II - ASSOCIATED BANK MINNESOTA:** Associated Bank Minnesota is hereby authorized to release up to $25,000 of blocked funds held in Associated Bank Minnesota Account No. 2283010136, in the name of GSI, and, subject to GSI approval, to pay such amounts to the Firm in connection with the legal services described in SECTION I, above.

**SECTION III - WARNING:** (a)  Except as authorized in Section II, above, this License does not authorize the transfer of any blocked property, the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against blocked property.

(b)  Nothing in this License authorizes the receipt of payment of fees or reimbursement of expenses in connection with services other than those delineated in Section I above.

**SECTION IV - REPORTING REQUIREMENTS:**  (a) The Licensees are subject to the recordkeeping and reporting requirements of, inter alia, 31 C.F.R. 501.601 and 501.602, including the requirement to maintain records concerning the transactions undertaken pursuant to this License for a period of five years.

(b)  In the event of litigation or similar proceedings, it is a condition of this License that the Licensees submit copies of all pleadings, motions, memoranda, exhibits, stipulations, correspondence, and proposed orders or judgments (including any proposed final judgment or default judgment) submitted to the court or decision-making body, and of all orders, decisions, opinions, or memoranda issued by the court or decision-making body, to: Chief Counsel's Office, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Annex, Washington, D.C. 20220, within ten days of filing, submission, or issuance.

(c)  In the event of litigation or similar proceedings, it is a further condition of this License that the Licensees report by immediate telephone call or facsimile transmission to the Chief Counsel's Office, Office of Foreign Assets Control (tel: 202/622-2410; fax: 202/622-1911), the scheduling of any hearing or status conference in legal proceedings whenever it appears that a court or decision-making body may issue an order or judgment or default judgment or is considering or may decide any pending motion dispositive of the merits of an action or of any claim raised in an action.

**SECTION V - FILING REQUIREMENT:**  In the event of litigation or other legal proceedings, it is a further condition of this License that a copy of this License be submitted to the relevant court or any other decision-making body or forum.
*************************************************************************

BURKE Exhibit B-68

APR-17-2002  13:45          OFAC                                              P.03/06



### DEPARTMENT OF THE TREASURY
#### WASHINGTON, D.C. 20220

LICENSE No. SDGT-60

LICENSE

(Granted under the authority of 50 U.S.C. §§ 1701 et seq., 22 U.S.C. § 287c, Executive Order 13224, and 31 C.F.R. Part 501.)

To:

| | | |
|---|---|---|
| Fredrikson & Byron, P.A. | Aaron Money Wire Service, Inc. | Garad Nor |
| c/o John W. Lundquist, Esq. | c/o John W. Lundquist, Esq. | c/o John W. Lundquist, Esq. |
| 1100 International Centre | 1100 International Centre | 1100 International Centre |
| 900 Second Avenue South | 900 Second Avenue South | 900 Second Avenue South |
| Minneapolis, MN 55402-3397 | Minneapolis, MN 55402-3397 | Minneapolis, MN 55402-3397 |

| | | |
|---|---|---|
| Wells Fargo Bank | Associated Bank | |
| Nicollet and Lake Office | 1801 Riverside Avenue | (Collectively, the |
| P.O. Box 13514 | Minneapolis, MN 55454 | "Licensees") |
| Minneapolis, MN 55479 | | |

1. Based on letters of December 14, 2001 and January 8, 2002 from the Firm of Fredrikson & Byron, P.A., on behalf of Aaron Money Wire Service, Inc. and Garad Nor, to the Office of Foreign Assets Control (the "Application"), the transactions and activities delineated on the reverse hereof are hereby authorized.

2. This License is granted upon the statements and representations made in the Application, or otherwise filed with or made to the Treasury Department as a supplement to the Application, and is subject to the conditions, among others, that the Licensees comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 et seq.), the National Emergencies Act (50 U.S.C. §§ 1601 et seq.), section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. § 287c), section 301 of title 3 of the United States Code, Executive Order 13224 of September 23, 2001, and the terms of this License.

3. The Licensees shall furnish and make available for inspection any relevant information, records, or reports requested by the Secretary of the Treasury, or any other duly authorized officer or agency.

4. This License expires on April 30, 2003, is not transferable, and is subject to the provisions of Executive Order 13224 of September 23, 2001, 31 C.F.R. Part 501, and any regulations and rulings issued pursuant thereto. This License may be revoked or modified at any time at the discretion of the Secretary of the Treasury. If this License was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, at the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This License does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions herein licensed, nor does it release Licensees or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

OFFICE OF FOREIGN ASSETS CONTROL

By _R. Richard Newcomb_    4/16/02
     R. Richard Newcomb
     Director

Attention is directed to 18 U.S.C. § 1001 and 50 U.S.C. § 1705 for provisions relating to penalties.

BURKE Exhibit B-69

**EXH. N**

LICENSE No. SDGT-60                              Page 2 of 4

**SECTION I – AUTHORIZATION:** (a) The Firm of Fredrikson & Byron, P.A. (the "Firm") is hereby authorized to receive legal fees and reimbursement of expenses in an amount not to exceed $25,000.00 collectively from **Aaron Money Wire Service, Inc. ("Aaron") and Garad Nor** in connection with the provision to Aaron and Garad Nor of legal advice and counseling on the requirements of and compliance with the laws of any jurisdiction within the United States, provided that such advice and counseling is not provided to facilitate transactions or activities in violation of Executive Order 13224 of September 23, 2001; representation of Aaron and Garad Nor when named as defendants in or otherwise made parties to domestic U.S. legal, arbitration, or administrative proceedings; initiation and conduct of domestic U.S. legal, arbitration, or administrative proceedings in defense of Aaron's or Garad Nor's property interests subject to U.S. jurisdiction; representation of Aaron or Garad Nor before any federal or state agency with respect to the imposition, administration, or enforcement of U.S. sanctions against Aaron or Garad Nor; and the provision of legal services in any other context in which prevailing U.S. law requires Aaron or Garad Nor access to legal counsel at public expense.  It is a condition of this License that Aaron and Garad Nor must be the beneficial owners of any funds unblocked pursuant to this License.

(b) – **ASSOCIATED BANK:**  This License authorizes debits to a blocked account at Associated Bank, Minneapolis, Minnesota, Account No. 2283000699 (the "Aaron Blocked Account") for legal services and expenses described in **SECTION I** of this License.  Associated Bank is further authorized to debit the Aaron Blocked Account for service charges associated with issuing the checks authorized by this License.  Associated Bank may rely on assertions of Aaron and/or the Firm that the expenses paid are in accordance with the terms of this License.

