# THOMAS R. BURKE

# EXHIBIT C

## C-1 through C-21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AQEEL ABDULAZIZ AL-AQUIL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 05 CV 943 (GK)** |
| ) | |
| **JOHN SNOW, Secretary,** ) | |
| **United States Department of Treasury,** ) | |
| ) | |
| **- and -** ) | |
| ) | |
| **CONDOLEEZZA RICE, Secretary,** ) | |
| **United States Department of State,** ) | |
| ) | |
| **- and -** ) | |
| ) | |
| **ALBERTO GONZALES, Attorney General,** ) | |
| **United States Department of Justice,** ) | |
| ) | |
| **- and -** ) | |
| ) | |
| **JUAN CARLOS ZARATE, Assistant Secretary,** ) | |
| **United States Department of Treasury,** ) | |
| **Terrorist Financing.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
### AND
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The government in its Motion to Dismiss argues that that the plaintiff is not

entitled to notice and a hearing prior to his designation. As such, this Court must dismiss

the claim. However, that is not what the plaintiff is arguing in his complaint. The issue

in this case is whether the government is required to provide notice and a meaningful

hearing, even in written form, at anytime, even after the designation. In this case the

1

government has never provided the plaintiff with notice or the administrative record, nor have they told him how many days he has to respond and where to respond. Soon after the designation, the government should have provided the plaintiff with notice and a copy of the unclassified administrative record. The plaintiff should have also been given an opportunity to add to the administrative record. Thus the plaintiff was deprived of all due process not just some.

For the following reasons the government's motion to dismiss should be denied and since there are no issues of fact in this the government, the plaintiff's motion for summary judgment should be granted.

## FACTUAL BACKGROUND

On June 2, 2004 the defendants designated the plaintiff a "Specifically Designated Global Terrorist" pursuant to the "International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701-1706 and pursuant to Executive Order 13224. The plaintiff was at that time the chairman of Al-Haramain Islamic Foundation ("AHF"), a charitable organization based in Saudi Arabia. AHF has one branch and two properties in the United States as well as other parts of the world. The defendants never notified the plaintiff of such designation. Defendants never notified the plaintiff that the designation was impending. The plaintiff learned of his designation through a Department of Treasury press release which mentioned his name along with that of others. The plaintiff was never accorded the opportunity to see or add to the administrative record against him. The defendants never provided the plaintiff the opportunity to respond in either a hearing or even in written form. This designation by the defendants has caused grave harm to the plaintiff in that he is prohibited from doing any business in the United States.

2

The designation has also caused the plaintiff harm in the international community in that the defendants asked the United Nations to take action against the plaintiff. The plaintiff's property interests have been harmed because of this designation.

ARGUMENT

## A. THE PLAINITFF HAS JURISDICTION TO SEEK PROTECTION OF HIS CONSTITUTIONAL RIGHTS.

### 1. <u>The Plaintiff has had sufficient ties with the United States to be able to seek the Protection of the Constitution.</u>

The court in <u>People's Mojahedin Org. of Iran v. Department of State</u>, 182 F.3d 17, 22 (D.C. Cir. 1999) held that a foreign entity without "property or presence in this country has no constitutional rights, under due process clause or otherwise." In <u>National Council of Resistance of Iran v. Department of State</u>, 251 F.3d 192 (D.C. Cir. 2001) applied that standard and held that having a bank account and an office in the US was enough of a presence to satisfy the standard.

In this case, the Plaintiff was the chairman of a charity that had an office in Oregon. The Plaintiff has been engaged in running a charity based in the United States for years. From 1998-2003, the plaintiff served as a Director on the Board of a US Corporation, Al Haramain International Foundation, Inc. ("AHIF").[1] The corporation owns a building in Oregon and assisted in acquiring a property in Springfield, MO pursuant to a power of attorney executed by Plaintiff. Additionally, the Plaintiff traveled to Oregon and Missouri for AHIF and had an address in Oregon for AHIF as reported on AHIF's I.R.S. Form 990s for 1999, 2000 and 2001 (1257 Siskiyou Blvd., Ashland, Oregon). This more than satisfies the standard set forth in <u>People's Mojahedin.</u>

---

[1] The government admits the Plaintiff's connection to the Oregon property in its indictment of Al Haramain US and its officers. Indictment is attached.

