# THOMAS R. BURKE

# EXHIBIT C

## C-22 through C-44

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-60008-HO |
| | ) | |
| Plaintiff, | ) | **I N D I C T M E N T** |
| | ) | |
| v. | ) | <u>Count One:</u>   18 U.S.C. §371 - |
| | ) | |
| AL-HARAMAIN ISLAMIC | ) | Conspiracy to Defraud the |
| FOUNDATION, INC.; | ) | United States |
| | ) | |
| PIROUZ SEDAGHATY, | ) | <u>Count Two:</u>   26 U.S.C. §7206(1) - |
| a/k/a Pete Seda, Perouz Seda Ghaty | ) | |
| and Abu Yunus; and | ) | False I.R.S. Return by Tax |
| | ) | Exempt Organization |
| SOLIMAN HAMD AL-BUTHE, | ) | |
| a/k/a Soliman Al-Buthe; | ) | <u>Count Three:</u> 31 U.S.C. |
| | ) | §5316(a)(1)(A) - |
| Defendants. | ) | |
| | | Failure to File Report of |
| | | International Transportation of |
| | | Currency or Monetary |
| | | Instrument |

**THE GRAND JURY CHARGES:**

**<u>Introductory Allegations</u>**

At all times relevant to this indictment:

    A)    Defendant PIROUZ SEDAGHATY, also known as Pete Seda, Perouz

Seda Ghaty, and Abu Yunus, was a naturalized United States citizen and resident of

Ashland, Oregon.

Indictment - 1

B)      The Al-Haramain Islamic Foundation, referred to in this indictment as Al-Haramain (Riyadh), was a non-governmental organization headquartered in Riyadh, Saudi Arabia. Al-Haramain (Riyadh) operated in more than fifty countries throughout the world. Its publicly stated purposes were to distribute Islamic aid and Islamic educational material.

      i)      Aqeel Abdul-Aziz Al'Aqeel, also known as Ageel al-Ageel or Aquil al-Aquil, was the General Manager of Al-Haramain (Riyadh).

      ii)      Defendant SOLIMAN HAMD AL-BUTHE, also known as Soliman Al-Buthe, was a citizen of Saudi Arabia and an official with Al-Haramain (Riyadh). AL-BUTHE was also the chairman of the United States Committee for Al-Haramain, responsible for promoting Al-Haramain's (Riyadh) causes in the United States.

      iii)      Al-Haramain (Riyadh) first established a presence in the United States in 1997. In October 1997, Aqeel Abdul-Aziz Al'Aqeel, on behalf of Al-Haramain (Riyadh), designated defendant SOLIMAN AL-BUTHE through a power of attorney as its lawful representative in the United States. Later that month, defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE registered the Al-Haramain Islamic Foundation as an assumed business name with the Oregon Secretary of State. SEDAGHATY was designated as Al-Haramain Islamic Foundation's authorized representative. The Al-Haramain Islamic Foundation listed its principal place of business in the United States as 1257 Siskiyou Blvd. #224, Ashland, Oregon.

Indictment - 2

iv)    Defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE

establish a bank account in the name of the Al-Haramain Islamic

Foundation at the Bank of America in Ashland, Oregon.  Defendants

PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE were the only two

individuals authorized to conduct transactions involving that bank account.

v)    In February and March 1999, defendant PIROUZ SEDAGHATY

established Al-Haramain as a corporation in the State of Oregon, thus

becoming the AL-HARAMAIN ISLAMIC FOUNDATION, INC.  In its

corporate application, defendant AL-HARAMAIN ISLAMIC FOUNDATION,

INC. asserted:

> The corporation is organized as a public benefit corporation
> exclusively for religious, humanitarian, educational, and charitable
> purposes as defined in Section 501(C)(3) of the Internal Revenue
> Code, and ORS 65.036 of the Oregon Revised Code.  The
> corporation shall not carry on any activities which are not permitted
> by the Internal Revenue Code for such corporations which are
> exempt from federal income tax and to which contributions are
> deductible for federal income tax purposes.  Al Haramain Islamic
> Foundation, Inc. stands against terrorism, injustice, or subversive
> activities in any form and shall not support any statement or acts of
> terrorism.  Al Haramain Islamic Foundation, Inc. believes such
> conduct is contrary to Islamic principles.

vi)    In documents filed with the Internal Revenue Service, defendant

AL-HARAMAIN ISLAMIC FOUNDATION, INC. listed the following

individuals among its corporate officers:

| | | |
|---|---|---|
| Ageel Al-Ageel (aka Aquil al-Aquil) | - | President |
| Soliman HS Al-Buthe | - | Treasurer |
| Perouz Seda Ghaty | - | Secretary |

Indictment - 3

Defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. provided the

Internal Revenue Service with a website address of www.alharamain.org.

vii)     Defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. was

funded by its parent organization Al-Haramain (Riyadh) through its

headquarters in Riyadh, Saudi Arabia, which exercised decision-making

authority over financial transactions conducted by the United States office,

including decisions on how donations received by Al-Haramain (Riyadh)

and defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. would be

distributed.

