THOMAS R. BURKE (State Bar No. 141930)
JEFF GLASSER (State Bar No. 252596)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111-6533
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599

ROBERT RUBIN (State Bar No. 85084)
PHILIP HWANG (State Bar No. 185070)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
    OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA  94105
Telephone:     (415) 543-9444
Facsimile:     (415) 543-0296

Attorneys for Plaintiff Lawyers' Committee
for Civil Rights of the San Francisco Bay Area

DAVIS WRIGHT TREMAINE LLP

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA,<br><br>                 Plaintiff,<br><br>     vs.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>              Defendants. | Case No. C07-2590 PJH<br><br>**PLAINTIFF LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS, MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   July 23, 2008<br>Time:   9:00 a.m.<br>Dept.:  Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT.................................................. 1

II.    STATEMENT OF FACTS.................................................................................................. 3

III.   LEGAL ANALYSIS .......................................................................................................... 5

       A.    OFAC Has Not Met The Threshold For Invoking Exemption 7 Because The
             Delisting Petitions Were Not Compiled For Law Enforcement Purposes. ............. 5

       B.    Exemption 7(A): Release of The Delisting Petitions Would Not Interfere
             With Enforcement Proceedings Because The Individuals And Entities
             Already Know The Information Contained In The Delisting Petitions They
             Submitted to OFAC. ................................................................................................. 9

       C.    OFAC Cannot Use Exemptions 6 or 7(C) to Shield The Names of
             Individuals And Entities Who Have Petitioned to be Delisted Because OFAC
             Has Publicly Identified Them As Terrorists; The Public Has A Strong
             Interest In Knowing of OFAC's Allegedly Erroneous Designations................... 14

       D.    Exemption 7(D) does not allow for OFAC to Categorically Withhold
             Delisting Petitions Because Those Contesting OFAC's Designation of Them
             As Terrorists Are Not Confidential Sources. ....................................................... 21

       E.    The Government May Not Invoke Exemption 7(F) To Withhold The
             Delisting Petitions Because OFAC Has Not Proven That Their Disclosure
             Would Endanger Lives. ......................................................................................... 22

       F.    LCCR Does Not Contest Appropriate Redactions of the Delisting Petitions
             Under Exemptions 2, 4, and 5. ............................................................................. 25

IV.    CONCLUSION ............................................................................................................... 25

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

Page

**Cases**

*ACLU v. DOD*,
  389 F. Supp. 2d 547 .................................................................14, 22, 24

*Associated Press v. DOD*,
  34 Media L. Rptr. 2251, 2006 U.S. Dist. LEXIS 67913
  (S.D.N.Y. Sept. 20, 2006) ("*AP II*") ....................................................16

*Associated Press v. DOD*,
  395 F. Supp. 2d 15 (S.D.N.Y. 2005), *reconsideration denied*,
  395 F. Supp. 17 (2005), *later proceeding*, 410 F. Supp. 2d 147 (2006),
  *reconsideration denied*, 410 F. Supp. 2d 147, 151 (2006) ("*AP I*").................16

*Associated Press v. DOD*,
  410 F. Supp. 2d 147 (S.D.N.Y. 2006) .............................................12, 17

*Badran v. DOJ*,
  652 F. Supp. 1437 (N.D. Ill. 1987) ....................................................10

*Binion v. DOJ*,
  695 F.2d 1189 (9th Cir. 1983) ...........................................................7

*Blanton v. DOJ*,
  63 F. Supp. 2d 35 (D.D.C. 1999) .......................................................7

*Brunetti v. FBI*,
  357 F. Supp. 2d 97 (D.D.C. 2004) ....................................................24

*Campbell v. HHS*,
  682 F.2d 256 (D.C. Cir. 1982) ........................................................11

*Castaneda v. U.S.*,
  757 F.2d 1010 (9th Cir. 1985).........................................................15

*Center for National Security Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ................................................12, 13, 19

*Church of Scientology v. Department of the Army*,
  611 F.2d 738 (9th Cir. 1979)..........................................................5, 9

*Coastal States Gas Corp. v. DOE*,
  617 F.2d 854 (D.C. Cir. 1980) .....................................................10, 11

*Cohen v. EPA*,
  575 F. Supp. 425 (D.D.C. 1983) .......................................................11

*Cowsen-el v. DOJ*,
  826 F. Supp. 532 (D.D.C. 1992) ........................................................8

*DOJ v. Reporters' Committee for Freedom of the Press*,
  489 U.S. 749 (1989)...............................................................15, 20

*Dow Jones Co. v. FERC*,
  219 F.R.D. 167 (C.D. Cal. 2003) ...................................................11, 18

*EPA v. Mink*,
  410 U.S. 73 (1973) .....................................................................8

*FLRA v. VA*,
  958 F.2d 503 (2d Cir. 1992) ...........................................................14

DAVIS WRIGHT TREMAINE LLP

ii

DAVIS WRIGHT TREMAINE LLP

*Getman v. NLRB,*
    450 F.2d 670 (D.C. Cir. 1971) .................................................................................7

*Goldschmidt v. USDA,*
    557 F. Supp. 274 (D.D.C. 1983) ............................................................................11

*Gordon v. FBI,*
    390 F. Supp. 2d 897 (N.D. Cal. 2004) .............................................................5, 6, 7

*Hale v. DOJ,*
    99 F.3d. 1025 (10th Cir. 1996).............................................................................21

*Keys v. DOJ,*
    830 F.2d 337 (D.C. Cir. 1987) .................................................................................7

*Leadership Conference on Civil Rights v. Gonzales,*
    404 F. Supp. 2d 246 (D.D.C. 2005) .........................................................................6

*Lion Raisins, Inc. v. USDA,*
    354 F.3d 1072 (9th Cir. 2004)...............................................................................11

*Manna v. DOJ,*
    51 F.3d 1158 (3d Cir. 1995) .....................................................................................9

*Maydak v. DOJ,*
    362 F. Supp. 2d 316 (D.D.C. 2005) ...................................................................6, 22

*Nation Magazine, Washington Bureau v. Customs Service,*
    71 F.3d 885 (D.C. Cir. 1995) ...........................................................................15, 18

*Neely v. FBI,*
    208 F.3d 461 (4th Cir. 2000)................................................................................21

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) .................................................................................................9

*Parhat v. Gates,*
    No. 06-1397, 2008 U.S. App. LEXIS 13721 (June 20, 2008) ................................19

*Pratt v. Webster,*
    673 F.2d 408 (D.C. Cir. 1982) .............................................................................6, 7

*Raulerson v. Ashcroft,*
    271 F. Supp. 2d 17 (D.D.C. 2002) .........................................................................21

*Rosenfeld v. DOJ,*
    57 F.3d 803 (9th Cir. 1992).................................................................5, 15, 18, 21

*Schanen v. DOJ,*
    773 F.2d 1065 (9th Cir. 1985)...............................................................................23

*United States v. Landano,*
    508 U.S. 165, 181 (1993)..................................................................................21, 22

*Washington Post Co. v. Department of Agric.,*
    943 F. Supp. at 37 n.6 (D.D.C. 1996) ...................................................................17

*Weiner v. FBI,*
    943 F.2d 972 (9th Cir. 1991) .................................................................................15

**Statutes**

31 Code of Federal Regulation § 807................................................................................17

5 U.S.C. § 552(b)(7).............................................................................................................5

5 U.S.C. § 552(b)(7)(A) ......................................................................................................9

iii

5 U.S.C. § 552(b)(7)(F) ..................................................................................22

Code of Federal Regulation § 501.802 ...........................................................8

Code of Federal Regulation § 501.807 ...........................................................3

**Other Authorities**

DEPARTMENT OF JUSTICE FREEDOM OF INFORMATION GUIDE (March 2007) (available at
    http://www.usdoj.gov/oip/foia_guide07.htm) ............................................9

**Treatises**

Nice-Peterson, *Justice for the Designated*, 93 GEO. L.J. 1387, 1388 (2004-2005) .......................18

DAVIS WRIGHT TREMAINE LLP

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On February 14, 2008, this Court specifically ordered the Department of Treasury and its Office of Foreign Assets Control ("OFAC") to publicly release 346 delisting petitions "which exist in paper form" submitted by individuals and entities who contest OFAC's designation that they are "terrorists." *See* 2/14/08 Order. Notwithstanding this Court's express order, OFAC steadfastly refuses to release *any* portion of the delisting petitions. The delisting petitions are as varied as the individuals and entities who submitted them to OFAC; after all, the petitions reflect the subjective reasons why they believe OFAC has erred. In some 138 instances, the petitions have been granted; in others, there no longer exists any pending investigation by the government; and in others, the petitions remain pending. Without providing LCCR or this Court with a *Vaughn* index or a particular showing of the allegedly sensitive information that purportedly appears in each of the individual petitions, OFAC asserts a variety of exemptions to releasing *any portion of any* of the delisting petitions regardless of the particular circumstances raised in each.

The Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCR") seeks the withheld delisting petitions to shed much-needed light on the personal stories reflected in the 346 delisting petitions of those individuals and/or entities who contend that OFAC's designation of them is erroneous. When this Court earlier ordered Treasury to publicly release other OFAC-related documents about the administration of its terrorist list, LCCR could, for the first time, confirm its concerns that innocent Americans are being mistakenly identified as terrorists by their own government. Similarly, the delisting petitions withheld in toto by OFAC reflect the stories of individuals and entities caught up in what they contend is a bureaucratic mistake with enormous reputational implications – after all, OFAC has publicly identified them as "terrorists" on its web site, in press releases and through publication in the Federal Register and barred anyone from transacting any business with them.

OFAC's legal rationale for withholding every portion of every delisting petition is seriously flawed. Overall, the government's motion for summary judgment should be denied because it has utterly failed to adequately describe, with particularity, the withheld information contained in each of the unique delisting petitions as required by FOIA. As to OFAC's specific FOIA exemptions,

1

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  OFAC has not met the threshold for invoking Exemption 7 because delisting petitions are not

2  records or information "compiled for law enforcement purposes" since the petitions were not

3  compiled by the government at all but were created by the individuals and nongovernmental

4  entities who challenge OFAC's public labeling of them as global terrorists.  Even if OFAC could

5  meet the threshold for Exemption 7, OFAC may not conceal *every* delisting petition on the basis of

6  Exemption 7(A) since in some cases no concrete law enforcement proceeding is pending or likely

7  to happen, and OFAC has failed to show that release of *every* delisting petition reasonably could be

8  expected to interfere with law enforcement proceedings when the targets of those proceedings, the

9  delisting petitioners, already know about the information contained within them because they

10 authored them.  OFAC also has improperly invoked Exemptions 7(C) and 6 to withhold

11 information in the delisting petitions because delisting petitioners did not have any expectations

12 that the petitions, which are in some instances attached as administrative records in public court

13 proceedings, are private, and a strong public interest exists in learning about the alleged errors and

14 lack of process by OFAC in designating individuals and entities as "global terrorists."  OFAC's

15 Exemption 7(D) argument fails, too, because delisting petitioners do not become "confidential

16 sources" of OFAC by submitting delisting petitions that take issue with OFAC's designation of

17 them as terrorists.  Finally, Exemption 7(F) does not operate to exclude all delisting petitions since

18 the release of them could not in every instance be reasonably expected to endanger the lives of

19 delisting petitioners, who have already been publicly called terrorists by OFAC and endangered by

20 that characterization and who have nonetheless sought to dispute the terrorist label.

21      As a result of the wholly inadequate and improper evidentiary showing that OFAC provided

22 with its summary judgment motion, while LCCR does not dispute that certain personally-

23 identifying information and the names of bona fide confidential sources and informants may

24 appropriately be redacted from the delisting petitions it seeks, it is impossible for LCCR – or this

25 Court – to know the scope and propriety of such redactions.  Because OFAC has failed to meet its

26 burden, OFAC's summary judgment should be denied, and LCCR is entitled to judgment as a

27 matter of law.

28

2

## II.    STATEMENT OF FACTS

Rather than comply with this Court's express order to publicly release the delisting petitions, OFAC belatedly alleges that it can withhold the delisting petitions in their entirety based on Exemptions 7(A) and 7(F), and that the documents, as a group, are also shielded by Exemptions 2, 3, 4, 5, 6, 7(A), 7(C), and 7(D).  OFAC 3/14/08 letter, at 4; OFAC 5/23/08 letter, at 3.

OFAC and LCCR were also unable to resolve the redactions issues associated with other documents that the Court previously ordered OFAC to publicly release.  OFAC refused to explain the different bases for the invocations of the eight exemptions that it was asserting for the delisting petitions.  On May 30, 2008, literally minutes before the telephone conference with the Court, OFAC had a change of heart with respect to certain redactions issues.  On June 6, 2008, after this Court questioned OFAC's withholding of the names of certain delisted individuals, the agency released the names in the letters informing certain individuals and entities that they had been delisted, as well as more of the content in redacted emails that OFAC previously produced.

On June 18, OFAC filed this Motion to Suppress, Motion for Summary Judgment to address the remaining issues in this case, including the delisting petitions.  **In this Opposition, LCCR no longer challenges the redactions it contested in the documents but instead solely focuses on the delisting petitions that OFAC is improperly withholding in their entirety.**

Delisting petitions are complaints submitted to OFAC by individuals and entities who claim that OFAC should not have blocked their financial assets and listed them as "Specially Designated Global Terrorists" on the Treasury Department website and in the Federal Register.  These delisting petitions are made in conformance with the Code of Federal Regulations Section 501.807, which by its terms does not make the delisting petitions for those designated as "global terrorists" confidential.  The petitions – which may or may not be prepared by legal counsel and be presented to OFAC in a variety of formats – reflect various grievances, including assertions of mistaken identity, lack of notice, designations based on secret evidence with no opportunity for the affected individual or entity to review or challenge, and retaliation for First Amendment-protected activity, among other things.  On some occasions, as illustrated by the examples offered by LCCR, delisting petitions are attached as part of the administrative record in subsequent legal challenges made in the

DAVIS WRIGHT TREMAINE LLP

3

public court system.  Through this avenue, the public may access the attached delisting petitions of Al Haramain Islamic Foundation ("AHIF"), Islamic American Relief Agency—USA ("IARA—USA"), Aaran Money Wire Service , Inc. ("Aaran") and Garad Nor ("Nor"), and Global Services International, Inc. ("Global"), among others.  *See* Exs. A, B, C to Burke Decl. and Ex. A to Kabat Decl.

The delisting petitions offered in support of LCCR's Opposition illustrate the kinds of material that is being withheld from the public by OFAC.  In AHIF's case, for example, AHIF explained how "it is literally at a loss as to how to respond [to the blocking of funds and proposed listing of AHIF as a 'global terrorist'] given the paucity of relevant information contained in the 'unclassified' administrative record."  *See* Ex. A to Kabat Decl., at 4 of 5/14/2004 letter between AHIF and OFAC.  AHIF queried if the listing was based on AHIF's First Amendment-protected activity of distributing a version of the Qur'an (a version that is in the Library of Congress), which would violate AHIF's constitutional rights.  *See id.*; AHIF letter of May 28, 2004, at 3.  Moreover, AHIF stated that if the blocking of the funds and proposed designation were based on AHIF's raising money for relief work in Chechnya, then OFAC should be informed that the highest levels of the Russian and Saudi Arabian governments blessed the relief project and urged AHIF to participate.  *See id.* at 5-6.  AHIF later complained about a "biased administrative record" that included articles written before the trial of Sami Al-Hussayen and mentioned the AHIF office in Ashland, Oregon in passing, but that excluded materials indicating that Mr. Al-Hussayen had been acquitted on all three terrorism charges.  AHIF August 4, 2004 letter, at 4.  AHIF also noted OFAC did not respond to its February 2005 motion for reconsideration of the designation of AHIF as a "global terrorist" "for over thirty months, until after AHIF filed its lawsuit in August 2007, challenging that designation."  AHIF 1/4/08 letter, at 2.