(c) – **WELLS FARGO BANK:**  This License authorizes debits to a blocked account at Wells Fargo Bank, Minneapolis, Minnesota, Account No. 397-2664550 (the "Nor Blocked Account") for legal services and expenses described in **SECTION I** of this License. Wells Fargo Bank is further authorized to debit the Nor Blocked Account for service charges associated with issuing the checks authorized by this License.  Wells Fargo Bank may rely on assertions of Garad Nor and/or the Firm that the expenses paid are in accordance with the terms of this License.

(d) – **AARON MONEY WIRE SERVICE, INC.:** This license also authorizes Aaron to issue checks written on the Aaron Blocked Account to the Firm for legal fees and expenses authorized by this License.

(e) – **GARAD NOR:** This license also authorizes Garad Nor to issue checks written on the Nor Blocked Account to the Firm for legal fees and expenses authorized by this License.

**SECTION II – WARNING:** (a)  Except as authorized in Section I, above, this License does not authorize the transfer of any blocked property, the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against blocked property.

BURKE Exhibit B-70

**LICENSE No. SDGT-60**                          Page 3 of 4

(b)   Nothing in this License authorizes the receipt of payment of fees or reimbursement of expenses in connection with services other than those delineated in Section I above.

SECTION III - REPORTING REQUIREMENTS:  (a) The Licensees are subject to the recordkeeping and reporting requirements of, inter alia, 31 C.F.R. 501.601 and 501.602, including the requirement to maintain records concerning the transactions undertaken pursuant to this License for a period of five years.

(b)   REPORTING REQUIREMENTS FOR COUNSEL:  It is a condition of this license that the Firm submit monthly reports providing information on the legal services provided as authorized in Section I above.  Such reports shall include copies of invoices for services provided to Aaron and Garad Nor, along with a description of the invoiced services, redacted, if required, to protect attorney-client confidentiality.  The first such report is to be received by the Office of Foreign Assets Control no later than May 31, 2002. In the event that no transactions occur or no payments are received during a reporting period, a statement is to be filed to that effect.  Reports are to be delivered to:  Compliance Programs Division, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Treasury ANX, Washington, D.C. 20220, and are to reference this License number, SDGT-60.

(c)   In the event of litigation or similar proceedings, it is a condition of this License that the Licensees submit copies of all pleadings, motions, memoranda, exhibits, stipulations, correspondence, and proposed orders or judgments (including any proposed final judgment or default judgment) submitted to the court or decision-making body, and of all orders, decisions, opinions, or memoranda issued by the court or decision-making body, to: Chief Counsel's Office, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Annex, Washington, D.C. 20220, within ten days of filing, submission, or issuance.

(d)   In the event of litigation or similar proceedings, it is a further condition of this License that the Licensees report by immediate telephone call or facsimile transmission to the Chief Counsel's Office, Office of Foreign Assets Control (tel: 202/622-2410; fax: 202/622-1911), the scheduling of any hearing or status conference in legal proceedings whenever it appears that a court or decision-making body may issue an order or judgment or default judgment or is considering or may decide any pending motion dispositive of the merits of an action or of any claim raised in an action.

(e)   REPORTING REQUIREMENTS OF ASSOCIATED BANK:  It is a further condition of this License that Associated Bank submit monthly account statements with respect to the Aaron Blocked Account showing all credits and debits to the Aaron Blocked Account.  The first such report is to be received by the Office of Foreign Assets Control no later than the close of business on May 31, 2002.  Thereafter, reports are to be received no later that 30 days after the month for which they are being filed.  Copies of the statements with respect to the Aaron Blocked Account are to be mailed to: Compliance Programs Division, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Annex, Washington, D.C. 20220, and are to reference this License number, SDGT-60.

BURKE Exhibit B-71

**LICENSE No. SDGT-60**                              Page 4 of 4

(#)  **REPORTING REQUIREMENTS OF WELLS FARGO BANK:**  It is a further condition of this License that Wells Fargo Bank submit monthly account statements with respect to the Nor Blocked Account showing all credits and debits to the Nor Blocked Account.  The first such report is to be received by the Office of Foreign Assets Control no later than the close of business on May 31, 2002. Thereafter, reports are to be received no later that 30 days after the month for which they are being filed.  Copies of the statements with respect to the Nor Blocked Account are to be mailed to: Compliance Programs Division, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Annex, Washington, D.C. 20220, and are to reference this License number, SDGT-60.

**SECTION IV - FILING REQUIREMENT:**  In the event of litigation or other legal proceedings, it is a further condition of this License that a copy of this License be submitted to the relevant court or any other decision-making body or forum.
*********************************************************************

BURKE Exhibit B-72

APR-25-2002  16:56    OFAC                                                    P.24/07



## DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

LICENSE No. SDGT-70

### LICENSE

(Granted under the authority of 50 U.S.C. §§ 1701 et seq., 22 U.S.C. § 287c, Executive Order 13224, and 31 C.F.R. Part 501.)

To:

Licensees:

| | | |
|---|---|---|
| Garad Nor | Wells Fargo Bank | cc: Aaron Money Wire Service, Inc. |
| c/o John Lundquist, Esq. | Nicollet and Lake Office | c/o John Lundquist, Esq |
| Fredrickson & Byron, P.A. | P.O. Box 13514 | Fredrickson & Byron, P.A. |
| 1100 International Centre | Mineapolis, MN 55479 | 1100 International Centre |
| 900 Second Avenue South | | 900 Second Avenue South |
| Minneapolis, MN 55402-3397 | | Minneapolis, MN 55402-3397 |

1. Based on letters of December 14, 2001 and January 10, 2002 from the Firm of Fredrikson & Byron, P.A., on behalf of Aaron Money Wire Service, Inc. and Garad Nor, to the Office of Foreign Assets Control (the "Application"), the transactions and activities delineated on the reverse hereof are hereby authorized.

2. This License is granted upon the statements and representations made in the Application, or otherwise filed with or made to the Treasury Department as a supplement to the Application, and is subject to the conditions, among others, that the Licensees comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 et seq.), the National Emergencies Act (50 U.S.C. §§ 1601 et seq.), section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. § 287c), section 301 of title 3 of the United States Code, Executive Order 13224 of September 23, 2001, and the terms of this License.