3

Furthermore, for the purposes of this suit the plaintiff and the charity he used to head cannot be separated. The government in its press release of June 2, 2004[2], states that "Al Aqil controlled AHF and was responsible for all AHF activities, including its support for terrorism." <u>See Treasury Department Office of Public Affairs Press Release of June 2, 2004</u>. The government further goes on to state that under the plaintiff's leadership "numerous field offices and representatives operating throughout Africa, Asia, Europe and North America appeared to be providing financial and material support to the al Qaida Network." <u>Id</u>.

It is clear from its press release that the government is not distinguishing between the charity AHF and its chairman, the plaintiff. In fact the government says that the plaintiff is directing all this "terrorist activity." The plaintiff is clearly being designated in his role as leader of the charity. The government is saying in a sense that the plaintiff is the alter ego of the charity. Thus since AHF has ties with the United States, buildings in Oregon and Missouri, a bank account and charitable efforts in the United States, so does the plaintiff, who by the government's own admission is directing all this activity in the United States. The government cannot argue just for jurisdictional reasons that the buildings owned and occupied by the charity and the branch in the United States has nothing to do with the plaintiff.

In <u>NCRI</u>, the court held that the People's Mojahedin had a presence because the Secretary determined that NCRI, which has a presence, was its alter ego. <u>NCRI</u>, 251 F. 3d at 202. The court stated in <u>NCRI</u>, the "United States is now hoisted in its own petard. The Secretary concluded in her designation ......that NCRI and PMOI are one. The

---

[2] Since no notice was ever given to the plaintiff stating the reasons why he was designated, the plaintiff is assuming the reasons stated in the press release are why he is designated. (Attach)

4

NCRI is present in the United States. If A is B, and B is A, then A is also present." Id.

From its press release, the government makes no distinction between the plaintiff and

AHF. If AHF is clearly present in the US, then the plaintiff also is present.


**2. The Government has made the Plaintiff Subject to US Jurisdiction; it Makes no Sense to Argue that he Cannot use the Protections of the Constitution in Trying to Defend Himself.**

How can it be that any person who is designated does not have substantial ties to

the United States when the entire reason they are being designated is because they plan to

or are doing harm to the national security or economy of the United States? Under the

IEEPA the entire reason the President has this authority is a foreign source threatens the

national security, foreign policy, or economic security of the United States. See 50

U.S.C. § 1701. A person that is on the verge of causing great harm and poses an unusual

and extraordinary threat to the United States must have some ties with the United States.

It is impossible and makes no sense that they would pose that much danger yet do not

have ties in the United States.

Through Executive Order 13224, the President states that a "continuing and

immediate threat of further attacks on United States nationals or the United States

constitute an unusual and extraordinary threat to the national security, or the foreign,

policy and economy of the United States..." The government's main argument in not

providing notices prior to designation and is that there existed an emergency which

necessitated quick action. If there is such a grave and imminent danger to the United

States, then how can the person posing such danger not have any ties with the United

States? The entity must have some ties to be able to pose such a danger.

5

Under this government action the United States is closed to the plaintiff. He cannot visit, cannot have a bank account, own property, be involved with a business that has interests in the United States, nor can a US national have any dealings with the plaintiff without first obtaining a license through OFAC. See 50 U.S.C. § 1702. Moreover, the government went further and asked the United Nations to designate him a terrorist. That means that under U.N. Resolutions 1390 and 1267, all member nations are to freeze all assets, and deny entry into their territories. See S.C. Res. 1390, U.N. SCOR, 4452 Mtg. at ¶ 2 (2002); See S.C. Res. 1267, U.N. SCOR, 4051st Mtg. (1999). This means that the plaintiff cannot leave his home country nor he can he conduct any business whatsoever.

The plaintiff can only seek redress of these grievances in the United States. If the court holds that US courts are closed to the plaintiff because he does not have sufficient contact with the United States, then how can he challenge this United States action which has harmed his property interest all over the world? The plaintiff cannot challenge this action in his home country of Saudi Arabia because Saudi courts cannot force the US government to take any actions. They have no jurisdiction. He cannot go to the United Nations because only member nations have standing to bring an action before its judicial arm.

The US courts are the only courts that have jurisdiction over the US executive branch. Since this is a United States action done to prevent harm to the United States it makes sense that the action be according to its laws and that people harmed by it be able to seek redress in its courts. Otherwise the United States, without any justification, can

6

label any person outside the United States a terrorist and harm their property interest, leaving that person unable to seek redress.