C)     Immigration and Customs Enforcement (ICE) and Customs and Border

Protection (CBP) are agencies of the U.S. Department of Homeland Security.  At the

time of the events relevant to this indictment, ICE and CBP were known as the United

States Customs Service, which was an agency of the United States Department of the

Treasury.  As part of its lawful functions, ICE and CBP are responsible for collecting

information concerning currency and monetary instruments coming into or leaving the

United States in amounts greater than $10,000.  At the time of the events relevant to

this indictment, the United States Customs Service was responsible for collecting

information concerning currency and monetary instruments coming into or leaving the

United States in amounts greater than $10,000.

i)     Anyone who transports, mails or ships more than $10,000 in

currency or monetary instruments, including travelers checks, into or out

of the United States, is required by law to provide the details of that

transaction to the United States Government through a Form 4790,

Indictment - 4

*Report of International Transportation of Currency or Monetary*

*Instruments.*

D)    The Internal Revenue Service is an agency of the United States

Department of the Treasury.  As part of its lawful functions, the IRS is responsible for

considering applications from organizations seeking to be exempt from taxation.  If tax

exempt status is granted to an organization, it must file a Form 990, *Return of*

*Organization Exempt from Income Tax,* with the IRS each year in which its contributions

exceed $100,000.  If the IRS determines from a review of a Form 990 that a tax exempt

organization is not operating consistently with its tax exempt status, then the IRS may

revoke the tax exemption and subject the organization to taxation.

>    i)    On December 31, 1999, defendant PIROUZ SEDAGHATY and
>
>    defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. filed an
>
>    application for tax exempt status, asserting the Al-Haramain Islamic
>
>    Foundation was a public benefit corporation, organized exclusively for
>
>    religious, humanitarian, educational and charitable purposes.  The Internal
>
>    Revenue Service granted defendant AL-HARAMAIN ISLAMIC
>
>    FOUNDATION, INC.'s application for tax exempt status in December
>
>    2000.

E)    As used in this indictment, the term "jihad" means violent jihad, that is, a

holy war accomplished through violent physical struggle and armed conflict.

F)    "Mujahideen" are individuals who engage in a violent physical struggle or

armed conflict to promote a holy war or violent jihad.

G)    "Zakat" is one of the pillars of Islam, and is the obligatory alms or charity

Indictment - 5

tax imposed on all practicing Muslims to support the poor and needy.  Money obtained through zakat has been diverted by Islamic charitable foundations and non-governmental organizations to fund mujahideen, assisting them in violent jihad.

   H)  Chechnya is a North Caucasus province located south of Russia. Chechnya has a long history of a Muslim led guerilla independence resistance against Russian occupation.  In approximately 1995, foreign mujahideen moved into Chechnya in an organized effort to aid local Muslim fighters in an attempt to defeat Russian forces.  The mujahideen are engaged in a violent jihad, with the goal of creating an Islamic state in Chechnya.  The Chechen mujahideen have received funding from Islamic charities and non-governmental organizations.

   I)  The website www.alharamain.org was hosted by Al-Haramain (Riyadh). Through this website and other websites referred to in Al-Haramain's (Riyadh) website, Al-Haramain (Riyadh) promoted violent jihad as an obligation of Islam, updated readers concerning the Chechen mujahideen's violent jihad against the Russian army, and advised readers on how to donate money to the Chechen mujahideen.

### Count One

   The introductory allegations are incorporated as if fully set forth herein.

### Conspiracy to Defraud the United States Government

   From late 1999, through October 2001, in the District of Oregon and elsewhere, the

   • AL-HARAMAIN ISLAMIC FOUNDATION, INC., an Oregon Corporation;

   • PIROUZ SEDAGHATY, a/k/a Pete Seda, Perouz Seda Ghaty, and Abu Yunus; and

Indictment - 6

- SOLIMAN HAMD AL-BUTHE, a/k/a Soliman Al-Buthe;

defendants herein, did unlawfully, willfully, and knowingly conspire, combine,

confederate, and agree together and with each other and with other individuals and

organizations both known and unknown to the grand jury to defraud the United States

for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of

the U.S. Immigration and Customs Enforcement and Customs and Border Protection of

the Department of Homeland Security, formerly the United States Customs Service of

the Department of Treasury, in the collection of information concerning the

transportation of currency and monetary instruments leaving the United States, and the

Internal Revenue Service of the Treasury Department, in the collection of information

concerning financial transactions of tax exempt organizations, through deceit, craft,

trickery and dishonest means.