For IARA-USA, the delisting petition was submitted in part on the basis of a claim to mistaken identity.  "[T]o designate another completely separate entity in Sudan, namely Islamic African Relief Agency, as a Special Designated Global Terrorist, and to freeze the funds owned by another separate entity, my client, IARA-USA [Islamic American Relief Agency—USA], has no rational basis, is arbitrary and capricious.  *See* Ex. A to Burke Decl., at 11.  IARA-USA further

DAVIS WRIGHT TREMAINE LLP

1    argued that it "was never given any notice of any kind that it is under investigation or that its

2    properties would be blocked.  IARA-USA was never given any evidence that would support

3    blocking its property.  IARA-USA was also never given any consideration or an opportunity to

4    present, at least in written form, any evidence to rebut any proposition that the Secretary [of the

5    Treasury] may have that it in any way supports terrorism."  *See id.*

6         Similarly, Global, Aaran, and Nor in their delisting petitions stated that they had no

7    connection to terrorism. Aaran and Nor, for example, denied "that they are anyway involved in …

8    any organization that commits violent acts or acts dangerous to human life, property, or

9    infrastructure that appear to be intended to intimidate or coerce a civilization, influence the policy

10   of a government by intimidation … or affect the conduct of a government by mass destruction,

11   assassination, kidnapping or hostage taking.  To the contrary, Aaron and Mr. Nor supplied

12   humanitarian relief by providing a service that enabled U.S. immigrants to supply money to their

13   impoverished family members back in Africa."  Ex. B Aaron and Nor Petition, at 13.  OFAC

14   delisted Global, Aaran and Nor in 2002 and unblocked their assets, but only after they filed

15   lawsuits in federal court challenging the designations.  Their story is told in the Staff Monograph to

16   the 9/11 Commission Report, which is attached as Ex. D to the Burke Decl.

17        By its FOIA request and this litigation, LCCR seeks to learn more about those who have

18   been successfully delisted and those whose petitions still await review by OFAC and, in the

19   process, provide meaningful public scrutiny of OFAC's administration of its responsibilities.

20   **III.    LEGAL ANALYSIS**

21        **A.    OFAC Has Not Met The Threshold For Invoking Exemption 7 Because The
              Delisting Petitions Were Not Compiled For Law Enforcement Purposes.**

22        The burden rests on OFAC to prove that the delisting petitions are "records or information"

23   that OFAC "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7); *Church of Scientology*

24   *v. Department of the Army*, 611 F.2d 738, 742 (9th Cir. 1979); *Gordon v. FBI*, 390 F. Supp. 2d 897,

25   901 (N.D. Cal. 2004).  OFAC must establish a "rational nexus between enforcement of a federal

26   law and the document for which an exemption is claimed."  *Church of Scientology*, 611 F.2d at

27   748; *Rosenfeld v. DOJ*, 57 F.3d 803, 808 (9th Cir. 1992).  The term "law enforcement purposes"

28   was "not meant to include investigatory activities wholly unrelated to law enforcement agencies'

DAVIS WRIGHT TREMAINE LLP

legislated functions of preventing risks to the national security and violations of the criminal laws and of apprehending those who do violate the laws." *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982). While a court's measure of "law enforcement purpose" is "necessarily deferential" to a law enforcement agency, "it is not vacuous." *Id.* As the Court recognized in *Pratt*, "[i]n order to pass the FOIA Exemption 7 threshold, such an agency must establish that its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated or that the national security may be breached. Either of these concerns must have some plausible basis and have a rational connection to the object of the agency's investigation." *Id.*

In the most analogous situation to this case, the court in *Gordon v. FBI* determined that the government improperly withheld under Exemption 7 an email from a reporter that contained complaints by peace activists who asserted they were improperly listed on the federal government's no-fly watch list. The email with the complaints, the Court declared, did not have a rational nexus with the FBI's law enforcement mandate. 390 F. Supp. 2d at 901. The Court stated, in relevant part: "The burden is on the government to show that the information – that is, the email from the *Wall Street Journal* reporter – was received for a law enforcement purpose; the burden is not on the plaintiffs to show that it was not. None of the government's affidavits suggest that the email has a rational nexus to enforcement of federal law." *Id.*

In several other contexts, courts around the country have recognized the principle that if the documents sought were not compiled for law enforcement purposes, they may not properly be withheld under Exemption 7. For example, in *Leadership Conference on Civil Rights v. Gonzales*, the court found that the Department of Justice had produced "no evidence that the paralegal names and work numbers" appearing in communications related to monitoring federal elections were "compiled for law enforcement purposes"; accordingly, the Justice Department could not claim Exemption 7 with regard to these records. 404 F. Supp. 2d 246, 257 (D.D.C. 2005); *see also Maydak v. DOJ*, 362 F. Supp. 2d 316, 321-23 (D.D.C. 2005). (Exemption 7 threshold not met for psychological test maintained in Bureau of Prison files and documents pertaining to accidents and injuries sustained in recreation department at prison).

OFAC did not compile the delisting petitions for law enforcement purposes. Indeed, the

DAVIS WRIGHT TREMAINE LLP

6

delisting petitions were not compiled by OFAC at all. The delisting petitions reflect information compiled by the individuals and nongovernmental entities who *contest* OFAC's public designations of them as global terrorists. They reveal allegations of mistaken identity, lack of process, and alleged mistakes of fact by OFAC, among other things. *See* Exs. A, B, C to Burke Decl. and Ex. A to Kabat Decl. The delisting petitions are not received by OFAC to enforce federal laws against these individuals and entities; the petitions serve the opposite purpose – to notify OFAC about purported mistakes and inaccuracies that make the enforcement of federal law unwarranted. *See*, *e.g.*, *Getman v. NLRB*, 450 F.2d 670, 673 (D.C. Cir. 1971) (documents falling within Exemption 7 are "files prepared by Government agencies to prosecute law violators"). Significantly, *all* of the decisions relied upon by OFAC in this portion of its motion for summary judgment involve records of law enforcement investigations created by government officials.[1] *None* of these decisions concern complaints sent *to* the law enforcement agency from aggrieved individuals or entities who allege the laws or regulations at issue were unfairly and inaccurately applied to them. In the only case that involved complaints about mistakes about another agency watch list, *Gordon, supra,* the court ordered disclosure of the withheld documents. The same result should apply here.

At a minimum, OFAC must do far more than make the conclusory declaration, as it has, that the agency has "a clear law enforcement mission," delisting petitions "were received in connection with OFAC's performance of its law enforcement mission," and "therefore such Delisting Petitions can be considered to be compiled for law enforcement purposes." *See* Fifth Canter Decl., at ¶¶ 45, 46. Under this interpretation, all documents *ever* received by OFAC are "compiled for law enforcement purposes" and shielded from disclosure based on Exemption 7. This unduly broad construction of Exemption 7 renders the Freedom of Information Act a dead letter, effectively

---

[1] *Binion v. DOJ*, 695 F.2d 1189, 1194 (9th Cir. 1983), involved records created by the Justice Department's pardon attorney; *Blanton v. DOJ*, 63 F. Supp. 2d 35 (D.D.C. 1999), the court upheld exemption 7 to records created by the FBI recording its investigation of the Sixteenth Street Baptist Church; *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987), concerned FBI and local police investigative documents created to investigate the suspicious death of Louis Adamic, who had argued for US aid to Marshal Tito of Yugoslavia; and *Pratt v. Webster*, 673 F.2d at 421, the court allowed the FBI to exempt counterintelligence records created by the agency. Unlike this case, unquestionably all of the records in these decisions reflected data and records compiled by law enforcement agencies for law enforcement purposes.

DAVIS WRIGHT TREMAINE LLP

1  nullifying the "broad right of access to official information" guaranteed by FOIA, *EPA v. Mink*,

2  410 U.S. 73, 80 (1973), and contradicting the "well-established" rule that exemptions to FOIA are

3  to be "narrowly construed," *Cowsen-el v. DOJ*, 826 F. Supp. 532, 534 (D.D.C. 1992).