3. The Licensees shall furnish and make available for inspection any relevant information, records, or reports requested by the Secretary of the Treasury, or any other duly authorized officer or agency.

4. This License expires on May 15, 2003, is not transferable, and is subject to the provisions of Executive Order 13224 of September 23, 2001, 31 C.F.R. Part 501, and any regulations and rulings issued pursuant thereto. This License may be revoked or modified at any time at the discretion of the Secretary of the Treasury. If this License was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, at the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This License does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions herein licensed, nor does it release Licensees or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

OFFICE OF FOREIGN ASSETS CONTROL

By _Loren L. Dohm, Deputy Director_

Acting for    R. Richard Newcomb
              Director                                    4/26/02

Attention is directed to 18 U.S.C. § 1001 and 50 U.S.C. § 1705 for provisions relating to penalties.

BURKE Exhibit B-73

**EXH. O**

License No. SDGT-70                                    Page 2 of 3

SECTION I – AUTHORIZATIONS: (a) Mr. Nor is authorized to debit blocked checking account no. 397-2664550 (the "Checking Account") at Wells Fargo Bank Minnesota, N.A., Nicollet & Lake Office, P.O. Box 13514, Minneapolis, MN 55479 ("Wells Fargo Bank") to pay personal living expenses for himself, his wife, and his children in an amount not to exceed USD3,267.75 per calendar month.  To the extent practicable, all debits to the Checking Account shall be done by personal check, with the name of the payee, amount of the check, and the purpose of the payment stated on the face of the check.
It is a condition of this License that Mr. Nor must be the beneficial owner of any funds unblocked pursuant to this License.

(b) – WELLS FARGO BANK:  This License authorizes debits to the Checking Account at Wells Fargo Bank for personal living expenses described in subsection (a) of this License. Wells Fargo Bank is further authorized to debit the Checking Account for any service charges or fees associated with operating the Checking Account.  Wells Fargo Bank may rely on assertions of Mr. Nor that the expenses paid are in accordance with the terms of this License.

(c) Mr. Nor is further authorized to be employed and receive employment income, without such income being subject to blocking, provided that such employment income or compensation (net of withheld taxes and employee benefit contributions) is paid by check or wire transfer and deposited into Checking Account.

(d) U.S. persons are hereby authorized to employ Mr. Nor, provide transportation and other employee benefits to Mr. Nor and engage in other transactions and activities related to such employment, provided that all employment income or compensation (net of withheld taxes and employee benefit contributions) is paid to Mr. Nor by check or wire transfer identifying Mr. Nor's employer and all such checks or wire transfers are deposited into the Checking Account.

SECTION II – WARNING: (a)  Except as authorized in Section I, above, this License does not authorize the receipt of payment from any blocked account, the unblocking of blocked property, the transfer of any blocked property, the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against blocked property.

(b)  Nothing in this License authorizes the payment of expenses other than those delineated in Section I above.

SECTION III – REPORTING REQUIREMENTS:  (a) The Licensees are subject to the recordkeeping and reporting requirements of, inter alia, 31 C.F.R. 501.601 and 501.602, including the requirement to maintain records concerning the transactions undertaken pursuant to this License for a period of five years.

(b)  REPORTING REQUIREMENTS FOR WELLS FARGO BANK:  It is a condition of this License that Wells Fargo Bank submit monthly account statements with respect to the Checking Account showing all debits to the Checking Account. The first such report is to be received by the Office of Foreign Assets Control no later than June 15, 2002. Thereafter, reports are to be received no later that 30 days after the month for which they are being filed. In the event that no transactions occur during a reporting period, a statement is to be filed to that effect. Reports are to be delivered to:  Compliance Programs Division, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Treasury ANX, Washington, D.C. 20220, and are to reference this License number, SDGT-70.

BURKE Exhibit B-74

License No. SDGT-70                                Page 3 of 3

**SECTION IV - FILING REQUIREMENT:**  In the event of litigation or other legal
proceedings, it is a further condition of this License that a copy of this
License be submitted to the relevant court or any other decision-making body
or forum.
*******************************************************************************

BURKE Exhibit B-75

MAY 1 3 2002



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

FAC No. SDGT-202265                                     MAY -7 2002

John W. Lundquist, Esq.
Fredrikson & Byron, P.A.
1100 International Centre
900 Second Avenue South
Minneapolis, MN 55402

*Re: Aaran Money Wire Service, Inc. and Garad Nor v. United States et al.*

This letter responds to the December 13, 2001, request by Aaran Money Wire Service,
Inc.(Aaran) and Garad Nor that the Office of Foreign Assets Control (OFAC) grant them
access to their documents and computer. OFAC intends to start copying the documents
and computer data of Aaran and Mr. Nor next week. A member of OFAC's Enforcement
Division will fly out to Minneapolis on Monday, May 13, 2002 to oversee the copying of
the documents and computer data. Once the copying is completed, you will be notified
that your clients can collect copies of the documents and the computer data.

OFAC is further willing to authorize the return of your computers, minus their original
hard drives. The computers will remain blocked property, but will be licensed to Aaran
and Mr. Nor for their use. You will need to make arrangements to pick up the computers
and the copies of the documents, which will be available at 1190 Eagan Industrial Drive,
Eagan, Minneapolis, at a date and time to be arranged.

As you know, a floor safe and lockboxes were removed from Aaran's premises pursuant
to the November 7 blocking order. To facilitate's OFAC's access to the contents of the
safe and lockboxes in order to copy any documents, please provide the combination
numbers or other relevant information to Hal Harmon, Chief, Enforcement Division by
close of business on Thursday, May 9, 2002. Mr. Harmon's facsimile number is (202)
622-2606.

If you have any objection to OFAC's proposed course of action, please notify
Department of Justice counsel Kym Rogers, at (202) 616-8202 (facsimile), no later than
close of business on Thursday, May 9, 2002, regarding the nature of any such objection.
Questions regarding the copying of data and the return of the computers should be
directed to Ms. Rogers at (202) 514-5838.