In recent times the courts have also examined the issue of when a US national can take action against a foreign person for acts of terrorism. In Eisenfeld v. Islamic Republic of Iran, 172 F. Supp. 2d 1, 7 (D.D.C. 2000), the court stated that "a foreign state that causes death of a United States national through an act of state sponsored terrorism has the requisite minimum contact with the United States so as not to offend the 'traditional notion of fair play and substantial justice.'" Id. (quoting International Shoe Company v. Washington, 326 U.S. 310, 326 (1945). In Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998) affi'd in part and appeal dismissed in part 162 F.3d 748 (2d Cir 1998), "relevant inquiry with respect to the minimum contacts analysis is whether the effects of a foreign state's actions upon the United States are sufficient to provide 'fair warning' such that the foreign state may be subject to the jurisdiction of the courts of the United States." Id. at 330. The court held that there was sufficient interest in protecting US aircrafts and passengers that if states were to harm it, those states could expect that they would be "subject to a variety of potential responses, including civil action in the United States courts." Id. Most recently in a January 18, 2005 opinion, in finding jurisdiction over a citizen of Saudi Arabia, In Re: Terrorist Attacks on September 11, 2001, 03 MDL 1570 (S.D.N.Y.), the court stated that "designation as a terrorist leads substantial weight to plaintiff's claim that he purposefully directed his activities at the United States so that personal jurisdiction over him comports with due process." Id. at 49.

BURKE Exhibit C-7

The same also has to be true in reverse; jurisdiction must work both ways. If the terrorists who direct their activities at United States or its nationals have "fair warning" that they could be brought in United States courts without violating due process, then the United States must also have "fair warning" that when the it specifically directs its actions at these people, then these people might also seek protection against that action in United States courts. The United States courts cannot be used as a sword and not as a shield.


**B. DUE PROCESS REQUIRED THAT THE GOVERNMENT PRESENT THE PLAINTIFF WITH POSTDESIGNATION NOTICE OF BLOCKING AND SOME FORM OF A HEARING.**

**1. Plaintiff is not asking for notice prior to the designation.**

The government argues that plaintiff is not entitled to notice prior to the designation. However, the government never addresses the fact that the plaintiff has to this day not received any official notice from the government of his designation or right to be heard. The government's focus in their brief is solely of notice prior to designation. The plaintiff never stated that he is entitled to notice prior to the impending designation. The plaintiff concedes that the courts have held, where the government can make a proper showing of exigent circumstances, the government is not required to provide notice prior to designation and freezing of their assets. Holy Land Foundation for Relief and Development v. John Ashcroft, 219 F. Supp 2d. 57 (D.D.C. 2002) (Kessler, J.), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003); Global Relief Foundation v. Paul O'Neil, 207 F. Supp 2d 779 (N.D. ILL 2002); *aff'd* 315 F.2d 748 (7th Cir.) The plaintiff argues, however, that when the government is able to show that there is an emergency and it would be

8

impractical to provide pre designation notice, the government is required to provide

notice of blocking pending investigation, or notice after the designation.  The plaintiff

simply wants more than a press release informing him of his designation and wants to

know the reasons why.

      In the complaint the plaintiff stated that he was never provided with any notice of

designation. Comp. ¶ 18.  The only notice that the defendants provided was through a

press release.  In both the Holy Land and the Global Relief case the government sent both

plaintiffs a letters stating the reasons for designation and provided them with a certain

time to respond. Holy Land 219 F. Supp at 76; Global Relief 207 2d. at 804.   In this

case the government never sent an official letter notifying the plaintiff of his designation.

The government should have, as it has done previously, provided the plaintiff with notice

stating that he is either being designated pending investigation, or has been designated.

As the government admits in its memorandum, AHF did have a branch in the United

States; the defendant could have easily sent the notice there. (Mem. in Support of Mot. to

Dismiss at 8).  By not providing notice, the plaintiff had no way of defending himself.

      Furthermore, the government relies on cases that support the contrary conclusion.

In Holy Land Foundation for Relief and Development v. John Ashcroft, 219 F. Supp 2d

57 at 66 (D.C Cir. 2002), the court concluded that Due Process Clause was not violated

precisely because there was post deprivation notice and a meaningful opportunity to be

heard.  The District court in Holy Land stated that "....HLF was afforded the opportunity

to respond but has failed to do so." Id at 66.