## I.  Object of the Conspiracy

In February 2000, an individual in Egypt donated $150,000 to Al-Haramain

(Riyadh) as zakat to be sent to Chechnya.  The funds were initially wire transferred by

the donor to an Al-Haramain bank account in Oregon, converted into travelers checks

and a cashier's check, and covertly taken out of the United States by defendant

SOLIMAN AL-BUTHE.  Intending that the funds be delivered to the Chechen

mujahideen, defendants PIROUZ SEDAGHATY, SOLIMAN AL-BUTHE, the AL-

HARAMAIN ISLAMIC FOUNDATION, INC., and others, engaged in a conspiracy to

prevent the United States Government from learning of the transaction by failing to fill

out paperwork, as required by law, acknowledging the funds were leaving the United

States, and by filing a false tax return with the Internal Revenue Service which falsified

Indictment - 7

how the donated funds were distributed by defendant AL-HARAMAIN ISLAMIC

FOUNDATION, INC.

## II.  Manner and Means by Which the Conspiracy was Carried Out

The manner and means by which the conspiracy was sought to be accomplished

included:

A)    In 1999 and 2000, Al-Haramain (Riyadh) published reports and articles in

support of the mujahideen in Chechnya on its website, www.alharamain.org.  These

reports were published in English and Arabic.  One report, entitled "The Latest News

About the Jihaad in Chechnya," provided details of specific battles between Russian

forces and the mujahideen in Chechnya.  The website also published prayers calling for

the destruction of the Russian army and for aid for "our Mujaahideen brothers in

Chechnya."  The website also contained a link to www.qoqaz.com.  Through this link,

details were available on how to fund the Chechen mujahideen.

B)    In February 2000, Al-Haramain (Riyadh) issued an online newsletter

reading in part:

Jihad is a religious obligation in Islaam.  Its aim is to fight oppression and
injustice and to remove obstacles which prevent the spread of Islam.  This
is accomplish[ed] either by weakening or destroying the disbelieving
prevalent political parties so that Muslims can prevent anyone from
persecuting their brother Muslims wherever they may be.

C)    In February 2000, Al-Haramain (Riyadh) was contacted by an individual in

Egypt seeking to donate $150,000 "as Zakat in order to participate in your nobel

support to our muslim brothers in Chychnia...."  To make the donation, the Egyptian

donor initially sent the funds to defendant AL-HARAMAIN ISLAMIC FOUNDATION,

INC. in the United States.

Indictment - 8

BURKE Exhibit C-29

D)     On or about February 24, 2000, the Egyptian donor wire transferred $149,985 from an account he controlled at the National Bank of Kuwait in London, England, to an account at the Bank of America in Ashland, Oregon, in the name of the Al-Haramain Islamic Foundation.  All funds in the Al-Haramain account at the Bank of America were controlled by defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE.

E)     In an electronic message sent from Riyadh, Saudi Arabia, to defendant PIROUZ SEDAGHATY in Oregon, defendant SOLIMAN AL-BUTHE asked defendant PIROUZ SEDAGHATY to verify whether the funds had been received in Al-Haramain's bank account in the United States.

F)     Sometime after February 24, 2000, the General Manager of Al-Haramain (Riyadh), Aqeel Abdul-Aziz Al-'Aqeel, signed a letter thanking the Egyptian donor for his $150,000 donation and stating:

> We appreciate your trust in Al-Haramain Islamic Foundation and assure you of
> our commitment to continue every possible effort to help ending the Chechnyan
> crisis.

G)     On or about March 7, 2000, defendant SOLIMAN AL-BUTHE flew from Riyadh, Saudi Arabia to Oregon.  AL-BUTHE entered the United States pursuant to a business visa and listed his intended destination as 1257 Siskiyou Blvd. #212, Ashland, Oregon.

H)     On or about March 10, 2000, defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE went to the Bank of America in Ashland, Oregon to obtain a portion of the donated funds.  Defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY purchased one hundred thirty (130) $1,000 American Express Travelers

Indictment - 9

Checks. The bank charged $1,300 in fees for the travelers checks. Defendant

SOLIMAN AL-BUTHE signed and used check #9456, in the amount of $131,300,

written off of the Al-Haramain account at the Bank of America, to pay the bank for these

American Express Travelers Checks. The money used to purchase these checks was

derived from the Egyptian donor.

I)        On or about March 11, 2000, defendant PIROUZ SEDAGHATY returned

to the Bank of America in Ashland, Oregon. He requested that a cashier's check, in the

amount of $21,000, be issued to defendant SOLIMAN AL-BUTHE. The funds used to

purchase this cashier's check were derived from the Egyptian donor. Someone later

wrote a notation at the bottom of Al-Haramain Islamic Foundation, Inc.'s copy of the

cashier's check, which stated: "Donation for Chichania Refugees."

J)        On or about March 11, 2000, defendants SOLIMAN AL-BUTHE and

PIROUZ SEDAGHATY signed an agreement which reads in part:

> This is an agreement bet (sic) Soliman and Abu Yunus. This agreement states,
> that Abu Yunus is turning all monies and responsibilities that were collected for
> the Brothers and Sisters in Chechnya over to Brother Soliman. Soliman states
> that he has received monies in the amount of $186,644.70 and he also fully
> relieves Abu Yunus of all responsibilities to the money.