4         The Canter Declaration utterly fails to establish a rational nexus between delisting petitions

5  and enforcing the federal laws.  OFAC's attempt to shield these records from public view is

6  especially perverse since delisting petitions concern the opposite of enforcing federal laws – as the

7  withheld petitions complain that the government has incorrectly branded an individual or entity a

8  global terrorist.  Rather than reflecting the agency's investigative processes, the petitions are the

9  first step in a process by which individuals or entities seek redress for having their funds blocked

10  and being designated a terrorist.  Unlike all of the decisions relied on by OFAC (*see supra* note 1)

11  where the FOIA requesters sought the government's records of its investigation, here the petitions

12  that LCCR seeks belie OFAC's investigation and enforcement of federal laws.  Allowing OFAC to

13  keep secret delisting petitions that contradict the agency's findings and likely illustrate the agency's

14  lack of process based on the claim that the documents disclose the government's investigation is

15  akin to concealing a prisoner's writ of habeas corpus petition on the grounds that it discloses the

16  government's investigation into the reasons the prisoner claims he is being wrongfully imprisoned.

17  Writ petitions are public because the American judicial system abhors injustice, and the delisting

18  petitions should be publicly available for the same reasons.  OFAC's attempt to shoehorn the law

19  enforcement records exemption to conceal complaints about OFAC's designation of individuals

20  and entities as terrorists fails at the outset, for OFAC has not met the threshold requirement for

21  exempting these documents under FOIA Exemption 7.[2]

22

23

24  _____

      [2] For these same reasons, delisting petitions may not be withheld under Exemption 3
25  (exemption by statute).  These delisting petitions were not obtained for the purpose of enforcing the
      Narcotics Kingpin Designation Act but rather were submitted to protest its enforcement for
26  individuals and/or entities who insist they are not narcotics kingpins.  Nevertheless, if the court
      concludes that petitions involving narcotics kingpins were created as part of enforcing the Narcotics
27  Kingpin Act, then LCCR agrees that these particular petitions only may be withheld under CFR §
      501.802.  To be clear, the Kingpin Designation Act covers only certain narcotics kingpins and says
28  *nothing* about those individuals and entities designated as "global terrorists" by OFAC.

DAVIS WRIGHT TREMAINE LLP

**B.    Exemption 7(A): Release of The Delisting Petitions Would Not Interfere With Enforcement Proceedings Because The Individuals And Entities Already Know The Information Contained In The Delisting Petitions They Submitted to OFAC.**

While deference may be shown to the executive branch's assertion of concerns in appropriate cases, Exemption 7(A) does not confer a talismanic immunity upon agencies like OFAC removing all records maintained by OFAC from disclosure.  Even if OFAC could show that delisting petitions are records "compiled for law enforcement purposes," the burden remains on OFAC to prove that each and every delisting petition "reasonably could be expected to interfere with enforcement proceedings."  *See* 5 U.S.C. § 552(b)(7)(A); *Church of Scientology*, 611 F.2d at 742.  Because the Fifth Canter Declaration includes nothing that would demonstrate interference with pending or contemplated proceedings (e.g., court cases) in every instance, OFAC has not satisfied its burden and may not withhold the records under Exemption 7(A).

For Exemption 7(A) to apply, OFAC must prove (1) a pending or prospective law enforcement proceeding and (2) release of information about it reasonably could be expected to cause some articulable harm.  *Manna v. DOJ*, 51 F.3d 1158, 1164 (3d Cir. 1995).  Regarding the first requirement, "[i]t is well established that in order to satisfy the 'law enforcement proceedings' requirement of Exemption 7(A), an agency must be able to point to a <u>specific</u> pending or contemplated law enforcement proceeding that could be harmed by disclosure."  *See* DEPARTMENT OF JUSTICE FREEDOM OF INFORMATION GUIDE (March 2007), 690 (available at http://www.usdoj.gov/oip/foia_guide07.htm) (emphasis in original).  The Supreme Court in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 227-28 (1978), traced the history of Exemption 7(A) and the other five subsections of Exemption 7 to Senator Phil Hart of Michigan, who said in introducing the amended Exemption 7 that "material cannot be and ought not be exempt merely because it can be categorized as an investigatory file compiled for law enforcement purposes."  The six subsections added to Exemption 7 by his amendment (which became the law), Senator Hart added, would return Exemption 7 to its original intent, which "was to prevent harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to

DAVIS WRIGHT TREMAINE LLP

9

investigatory files than he would otherwise have." *Id.*[3] Consistent with Senator Hart's reasoning, courts have recognized that the government agency like OFAC must show that a law enforcement proceeding is pending or likely to occur and not speculative. *See*, *e.g.*, *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 870 (D.C. Cir. 1980); *Badran v. DOJ*, 652 F. Supp. 1437, 1440 (N.D. Ill. 1987). ("If an agency could withhold information whenever it could imagine circumstances where the information might have some bearing on some hypothetical enforcement proceeding, the FOIA would be meaningless").

OFAC has made no showing whatever that law enforcement proceedings are pending or likely to happen for *any* of the 346 delisting petitions sent in by individuals or entities. Regarding those 138 individuals and entities whose delisting petitions OFAC has granted (removing them from the list – *see* Fifth Canter Decl., ¶ 28 n.2), OFAC concedes that no enforcement proceedings are taking place, and in some cases, no enforcement proceedings in the entire investigation of related individuals or entities have occurred in many years. For example, in 2001 OFAC named Farah, Nor and their respective money remitting companies, Global and Aaran, as supporters of terrorism and blocked their assets. Ex. B to Burke Decl. After Farah and Nor and their businesses sued OFAC in federal court in Minnesota, stating that OFAC had ignored their letters and that they had done nothing wrong and had simply sent money back to Somalia on behalf of overseas Somalis living in Minnesota, OFAC unblocked they and their businesses' assets and delisted them as terrorists. *Id.* According to the staff monograph attached to the 9/11 Commission Report, which was published in 2004, the FBI, "deciding that their efforts could be better spent elsewhere, closed their investigation." Ex. D to Burke Decl. As this example demonstrates, OFAC granted the delisting petitions of these two individuals and two entities, and its investigation of this group concluded many years ago. There are no pending law enforcement proceedings. Thus, with regard to these delisting petitions and others like it, OFAC has no basis to claim Exemption 7(A) to withhold delisting petitions, putting a huge wrench into OFAC's assertion that it may categorically

---

[3] The 1986 Amendments to FOIA Exemption 7(A) changed the phrase "would interfere with enforcement proceedings" to "reasonably could be expected to interfere with enforcement proceedings."

DAVIS WRIGHT TREMAINE LLP

withhold *all* delisting petitions based on Exemption 7(A).

Even with those delisting petitions where enforcement proceedings are pending or likely to happen, OFAC may withhold these records only if release of the information reasonably could be expected to case harm to, or interfere with, the proceedings.  OFAC cannot satisfy this second requirement of Exemption 7(A) to conceal *all* the delisting petitions.  Courts long ago recognized that the disclosure of material already in the hands of potential parties to law enforcement proceedings can in no way be said to interfere with law enforcement proceedings.  *Coastal States Gas Corp. v. DOE*, 617 F.2d at 870.  Where the FOIA request is made by a third party seeking information to which the target of the investigation already has access, the government will be required to make a more particularized showing of harm or interference to law enforcement proceedings.  *Campbell v. HHS*, 682 F.2d 256, 257, 265 (D.C. Cir. 1982); *see also Goldschmidt v. USDA*, 557 F. Supp. 274, 277 (D.D.C. 1983); *Cohen v. EPA*, 575 F. Supp. 425, 428 (D.D.C. 1983).  The Ninth Circuit recently has adopted this reasoning.  *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1084-85 (9th Cir. 2004); *Dow Jones Co. v. FERC*, 219 F.R.D. 167, 173-74 (C.D. Cal. 2003).

Following these authorities, OFAC may not withhold the delisting petitions on the basis of Exemption 7(a) because the targets of OFAC's investigation have copies of the delisting petitions they authored.  OFAC has failed to make a particularized showing that delisting petitions already in the hands of the "targets" would cause harm to pending or likely to happen law enforcement proceedings in every instance.  *See Campbell*, 682 F.2d at 257, 265.