Sincerely,

R. Richard Newcomb
Director
Office of Foreign Assets Control

BURKE Exhibit B-76

**EXH. P**

MAY-21-2002  16:37       OFFICE CHIEF COUNSEL                202 622 9937   P.02/02



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

May 20, 2002

FAC SDGT-202266

BY FACSIMILE AND FIRST-CLASS MAIL
John W. Lundquist, Esq.
Fredrikson & Byron, P.A.
1100 International Centre
900 Second Avenue South
Minneapolis, MN 55402

*Re: Global Services International, Inc. v. United States et al.*

This letter responds to the December 5, 2001, request by Global Services International, Inc. (GSI) to the Office of Foreign Assets Control (OFAC) for access to its documents and computers, which were blocked on November 7, 2001.

The documents and computers are no longer in OFAC's custody, since they were seized pursuant to a U.S. District Court search warrant. To the extent that the U.S. Attorney's Office in the District of Minnesota authorizes the release to GSI of its computers and copies of documents, OFAC is willing to license such release. The computers would be licensed to GSI for its use, but would remain blocked property.

You may contact John Marti, Assistant U.S. Attorney, at (612) 664-5600, to discuss access to the documents and computers, or Department of Justice counsel Kym Rogers, at (202) 514-5838, regarding licensing issues.

Sincerely,

*Loren L. Dohm, Deputy Director*

*Acting for* R. Richard Newcomb
Director
Office of Foreign Assets Control

BURKE Exhibit B-77

TOTAL P.02

**EXH. Q**

MAY-21-2002  16:37      ..FICE CHIEF COUNSEL                202 622 9937    P.01/02



# Chief Counsel (Foreign Assets Control)
# Legal Division
# U.S. Department of the Treasury

## To: John Lundquist
## Fax: (612) 347-7077
## Date/Time 05/21/2002

**Total pages** *including* **this cover page: --**
Re: Global Services International v United States
Response to request for access to documents

**From:**   Vicki Rosenthal
   Direct Fax 202 622-9937

## Message:

BURKE Exhibit B-78

Welcome!        Netscape P

# CNN.com./WORLD

Movie Fan
CNN/Mon
The End o
Watch Rea



MAIN PAGE
WORLD
U.S.
WEATHER
BUSINESS
SPORTS
POLITICS
LAW
SCI-TECH
SPACE
HEALTH
ENTERTAINMENT
TRAVEL
EDUCATION
IN-DEPTH

Earn great rewards the easy way.

QUICK NEWS
LOCAL
COMMUNITY
MULTIMEDIA
E-MAIL SERVICES
CNNtoGO
ABOUT US/HELP

CNN TV
what's on
show transcripts
CNN Headline News
CNN International

EDITIONS
CNN.com Asia
CNN.com Europe
CNNenEspanol.com
CNNArabic.com
set your edition

Languages
Time, Inc.



## Swedes rally to terror suspects

February 22, 2002 Posted: 1:17 PM EST (1817 GMT)



The U.S. Treasury and U.N. Security Council ordered the Barakaat companies closed as part of the war on terror



By CNN's Sheila MacVicar and Jim Boulden

**STOCKHOLM, Sweden (CNN) -- Strip malls in America, a telecommunications company in Somalia, a community centre in an immigrant neighbourhood in Sweden -- these are some of the targets of the financial side of the war against terror.**

The Bush administration calls it Operation Green Quest -- a global network of money-wiring companies.

"They present themselves as legitimate businesses, but they skim money from every transaction for the benefit of terrorist organisations," U.S. President George W. Bush said last November.

SAVE THIS    EMAIL THIS

PRINT THIS    MOST POPULAR

The Barakaat companies -- accused by the United States of funnelling millions of dollars to Osama bin Laden, accused of funding the terrorism of al Qaeda -- were shut down in the United States by order of the U.S. Treasury Department and around the world by the U.N. Security Council.

"This organisation is now exposed for what it is, a pariah in the civilised world," U.S. Treasury Secretary Paul O'Neill said last November.

On the long list of notorious names designated as terrorists are bin Laden, of course; his right-hand man, Ayman al Zawahiri; al Qaeda's military commander, Abu Zubaydah -- and Abdi Rasik Aden, for 11 years a refugee from Somalia, now a Swedish citizen and parliamentary candidate for the governing party.

Aden insists he and two other Somali-born Swedes on the list have nothing to do with terrorism or al Qaeda.

"The only thing we have done is to support our families and our relatives. That is the only thing

**WAR AGAINST TERROR**

CNN.COM SPECIAL REPORT
VIDEO/AUDIO
- Operation Anaconda's new phase
- Restoration for a king's return
- 'Morning birds of Bagram' take flight

MORE STORIES
- Australia tones down anti-terror laws
- U.S. may send troops to Yemen soon, officials say

EXTRA INFORMATION
- Operation Anaconda: Weapons gallery
- Images from Operation Anaconda
- Expanding the War on Terror

RESOURCES

we have done," said Aden.

■ On the Scene: Martin Savidge: Into the battle

Now, by order of the U.N. sanctions committee, and without any trial or hearing, his bank accounts are frozen. He is forbidden to travel. It is against the law to give him a job.

Which is where Johan Hakelius -- the editor of Sweden's leading financial newspaper -- comes in.

"I've never in my life seen such a miscarriage of justice in Sweden and it simply infuriated me, and just to write about it wasn't enough," said Hakelius.

Hakelius was so outraged that he violated the sanctions rules and personally hired Aden.



Aden says he has nothing to do with terrorism and has cooperated fully with the Swedish intelligence agency

"It is nothing to do with whether these people are innocent or not, or guilty or not. I have no idea. We don't have the evidence," Hakelius said.

"If you have rule of law, people cannot be convicted without a trial, without having a chance to see the evidence. They cannot be convicted without a chance to defend themselves."

Hakelius is not alone. Thousands of Swedes defied the sanctions and donated money for legal fees, and Swedish parliamentarians have spoken in their defence.

Ove Bring, a leading Swedish expert in international law, has criticised the sanctions list and the lack of due process.

"These are extraordinary circumstances and extraordinary measures are essential. But still exactly in that kind of situation, human rights law and human rights standards need to be respected," Bring said.



Editor Hakelius hired Aden in violation of the sanctions rules: "People cannot be convicted without a trial"

Barakaat operated in Sweden from a community storefront. The transactions -- who was sending money to whom and where -- were all recorded.

"That's the kind of data we gave to the Swedish intelligence agency, all these names and phone numbers and everything," Aden said.

The Swedish intelligence agency kept the books for more than a month, then handed them back, saying they could find no evidence of crime.

BURKE Exhibit B-80

And in the face of public outcry, Sweden's government has demanded to know why the three men were on the list.