      In Global Relief Foundation v. Paul O'Neill, 207 F. Supp 2d 779 (N.D. Ill. 2002)

the court also stated that OFAC satisfied its due process obligations by providing Global

Relief notice on the day of its temporary blocking and that it had a right to present

evidence if it believed the blocking was improper. Id. at 804.

**2. The Plaintiff is entitled to Due Process which requires that Plaintiff be provided
with at least notice and an opportunity to respond.**

The courts have regularly held that some due process is required where property

interests are being deprived.  In Holy Land, this Circuit adopted the standard set forth in

National Council of Resistance or Iran v. Department of State, 251 F.3d 192 (D.C. Cir

2001) as the standard of due process required for designations made under IEEPA. Holy

Land, 333 F.3d 156, 163.

In NCRI the court held the designation violated the Due Process Clause of the

Fifth Amendment because it did not provide notice and opportunity to be heard. NCOR,

251 F.3d at 192.  The Court stated that "[T]o make plain what we have assumed above,

those procedures which have been held to satisfy Due Process Clause have 'included

notice of action sought,' along with the opportunity to be effectively heard.  Id. at 208

(quoting Matthews v. Eldridge 424 U.S. at 334 (1976)).  "The Secretary must afford to

the entities under consideration notice that the designation is impending.  Upon an

adequate showing to the court, the Secretary may provide this notice after the designation

where earlier notification would impinge upon the security and other foreign policy goals

of the United States." Id at 208.  The Court is fairly clear in that the government must

provide notice, either prior to the designation or if an emergency exists then after the

designation.  In either case, it must provide notice and an opportunity to be heard.

The Supreme Court has also held in many cases that notice and hearing are

required when the government seeks to deprive someone of their property interest. In

Matthews v. Eldridge that the "fundamental requirement of due process is the opportunity

BURKE Exhibit C-10

to be heard 'at a meaningful time and in a meaningful manner'" *See* Matthews v. Eldridge 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). In Paul v. Davis, 424 U.S. 693, 708 (1976), the Court held that a person is entitled to due process when a stigmatizing posting leads to deprivation of rights previously held. Id. In Holy Land case the District Court carefully examined the due process accorded the plaintiff. In Holy Land the plaintiff also argued that it was not provided any due process. Holy Land, 219 F. Supp 2d 57, 63. The Court stated that "HLF has made only conclusory allegations of bad faith and inadequate procedures." Id at 65. The Court pointed out that "OFAC did include in the record a significant portion of HLF's evidence challenging OFAC's factual determinations." Id. The Court also stated that "...HLF was afforded the opportunity to submit further evidence to the agency..." Id at 66. The Court also considered the fact that OFAC sent the plaintiff notice and gave them 15 days to respond and the fact that they provided the plaintiff with more than a 3,000 page administrative record. Id. It is after considering these facts that the court granted the government's motion to dismiss.

Furthermore, in addressing the violation of procedural due process arguments in Holy Land, the District Court only mentioned postponement of notice and hearing until after the hearing. The Court applied the standard set forth in Calero-Toledo v. Pearson Yacht Leasing, 416 U.S. 663 (1974) stating that "Supreme Court has outlined what circumstances 'present an extraordinary situation in which postponement of notice and hearing does not deny due process.'" Holy Land, 219 F. Supp 2d at 76. Then the Court proceeded to outline the extraordinary circumstances that existed in the case which necessitated the postponement of the notice and hearing. Id. Again, the Court only

11

BURKE Exhibit C-11

considered the timing of the notice and hearing rights the fact that those rights needed to

be given were never even under question.

In this case, the government did not meet its due process obligations as set forth

by the NCRI case and as adopted by this circuit in the Holy Land case. OFAC never

provided the plaintiff with any notice nor did it provide the plaintiff with the unclassified

administrative record. The government never informed the plaintiff that he had a right to

challenge the OFAC order as it did with Global Relief; it never informed the plaintiff of

his post deprivation rights. In its memorandum for dismissal the government does not

deny the fact that it did not provide notice or a meaningful opportunity to be heard.