A handwritten notation at the bottom of this agreement states: "I deposit the amanet

[gift] in Alharamain head office for Chechenya refugees." On or about March 11, 2000,

defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY signed another

agreement which was identical to the first agreement, except that defendants

represented that defendant SOLIMAN AL-BUTHE had received $188,465.00 from

defendant PIROUZ SEDAGHATY, rather than $186,644.70.

K)        On or about March 12, 2000, defendant SOLIMAN AL-BUTHE departed

Indictment - 10

the United States from JFK International Airport in New York for Riyadh, Saudi Arabia

with the funds donated by the Egyptian. As part of the conspiracy, defendant

SOLIMAN AL-BUTHE intentionally failed to file a Form 4790, *Report of International*

*Transportation of Currency or Monetary Instruments*, as required by law, with the United

States Customs Service, acknowledging that he was leaving the United States with

travelers checks exceeding $10,000.

      L)     On or before March 25, 2000, defendant SOLIMAN AL-BUTHE cashed

the one hundred thirty (130) $1,000 American Express Travelers Checks at Al Rajhi

Banking and Investment in Saudi Arabia.

      M)    Sometime after March 12, 2000, defendant SOLIMAN AL-BUTHE

deposited the $21,000 cashiers check he obtained from the Bank of America in Oregon

into an account he had at Al Rajhi Banking and Investment in Saudi Arabia.

      N)    In June 2000, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.

purchased a building in Springfield, Missouri for approximately $375,000. A large

portion of the funds used by defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.

to purchase this building came from a Bank of America account in Oregon controlled by

defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY, on behalf of defendant

AL-HARAMAIN ISLAMIC FOUNDATION, INC.

      O)    In or about September 2001, defendant PIROUZ SEDAGHATY provided

a financial summary to his accountant detailing the funds used by defendant AL-

HARAMAIN ISLAMIC FOUNDATION, INC. to purchase the building in Springfield,

Missouri. This accounting was false in that it represented that check #9456, referred to

in paragraph H of the Manner and Means section of this indictment above, dated March

Indictment - 11

10, 2000, in the amount of $131,300, was part of the funds used by defendant AL-

HARAMAIN ISLAMIC FOUNDATION, INC. to purchase the Missouri building. In fact,

these funds had been transported out of the United States by defendant SOLIMAN AL-

BUTHE in March 2000. The accounting was additionally false in that defendant

PIROUZ SEDAGHATY represented to the accountant that the $21,000 cashier's check

to defendant SOLIMAN AL-BUTHE, referred to in paragraph I of the Manner and

Means section of this indictment above, were funds which had been returned to the

original donor.

P)    In September and October 2001, an accountant in Medford, Oregon,

relying on information provided to him by defendant PIROUZ SEDAGHATY, prepared a

2000 Form 990, *Return of Organization Exempt from Income Tax*. This return was false

in that it represented that check #9456, dated March 10, 2000, in the amount of

$131,300, was used by defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. as

part of the funds to purchase a building in Springfield, Missouri. The return was

additionally false in that it represented that the $21,000 cashier's check to defendant

SOLIMAN AL-BUTHE were funds which had been returned to an Al-Haramain (Riyadh)

donor.

Q)    On or about October 16, 2001, defendant PIROUZ SEDAGHATY signed a

2000 Form 990, *Return of Organization Exempt from Income Tax*, on behalf of

defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC., which he knew to be false.

R)    In October 2001, defendant PIROUZ SEDAGHATY caused a 2000 Form

990, *Return of Organization Exempt from Income Tax*, which he knew to be false, to be

BURKE Exhibit C-33

filed with the Internal Revenue Service on behalf of defendant AL-HARAMAIN ISLAMIC

FOUNDATION, INC.

### III. Overt Acts of the Conspiracy

In furtherance of the conspiracy, and to effect the objects thereof, the following

overt acts were committed in the District of Oregon and elsewhere:

A)    In February 1999, defendant PIROUZ SEDAGHATY filed an application to

incorporate the Al-Haramain Islamic Foundation in Oregon. He listed a mail service

business located at 1257 Siskiyou Blvd. in Ashland, Oregon as the corporation's

principal place of business.

B)    In late 1999 and early 2000, Al-Haramain (Riyadh) published articles

captioned "The Latest News About the Jihaad in Chechnya" on its website,

www.alharamain.org, which provided details concerning the mujahideen's progress in

fighting the Russian army. The website also contained a prayer for the Chechen

mujahideen which calls for aid for the "Mujaahideen brothers in Chechnya." The

website also contained a link to www.qoqaz.com. Through this link, details were

available on how to fund the Chechen mujahideen.