Moreover, the delisting petitions are not the types of records that would interfere with law enforcement proceedings in every instance, as OFAC generically asserts, for many of the same reasons that OFAC cannot satisfy the threshold requirement of Exemption 7.  The delisting petitions that LCCR seeks are *not* records of the government's investigation; rather, they are the complaints of those who protest OFAC's public designation of them as global terrorists.  The petitions assert mistakes and lack of process by OFAC and will shed public light on the agency's administration of this watch list.  For example, Al-Haramain Islamic Foundation's delisting petition materials reveal that OFAC did not respond to its motion for reconsideration of OFAC's decision to list it as a "Specially Designated Global Terrorist" "for over thirty months" – until AHIF filed a

DAVIS WRIGHT TREMAINE LLP

11

DAVIS WRIGHT TREMAINE LLP

lawsuit in August 2007 challenging the designation.  *See* Ex. 1 to Kabat Decl.  Similarly, Islamic American Relief Agency-USA in its delisting petition says that OFAC confused it with an African aid agency and that it "was also never given any consideration or an opportunity to present, at least in written form, any evidence to rebut any proposition that the Secretary may have that it in any way supports terrorism." *See* Ex. A to Burke Decl.  These types of information in delisting petitions do not interfere with pending or concrete prospective law enforcement proceedings; the information simply exposes problems with OFAC's administration of the delisting process.  Gathered together, if many of these 346 delisting petitions are making the same criticisms as those evidenced in the attached exhibits, it would suggest that OFAC is not being as careful and thorough as one would expect it to be before tarring individuals and entities with the label global terrorists.  Since delisting petitions reveal the individuals' and entities' explanations for why OFAC's designations of them as global terrorists were erroneous (and not the government's investigation of the individuals or entities, which in some cases the government has not disclosed to them by the time of the writing of the delisting petition), OFAC may not rely on Exemption 7(A) to withhold these records from public scrutiny.

The peculiar factual circumstances that caused the D.C. Circuit to defer to the government's claims about national security in *Center for National Security Studies v. DOJ*, 331 F.3d 918 (D.C. Cir. 2003), are readily distinguishable from this case.  *Center for National Security Studies* took place amid the government's dragnet for suspects in – and material witnesses to – the 9/11 attacks.  The government's affidavits detailed the government's *specific* concern that Al Qaeda would learn the names, dates, and geographic focus of all the individuals who had been detained in the massive investigation, which the government had kept secret.  *See id.* at 923.  Using that information, the government asserted that Al Qaeda could then intimidate these detainees, according to the government's affidavits, which the court found persuasive.[4]  *See id.* at 923, 928.  By contrast, these

_____

[4] Eventually, another federal court, ruling in a FOIA lawsuit initiated by the Associated Press, ordered the federal government to release the names of many of the remaining detainees from the 9/11 investigation, who by then faced military court tribunals at Guantanamo Bay.  *Associated Press v. DOD*, 410 F. Supp. 2d 147 (S.D.N.Y. 2006).  The court stated it was "hard to escape the inference" that the Government's argument that the names could be withheld "is a cover for other concerns, such as the Government's desire, only recently modified by the courts, to keep

concerns are not present in this case.  Here, OFAC has *publicly identified* on its website (and in the Federal Register) the individuals and entities listed as global terrorists on the Treasury Department's watch list, as well as the dates of listing and the geographic location of the listed individuals and/or entities.  In some of the cases, OFAC has also issued press releases explaining why the individuals and/or entities were being listed and having their assets blocked.  *See* Ex. C to Burke Decl., at 39.  LCCR seeks the delisting petitions of a subset of those already publicly identified by OFAC as global terrorists – those individuals and entities who have contested their designations as terrorists.  Rather than revealing the government's investigation or "investigative techniques," as OFAC claims, the delisting petitions discuss the reasons why the blocked individuals and entities believe they have been wrongly designated.

Additionally, the affidavits submitted by OFAC are generalized and do not implicate the same issues of national security to the degree of those relied on by the court in *Center for National Security Studies.*  There, the court was concerned about witness tampering, a legitimate concern where the government had kept the names and locations of the detained material witnesses a secret.  In this case, OFAC offers the specter of witness tampering as a justification for withholding every pending delisting petition on the basis of Exemption 7(A), but the individuals designated global terrorists by OFAC already sit on the Internet for everyone in the world to see with the simple click of a mouse.  If it is third parties that concern OFAC, the proper remedy is redaction of personal identifying information of the third parties where warranted, not concealing in toto the 346 delisting petitions.

OFAC also claims that releasing the pending delisting petitions would "allow targets to destroy or alter evidence," but some of these delisting petitions, including the two in the attached exhibits, are available in public court files that anyone may view.  Moreover, the targets to the investigation already know the information contained in the pending delisting petitions because the targets created them, and these petitions detail the targets' pleas to be taken off the list on the

the detainees incommunicado with the outside world."  *Id.* at 156 n.2.  On April 19, 2006, the Department of Defense released the names of all present and former Guantanamo detainees.  *See* www.dod.mil/pubs/foi/detainees/index.html.

DAVIS WRIGHT TREMAINE LLP

grounds that they are not terrorists, not with the direction of the government's case against them.

Finally, OFAC insists the release of the closed delisting petitions would have a "chilling effect on the willingness of designated persons, witnesses, and other sources to provide the reliable, detailed information that is crucial to OFAC's consideration of delisting petitions." Def.'s Motion at 15-16. However again, OFAC is impermissibly and generically categorizing the delisting petitions as a whole and offering no V*aughn* index or particularized showing. OFAC's claim amounts to nothing more than speculation and lacks common sense. Persons or entities that petition to be delisted *already* have every motivation to provide detailed information about why OFAC has mistakenly identified them as a terrorist. This motivation is not, in any way, diminished by the prospect of making their delisting petitions public, since OFAC's labeling of them as "terrorists" is *already* public and, as discussed *infra* and demonstrated by the sample of accompanying petitions, detailed information (including financial information and the like) are already *publicly* filed as a part of the petitioner's administrative challenge. *See* Exhibits A, B & C to Burke Decl., Exh. A to Korbat Decl.

**C.    OFAC Cannot Use Exemptions 6 or 7(C) to Shield The Names of Individuals And Entities Who Have Petitioned to be Delisted Because OFAC Has Publicly Identified Them As Terrorists; The Public Has A Strong Interest In Knowing of OFAC's Allegedly Erroneous Designations.**

Exemptions 6 and 7(C) contain the identical language to exemption from the public, disclosures that will cause an "unwarranted invasion of personal privacy." Exemption 6, however, requires a higher standard, requiring OFAC to establish that disclosure "would" constitute a "clearly unwarranted" invasion, whereas Exemption 7(C) allows OFAC to withhold records or information "compiled for law enforcement purposes" that "reasonably could be expected" to constitute an "unwarranted" invasion of privacy. Nevertheless, both exemptions require similar considerations by the reviewing district court. *See ACLU v. DOD*, 389 F. Supp. 2d at 569 (quoting *FLRA v. VA*, 958 F.2d 503, 510 (2d Cir. 1992)) (differences between 6 and 7(C) "bear only on the type of information sought and the degree of invasion to a privacy interest that will be tolerated").[5]

_____

[5] Neither the Fifth Canter Declaration nor OFAC's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment states that OFAC is withholding delisting petitioners' names on the basis of Exemption 7(C). Based on the assumption that OFAC is seeking to withhold the personal identifying information regarding petitioners (and third parties) for both

DAVIS WRIGHT TREMAINE LLP

Under Exemption 7(C), if the agency can show the records were "compiled for law enforcement purposes, the Court must then "balance the privacy interests of the individuals protected by the nondisclosure against the public interest at stake." *Rosenfeld*, 57 F.3d at 811; *Weiner v. FBI*, 943 F.2d 972, 984-85 (9th Cir. 1991) ("A document is properly withheld under Exemption 7(C) if the public interest in disclosure is outweighed by the individual privacy interests that would suffer from disclosure"); *Castaneda v. U.S.*, 757 F.2d 1010, 1012 (9th Cir. 1985). "The sole cognizable public interest for FOIA is the interest 'to open agency action to the light of public scrutiny,' to inform the citizenry 'about what their government is up to.'" *Id.* (quoting *DOJ v. Reporters' Committee for Freedom of the Press*, 489 U.S. 749, 772-73 (1989)).