The United States did give the Swedish government at least some of the evidence it claims to have.

Sweden's intelligence agency examined the evidence and concluded there wasn't enough there to even begin a prosecution.

Sweden's ambassador to the United Nations has called the American file "unimpressive and unconvincing."

At the United Nations, U.S. Ambassador John Negroponte has insisted that in this case -- as in the case of other names on the list -- his country does have ample evidence.

"I would say that those names were placed on the list based on information available to us which we considered to be reliable," Negroponte said.



Negroponte: "Those names were placed on the list based on information available to us which we considered to be reliable"

The problem is, that information is secret. No one other than the U.S. government knows precisely why the three Swedes have been named as terrorists.

Lawyers acting for the three will soon have a hearing in New York and Washington. But they don't know what the charges are.

And guilty or not guilty, Swedes say the war against terrorism can't leave justice behind as it finds different battlefields.

G⬚ SAVE THIS   G⬚ EMAIL THIS   G⬚ PRINT THIS   G⬚ MOST POPULAR

For more World articles, search the TIME Magazine Archive.

**E-MAIL NEWSLETTERS**
Don't miss out! Find out what's on CNN. Sign up for your Tonight on CNN e-mail.

**RELATED SITES:**
See related sites about World

**WORLD TOP STORIES:**
- U.N. 'vision' of Palestinian state
- Mugabe stole Zimbabwe election, opponent says
- Search ends for U.S. chopper crew
- Channel asylum seekers halt trains
- India rules against Ayodhya ceremony

BURKE Exhibit B-81

CNN.com - Swedes rally to terror suspects - February 22, 2002                          Page 4 of 4

(More)

Search          CNN.com          [▼]                                          [                    ]

Back to the top     © 2002 Cable News Network LP, LLLP.
                    An AOL Time Warner Company. All Rights Reserved.
                    Terms under which this service is provided to you.
                    Read our privacy guidelines. Contact us.

BURKE Exhibit B-82

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

AARAN MONEY WIRE SERVICE, INC., et al.,

        Plaintiffs,

v.

THE UNITED STATES of AMERICA, et al.,

        Defendants.

and

GLOBAL SERVICES INTERNATIONAL, INC., et al.,

        Plaintiffs,

v.

THE UNITED STATES OF AMERICA, et al.,

        Defendants.

Civil No. 02-789 (JMR/FLN)

Civil No. 02-790

---

**AFFIDAVIT OF JOHN W. LUNDQUIST**

---

STATE OF MINNESOTA    )
                       ) ss:
COUNTY OF HENNEPIN    )

John W. Lundquist, being first duly sworn on oath, states and deposes as follows:

1.     I am a partner at the Minneapolis law firm of Fredrikson & Byron, P.A. and make this affidavit in regard to efforts we have made to obtain administrative relief from the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC") on behalf of our clients, Global Services International, Inc. ("Global") and its owner, Abdullahi Farah, and Aaran Money Wire Service, Inc. ("Aaran") and its owner, Garad Nor.

BURKE Exhibit B-83

2.      After Global received a blocking notice from OFAC, I communicated to the office of the United States Attorney for the District of Minnesota that Mr. Farah was willing to submit to an interview on behalf of Global in connection with the notice. Assistant United States Attorney John Marti accepted this offer, and conducted an interview of Mr. Farah on November 21, 2001. During the interview, Mr. Farah cooperated fully with Mr. Marti by answering the questions asked, to the extent that he was able to do so.

3.      During the November 21 interview, I advised Mr. Marti that Mr. Nor was also willing to submit to an interview with regard to the notices that had been issued against Aaran and Mr. Nor, individually. Mr. Marti never made the necessary arrangements to interview Mr. Nor, so no interview took place.

4.      Petitions for Release of Blocked Funds were filed on December 5, 2001 for Global Services International.

5.      I contacted Paul Broderick of OFAC on December 13 to discuss the status. No information was forthcoming from Broderick other than to acknowledge receipt of the Petition.

6.      Petitions for Release of Blocked Funds were filed on December 14, 2001 on behalf of Aaran Money Wire Service and Garad Nor.

7.      No acknowledgment was received for the Petitions filed on behalf of Aaran Money Wire Service and Garad Nor. On December 28 I wrote to OFAC noting that we have not received an acknowledgment nor have our phone calls been returned. We pointed out that because the Blocking Order covers Mr. Nor personally, "it is virtually impossible for him to pay any bills or receive any funds whatsoever. This is an extreme emergency for him that requires immediate attention."

8.      Paul Broderick of OFAC called on January 7, 2002 to indicate that License Agreements were being processed for both Aaran Money Wire Service and Global Services

2

International. The License Agreements would only cover the payment of attorneys' fees. At Mr. Broderick's request, additional information was provided to OFAC concerning attorneys' fees and the types of legal services provided to our clients on January 8.

9.    On January 10, we again wrote to Paul Broderick urging OFAC to lift the Blocking Order as to Garad Nor individually. In this letter, we stated that as an interim measure, the Blocking Notice could continue in effect as to the account in Mr. Nor's personal name, which would protect the government's interest while allowing Mr. Nor to obtain a job and to be able to lawfully pay his bills without violating the Blocking Notice. No response was received.

10.    On January 15, we wrote to Paul Broderick of OFAC again urging that the Blocking Order be released. We pointed out that Mr. Nor had received threatening calls from customers demanding the return of their money. We pointed out that Mr. Nor feared for his personal safety, as his Somali customers did not understand that he had no control over the money. We asked when OFAC would make a decision so that he could communicate with this customers. No response was received.

11.    On January 27, 2002, we received a License Agreement from OFAC for the payment of up to $25,000 in attorneys' fees from the Global Services blocked account. No License Agreement was received regarding Aaran Money Wire Service and Garad Nor.

12.    A call was left with OFAC on January 23, 2002 inquiring about the status of the Petitions and the attorney fee license request for Garad Nor and Global Services.

13.    On February 7, 2002, I spoke with Paul Broderick of OFAC. Mr. Broderick said he did not understand why no License had been issued for Aaran and Mr. Nor, but promised to look into it. I stressed that we also needed immediate relief on the Blocking Orders and particularly for Mr. Nor individually.

3

14.    When no response was received, I wrote to Mr. Broderick on February 14, inquiring as to the status of our license request and the release of Mr. Nor from the Blocking Notice. No response was made to the letter, so I left a telephone call on February 20, 2002. No response was made by OFAC to the message I left.