The government in its memorandum argues several times that the plaintiff has not

availed itself of the post deprivation remedies available to him. One reason is that unlike

the plaintiffs in Global Relief and Holy Land, this plaintiff never knew of the post

deprivation remedies available to him because the government never told him. Also,

under CFR § 501.807 he can "assert that the circumstances resulting in his designation,

no longer apply...." Since the government never provided him with the unclassified

administrative record or a letter setting forth the circumstances, how can the plaintiff

respond? He does not know which circumstances to rebut. The government's failure to

notify him of the circumstances of his designation and provide an administrative record is

preventing the plaintiff from availing him of the rights mentioned in the government's

memorandum. The plaintiff has no way of responding.

Not only the Courts, but the government has also admitted in previous filings that

due process requires notice and an opportunity to be heard. In its Memorandum

supporting motion to dismiss in the <u>Global Relief</u> case,[3] the government stated that they

"agree with the Plaintiff that, unless a case presents 'exigent circumstances,' the due

process clause generally requires the government to afford notice and a meaningful

opportunity to be heard before depriving a person of certain property rights." (Memo at

31). The government further argued that it has:

> more than satisfied its due process obligations. First OFAC delivered a notice to plaintiff on the day of the blocking that clearly informed it that the agency believed that it 'may be engaged in activities that violate the IEEPA.' The notice delineated Plaintiff's rights to present evidence and/or argument to OFAC if it believed the blocking was made in error, including right to make submissions by facsimile 'to expedite' the agency's response." (Memo at 35).

The government then went on to say that despite "OFAC notification to plaintiff of its

right to submit evidence and be heard by the agency, the plaintiff never availed itself of

the opportunity..." <u>Id</u>. Clearly the government here is admitting that the person has a

right to notice and a hearing of some form, even written. The Court in <u>Global Relief</u>

agreed with the government. <u>Global Relief</u> 207 F. Supp at 805.

In the case at hand, the government failed to follow its own standard. It never

provided notice to the plaintiff of his rights and never offered any hearing. As previously

stated, the plaintiff learned of his designation in the media. Compl. ¶15. The government

cannot have it both ways. It cannot argue that it has satisfied due process requirements

by providing notice and offering a hearing date in one designation case and then in

another similar case argue that such notice was not necessary and that failure to provide

notice does not violate due process.

---

[3] Refers to its Memorandum In Support of Defendants' Motion to Dismiss or for Summary Judgment and in Opposition to Plaintiff's Motion for a Preliminary Injunction in *Global Relief* case.

BURKE Exhibit C-13

It is clear from the case law that the government must provide notice and meaningful opportunity to be heard prior to designation and blocking. However, where the government can show that there are exigent circumstances which would frustrate national security to provide pre deprivation notice, then the government is allowed to provide such notice and opportunity to be heard after the designation. Holy Land 219 F. Supp 2d at 76-79; Global Relief 207 F. Supp 2d at 803. Executive Order 13224 satisfies the exigent circumstances exception, thereby allowing the government to provide the notice and hearing rights after the designation. It is also clear that the government has failed to follow that standard.

Because the government has failed to provide notice of the designation, even if the notice is after designation has already taken place, and because the government failed to provide a meaningful time and place for the plaintiff to be heard, even if the hearing was in written form only, the government violated the plaintiff's due process rights granted under the Due Process Clause. As such its motion for dismissal under 12(b)(6) should be denied and plaintiff motion for summary judgment be granted.

## C. THE GOVERNMENT VIOLATED THE ADMINISTRATIVE PROCEDURES ACT BY NOT PROVIDING THE REQUIRED NOTICE AND A HEARING.

**1. Because the Government did not have all the Pertinent Facts before it, the Government's Decision was Arbitrary and Capricious in Violation of the Administrative Procedures Act.**

The standard for judicial review under the APA is whether the agency's actions were "arbitrary and capricious. The courts examine the decision to see whether the

agency had a rational basis for its decision. <u>Holy Land,</u> 219 F. Supp 57, 74. [4] The court

examined the entire administrative record before it decided that there was a rational basis

for the agency's decision. <u>Id</u>. at 75.

 In <u>Overton Park v. Volpe</u>, 401 U.S. 402 (1971) the Supreme Court stated that

"Section 706 (2)(A) requires a finding that the actual choice made was not 'arbitrary and

capricious, an abuse of discretion, or otherwise not in accordance with the law.' To make

this finding the court must consider whether the decision was based on consideration of

relevant factors and whether there has been a clear error of judgment." <u>Overton Park,</u>

401 U.S. at 416. The court further stated that the final "inquiry is whether the Secretary's

action followed the necessary procedural requirements." <u>Id</u>. at 417.