C)    On or about February 24, 2000, a donor to Al-Haramain (Riyadh) wire

transferred $149,985 from a bank account in London, England to a Bank of America

account in the name of defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. in

Ashland, Oregon.

D)    On or about March 7, 2000, defendant SOLIMAN AL-BUTHE flew from

Riyadh, Saudi Arabia to Oregon. AL-BUTHE entered the United States pursuant to a

Indictment - 13

BURKE Exhibit C-34

business visa and listed his intended destination as 1257 Siskiyou Blvd., Ashland, Oregon.

      E)     On or about March 10, 2000, defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE purchased one hundred thirty (130) $1,000 American Express Travelers Checks at the Bank of America in Ashland, Oregon.

      F)     On or about March 11, 2000, defendant PIROUZ SEDAGHATY purchased a $21,000 cashier's check, payable to defendant SOLIMAN AL-BUTHE, from the Bank of America in Ashland, Oregon.

      G)     On or about March 12, 2000, defendant SOLIMAN AL-BUTHE departed the United States on Saudi Air flight #38 from New York to Riyadh, Saudi Arabia.

      H)     In June 2000, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. purchased a building in Springfield, Missouri, paid for in large part with funds provided by Al-Haramain (Riyadh).

      I)     In or about September 2001, defendant PIROUZ SEDAGHATY gave his accountant a financial summary of the funds used by defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. to purchase a building in Springfield, Missouri.

      J)     In October 2001, defendant PIROUZ SEDAGHATY signed a Form 990, *Return of Organization Exempt from Income Tax,* on behalf of defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.

      In violation of Title 18, United States Code, Section 371.

///

Indictment - 14

BURKE Exhibit C-35

### Count Two

### False Return by Tax Exempt Organization

The Introductory Allegations, and the Manner and Means in Count One, are incorporated as if fully set forth herein.

On or about October 16, 2001, in the District of Oregon and elsewhere, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC., an Oregon corporation, and defendant PIROUZ SEDAGHATY, a resident of Ashland, Oregon, did willfully make and subscribe a Form 990, *Return of Organization Exempt from Income Tax*, for the calendar year 2000, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 990 defendants then and there well knew and believed was not true and correct as to every material matter in that:

> Line 1 understated "Contributions, gifts, grants, and similar amounts received;"
>
> Line 22 understated "Grants and allocations;" and
>
> Line 57a overstated "Lands, buildings, and equipment: basis."

In violation of Title 26, United States Code, Section 7206(1) and Title 18, United States Code, Section 2.

### Count Three

### Failure to File Report of International Transportation of

### Currency or Monetary Instruments

The Introductory Allegations, and Manner and Means in Count One, are incorporated as if fully set forth herein.

Indictment - 15

On or about March 12, 2000, in the District of Oregon and elsewhere, defendant SOLIMAN AL-BUTHE, did knowingly transport, mail, and ship, monetary instruments of more than $10,000 from a place within the United States to a place outside the United States, that is, he knowingly transported, mailed or shipped $130,000 in travelers checks from Oregon to New York to Saudi Arabia, and, in so doing, did unlawfully, knowingly and willfully fail to file a report of that transportation, as required by Title 31, United States Code, Section 5316(a)(1)(A), and Title 31, Code of Federal Regulations, Section 103.23, with the United States Customs Service.

In violation of Title 18, United States Code, Sections 5316(a)(1)(A) and 5322, and Title 31, Code of Federal Regulations, Sections 103.11 and 103.23

### Forfeiture Allegation

Upon conviction of the violation alleged in Counts One or Three, defendant shall forfeit all property involved in or traceable to such violation, including but not limited to $130,000.

Pursuant to Title 18, United States Code, Section 982(a)(1)(A).

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

Indictment - 16

BURKE Exhibit C-37

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by

18 U.S.C. § 982(b),  to seek forfeiture of any other property of said defendant up to the

value of the forfeitable property described above.

A True Bill:

/s/ Grand Jury Foreperson

Grand Jury Foreperson

KARIN J. IMMERGUT
UNITED STATES ATTORNEY

By:

Christopher L. Cardani
Assistant United States Attorney

Indictment - 17

BURKE Exhibit C-38

Case 3:07-cv-02590-PJH    Document 50-9    Filed 07/02/2008    Page 19 of 24
JS-1703: Additional Al-Haramain Branches, Former Leader Designated...reasury Marks Latest Action in Joint Designation with Saudi Arabia
Case 1:05-cv-00943-GK    Document 7-3    Filed 07/28/2005    Page 1 of 6

Press Room

---

### FROM THE OFFICE OF PUBLIC AFFAIRS

June 2, 2004
JS-1703

### Additional Al-Haramain Branches, Former Leader Designated by Treasury as Al Qaida Supporters
### Treasury Marks Latest Action in Joint Designation with Saudi Arabia

The United States and Saudi Arabian governments today announced yet further steps in the war against terrorist financing by jointly designating five additional branches of the Al-Haramain Islamic Foundation (AHF) for the financial, material and logistical support they provided to the al-Qaida network and other terrorist organizations. Today's action marks the latest in a series of joint efforts between the United States and Saudi Arabia in the financial war on terror.