The Ninth Circuit rejects the "categorical" approach claiming that privacy interests "characteristically outweigh the public interest" for all withheld documents under Exemption 7(C). *Weiner*, 943 F.2d at 985. Instead, the "privacy interests of third persons whose names appear in [government] files, the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances." *Id.*

The magnitude of the privacy interests that Exemptions 7(C) and 6 protect "turns on whether disclosure might result in unwarranted association with criminal activity or reputational harm…." *Nation Magazine, Washington Bureau v. Customs Service*, 71 F.3d 885, 894 (D.C. Cir. 1995). Indeed, OFAC here has claimed that disclosure of the names of the delisting petitioners could be "having a stigmatizing effect on their personal and professional character" and "could engender comment and speculation about those individuals and could result in unwarranted public scrutiny." Canter Decl., at ¶ 54. What is truly bizarre about this position is that OFAC has already publicly identified these individuals and entities as "global terrorists." For OFAC now to assert "privacy" rights on behalf of these individuals and entities who dispute the government's characterization of them as "terrorists" reeks of hypocrisy. Yet OFAC seeks to hide the anguished and embarrassed pleas of those who claim that OFAC has misidentified them as terrorists to justify

Exemption 6 and 7(C), LCCR has briefed the "reasonably could be expected to constitute an unwarranted invasion of privacy" standard, though the same analysis requiring disclosure of the records would hold true for Exemption 6.

LCCR'S MPAS ISO OPPOSITION TO OFAC'S MOTION FOR SUMMARY JUDGMENT
DWT 11368588v1 0050062-082073

DAVIS WRIGHT TREMAINE LLP

its refusal to publicly disclose information concerning an issue that has caught the attention of the public. *See* Exs. E, F, G to Burke Decl.

A series of cases involving a FOIA lawsuit filed by the Associated Press against the Department of Defense for the names of detainees held at Guantanamo Bay and other documents, involved a similar situation to this case that is instructive. *Associated Press v. DOD*, 395 F. Supp. 2d 15 (S.D.N.Y. 2005), *reconsideration denied*, 395 F. Supp. 17 (2005), *later proceeding*, 410 F. Supp. 2d 147 (2006), *reconsideration denied*, 410 F. Supp. 2d 147, 151 (2006) ("*AP I*"); *Associated Press v. DOD*, 34 Media L. Rptr. 2251, 2006 U.S. Dist. LEXIS 67913 (S.D.N.Y. Sept. 20, 2006) ("*AP II*"). There, the Defense Department claimed that disclosing the identifying information of detainees (names, nationalities, home locales, etc.) held at Guantanamo Bay would constitute an unwarranted invasion of privacy, relying on Exemption 6. "[S]ome might think it strange, even hypocritical, that the military officials who held the detainees incommunicado for so many months now express such solicitude for the detainees' privacy rights…," the court observed.[6] 395 F. Supp. at 18. In a later proceeding, after noting that only 17 of 317 detainees asserted a desire to have their identifying information kept confidential (based on a survey that the court had ordered the government to undertake), the court stated that *none* of the detainees – including the 17 – had any reasonable expectation of privacy in the identifying information that they gave to a government military tribunal investigating whether they were properly classified as enemy combatants. 410 F. Supp. 2d at 150. The court also stated that "nothing in the record before the Court suggests that [detainees] were informed that the proceedings would remain confidential in any respect." *Id.* The court also later found that as to family, friends, and associates who were implicated by the detainees identifying themselves, these third parties never had any reasonable expectation that the detainees would not reveal their names in the tribunal proceedings. 410 F. Supp. 2d at 156-57.

---

[6] It is also inconsistent that in the Associated Press cases, the Defense Department did not invoke national security to withhold the names of Guantanamo detainees, while here OFAC is attempting to shield the identities of the subset of those individuals *already publicly identified* as global terrorists who contest the designation by claiming the specter of national security, yet offering absolutely no supporting details on how revelation of their names and complaints would impact national security. Again, OFAC's evidentiary showing is inadequate as a matter of law.

16

This case contains many parallels to *Associated Press v. DOD*. OFAC has presented absolutely no evidence that the individuals[7] who voluntarily submitted petitions disputing OFAC's listing of them as "global terrorists" had any reasonable expectation that their identities would remain private.[8] Nothing in the relevant Code of Federal Regulations provisions (31 C.F.R. § 807) suggests that information in the delisting petitions will be treated confidentially. To the contrary, delisting petitions are often the preamble to public lawsuits filed by individuals challenging the designations of them as terrorists and the blocking of their financial assets. As the Declaration of Alan R. Kabat, counsel for Al Haramain Islamic Foundation ("AHIF"), makes clear, AHIF had "no expectation" that the delisting petition it submitted "would remain private or would not be made publicly available." Kabat Decl. at ¶ 6. The other delisting petitions submitted by Aaran, Global, and Nor, and by the IARA-USA (*see* Ex. B to Burk Decl.) also were part of the administrative records in these respective public litigations. In short, OFAC has failed to meet its burden to show that delisting petitioners had any reasonable expectations of privacy in the delisting petitions and accordingly, OFAC may not withhold the personal identifying information of delisting petitioners under Exemptions 7(C) or 6.[9]

The other consideration in the Exemption 7(C) and 6 balancing is the public interest served by disclosure, which also heavily favors LCCR. Courts around the country have found that records revealing how government processes truly are functioning (or *not* functioning) are central to the public interest behind FOIA. *Associated Press v. DOD*, 410 F. Supp. 2d at 157 n.6 ("[T]he

---

[7] The privacy interest protected by Exemptions 7(C) and 6 is personal to an individual and does not apply to entities; as a result, OFAC may not withhold the names of entities who have petitioned to be delisted or third party entities mentioned in the documents on the basis of privacy. "[C]orporations, businesses and partnerships have no privacy interest whatsoever under Exemption 6." *Washington Post Co. v. Department of Agric.*, 943 F. Supp. at 37 n.6 (D.D.C. 1996).

[8] Indeed, in response to direction provided by this Court, on June 6, OFAC belatedly released the names of those persons delisted in the documents this Court ordered OFAC to publicly release, illustrating that the agency's privacy concerns are illusory.

[9] LCCR does not dispute that personal identifying information of third parties such as informants and witnesses may be redacted where, under the specific limited circumstances (not categorically), the third parties' privacy interest outweighs the public interest in disclosure. However, without so much as a *Vaughn* index for the withheld delisting petitions, it is impossible to know the scope and propriety of such redactions.

DAVIS WRIGHT TREMAINE LLP

redacted information [about people in home villages who could attest to detainees' innocence] will likely prove useful to the Associated Press in determining how the tribunals were really operating – a consideration that goes to the heart of FOIA's purpose"); *Rosenfeld v. DOJ*, 57 F.3d at 812 (ordering disclosure of documents and finding that an overriding "strong public interest" existed in the public learning whether the FBI investigated the president of UC-Berkeley for his political views rather than for federal criminal activity); *Dow Jones Co. v. FERC*, 219 F.R.D. at 175 (agreeing with plaintiffs that information which sheds light on the propriety of an agency's handling of an investigation raises a cognizable public interest under the FOIA). Even when the requested records pertain to an individual's activities, the privacy exemptions in 7(C) and 6 for unwarranted invasions of privacy do not necessarily apply. "Such records may still be cloaked with the public interest if the information would shed light on agency action," the court stated in *Nation Magazine*, 71 F.3d at 895.