15.    I called OFAC again on February 26 and spoke with Mr. Broderick. I asked him again about the status of the Petitions for Release of Funds and the attorneys' fee license request for Mr. Nor and Aaran. Mr. Broderick had no information about either but promised he would put a "red star" next to the attorneys' fee license request for Mr. Nor and Aaran. He said he did not have any idea what the plan is for dealing with blocked funds. He did not believe that they would be confiscated by the government. He disclaimed any responsibility for decision-making about the blocked funds. He said he had no idea when a decision would be made regarding the blocked funds. Mr. Broderick stressed that he only deals with license requests. Attorney fee requests are to be processed promptly, according to Mr. Broderick, "because of the constitutional right to counsel".

16.    I left another call on March 11 for OFAC which was not returned.

17.    Notwithstanding the promises made on February 26, we did not hear anything further from OFAC until after we initiated litigation on behalf of Global, Mr. Farah, Aaran and Mr. Nor.

4

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____

John W. Lundquist

Subscribed and sworn to before me
this ___10th___ day of December, 2002

_Marina G. Davis_____

Notary Public

MARINA G. DAVIS
NOTARY PUBLIC – MINNESOTA
My Comm. Expires Jan. 31, 2005

#2631327\1

5

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

AARAN MONEY WIRE SERVICE, INC., et al.,                Civil No. 02-789 (JMR/FLN)

      Plaintiffs,

v.

THE UNITED STATES of AMERICA, et al.,

      Defendants.

and

GLOBAL SERVICES INTERNATIONAL, INC., et al.,                Civil No. 02-790

      Plaintiffs,

v.

THE UNITED STATES OF AMERICA, et al.,

      Defendants.

---

**AFFIDAVIT OF GARAD NOR**

---

STATE OF MINNESOTA   )
                   ) ss.
COUNTY OF HENNEPIN   )

    Garad Nor, being first duly sworn on oath, states as follows:

    1.    I am one of the Plaintiffs in the above-referenced matter.  I make this affidavit in opposition to Defendants' Motion to Dismiss.

    2.    I immigrated to the United States from Somalia in 1992 and became a naturalized United States citizen in 1997.  My religion is Islam.

    3.    I am married and have two small children.  My youngest child was born premature, and as a result, he has severe lung damage and other health-related problems requiring substantial medical care.

BURKE Exhibit B-88

4.     I am the founder and owner of Plaintiff Aaran Money Wire Service, Inc.  I opened this business because I recognized a need within the Somali community in Minnesota for people to a way to send money to their families and friends in Somalia and other parts of East Africa. Somalia is a very poor nation.  Many Somali immigrants in Minnesota must send money to Somalia so that their friends and relatives can have shelter, food, water, and other necessities we take for granted in the United States.   Somalia has no effective government or banking system, however, and for this reason it is not possible to send money there as easily as it is to send money to more wealthy nations with stable governments.  I founded Aaran in order to help Somali immigrants in Minnesota send money overseas, and as a way of supporting my own family.

5.     Until the government forced Aaran to shut down on November 7, 2001, it operated by accepting customer funds and then sending them through the Amal wire transfer network.  In exchange for its services, Aaran charged customers a commission of up to five percent.    Aaran retained thirty-three percent of the five percent charged, and forwarded the remainder to Amal.

6.     It is my understanding and belief that some of Aaran's customers are United States citizens, and that others are non-citizen immigrants to the United States.  I have never had any knowledge or information to suggest that any of Aaran's customers are terrorists or supporters of terrorism.  To my knowledge, the United States governments has never even alleged that any of Aaran's customers are terrorists.

7.     I have never had any knowledge or information to suggest that Amal supports or is connected with any terrorist organization.  To my knowledge, the United States government

BURKE Exhibit B-89

has never included Amal on its list of terrorists or otherwise designated Amal to be a supporter of terrorism.

8.    On November 7, 2001, government agents raided Aaran's place of business and seized computers, files, money, checks, a safe, office furniture, supplies and all other property they could find, and then chained and locked the door so that nobody could reenter.  Aaran was not given a copy of any search warrant with this occurred, and did not receive an inventory of the property taken.

9.    Aaran did receive a document from the Department of the Treasury's Office of Foreign Assets Control ("OFAC") on November 7, 2001 called a "blocking notice."  This document froze Aaran's bank accounts, and prohibited Aaran from transferring or dealing in property of any kind.

10.    On November 30, 2002, OFAC sent a blocking notice targeted at me, individually.  This notice froze my personal bank account, blocked all of my personal property, and prohibited me from exchanging or handling money, so that I could not earn a living, buy groceries, pay my bills or support my family.

11.    In connection with the blocking notices it issued against Aaran and me, OFAC included our names on its nationally published lists of designated terrorists.

12.    The raid that occurred on November 7, and the blocking notices that were issued, have had a severe impact on me, my family, and my business.  My primary source of income was taken away, and for several months I was prohibited from obtaining any other employment. I could not support my family during this period of time.  My reputation was also destroyed. Newspapers and television stations reported that Aaran and I were both considered to be terrorists, and people in my own community became suspicious of me because of this.

13.    Although the OFAC has now lifted the blocking notices, the events of last November continue to have a damaging impact on my life. I believe that it will be very difficult for Aaran to reestablish successful operations. The money transfer business in the Somali community cannot succeed without trust and goodwill. When the government shut down Aaran and froze its assets, it lost its goodwill in the community. Some of Aaran's customers became angry and threatening towards me because the funds they gave Aaran were frozen and did not reach the intended recipients in Somalia. It will be very difficult for Aaran to regain the trust of its customers and business associates. I am also afraid that if Aaran begins operating again, even if it is perfectly legal and has no connection to terrorism, the government might again seize its property, issue blocking notices against Aaran and me, and label both of us as terrorists.

14.    I support democracy and oppose terrorism. I was very upset by the events of September 11, 2001 and feel deeply saddened for all of the innocent people who died on that day. I generally support the government's efforts to protect our national security interests. However, I do not believe that the government's actions towards me were justified. I believe I deserve an opportunity to live peacefully in this country and to earn an honest living, like every other citizen who has the privilege of living here.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Dated:  12/10/02    

Garad Nor

Subscribed and sworn to before
me this 10th day of December 2002.

Notary Public

#2735557\1

JENNIFER L. BJORKLUND
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

4

BURKE Exhibit B-91

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

AARAN MONEY WIRE SERVICE, INC., et al.,       Civil No. 02-789 (JMR/FLN)

      Plaintiffs,

v.