 In this case the government could not have based its decision on the entire

administrative record because it never provided the plaintiff with an opportunity to add to

the administrative record. That fact alone is enough to make this decision arbitrary and

capricious. Especially when you consider that the reason the plaintiff did not add to the

record was that the government failed to inform him. The government could not have

taken all "relevant factors" into consideration because not all facts were before it.

Certainly the government would concede that the plaintiff's explanation for the

allegations is a relevant factor. Not giving the plaintiff an opportunity to explain

allegations is an error in judgment.

 A lot of the allegations against the plaintiff occurred in other countries, countries

that are facing turmoil.[5] Given the situation in some those countries,[6] it is reasonable to

---

[4] In <u>Holy Land,</u> the court went through the administrative record and stated that the agency had a
rational basis.

BURKE Exhibit C-15

believe that there could be a case of mistaken identity, facts were confused, or that there is a reasonable explanation for the allegations. Before designating someone a terrorist before the entire world and asking the UN to designate the person a terrorist, it is reasonable to ask the government that it ensure it has the right guy, that it knows as much as possible about the facts. That, however, would require the government inform the person and at least ask him to explain. In this case the government just released a press statement and that was all. This is clearly an abuse of discretion.

As the Supreme Court stated in <u>Overton Park,</u> the last factor to consider is whether there were procedural errors. <u>Overton Park,</u> 401 U.S. 402, 417. As mentioned, the government has committed grave procedural errors by not providing the plaintiff with notice and a chance to add to the administrative record. This is a serious error because the government's actions have precluded any sort of meaningful judicial oversight on the substance of the designation. As this Court has pointed out in <u>Holy Land,</u> it can only examine the administrative record already in existence, and not "some new record made initially in the reviewing court." <u>Holy Land,</u> 219 F. Supp 2d. 57, 65 (quoting <u>Camp v. Pitts,</u> 411 U.S. 138, 142 (1973)). It is a grave procedural error when the courts are precluded from considering evidence from the plaintiff as they decide whether the government has a rational basis for designation.

The government might try to argue that plaintiff can add to the record now. This is not possible because (1) the plaintiff has no official notice of his designation and (2)

---

[5] The plaintiff is basing this solely on information stated in the OFAC press release of June 2, 2004. It has no way of knowing if the information stated there is the reason why the plaintiff is designated. The plaintiff is simply guessing.
[6] OFAC has accused the plaintiff of certain actions taking place in Bosnia, Afghanistan, Ethiopia, Bangladesh, Albania, and the Netherlands.

BURKE Exhibit C-16

does not know what allegations he needs to rebut.[7] Moreover, that is not the issue. The issue is whether the plaintiff had an opportunity to present its evidence in the first place as is required by law.

## 2. The Government also Violated the Plaintiff's Notice and Hearing Rights under the Administrative Procedures Act ("APA").

The APA also has notice and hearing requirements that the government did not follow. Pursuant to 5 USC § 554, the plaintiff was entitled to a hearing and notice of the action. Since the government provided neither, it violated his rights under the APA.

This was an adjudication pursuant to 5 USC § 554. In this action, a person was deprived of his property and the right to acquire any property in the United States. The agency determined that this person was a terrorist. Since this was an agency action that was not statutorily exempt for the APA, it was subject to the APA 5 USC § 554.

The IEEPA specifically requires that a full record and reports be kept of any decision made in excising the authorities under IEEPA. 50 U.S.C. § 1702(a)(2). This satisfies the requirement of 5 USC § 554(a) requiring that the adjudication be made on the record and a hearing be given.

The same analysis that applies for the due process argument also applies for the notice and hearing rights granted under the APA. Pursuant to 5 USC § 554 (b), the plaintiff was supposed to have notice and a hearing on the record prior to designation. However, in light of Executive Order 13224, whereby the President has declared a state of emergency, this notice can be provided after the designation. In this case, the

---

[7] The government can make this case moot by simply providing the plaintiff with official notice, a copy of the administrative record and time to be heard, even in written form. Basically if it just follows its practice in Holy Land and Global Relief, this suit might be moot.