"Terrorists and their tainted dollars have corrupted charity by using the philanthropic spirit and charitable institutions to further their warped motives," said Juan Zarate, Treasury's Deputy Assistant Secretary for the Executive Office for Terrorist Financing and Financial Crimes.

The U.S. and Saudi Arabia are jointly submitting the entities to the United Nations' 1267 Committee to be added to the consolidated list of terrorists tied to al Qaida, Usama bin Laden (UBL) and the Taliban.

The United States is also designating the former leader of Al-Haramain, Aqeel Abdulaziz Al-Aqil, and submitting his name to the UN 1267 Committee for inclusion on the consolidated international list.

"The act of charity is sacrosanct. We need to take every step possible to stop the flow of terrorist funding through charities while preserving the integrity of charitable giving around the world," said Zarate. "The United States is working with our international partners and the charitable community to safeguard this sector from terrorists who mock the very idea of charity by converting good will and humanitarian aid into hate-filled agendas supported by blood money."

Based upon the following information and additional classified material, Treasury is designating Al-Aqil and the branches of AHF located in Afghanistan, Albania, Bangladesh, Ethiopia and the Netherlands.

BURKE Exhibit C-39

Case 3:07-cv-02590-PJH    Document 50-9    Filed 07/02/2008    Page 20 of 24
JS-1703: Additional Al-Haramain Branches, Former Leader Designated...reasury Marks Latest Action in Joint Designation with Saudi Arabia
Case 1:05-cv-00943-GK    Document 7-3    Filed 07/28/2005    Page 2 of 6

## Afghanistan

In Afghanistan, prior to the removal of the Taliban from power, AHF supported the cause of Jihad and was linked to the UBL financed Makhtab al-Khidemat (MK), a pre-cursor organization of al Qaida and a Specially Designated Global Terrorist pursuant to the authorities of E.O. 13224.

Following the September 11, 2001 terrorist attacks, activities supporting terrorism in Afghanistan continued. In 2002, activities included involvement with a group of persons trained to attack foreigners in Afghanistan. A journalist suspected of meeting with al Qaida and Taliban members in Afghanistan was reportedly transferring funds on behalf of the al Qaida-affiliated AHF and forwarding videotapes from al Qaida leaders to an Arabic language TV network for broadcast.

## Albania
Irfan Tomini Street, #58
Tirana, Albania

The U.S. has information that indicates UBL may have financed the establishment of AHF in Albania, which has been used as cover for terrorist activity in Albania and in Europe. In late 2000, a close associate of a UBL operative moved to Albania and was running an unnamed AHF subsidiary. In 1998, the head of Egyptian Islamic Jihad in Albania was reportedly also a financial official for AHF in Albania. This individual, Ahmed Ibrahim al-Nagar, was reportedly extradited from Albania to Egypt in 1998. At his trial in Egypt, al-Nager reportedly voiced his support for UBL and al Qaida's August 1998 terrorist attacks against the U.S. embassies in Kenya and Tanzania.

Salih Tivari, a senior official of the moderate Albanian Muslim community, was murdered in January 2002. Ermir Gjinishi, who had been supported by AHF, was detained in connection with the murder, but no charges were filed; he was later released by Albanian authorities. Just prior to being murdered, Tivari informed the AHF-affiliated Gjinishi that he intended to reduce "foreign Islamic influence" in the Albanian Muslim community.

Prior to his murder, Tivari controlled finances, personnel decisions, and donations within the Albanian Muslim community. This provided him significant power, enabling him to survive several attempts by extremists trained overseas to replace him or usurp his power.

As of late 2002, AHF was reportedly withdrawing virtually all funding to the Albanian Muslim community. AHF in Albania was to send all proceeds from the sale of some property to the AHF headquarters in Saudi Arabia. As of late 2003, AHF was paying for, through a HAMAS member with close ties to AHF in Albania, security personnel to guard the AHF building in Albania, which had been shut down earlier in 2003.

BURKE Exhibit C-40

Case 3:07-cv-02590-PJH    Document 50-9    Filed 07/02/2008    Page 21 of 24
JS-1703: Additional Al-Haramain Branches, Former Leader Designated...reasury Marks Latest Action in Joint Designation with Saudi Arabia
Case 1:05-cv-00943-GK    Document 7-3    Filed 07/28/2005    Page 3 of 6

**Bangladesh**
House 1, Road 1, S-6
Uttara, Dhaka
Bangladesh

Information available to the U.S. shows that a senior AHF official deployed a
Bangladeshi national to conduct surveillance on U.S. consulates in India for
potential terrorist attacks. The Bangladeshi national was arrested in early 1999
in India, reportedly carrying four pounds of explosives and five detonators.
The terrorist suspect told police that he intended to attack U.S. diplomatic
missions in India. The suspect reportedly confessed to training in al Qaida
terrorist camps in Afghanistan, where he met personally with Usama bin Laden
in 1994. The suspect first heard of plans for these attacks at the AHF office in
Bangladesh.