These same concerns about OFAC's operation (or non-operation) of the delisting process underscore LCCR's FOIA request. Contrary to OFAC's "determination" that "there is no public interest" in disclosure of names of individuals in delisting petitions, which presumably includes delisting petitioners (*see* Canter Decl., at ¶ 54), the public has a strong interest in learning about complaints that OFAC misidentified individuals and entities as "global terrorists," along with the agency's record of taking months to respond to requests for delisting and unblocking of funds, if at all, and other alleged OFAC errors administering the lists. "The lack of sufficient notice of the charges against them and the lack of meaningful opportunity to be heard before a neutral arbiter make it virtually impossible for U.S. entities to mount a defense against [OFAC] blocking orders," Nicole Nice-Peterson explained in the Georgetown Law Journal. Nice-Peterson, *Justice for the Designated*, 93 GEO. L.J. 1387, 1388 (2004-2005). "The use of classified evidence to justify blocking orders further increases the risk that blocked U.S. entities will suffer serious and erroneous deprivations of their property." *Id.* Indeed, the sample delisting petitions accompanying LCCR's Opposition complain about OFAC targeting these individuals and entities for their First Amendment-protected activities, designating them as global terrorists without opportunity to

DAVIS WRIGHT TREMAINE LLP

18

contradict the secret evidence[10] against them, and not responding to claims of misidentification and other efforts to be removed from the list for months and months at a time. *See* Exs. A, B, and C to Burke Decl., Ex. 1 to Kabat Decl. As Nice-Peterson points out, individuals and entities who claim OFAC wrongly identified them as terrorists are not even allowed to hire legal counsel and pay attorneys' fees without the requisite license and permission from OFAC.

The Staff Monograph to the 9/11 Commission Report included a retrospective considering why OFAC misdesignated individuals and entities as terrorists. The report observes:

> The post 9-11 period at OFAC was 'chaos.' The goal set at the policy levels of the White House and Treasury was to conduct a public and aggressive series of designations to show the world community and out allies that the United States was serious about pursuing the financial targets. It entailed a major designation every four weeks, accompanied by derivative designations throughout the month. ***As a result, Treasury officials acknowledged that some of the evidentiary foundations for the early designations were quite weak. One participant (and an advocate of the designation process generally) stated that 'we were so forward leaning we almost fell on our face.'*** The rush to designate came primarily from the [National Security Council] and gave pause to many in the government. ***Some believed that the government's haste in this area, and its preference for IEEPA sanctions, might result in a high level of false designations that would ultimately jeopardize the United States' ability to persuade other countries to designate groups as terrorist organizations.***

9/11 Report Staff Monograph, at 79. It was out of this early rush by the government to designate "terrorists" that Nor and Farah and their companies, Aaran and Global, became entangled in the OFAC list. They were designated based on a "derivative designation theory, in which no direct proof of culpability was needed." *See id.* For Garad and Nor, their crime was to hail from Somalia, a country with no functioning government and no banking system. Farah and Nor and their companies acted as money remitters, facilitating an informal banking system that enabled overseas

---

[10] Just last week, the D.C. Circuit reviewed for the first time the federal government's secret evidence for keeping a detainee in Guantanamo Bay, Cuba as an "enemy combatant" and found it seriously lacking. The government had argued that its accusations that the detainee was a terrorist should be accepted as true because they had been repeated in at least three secret documents. The court compared that claim to the absurd declaration of a character in the Lewis Carroll poem "The Hunting of the Snark," "I have said it thrice: What I tell you three times is true." In overturning the Pentagon's designation of the detainee, a member of the ethnic Uighur Muslim minority in Western China, the court stated, "This comes perilously close to suggesting that whatever the government says must be treated as true," the D.C. Circuit stated. The case is *Parhat v. Gates*, No. 06-1397, 2008 U.S. App. LEXIS 13721, at *40-*41 (June 20, 2008). Judge David Sentelle, who authored the *Center for National Securities* opinion, was one of the three judges who voted to overturn the detainee's status as an enemy combatant.

Somalis living in Minnesota to support their desperately needy relatives back in Africa. OFAC consequently designated al-Barakaat and related entities including Nor, Global, and Aaran as "global terrorists." *Id.* at 81. Yet, the FBI eventually could find "no direct evidence at all of any real link between al-Barakaat and terrorism of any type," finding discrepancies and holes in the OFAC designation package for al-Barakaat and related entities, but that was too late for Nor and Farah and their companies. *Id.* at 82-83. Not only could Nor not work based on his designation as a "global terrorist" and the freezing of his assets, "the guy couldn't buy a cup of coffee" without violating the OFAC blocking order. *Id.* at 81. Nor, Farah's Global, and Aaran filed delisting petitions. See Ex. B to Burke Decl. Their attorneys contacted OFAC repeatedly seeking action on the delisting petitions, but OFAC didn't return calls or explain the evidentiary basis for the freezing actions. *9/11 Report Staff Monograph*, at 85. Only after Nor, Farah, Global, and Aaran filed suits against OFAC did OFAC issue a license to Nor to allow him to get sufficient money to live. "As a result," according to the 9/11 Report, "for five months Nor, a U.S. citizen, faced the unenviable choice of starving or being in criminal violation of the OFAC blocking order." *Id.* at 81.

This example is illustrative of the anecdotal stories and documentary information contained within delisting petitions that may uncover the claims of inaction, stalling and bureaucratic ineptitude on OFAC's part. It is no wonder the OFAC seeks to collectively cloak all of the delisting petitions from public inspection. Their disclosure would shed light on common claims of errors and lack of process by OFAC in performing its responsibilities in conjunction with its terrorist watch list. Release of the delisting petitions also would promote accountability at OFAC to address the alleged deficiencies and improve the accuracy of the terrorist watch list, a very important interest since misdesignating an individual or an entity as a terrorist has such severe reputational and financial repercussions and calls into question the veracity of the government's designations. Because the delisting petitioners had no reasonable expectation that the delisting petitions they submitted to OFAC would remain private, and a strong public interest exists in learning about OFAC's missteps in handling complaints from individuals and entities who argue that OFAC wrongly identifies them to the public as terrorists (i.e., the *Reporters' Committee*, 489 U.S. at 772-73, interest in learning "what the government is up to"), the balancing test tips heavily

DAVIS WRIGHT TREMAINE LLP

in favor of disclosure of these records, and OFAC may not withhold the information on the basis of Exemption 7(C).

### D. Exemption 7(D) does not allow for OFAC to Categorically Withhold Delisting Petitions Because Those Contesting OFAC's Designation of Them As Terrorists Are Not Confidential Sources.

The burden is placed on OFAC to establish that pursuant to Exemption 7(D) it may "withhold records or information compiled for law enforcement purposes, [to the extent those records] could reasonably be expected to disclose the identity of a confidential source." *Rosenfeld*, 57 F.3d at 813-14. OFAC has not met this burden. Its attempt to categorically withhold all the information in delisting petitions under Exemption 7(D) contradicts the Supreme Court's ruling in *United States v. Landano*, 508 U.S. 165, 181 (1993), that the FBI and other law enforcement agencies could not presumptively consider a source's communications to be confidential. Instead, *Landano* requires that the government make a more "particularized" showing of source confidentiality that is to be determined on a case-by-case basis. *Id.* at 179-80; *see also Hale v. DOJ*, 99 F.3d 1025, 1030 (10th Cir. 1996) ("Turning then to implied confidentiality, we are mindful that an inference of implied confidentiality should be evaluated on a case-by-case basis"); *Neely v. FBI*, 208 F.3d 461, 467 (4th Cir. 2000); *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 27 (D.D.C. 2002).

Despite this precedent, OFAC makes no attempt to justify, in a particularized manner, what information it is withholding from the delisting petitions on the basis of Exemption 7(D). OFAC simply asserts that "[d]ue to the type of investigations and the violent nature of the persons involved, confidentiality can be inferred" among those sources providing information to OFAC, including "persons who submit Delisting Petitions." Def's Motion, at 28. OFAC's nonsensical claim here rests on the faulty premise that those individuals and entities that it has identified as "global terrorists" somehow became the agency's "confidential sources" when they submitted delisting petitions to contest their designations at terrorists. *See* Def's Motion, at 28.