THE UNITED STATES of AMERICA, et al.,

      Defendants.

and

GLOBAL SERVICES INTERNATIONAL, INC., et al.,       Civil No. 02-790

      Plaintiffs,

v.

THE UNITED STATES OF AMERICA, et al.,

      Defendants.

---

## AFFIDAVIT OF ABDULLAHI FARAH

---

STATE OF MINNESOTA   )
                ) ss.
COUNTY OF HENNEPIN  )

    Abdullahi Farah, being first duly sworn on oath, states as follows:

    1.    I am one of the Plaintiffs in the above-referenced matter.  I make this affidavit in opposition to Defendants' Motion to Dismiss.

    2.    I immigrated to the United States from Somalia in 1993 and became a naturalized United States citizen in 1999.  My religion is Islam.

    3.    I am married and have five small children.  Two of my children are autistic and need special attention.

4.      I am the founder and owner of Plaintiff Global Services International, Inc.  I opened this business because I recognized a need within the Somali community in Minnesota for people to a way to send money to their families and friends in Somalia and other parts of East Africa.  Somalia is a very poor nation.  Many Somali immigrants in Minnesota must send money to Somalia so that their friends and relatives can have shelter, food, water, and other necessities we take for granted in the United States.  Somalia has no effective government or banking system, however, and for this reason it is not possible to send money there as easily as it is to send money to more wealthy nations with stable governments.  I founded Global in order to help Somali immigrants in Minnesota send money overseas, and as a way of supporting my own family.

5.      Until the government forced Global to shut down on November 7, 2001, it operated by accepting funds from customers and then sending them by wire through the Al-Barakaat wire transfer network.  In exchange for its services, Global charged customers a commission of up to five percent.  Global retained thirty percent of the five percent charged, and forwarded the remainder to Al-Barakaat.

6.      It is my understanding and belief that some of Global's customers are United States citizens, and that others are non-citizen immigrants to the United States.  I have never had any knowledge or information to suggest that any of Global's customers are terrorists or supporters of terrorism.  To my knowledge, the United States government has never even alleged that any of Global's customers are terrorists.

7.      I have never had any direct knowledge or information that Al-Barakaat supports or is connected with any terrorist organization.

2

8.      On November 7, 2001, government agents raided Global's place of business and seized computers, files, money, checks, office furniture, supplies and all other property they could find, and then chained and locked the door so that nobody could reenter. Global was not given a copy of any search warrant with this occurred, and did not receive an inventory of the property taken.

9.      Global did receive a document from the Department of the Treasury's Office of Foreign Assets Control ("OFAC") on November 7, 2001 called a "blocking notice." This document froze Global's bank accounts, and prohibited Global from transferring or dealing in property of any kind.

10.      On November 15, 2001, the government searched my home, seizing money, jewelry, my personal and financial records, three United States passports, and my personal computer. It is my understanding that the government had a warrant to conduct this search, but I have never seen any affidavits supporting the warrant.

11.      In connection with the blocking notice it issued against Global, OFAC included Global's name on its nationally published lists of designated terrorists.

12.      The raid that occurred on November 7, the search of my home, and the blocking notice that was issued, have had a severe impact on me, my family, and my business. My primary source of income was taken away when Global was shut down, making it difficult for me to support my family. My reputation was also destroyed. Newspapers and television stations reported that Global was considered to be a terrorist, and people in my own community became suspicious of me because of this.

13.      Although the OFAC has now lifted the blocking notices, the events of last November continue to have a damaging impact on my life. I believe that it will be very difficult

BURKE Exhibit B-94

for Global to reestablish successful operations. The money transfer business in the Somali community cannot succeed without trust and goodwill. When the government shut down Global and froze its assets, it lost its goodwill in the community. Some of Global's customers became angry towards me because the funds they gave Global were frozen and did not reach the intended recipients in Somalia. It will be very difficult for Global to regain the trust of its customers and business associates. I am also afraid that if Global begins operating again, even if it is perfectly legal and has no connection to terrorism, the government might again seize its property, issue a blocking notice against it, and label it as a terrorist.

14.    I support democracy and oppose terrorism. I was very upset by the events of September 11, 2001 and feel deeply saddened for all of the innocent people who died on that day. I generally support the government's efforts to protect our national security interests. However, I do not believe that the government's actions towards me were justified. I feel that I have been victimized unjustly as a result of the terrorist attacks that occurred. I believe I deserve an opportunity to live peacefully in this country and to earn an honest living, like every other citizen who has the privilege of living here.

FURTHER YOUR AFFIANT SAYETH NAUGHT.


Dated: _____        _____

                                           Abdullahi Farah


Subscribed and sworn to before
me this _____ day of December 2002.


_____
Notary Public

#2735572\1


4

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

AARAN MONEY WIRE SERVICE, INC., et al.,

        Plaintiffs,

v.

THE UNITED STATES of AMERICA, et al.,

        Defendants.

and

GLOBAL SERVICES INTERNATIONAL, INC., et al.,

        Plaintiffs,

v.

THE UNITED STATES OF AMERICA, et al.,

        Defendants.

Civil No. 02-789 (JMR/FLN)

Civil No. 02-790

---

**AFFIDAVIT OF DULCE J. FOSTER**

---

STATE OF MINNESOTA    )
                        ) ss:
COUNTY OF HENNEPIN    )

Dulce J. Foster, being first duly sworn on oath, states and deposes as follows:

1. I am an associate at the Minneapolis law firm of Fredrikson & Byron, P.A. I represent Plaintiffs Aaran Money Wire Service, Inc. ("Aaran") and its owner, Garad Nor, and Global Services International, Inc. ("Global") and its owner, Abdullahi Farah. I make this affidavit in response to Defendants' Motion to Dismiss.

2. On August 27, 2002, I received a telephone call from Defendants' attorney, Sylvia Kaser at the Department of Justice, stating that the Office of Foreign Assets Control ("OFAC")

had lifted the blocking notices against Aaran, Mr. Nor and Global. Ms. Kaser further stated that

their names had been removed from OFAC's master list of terrorists and blocked persons, and

that the Department of Justice would facilitate the return of all property that had been seized

from my clients. Ms. Kaser directed my attention to the OFAC website, which contained a

notice stating that Aaran, Mr. Nor, and Global had been removed from its list of terrorists.