BURKE Exhibit C-17

government never provided any notice or an opportunity for a hearing. Therefore, the

government's action was in violation of 5 USC § 554.


**C. The Government Violated the Plaintiff's rights under the Fourth Amendment by causing his property all over the world to be seized in an unreasonable manner.**

The Fourth Amendment states that the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated." U.S. Const. amend. IV.

In this case, the government never provided the plaintiff with an opportunity to

defend itself. The government relied purely on hearsay and other evidence which may or

may not be true. As stated above, the countries in which the charity AHF operated are

countries with significant problems and with have various rouge agents within them.

They are not known for their record keeping. Also, as sated above, the government in its

press release, ties the plaintiff to the charity. It seems that the government designated the

plaintiff because he was head of this charity and controlled all its actions. See Treasury

Press Release June 2, 2004. However, the government did not only freeze the assets of

the branches of the charity but also those of the plaintiff's.

It is per se unreasonable to seize the assets of the plaintiff based solely on the

actions of the branches of the charity that operates in certain countries, many of them in

turmoil, base it on hearsay and not give the plaintiff an opportunity to explain the actions.

That violates the most basic of Fourth Amendment principles. How can a person be safe

in their effects if the government can seize their property on no reliable evidence and

without giving them an opportunity to explain?

BURKE Exhibit C-18

The government also never explained why it had to seize the assets of the plaintiff and not just those of the branches of the charities. The government never alleges that the plaintiff was using his personal fund for terrorist activities; they only allege that he was in complete control of the AHIF assets. If that is the case then why not just freeze the assets of AHIF. The government did freeze the assets of AHIF, however, form the press release it is clear that they cite to the same actions to freeze the assets of both he plaintiff and AHIF. There was no reason to freeze the plaintiff's personal assets, therefore the government violated the plaintiff's Fourth Amendment rights by doing so.

**D. The Plaintiff has met the standard for Surviving a Motion to Dismiss**

In order to survive a motion to dismiss, the complaint only needs to provide a short and plain statement of the claim and the grounds on which it rests. Holy Land, 219 F. Supp 2d at 75. The court "may only dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (citing to Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

In this case, as mentioned above, relief can be granted by the government simply following its own actions in previous cases. The government just has to provide the plaintiff with proper notice, the unclassified portion of the administrative record, and a meaningful opportunity to he heard. These are all actions that the government has done in the Holy Land and Global Relief cases. It is precisely because the government did do these actions, that the courts in both of those cases dismissed the plaintiffs claim on 12(b)(6) grounds. In this case the plaintiff is simply asking the court to set aside his

19

designation until such time as the government provides him with notice, administrative

record and meaningful opportunity to be heard, and that such action would be subject to

judicial review of the record.


**E. Plaintiff meets the Legal Standard for Summary Judgment**

Under Fed. R. Civ. P. 56 "shall be granted if the pleadings depositions, answers to

interrogatories, admissions and affidavits show that there is no genuine issue of material

fact, and that the moving party is entitled to judgment as a matter of law." Holy Land,

219 F. Supp at 66 (citing See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986)).

In the current case, there are no issues of fact.  The government in their motion

never asserts that they provided the plaintiff with any notice or the administrative record.

The only issue is whether the plaintiff was entitled to notice, the administrative record

and a meaningful opportunity to be heard, after the government designated and seized his

property.  That is an issue of law not fact.  Therefore, since the legal standard is clear that

in exigent circumstances the government can provide notice and a hearing after the

deprivation and in this case the government did not, the Plaintiff is entitled to a summary

judgment as a matter of law.


**Conclusion**

For the forgoing reasons, the government's Motion to Dismiss should be denied and the

Plaintiff's Motion for Summary Judgment should be granted.

BURKE Exhibit C-20

COBURN & SCHERTLER, LLP

/s/

_____

Danny Onorato (#480043)
Lisa Freiman Fishberg (#461984)
1140 Connecticut Avenue, NW
Suite 1140
Washington, DC  20036
Ph. (202) 628-4199
Fax (202) 628-4177
Email: donorato@coburnandschertler.com
        lfishberg@coburnandschertler.com


Ashraf W. Nubani (*admission pending*)
The Nubani Law Firm, P.C.
5029 Backlick Road
Suite A
Annandale, VA 22003
Ph. (703) 658-5151
Fax (703) 658-9200
Email: anubani@rbanlaw.com

21