**Ethiopia**
Woreda District 24 Kebele Section 13
Addis Ababa, Ethiopia

Information available to the U.S. shows that AHF in Ethiopia has provided
support to Al-Ittihad Al-Islamiya (AIAI). In Ethiopia, AIAI has engaged in
attacks against Ethiopian defense forces. AIAI has been designated both by the
U.S. Government and by the UN 1267 Sanctions Committee.

Ethiopia is one of the countries where AHF's website states that they have
operations, but there does not appear to be a formal branch office. As part of
our efforts to designate this branch, we are asking that action be taken to
ensure that individuals cannot use the name of AHF or act under its auspices
within, or in connection with services provided in, Ethiopia.

**The Netherlands**
(a/k/a Stichting Al Haramain Humanitarian Aid)
Jan Hanzenstraat 114, 1053SV
Amsterdam, the Netherlands

Since 2001, Dutch officials have confirmed that the Al Haramain
Humanitarian Aid Foundation located in Amsterdam is part of the larger AHF
network and that Al-Aqil, also being designated today, is chairman of this
foundation's board of directors. As noted elsewhere in this document, AHF
was the founder and leader of AHF and was responsible for all of its activities,
including its support of terrorism.

**Aqeel Abdulaziz Al-Aqil's**
DOB: April 29, 1949

These activities within the branches took place under the control of Aqeel
Abdulaziz Al-Aqil, the founder and long-time leader of AHF and a suspected
al Qaida supporter. Al-Aqil has been identified as AHF's Chairman, Director

BURKE Exhibit C-41

Case 3:07-cv-02590-PJH    Document 50-9    Filed 07/02/2008    Page 22 of 24
JS-1703: Additional Al-Haramain Branches, Former Leader Designated...reasury Marks Latest Action in Joint Designation with Saudi Arabia
Case 1:05-cv-00943-GK    Document 7-3    Filed 07/28/2005    Page 4 of 6

General and President in a variety of sources and reports. As AHF's founder and leader, Al-Aqil controlled AHF and was responsible for all AHF activities, including its support for terrorism. Having been under investigation in late 2003, by March 2004 Al-Aqil was reportedly no longer leading AHF activities; however, some reports indicate Al-Aqil may still be in a position to exercise control or influence over AHF.

When viewed as a single entity, AHF is one of the principal Islamic NGOs providing support for the al Qaida network and promoting militant Islamic doctrine worldwide. Under Al Aqil's leadership of AHF, numerous AHF field offices and representatives operating throughout Africa, Asia, Europe and North America appeared to be providing financial and material support to the al Qaida network. Terrorist organizations designated by the U.S. including Jemmah Islammiya, Al-Ittihad Al-Islamiya, Egyptian Islamic Jihad, HAMAS and Lashkar E-Taibah received funding from AHF and used AHF as a front for fundraising and operational activities.

Under Al-Aqil's leadership, AHF implemented its tasks through its offices and representatives, which span more than 50 countries around the world. AHF maintained nine general committees and several other "active committees" that included the "Continuous Charity Committee, African Committee, Asian Committee, Da'wah and Sponsorship Committee, Masjid Committee, Seasonal Projects Committee, Doctor's Committee, European Committee, Internet and the American Committee, the Domestic Committee, Zakaat Committee and the Worldwide Revenue Promotion Committee."

After the AHF branch is Bosnia was designated in 2002, it immediately began efforts to avoid these sanctions. Despite the joint efforts of the United States and Saudi Arabia to designate the al Qaida-affiliated AHF Bosnia branch office, and the subsequent raid of this office by Bosnian authorities on June 3, 2002, all AHF employees were ordered to avoid cooperating with Bosnian and other authorities under Al-Aqil's leadership. In 2003, AHF headquarters in Saudi Arabia provided instructions to AHF in Bosnia for the disposition of AHF assets. These instructions provided for actions contravening local and international counter terrorism laws and regulations. Al-Aqil stated that AHF's work in Bosnia would continue. After the Bosnian branch reconstituted itself under the name "Vazir," the U.S. and Saudi Arabia joined in designating the branch as an alias for the AHF-Bosnian branch.