Exemption 7(F) cannot be perverted in such a way. Exemption 7(F) is to protect only witnesses or informants who act as sources for law enforcement in their investigations, not those targets and subjects of investigation who dispute the government's public characterization of them

as "terrorists." *Landano*, 508 U.S. at 181, itself discusses how in certain circumstances *"the witness' relation"* to the "nature of the crime investigated" would merit a presumption. Those petitioning for delisting are certainly not acting as witnesses for the government when they attempt to clear their names. Moreover, for those seeking delisting on the basis of mistaken identification, they have nothing to offer the government as confidential sources, and so OFAC may not legitimately assert Exemption 7(D) for those individuals and entities. In short, OFAC has failed to meet its burden to establish that release the information in the delisting petitions would reveal "confidential sources," and so OFAC may not withhold these petitions on the basis of 7(D).[11]

### E. The Government May Not Invoke Exemption 7(F) To Withhold The Delisting Petitions Because OFAC Has Not Proven That Their Disclosure Would Endanger Lives.

Even if OFAC could establish that delisting petitions were "compiled for law enforcement purposes," OFAC cannot withhold every petition categorically on the basis of Exemption 7(F) because it has not shown that disclosure of each and every delisting petition "reasonably could be expected to endanger the life or physical safety of any individual." *See* § 552(b)(7)(F) . Exemption 7(F) was enacted to protect the safety of individuals in law enforcement investigations. Originally, the exemption protected only "law enforcement personnel" but was expanded in 1986 to cover "all those put at risk through their participation in law enforcement proceedings, whether as sources of information or as witnesses." *ACLU v. DOD*, 389 F. Supp. 2d 547, 576 (S.D.N.Y. 2005). "[T]his exemption [7(F)] has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester," the court stated in *Maydak v. DOJ*, 362 F. Supp. at 321 n.4.

Notably, the court in *ACLU v. DOD*, 389 F. Supp. at 575-79, rejected the federal government's attempt to withhold the Abu Ghraib photos of detainee abuse at the Iraqi prison administered by the American military on the basis of Exemption 7(F). Despite the government's submission of a powerful declaration from Richard Myers, then Chairman of the Joint Chiefs of

---

[11] To the extent that *actual* confidential sources – paid informants and certain confidential witnesses – as opposed to delisting petitioners – are identified in the documents, LCCR would not object to redactions. However, without a *Vaughn* index or detailed affidavits, it is impossible to know the scope and propriety of redactions in this regard.

DAVIS WRIGHT TREMAINE LLP

Staff at the Department of Defense, the court found the government's affidavits to be insufficient. The court stated, "Our nation does not surrender to blackmail…." *Id.* at 575-76. After explaining how the release of the photos would not increase the already existing dangers to American troops, the court identified the government's true concern as being about publicity – that the release of the photos would inflame tensions in the Muslim world and promote violence against the American troops. *Id.* The court rejected "the government's argument that reasoning must stop once a threat to life or safety is discerned" and added that it was clear "that the core values that Exemption 7(F) was designed to protect are not implicated by the release of the [Abu Ghraib] photographs, but that the core values of FOIA are very much implicated." *Id.*

Here, OFAC has given absolutely *no* reason in its declaration why redactions "will not avert the danger." *See id.* at 575. LCCR agrees that redactions of personal identifying information may be appropriate where the lives and physical safety of law enforcement officials, third party witnesses, or informants are endangered. However, based on OFAC wholly inadequate showing, it is impossible to know where within the documents redactions would be appropriate because the government has not submitted a *Vaughn* index or explained with any specificity in the Fifth Canter Declaration which individuals in which factual circumstances are implicated by this exemption; instead OFAC has tried to conceal the delisting petitions in their entirety, with only a conclusory declaration in support of that notion. Before deferring to a public agency's assertion of Exemption 7(F) to withhold all records, courts have required the agency to make an *in camera* showing "for each and every matter" of "the name(s) of the person or persons that appellant alleges would be physically endangered by disclosure, the precise facts that, if disclosed, would create such a danger, the precise manner in which such danger would arise if disclosure is ordered, and the name(s) of the person or persons who allegedly pose such a danger." *Schanen v. DOJ*, 773 F.2d 1065, 1066 (9th Cir. 1985). The Fifth Canter Declaration contains no such showing as to *any* delisting petition. Under such circumstances, OFAC cannot assert Exemption 7(F) to withhold all delisting petitions.

On a substantive level, OFAC already has identified publicly these individuals and entities as global terrorists through its web site, press releases, and publication in the Federal Register. Surely such publicity is a much greater threat to their lives and physical safety than the public

23

DAVIS WRIGHT TREMAINE LLP

1    learning about those who dispute they are terrorists.  OFAC's sole claim to Exemption 7(F)

2    protection is the unsupported contention that the lives of those individuals who are seeking

3    delisting "could be endangered as a result of their cooperation with the agency if their identities

4    were made known."  *See* Def's Motion, at 19.  Yet, individuals who are willing to write OFAC to

5    insist they are not terrorists are not cooperating with the agency; they're disputing OFAC's

6    characterization of them as terrorists.

7            This situation is far different from that faced by the court in *Brunetti v. FBI*, 357 F. Supp. 2d

8    97 (D.D.C. 2004), where the requester was seeking information on those who acted as informants

9    for the FBI on *La Cosa Nostra*.  Here, submitting a delisting petition does not mean that the

10   individual or entity is an informant for the government – to the contrary, often the petitioner is

11   contesting the government's claims that they are engaged in, or supporting, terrorism.  To the

12   extent that any delisting petitions reveal that an individual is an informant for the government,

13   LCCR does not dispute that such limited information may be redacted, but this exemption in no

14   way condones OFAC's withholding of all of the delisting petitions in their entirety.  Moreover, this

15   theory does not apply for entities listed as global terrorists, since entities cannot be physically

16   endangered.  Nor does the government's claim of 7(F) exemption justify denying access to the 138

17   closed delisting petitions, since law enforcement proceedings are not pending or likely to happen,

18   and any third party identifying information in the event that a threat to life or physical safety was

19   present may be redacted.

20           In this case as in *ACLU v. DOD*, OFAC's real concern is not about witnesses, informants, or

21   government officials whose lives would be endangered if named publicly in the delisting petitions –

22   the purpose of the 7(F) Exemption.  Here, if such concerns legitimately exist, they can be addressed

23   through appropriate redactions.  It appears the government's real motivation in trying to shield

24   these documents altogether is about publicity – the adverse publicity that may ensue if the delisting

25   petitions reveal OFAC's lack of process in administering its terrorist watch list, including the

26   misidentifications of individuals and entities as global terrorists and the government's blocking the

27   assets of wrongly maligned individuals and entities for years.  "Suppression of information is the

28   surest way to cause its significance to grow and persist," the court stated in *ACLU v. DOD*, 389 F.

DAVIS WRIGHT TREMAINE LLP

24

Supp. 2d at 578. "Clarity and openness are the best antidotes, either to dispel criticism if not merited or, if merited, to correct such errors as may be found." *Id.* Since Exemption 7(F) does not operate to exclude everything in delisting petitions from the public, and LCCR seeks these documents to shed light on OFAC's failure to correct errors, this exemption is not a legitimate basis to withhold these records.

**F.    LCCR Does Not Contest Appropriate Redactions of the Delisting Petitions Under Exemptions 2, 4, and 5.**

Finally, as to OFAC's assertion of Exemptions 2, 4 and 5, to the extent that the delisting petitions must be redacted to protect OFAC's internal administrative notes (Exemption 2), financial information (Exemption 3) or inter-or intra-agency memoranda (Exemption 5), LCCR does not object to such a process. However, as discussed *infra*, OFAC's failure to provide a *Vaughn* index or make a particularized showing as to the contents of the individual delisting petitions renders it impossible for LCCR or this Court to determine, in advance, the scope and propriety of OFAC's assertion of these exemptions as to certain of the information in the delisting petitions.

**IV.    CONCLUSION**

For these reasons, OFAC's Motion to Suppress and Motion for Summary Judgment must be denied.


DATED: July 2, 2008                     DAVIS WRIGHT TREMAINE LLP
                                        THOMAS R. BURKE
                                        JEFF GLASSER


                                        By: _____/s/_____
                                                THOMAS R. BURKE

                                        Attorneys for Plaintiff
                                        LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                        OF THE SAN FRANCISCO BAY AREA

DAVIS WRIGHT TREMAINE LLP