3.    Ms. Kaser's statements are the only notice we have ever received concerning the de-

listings or the lifting of the blocking notices. OFAC has never communicated with us directly, in

writing or otherwise, about the de-listings or the lifting of the blocking notices.

4.    Attached hereto as Exhibit A is a true and correct copy of the Internet version of an

article published in the *Minneapolis Star Tribune* on November 7, 2001, entitled "Customs

agents act quickly against Minnesota businesses on Bush terrorist list."

5.    Attached hereto as Exhibit B is a true and correct copy of the Internet version of an

article published in the *Minneapolis Star Tribune* on November 7, 2001, entitled "Officials raid

U.S. businesses in global crackdown on bin Laden's financial network."

6.    Attached hereto as Exhibit C is a true and correct copy of the Internet version of an

article published in the *Minneapolis Star Tribune* on November 7, 2001, entitled "List of

suspected terrorist affiliates."

7.    Attached hereto as Exhibit D is a true and correct copy of the Internet version of an

article published in the *New York Times* on November 7, 2001, entitled "U.S. Acts to Freeze

Assets of Terror Groups."

8.    Attached hereto as Exhibit E is a true and correct copy of the Office of Foreign Assets

Control "Terrorism" brochure, dated January 9, 2002.

9. Attached hereto as Exhibit F is a true and correct copy of Global Services International's petition for the release of blocked funds, dated December 5, 2001 (filed as three separate applications—one for each blocked bank account).

10. Attached hereto as Exhibit G is a true and correct copy of Aaran Money Wire Service, Inc.'s petition for the release of blocked funds, dated December 14, 2001.

11. Attached hereto as Exhibit H is a true and correct copy of Garad Nor's petition for the release of blocked funds, dated December 14, 2001.

12. Attached hereto as Exhibit I is a true and correct copy of a letter from John W. Lundquist to R. Richard Newcomb, dated December 5, 2001.

13. Attached hereto as Exhibit J is a true and correct copy of a letter from John W. Lundquist to R. Richard Newcomb, dated December 14, 2001.

14. Attached hereto as Exhibit K is a true and correct copy of a letter from the Office of Foreign Assets Control to John W. Lundquist, dated January 8, 2002.

15. Attached hereto as Exhibit L is a true and correct copy of a letter from John W. Lundquist to the Office of Foreign Assets Control, dated January 8, 2002.

16. Attached hereto as Exhibit M is a true and correct copy of Office of Foreign Assets Control License No. SDGT-15, dated January 24, 2002.

17. Attached hereto as Exhibit N is a true and correct copy of Office of Foreign Assets Control License No. SDGT-60, dated April 16, 2002.

18. Attached hereto as Exhibit O is a true and correct copy of Office of Foreign Assets Control License No. SDGT-70, dated April 26, 2002.

19. Attached hereto as Exhibit P is a true and correct copy of a letter from R. Richard Newcomb to John W. Lundquist, dated May 7, 2002.

BURKE Exhibit B-98

20. Attached hereto as Exhibit Q is a true and correct copy of a letter from R. Richard Newcomb to John W. Lundquist, dated May 20, 2002.

21. Attached hereto as Exhibit R is a true and correct copy of an article published on the Internet by *CNN.com* on February 22, 2002, entitled "Swedes rally to terror suspects."

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Dulce J. Foster

Subscribed and sworn to before me
this ___12th___ day of December, 2002

Notary Public

#2735904\1



JENNIFER L. BJORKLUND
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

BURKE Exhibit B-99

*Aaran Money Wire Service, Inc. and Garad Nor a/k/a Garad Jama v. United States of America, et al.*,
Court File No. 02-CV-789 (JMR/FLN)

*Global Services International, Inc. and Abdullahi Farah v. United States of America, et al.*,
Court File No. 02-CV-790 (MJD/JGL)

### AFFIDAVIT OF SERVICE BY FAX AND U.S. MAIL

STATE OF MINNESOTA    )
                            ) SS.
COUNTY OF HENNEPIN  )

      Jennifer Bjorklund, being duly sworn on oath, deposes and states that on the 13th day of December, 2002, she served the following:

1. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Oral Argument Requested);
2. Affidavit of John W. Lundquist;
3. Affidavit of Garad Nor;
4. Affidavit of Abdullahi Farah (unexecuted);
5. Affidavit of Dulce J. Foster.

by faxing the same to the fax number listed below and also by placing a true and correct copy thereof in an envelope addressed as follows and depositing the same, with postage prepaid, in the United States mails at Minneapolis, Minnesota.

      Susan Demske, Esq.
      U.S. Department of Justice
      Civil Division, FPB
      901 E. Street, N.W., Suite916
      Washington, D.C. 20004
      Fax:  (202) 616-8202

                                    *Jennifer Bjorklund*
                                    Jennifer Bjorklund

Subscribed and sworn to before me
this 13th day of December, 2002

_____
Notary Public

FRANCISCO ELIZONDO
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2007

#2720544\1

BURKE Exhibit B-100

*Aaran Money Wire Service, Inc. and Garad Nor a/k/a Garad Jama v. United States of America, et al.,*
Court File No. 02-CV-789 (JMR/FLN)

*Global Services International, Inc. and Abdullahi Farah v. United States of America, et al.,*
Court File No. 02-CV-790 (MJD/JGL)

## AFFIDAVIT OF SERVICE BY MESSENGER

STATE OF MINNESOTA    )
                      ) SS.
COUNTY OF HENNEPIN    )


___Brad Emery___, being duly sworn on oath, deposes and states that on the 13th day of December, 2002, he served the attached:

1. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Oral Argument Requested);
2. Affidavit of John W. Lundquist;
3. Affidavit of Garad Nor;
4. Affidavit of Abdullahi Farah (unexecuted);
5. Affidavit of Dulce J. Foster; and
6. Affidavit of Service with respect to service upon Susan Demske, Esq.

upon Mary Tripper, Esq. and Joan Humes, Esq., therein named personally at:

> Office of the United States Attorney
> 600 United States Courthouse
> 300 South Fourth Street
> Minneapolis, MN 55415

in the County of Hennepin, State of Minnesota, by handing to and leaving true and correct copies thereof with:


___Lois Corona, Receptionist___
(Name of Person Served)


Subscribed and sworn to before me
this 16th day of December, 2002


_____
Notary Public

ANTHONY J. LUBIN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2007

2738057

BURKE Exhibit B-101