These entities are subject to designation under Executive Order 13224 pursuant to paragraphs (d)(i) and (d)(ii) based on a determination that they assist in, sponsor or provide financial, material, or technological support for, or financial or other services to or in support of, or are otherwise associated with, persons listed as subject to E.O. 13224. These branches also meet the standard for inclusion in the United Nations' 1267 Sanctions Committee's consolidated list because of the support provided to UBL, al Qaida or the Taliban,

BURKE Exhibit C-42

Case 3:07-cv-02590-PJH    Document 50-9    Filed 07/02/2008    Page 23 of 24
JS-1703: Additional Al-Haramain Branches, Former Leader Designated...reasury Marks Latest Action in Joint Designation with Saudi Arabia
Case 1:05-cv-00943-GK    Document 7-3    Filed 07/28/2005    Page 5 of 6

Inclusion on the 1267 Committee's list triggers international obligations on all member countries, requiring them to freeze the assets of these offices. Publicly identifying these supporters of terrorism is a critical part of the international campaign to counter terrorism. Additionally, other organizations and individuals are put on notice that they are prohibited from doing business with them.

Blocking actions are critical to combating the financing of terrorism. When an action is put into place, any assets existing in the formal financial system at the time of the order are to be frozen. Blocking actions serve additional functions as well, acting as a deterrent for non-designated parties who might otherwise be willing to finance terrorist activity; exposing terrorist financing "money trails" that may generate leads to previously unknown terrorist cells and financiers; disrupting terrorist financing networks by encouraging designated terrorist supporters to disassociate themselves from terrorist activity and renounce their affiliation with terrorist groups; terminating terrorist cash flows by shutting down the pipelines used to move terrorist-related assets; forcing terrorists to use alternative, more costly and higher-risk means of financing their activities; and engendering international cooperation and compliance with obligations under U.N. Security Council Resolutions.

On March 11, 2002, the United States and Saudi Arabia initiated joint public efforts against terrorist support networks by designating and blocking the funds of the Somalia and Bosnia-Herzegovina branches of AHF based on evidence these branches were diverting charitable funds to terrorism. In 2003, the Saudi government ordered AHF to close all of its overseas branches. AHF stated it closed several branches, but continued monitoring by the United States and Saudi Arabia indicated that some branches, and/or former officials associated with these branches, were either continuing to operate or maintaining other plans to avoid these measures, such as the Bosnia-Herzegovina branch attempting to reconstitute itself and continue operations under the name "Vazir." Similarly, the Indonesian branch of AHF also sought to operate under an alias.

To counter these and other efforts, on December 22, 2003, the United States and Saudi Arabia announced the designation of Vazir, as an a/k/a for the AHF branch in Bosnia-Herzegovina. On January 22, 2004, the U.S. and Saudi Arabia announced the designation of AHF branches in Indonesia, Kenya, Tanzania and Pakistan. The Saudi Arabian government made it clear to host countries that these branch offices should not be considered Saudi entities and should be treated appropriately under local law.

The United States works to preserve the sanctity of charitable giving and the value of humanitarian aid provided by charities of all faiths. In this context, we are working to identify those charities that are abusing the trust of their donors. In addition to today's designation, several other charities have been designated by the United States because of their support of terrorism, including:

BURKE Exhibit C-43

Case 3:07-cv-02590-PJH    Document 50-9    Filed 07/02/2008    Page 24 of 24
JS-1703: Additional Al-Haramain Branches, Former Leader Designated...reasury Marks Latest Action in Joint Designation with Saudi Arabia
Case 1:05-cv-00943-GK    Document 7-3    Filed 07/28/2005    Page 6 of 6

- Makhtab al-Khidamat/Al Kifah (formerly U.S.-based)
- Al Rashid Trust (Pakistan)
- WAFA Humanitarian Organization (Pakistan, Saudi Arabia, Kuwait and UAE)
- Rabita Trust (Pakistan)
- The Holy Land Foundation for Relief and Development (U.S.)
- Ummah Tamer E-Nau (Pakistan)
- Revival of Islamic Heritage Society (Kuwait, Afghanistan and Pakistan)
- Afghan Support Committee (Pakistan)
- Aid Organization of the Ulema (Pakistan)
- Global Relief Foundation (U.S.)
- Benevolence International Foundation (U.S.)
- Benevolence International Fund (Canada)
- Bosanska Idealna Futura (Bosnia)
- Lajnat al Daawa al Islamiyya (Kuwait)
- Stichting Benevolence International Nederland (Netherlands)
- Al Aqsa Foundation (U.S., Europe, Pakistan, Yemen, South Africa)
- Commité de Bienfaisance et de Secours aux Palestiniens (France)
- Association de Secours Palestinien (Switzerland)
- Interpal (UK)
- Palestinian Association in Austria (Austria)
- Sanibil Association for Relief and Development (Lebanon)
- Al Akhtar Trust (Pakistan)
- Six other branches of AHF (Bosnia, Indonesia, Kenya, Pakistan, Somalia, and Tanzania) (March 2002 and January 2004)

The United States is committed to rooting out terrorism by halting those who provide financial support for nefarious acts. With this designation, 374 individuals and entities will have been designated under President Bush's Executive Order aimed at freezing the assets of terrorists and their supporters. Nearly $200 million in terrorist-related assets has been frozen or seized as a result of efforts by the United States and its allies.

BURKE Exhibit C-44