GREGORY G. KATSAS
Assistant Attorney General

SCOTT N. SCHOOLS
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
PETER T. WECHSLER
Federal Programs Branch
Civil Division
United States Department of Justice
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel: (202) 514-2705
Fax: (202) 616-8470
Peter.Wechsler@usdoj.gov

   *Attorneys for Defendant*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF SAN FRANCISCO BAY AREA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, <br><br> Defendant. | No. C 07-2590 PJH <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> DATE: July 23, 2008 <br> TIME: 9:00 a.m. <br> DEPT: Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I. PLAINTIFF MISCONSTRUES THE STATUS OF THE CASE, THE SCOPE OF THE COMPLAINT, AND THE NATURE OF THE DELISTING PETITIONS ........................................................................................................ 1

    A. Delisting Petitions Are Not Communications Regarding False Matches ............................................................................................ 1

    B. The SDN List Is Not Limited to Terrorists, and Plaintiff's Opinions Regarding Government Programs Directed to Terrorism Are Immaterial ............................................................................ 3

II. THE EXEMPTION 7 THRESHOLD IS MET BECAUSE THE DELISTING PETITIONS WERE COMPILED FOR LAW ENFORCEMENT PURPOSES ........................................................................... 4

    A. Delisting Petitions Are Records Compiled by the Government ................................................................................................ 4

    B. OFAC Compiled the Delisting Petitions for Law Enforcement Purposes ..................................................................................... 5

III. EXEMPTIONS 7(A) AND 7(F) APPLY TO EACH DELISTING PETITION ........................................................................................................ 7

    A. Exemption 7(A) Applies to Each Delisting Petition in its Entirety ............ 7

    B. Exemption 7(F) Applies to Each Delisting Petition in its Entirety ............. 9

IV. TREASURY PROPERLY ASSERTED EXEMPTIONS TO THE OPEN AND CLOSED DELISTING PETITIONS BY CATEGORY OF RECORDS ................................................................................................... 10

V. PLAINTIFF'S ABILITY TO OBTAIN SOME INFORMATION THROUGH OTHER MEANS IS IMMATERIAL ........................................................................... 12

CONCLUSION .................................................................................................................. 15

# **TABLE OF CASES**

**CASES**                                                                                                                                    **PAGE(S)**

Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309 (D.C. Cir. 1988) ........................................... 8

Bevis v. Dep't of State, 801 F.2d 1386 (D.C. Cir. 1986) ............................................................ 5

Binion v. DOJ, 695 F.2d 1189 (9th Cir. 1983) ........................................................................... 6

Blanton v. DOJ, 63 F. Supp. 2d 35 (D.D.C. 1999) ..................................................................... 6

Brooks v. IRS, 1997 WL 718473 (E.D. Cal. Aug. 28, 1997) ..................................................... 11

Center for Nat'l Security Studies v. DOJ, 331 F.3d 918 (D.C. Cir. 2003) ................................. 11

Coastal States Gas Corp. v. DOE, 617 F.2d 854 (D.C. Cir. 1980) ............................................ 8

DOJ v. Landano, 508 U.S. 165 (1993) ....................................................................................... 11

DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989) ................. 9, 11, 12, 14

Fiduccia v. DOJ, 185 F.3d 1035 (9th Cir. 1999) ........................................................................ 14

Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,
  656 F. 2d 856 (D.C. Cir. 1981) ................................................................................................ 11

Gallant v. NLRB, 26 F.3d 168 (D.C. Cir. 1994) ......................................................................... 11

Garcia v. DOJ, 181 F. Supp.2d 356 (S.D.N.Y. 2002) ................................................................ 9

Gordon v. FBI, 390 F. Supp. 2d 897 (N.D. Cal. 2004) ......................................................... 5, 6, 7

Gould Inc. v. GSA, 688 F. Supp. 689 (D.D.C. 1988) ................................................................. 8

Judicial Watch, Inc. v. FDA, 449 F.3d 141 (D.C. Cir. 2006) ............................................... 10, 11

Keys v. DOJ, 830 F.2d 337 (D.C. Cir. 1987) ........................................................................ 4, 5, 6

Lewis v. IRS, 823 F.3d 375 (9th Cir. 1987) ............................................................................ 9, 11

Lion Raisins, Inc. v. USDA, 354 F.3d 1072 (9th Cir. 2004) ....................................................... 8

NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978) ................................................. 8, 10

Nat'l Inst. of Military Justice v. Dep't of Defense,
    404 F. Supp. 2d 325 (D.D.C. 2005) .................................................................................. 11

Painting & Drywall Work Pres. Fund, Inc. v. HUD, 936 F.2d 1300
    (D.C. Cir. 1991) ................................................................................................................ 12

Pratt v. Webster, 673 F.2d 408 (D.C. Cir. 1982) ............................................................................ 6

Quinon v. FBI, 86 F.3d 1222 (D.C. Cir. 1996) ............................................................................... 5

Raulerson v. Ashcroft, 271 F. Supp. 2d 17 (D.D.C. 2002) ............................................................. 9

Schiffer v. FBI, 78 F.3d 1405 (9th Cir. 1996) .............................................................................. 14

Seized Property Recovery Corp. v. Customs, 502 F. Supp. 2d 50 (D.D.C. 2007) ...................... 13

Solar Sources v. United States, 142 F.3d 1033 (7th Cir. 1998) ..................................................... 8

Spannaus v. DOJ, 813 F.2d 1285 (4th Cir. 1987) .......................................................................... 7

Spurlock v. FBI, 69 F.3d 1010 (9th Cir. 1995) ............................................................................ 11

Vaughn v. United States, 936 F.2d 862 (6th Cir. 1991) .............................................................. 10

Wiener v. FBI, 943 F.2d 972 (9th Cir. 1991) ............................................................................... 11

**INTRODUCTION**

Defendant, the United States Department of the Treasury (Treasury), hereby replies to issues raised in Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Pl. Opp.) in this case brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The remaining issues involve Treasury's use of FOIA exemptions to withhold 346 Delisting Petitions. Plaintiff does not challenge the adequacy of Treasury's search for records or its processing of other records that were released to plaintiff. See Pl. Opp. at 3. Plaintiff misconstrues the nature of Delisting Petitions, the statutory language, and the relevant precedent. The Delisting Petitions were compiled for law enforcement purposes, are protected in their entirety by Exemptions 7(A) and 7(F), and are subject to other exemptions. Plaintiff's ability to obtain some information through other means is immaterial.

**ARGUMENT**

**I. PLAINTIFF MISCONSTRUES THE STATUS OF THE CASE, THE SCOPE OF THE COMPLAINT, AND THE NATURE OF THE DELISTING PETITIONS**

Plaintiff errs in asserting that "this Court specifically ordered . . . Treasury to publicly release 346 delisting petitions. . . ." Pl. Opp. at 1. After the Court initially ordered Treasury to process the Delisting Petitions, Treasury withheld these records under FOIA exemptions, and the Court set a briefing schedule with respect to any challenge by plaintiff to Treasury's processing of the Delisting Petitions. "As the posture of the case did not permit defendant to advance the exemptions previously, the court will permit defendant to do so now." Order dated March 25, 2008, at 1. "With respect to the de-listing petitions, if defendant is unable to convince plaintiff as to the validity of the claimed exemptions, defendant will file a motion for summary judgment." Id. at 1-2. The Court has not yet evaluated Treasury's use of the exemptions to withhold the Delisting Petitions.

**A.    Delisting Petitions Are Not Communications Regarding False Matches**

The Complaint is directed to records regarding the number and nature of inquiries as to "false matches," by which a person whose name is "similar to a name" on the Specially Designated Nationals and Blocked Persons List (SDN List) maintained by Treasury's Office of

1  Foreign Assets Controls (OFAC) is "mistakenly identified as being on the SDN list," and any
2  "procedures OFAC has in place to remedy those misidentifications. . . . "  Comp. ¶ 3; see also id.
3  ¶ 10 ("no procedure for redress exists for those who are mistakenly linked to the list"); id. ¶ 11
4  ("these incorrect and damaging flags continue to appear on consumers' credit reports"); id. ¶ 12
5  (Treasury does not "keep count" of complaints from "individuals mistakenly flagged by OFAC
6  screening"); id. ¶ 13 (""Consumers with names that are identical or even just similar to SDN
7  names are suffering repeated damage to their credit and reputation, with nowhere to turn for a
8  remedy.").

        Plaintiff errs in suggesting that all or many of the Delisting Petitions constitute communications seeking to correct a false match.  See, e.g., Pl. Opp. at 1 (all 346 petitioners "contend that that OFAC's designation of them is *erroneous*"); id. ("innocent Americans are being *mistakenly* identified as terrorists"); id. at 3 (some Delisting Petitions "reflect *mistaken identity*"); id. (the petitioners were "caught up in what they contend is a *bureaucratic mistake*"); id. at 22 (the petitioners seek delisting "on the basis of *misidentification*") (emphasis added).  Delisting Petitions are applications *acknowledging* that persons *are included* on the SDN List and requesting that their names be removed.  It is only after OFAC has designated a person and placed his or her name on the SDN List that the person can submit a Delisting Petition.  See 31 C.F.R. § 501.807.  The petitioner may present evidence that the prior circumstances that led to a designation no longer apply.  See Fifth Declaration of Virginia R. Canter (Canter Decl.) ¶ 22.

        As plaintiff stated in the Complaint, by contrast to persons with a false match, "individuals who are actually on the SDN list can contest their designation."  Comp. ¶ 10.  Delisting Petitions are the mechanism by which an individuals on the SDN List can contest their designation.  In other words, the Complaint is *not* directed to any Delisting Petitions received by

SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH          - 2 -

OFAC challenging a designation.[1]  The same point applies to Petitions to Release Blocked Assets.  See Declaration of Thomas Burke ¶ 3 & Exh. B; Pl. Opp. at 5.

The Complaint is directed to records regarding the number and nature of certain inquiries regarding false matches with respect to the SDN List, and OFAC's procedures for responding to such inquiries.  Treasury released such records to plaintiff, and there are no remaining issues as to Treasury's search for or processing of such records.  See Pl. Opp. at 3.  Although individual petitioners may contend that OFAC's designation of them is "erroneous," id. at 1, or is procedurally or substantively improper, id. at 3, the petitioners do not dispute that they are on the SDN List.

### B. The SDN List Is Not Limited to Terrorists, and Plaintiff's Opinions Regarding Government Programs Directed to Terrorism Are Immaterial

Plaintiff also errs in repeatedly asserting that each person who filed a Delisting Petition was designated by OFAC as a "terrorist" or a "global terrorist," and that OFAC's designation activities are directed solely to terrorists.  See, e.g., Pl. Opp. at 1-3, 11, 13, 15, 18, 19, 24.  Although OFAC's functions include combating terrorist financing, terrorists are by no means the sole target of the various economic sanctions programs administered by OFAC.  See Canter Decl. ¶¶ 12, 17.  For example, OFAC's functions also include combating narcotics trafficking.  Id.  All individuals whose property interests are blocked pursuant to a "list-based program" are included in the SDN List.  Id. ¶ 14.  Because the SDN List is not limited to terrorists, the persons eligible to have their designations rescinded by filing a Delisting Petition are not limited to terrorists.  See 31 C.F.R. § 501.807; Canter Decl. ¶ 22.  Because the Complaint seeks records under the FOIA, the Court should disregard as immaterial plaintiff's extensive discussion of opinions regarding (a) Treasury's administration of the SDN List, see Pl. Opp. at 3, 12, 18-20,

---

[1] As Treasury noted, Delisting Petitions are *not* responsive to the FOIA Request because they are not: (a) inquiries regarding a credit report "stating that the application *might* be on" the SDN List (FOIA Request, item 4), (b) complaints from individuals whose names "were flagged as *similar* to a name on the SDN List" (id., item 5), or (c) complaints from individuals whose credit reports contained an alert "regarding a *possible* name match" to the SDN List (id., item 6) (emphasis added).

SUMMARY JUDGMENT REPLY MEMORANDUM    No. C 07-2590 PJH          - 3 -

1  24-25; see also Declaration of Thomas Burke dated July 2, 2008 (Burke Decl.) ¶¶ 5-8 & Exs. D-
2  G; (b) the merits of a particular designation made by Treasury, Pl. Opp. at 3-5; 10-12; or (c)
3  other programs administered by other agencies. Id. at 12-13 & n.4; 16 & n.6; 19 & n. 10.

## II. THE EXEMPTION 7 THRESHOLD IS MET BECAUSE THE DELISTING PETITIONS WERE COMPILED FOR LAW ENFORCEMENT PURPOSES

Treasury meets the threshold requirement for invoking Exemption 7 because the Delisting Petitions constitute "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Plaintiff misconstrues both the language of Exemption 7 and the cases that apply it.

### A. Delisting Petitions Are Records Compiled by the Government

Plaintiff misinterprets the statutory language of Exemption 7 by asserting that the Delisting Petitions were not "*compiled* by the government at all but were *created* by the individuals" who submitted them to OFAC. See Pl. Opp. at 2 (emphasis added); see also id. at 7 (the Delisting Petitions "were not *compiled* by OFAC at all," and "reflect *information compiled* by the individuals") (emphasis added); id. at 11 (the Delisting Petitions "are *not* records of the government's investigation; rather, they are the complaints of those who protest OFAC's designation of them as global terrorists") (emphasis in original).

The Exemption 7 threshold applies to "records or information compiled" by the government for law enforcement purposes. Plaintiff's argument is based on a false premise, because the Exemption 7 threshold is not limited solely to "records created" by the government. See Keys v. DOJ, 830 F.2d 337, 340 (D.C. Cir. 1987) (discussing the "broadened scope" of the Exemption 7 threshold). This statutory language of Exemption 7 was designed to protect sensitive law enforcement information regardless of the particular format or record in which it is maintained. S. Rep. No. 98-221, at 23 (1983). Among the primary definitions of the term "compiled" are to collect documents, or to gather together information or data from various sources.[2] For this reason, a record was "compiled" by the government if it was "created *or*

---

[2] See, e.g., Random House Dictionary (2d ed.).

SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH       - 4 -

1  *acquired*" by the government.  See Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996)
2  (emphasis added).  Application of the Exemption 7 threshold "does not depend in the slightest
3  upon whether the agency activity in question is an 'investigation or a 'compilation.'"  Keys v.
4  DOJ, 830 F.2d at 340.  For example, in Keys, the court ruled that the Exemption 7 threshold was
5  met for various information and documents "gathered" by the government, as well as "local
6  police reports" compiled by the government.  Id. at 341, 342; see also Bevis v. Dep't of State,
7  801 F.2d 1386, 1388 (D.C. Cir. 1986) (information "gathered" by the government to aid law
8  enforcement by foreign nations qualifies).

9        Although plaintiff asserts that some cases applying the Exemption 7 threshold "involve
10 records of law enforcement investigations created by government officials," rather than records
11 "sent *to* the law enforcement agency," see Pl. Opp. at 7 & n.1 (emphasis in original), plaintiff has
12 misconstrued the relevant cases.  For example, plaintiff errs in suggesting that investigative
13 documents created by the *local police* to investigate a "suspicious death" were "created" by the
14 FBI.  Id. at 7 n.1, citing Keys v. DOJ, 830 F.2d at 340.  Plaintiff's Opposition does not cite a
15 single case that *limits* the application of the Exemption 7 threshold solely to records created by
16 the federal government, nor would the language of the exemption support that position.  Indeed,
17 plaintiff's discussion of Gordon v. FBI, 390 F. Supp. 2d 897 (N.D. Cal. 2004), proves the point.
18 The court framed the issue in Gordon as whether the Exemption 7 threshold applied to an email
19 *received* by the government from a newspaper reporter.  See Pl. Opp. at 6, citing 390 F. Supp. 2d
20 at 901 (emphasis added).

21       For these reasons, the Exemption 7 threshold is not limited solely to records created by
22 the government.

23 **B.     OFAC Compiled the Delisting Petitions for Law Enforcement Purposes**

24       The Exemption 7 threshold is met because the Delisting Petitions were compiled by
25 OFAC "for law enforcement purposes."  Plaintiff errs in basing its argument on petitioners'
26 alleged intent in creating or submitting the Delisting Petitions.  See Pl. Opp. at 6-8, 11.  Because
27 the relevant statutory language is records or information "compiled for law enforcement
28 SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH         - 5 -

purposes," the Exemption 7 threshold is applied with reference to the government's purpose in receiving records or compiling information, rather than the purpose of the author in creating the records, generating the information, or submitting the materials to the government. For example, in Gordon the issue as framed by the court was whether the email involved in that case "was *received* for a law enforcement purpose." See Pl. Opp. at 6, citing Gordon, 390 F. Supp. 2d at 901 (emphasis added). Notably, the court did not evaluate the purpose for which the reporter created the email or sent it to the government.

Under Exemption 7, courts have found that a record is "compiled for law enforcement purposes" if the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security, and the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim" of its rationality. See Binion v. DOJ, 695 F.2d 1189, 1194 (9th Cir. 1983); Keys v. DOJ, 830 F.2d at 340; Blanton v. DOJ, 63 F. Supp. 2d 35, 44 (D.D.C. 1999). Law enforcement agencies are accorded "special deference" in making determinations as to the application of Exemption 7, and such agencies "need establish only a 'rational nexus' between its law enforcement duties and the document for which Exemption 7 is claimed." See Binion, 695 F.2d at 1193-94. Courts defer to an agency's assertion that the investigation had a law enforcement purpose where that assertion is not "pretextual or wholly unbelievable." See Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982).

Contrary to plaintiff's contention, the Delisting Petitions were received by OFAC "to enforce federal laws," see Pl. Opp. at 7, and these records do not "belie OFAC's investigation and enforcement of federal laws." Id. at 8. OFAC is designated by statute as a law enforcement agency. See 31 U.S.C. § 313(a)(6) & (d). Its functions include combating terrorist financing, narcotics trafficking, and offenses threatening the integrity of the financial systems. Canter Decl. ¶¶ 12, 45. It is only after OFAC has designated a person and placed his or her name on the SDN List that the person may submit a Delisting Petition. See 31 C.F.R. § 501.807. The petitioner may present evidence that the prior circumstances that led to a designation no longer

SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH                                  - 6 -

1   apply. Canter Decl. ¶ 22. There is certainly a "rational nexus" between these law enforcement
2   duties and the Delisting Petitions, because these records were compiled as part of OFAC's law
3   enforcement activities, including the designation and delisting process. Id. ¶ 46. Treasury thus
4   meets the threshold for Exemption 7.

5       Plaintiff errs in suggesting that Gordon v. FBI, 390 F. Supp. 2d 897, is "the most
6   analogous situation to this case." Pl. Opp. at 6. Gordon applied the Exemption 7 threshold to
7   "an email from a reporter that contained complaints by peace activists who assert that they were
8   improperly listed on the federal government's no-fly watch list." Id. As discussed above, a
9   Delisting Petition is not analogous to an email regarding a false match, and Treasury has already
10  released such emails. Id. at 7 (the Delisting Petitions "notify OFAC about purported mistakes
11  and inaccuracies that make the enforcement of federal law unwarranted"). The Delisting
12  Petitions were submitted directly to OFAC, as part of the agency's administrative process, by
13  persons who had been placed on the SDN List. Such records were therefore compiled by OFAC
14  for law enforcement purposes.

15  **III.  EXEMPTIONS 7(A) AND 7(F) APPLY TO EACH DELISTING PETITION**

16      **A.  Exemption 7(A) Applies to Each Delisting Petition in its Entirety**

17      Although plaintiff asserts that Treasury is required to make a "particularized showing" of
18  harm to pending or likely law enforcement proceedings "in every instance" in order to assert
19  Exemption 7(A) for each of the Delisting Petitions, see Pl. Opp. at 11, the Supreme Court
20  "rejected the argument" that Exemption 7(A) "requires particularized showings of interference."
21  Spannaus v. DOJ, 813 F.2d 1285, 1288 (4th Cir. 1987).

22      Plaintiff fails to acknowledge the significance of the 1986 amendments to Exemption
23  7(A), by which Congress broadened the scope of the exemption and relaxed the standard for an
24  agency to demonstrate interference with law enforcement proceedings. See Pl. Opp. at 10 n.3
25  (relegating discussion of the 1986 amendments to a footnote). While section 552(b)(7)(A)
26  originally provided for the withholding of information that "*would* interfere with enforcement
27  proceedings," the Freedom of Information Reform Act of 1986 substituted the phrase "*could*

28  SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH          - 7 -

1  *reasonably be expected to* interfere with" enforcement proceedings.  See Pub. L. No. 99-570

2  § 1802, 100 Stat. 3207 (emphasis added).  These amendments substantially broadened the scope

3  of Exemption 7(A).  See, e.g., Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 311 n.18 (D.C.

4  Cir. 1988) (finding district court's reliance on the pre-amendment version of Exemption 7(A)

5  improper); Gould Inc. v. GSA, 688 F. Supp. 689, 703 n.33 (D.D.C. 1988).

6        Plaintiff errs in relying upon cases that interpreted the prior version of Exemption 7(A).

7  See Pl. Opp. at 9-11, citing Coastal States Gas Corp. v. DOE, 617 F.2d 854, 870 (D.C. Cir. 1980)

8  (agency "made no effort   . . . to demonstrate that these cases are still under investigation or

9  being actively pursued").  Under Exemption 7(A) as amended, the issue is not whether "release

10 of a *particular* document would actually interfere with an enforcement proceeding," but instead

11 whether "disclosure of particular *kinds* of investigatory records" would "generally interfere"

12 with "particular kinds of enforcement proceedings."  See Solar Sources v. United States, 142

13 F.3d 1033, 1037 (7th Cir. 1998) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214,

14 236 (1978)).

15       This is not a case where the government invoked Exemption 7(A) in response to a

16 company's request for government copies of records that relate to the company's activities and

17 that are identical to copies that it retained.  See Pl. Opp. at 11, citing Lion Raisins, Inc. v. USDA,

18 354 F.3d 1072, 1084-85 (9th Cir. 2004).[3]  OFAC's designation and delisting investigations

19 necessarily involve the investigation of family or business networks of closely related persons

20 and entities.  Canter Decl. ¶ 50.  The ability to investigate one person or entity and any

21 relationship to a larger network is a key tool of the sanctions programs.  Id.  Delisting Petitions

22 may include information regarding past or present activities of not only the petitioner but also

23 members of his or her family, associates, and employers.  Id. ¶¶ 22, 48.

---

[3] Notably, in Lion Raisins, the Ninth Circuit affirmed summary judgment for the agency with respect to the company's request for copies of its competitors' records.  Id., 354 F.3d at 1085.

28 SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH            - 8 -

1  Treasury established that release of the pending Delisting Petitions in response to a FOIA
2  request could reasonably be expected to interfere with a pending investigation and any future
3  investigations or prospective efforts that have already begun or are anticipated. Id. ¶ 50. The
4  release of such records could have a chilling effect on the willingness of designated persons,
5  witnesses, and other sources to provide the information that is crucial to OFAC's consideration
6  of Delisting Petitions. Id. ¶ 49. Once a particular delisting investigation has been completed and
7  the petitioner has been removed from the SDN List, *that* investigation could no longer be
8  obstructed. But Treasury determined that the release of closed Delisting Petitions could
9  reasonably be expected to interfere with *other* pending or prospective investigations of related
10 persons or entities. Id. ¶ 50.

### B. Exemption 7(F) Applies to Each Delisting Petition in its Entirety

12 Plaintiff also errs in asserting that Treasury is required to make a detailed showing for
13 each item of information in order to assert Exemption 7(F) for the Delisting Petitions, including
14 the "precise facts" that, if disclosed, would create a danger to a person's life or physical safety.
15 See Pl. Opp. at 23. Courts have held that Exemption 7(F) (a) has a broad reach, see Garcia v.
16 DOJ, 181 F. Supp.2d 356, 378 (S.D.N.Y. 2002); (b) "is an absolute ban against certain
17 information," Raulerson v. Ashcroft, 271 F. Supp. 2d 17, 29 (D.D.C. 2002); and (c) does not
18 involve a balancing of societal rights and individual privacy interests. Id.
19 Plaintiff's position as to Exemptions 7(A) and 7(F), if adopted, would require Treasury to
20 disclose the very information that Treasury contends is protected from disclosure by these FOIA
21 exemptions. An agency "need not specify its objections in such detail as to compromise the
22 secrecy of the information." Lewis v. IRS, 823 F.3d 375, 378 (9th Cir. 1987) (citation omitted).
23 Otherwise, the purpose and benefits of the FOIA exemptions would be nullified.
24 Similarly, although plaintiff asserts that Treasury is required to specify each item of
25 personal information in the Delisting Petitions in order to assert exemptions 6 and 7(C), see
26 Pl. Opp. at 14-15 & n.5; 17 & n. 9, the Supreme Court has concluded that, "as a categorical
27 matter," a third party's request for law enforcement records or information about a private
28 SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH                              - 9 -

1  citizen "can reasonably be expected to invade that citizen's privacy," and that, when the request
2  seeks no official information about an agency, "but merely records that the Government happens
3  to be storing, the invasion of privacy is 'unwarranted'." DOJ v. Reporters Comm. for Freedom of
4  the Press, 489 U.S. 749, 780 (1989).

### IV. TREASURY PROPERLY ASSERTED EXEMPTIONS TO THE OPEN AND CLOSED DELISTING PETITIONS BY CATEGORY OF RECORDS

Plaintiff does not dispute that several FOIA exemptions may apply to information contained in the Delisting Petitions. See Pl. Opp. at 2 ("certain personally-identifying information and the names of bona fide confidential sources and informants may be redacted from the delisting petitions" under Exemptions 6 and 7(C)); see also id. at 17 n.9 (making same point); id. at 22 n.11 (information from confidential sources and informants may be redacted under exemption 7(D)); id. at 23 (personal identifying information under Exemption 7(F)); id. at 25 (information may be redacted under Exemptions 2, 3, 4, and 5).[4]

Plaintiff errs, however, in contending that Treasury, in order to withhold the Delisting Petitions, is required (a) to assert each FOIA exemption on a record-by-record basis, (b) to submit a detailed Vaughn index referring to each item of information that is subject to any of the exemptions, and (c) to discuss each such item of information in an agency declaration.[5] Courts have consistently held that agencies are permitted to apply exemptions to a category of records, rather than on a document-by-document basis. See Vaughn v. United States, 936 F.2d 862, 868 (6th Cir. 1991) ("the government need not justify its withholdings document-by-document; it may

---

[4] Similarly, plaintiff does not contest Treasury's use of Exemptions 4, 5, 6, and 7(C) to process other records that were released as redacted. See Pl. Opp. at 3; see also Def. Memo. at 22, 26, 33, 34 (applying such exemptions to those records).

[5] See, e.g., Pl. Opp. at 2 (even though some exemptions may apply to information in the Delisting Petitions, plaintiff is entitled to summary judgment as a result of Treasury's "wholly improper and inadequate evidentiary showing"); id. at 14 ("again, OFAC is impermissibly and generically categorizing the delisting petitions as a whole and offering no *Vaughn* index or particularized showing"); id. at 17 n.9 ("without so much as a *Vaughn* index for the withheld delisting petitions, it is impossible to know the scope and propriety of such redactions"); id. at 25 (Treasury failed "to provide a *Vaughn* index or make a particularized showing as to the contents of the individual delisting petitions").

SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH           - 10 -

1  instead do so category-of-document by category-of-document"). "No rule of law precludes the
2  [agency] from treating common documents commonly." Judicial Watch, Inc. v. FDA, 449 F.3d
3  141, 147 (D.C. Cir. 2006). In particular, the subcategories of Exemption 7 have been applied to
4  records by category. See, e.g., NLRB v. Robbins Tire & Rubber Co., 437 U.S. at 236
5  (Exemption 7(A)); DOJ v. Reporters Comm., 489 U.S. at 777-80 (Exemption 7(C)); DOJ v.
6  Landano, 508 U.S. 165, 179-80 (1993) (Exemption 7(D)). Courts therefore accept agency
7  affidavits that specify a category of documents and establish the harm that could result from its
8  release, rather than requiring extensive, detailed itemizations of each document in that category.
9       Treasury has provided the Court with sufficient information, via the Fifth Canter
10 Declaration, to review the application of the FOIA exemptions to the pending and closed
11 Delisting Petitions. See Judicial Watch, Inc. v. FDA, 449 F.3d at 146-47. Where the
12 government describes its application of the FOIA exemptions to the categories of records at issue
13 through the submission of a detailed declaration, there is no requirement that an index also be
14 filed. Id.; see also Gallant v. NLRB, 26 F.3d 168, 173 (D.C. Cir. 1994) (declining to order the
15 production of a Vaughn index). A Vaughn index is not required where "the entire class of
16 documents requested is exempt from disclosure regardless of the content of individual
17 documents." Brooks v. IRS, 1997 WL 718473 (E.D. Cal. Aug. 28, 1997), at *4 (emphasis in
18 original); Wiener v. FBI, 943 F.2d 972, 978 n.5. (9th Cir. 1991).
19       For the reasons stated in the initial Memorandum in Support of the Motion for Summary
20 Judgment on the Remaining Issues (Def. Memo.), Exemptions 7(A) and 7(F) apply to each
21 Delisting Petition in its entirety. See Def. Memo. at 11-19. Where records fall within any FOIA
22 exemption, the agency is authorized to withhold the records. See Spurlock v. FBI, 69 F.3d 1010,
23 1016 (9th Cir. 1995) ("Requiring an agency to disclose exempt information is not authorized by
24 FOIA."). Because Exemptions 7(A) and 7(F) apply to each of the Delisting Petitions in its
25 entirety, the court need not determine whether other exemptions also apply. See, e.g., Center for
26 Nat'l Security Studies v. DOJ, 331 F.3d 918, 925 (D.C. Cir. 2003); Lewis v. IRS, 823 F.3d at
27 380; Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F. 2d 856, 864 n. 19
28 SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH            - 11 -

1  (D.C. Cir. 1981); Nat'l Inst. of Military Justice v. Dep't of Defense, 404 F. Supp. 2d 325, 332
2  n.3 (D.D.C. 2005).  As a result, although Exemptions 2, 3, 4, 6, 7(C), and 7(D) also protect
3  information in the Delisting Petitions, and plaintiff does not dispute that some exemptions may
4  apply to information in these records, the Court need not address Treasury's use of those
5  exemptions.
6      For these reasons, Treasury properly applied the FOIA exemptions to the pending and
7  closed Delisting Petitions by category of records, rather than on a document-by-document basis.

**V.   PLAINTIFF'S ABILITY TO OBTAIN SOME INFORMATION THROUGH OTHER MEANS IS IMMATERIAL**

Plaintiff asserts that petitioners retained copies of a Delisting Petition that was submitted to OFAC or have knowledge of its contents.  See Pl. Opp. at 11, 13.  But, if so, that does not mean that a petitioner, or any of the other third parties mentioned in such record, waived his or her privacy interests in the context of Exemptions 6 and 7(C).  OFAC's processes for designation and delisting involve the investigation of networks of closely related persons and entities allegedly involved in activities such as those related to narcotics trafficking or terrorism.  Canter Decl. ¶¶ 16, 50.  Delisting Petitions may include information regarding not only the petitioner but also members of his or her family, associates, and employers.  Id. ¶¶ 22, 48, 50, 53.

Privacy is of particular importance in the context of the FOIA because a disclosure required by the FOIA is a disclosure to the public at large.  Once a release is made to a requester under the FOIA, the requestor's use and dissemination of the information to third parties is unrestricted.  See Painting & Drywall Work Pres. Fund, Inc. v. HUD, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

When the subject of the information requested under the FOIA is a private citizen and "when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest . . . is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir."  Reporters Comm., 489 U.S. at 780.

28  SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH          - 12 -

1   Personal information regarding third parties would not lead to any "public understanding of the
2   operations or activities of the government."  Contrary to plaintiff's contention, see Pl. Opp. at
3   17-20, the contents of the Delisting Petitions will not directly advance the public interest,
4   because the information relates to the activities of the petitioners and other third parties, rather
5   than to OFAC's performance of its duties.  See Seized Property Recovery Corp. v. Customs, 502
6   F. Supp. 2d 50, 59 (D.D.C. 2007) (applying Exemptions 6 and 7(C) to the names and addresses
7   of individuals whose property has been seized by the government).  Treasury determined, after
8   weighing the significant privacy interests of third-parties whose names appear in these records
9   against any public interest in the information, that the balance overwhelmingly favors non-
10  disclosure.

11          Plaintiff asserts that, after several of the 346 petitioners brought court actions against
12  Treasury challenging a designation or the blocking of a transaction, some documents relating to
13  a Delisting Petition or a Petition to Release Blocked Assets were filed as part of the
14  administrative records in those other court actions.  See Pl. Opp. at 3-5, 13.  Among the exhibits
15  attached to the Burke Declaration are three sets of records that plaintiff contends were filed as
16  part of the administrative records in other court actions.  Burke Decl. ¶¶ 2-4 & Exs. A-C; Pl.
17  Opp. at 4-5.  Plaintiff fails to recognize the distinction between the Delisting Petitions at issue in
18  this case and other records, such as documents regarding any "Petitions for the Release of
19  Blocked Funds," see Burke Decl. ¶ 3 & Ex. B; Pl. Opp. at 5.  Plaintiff also errs in describing
20  these three exhibits to the Burke Declaration as consisting solely of a "delisting petition."  See
21  Pl. Opp. at 4-5; Burke Decl. ¶¶ 2-4.  For these reasons, Treasury objects to Plaintiff's Request
22  for Judicial Notice, to the extent that plaintiff (a) seeks "judicial notice of the allegations made"
23  in any records that plaintiff contends were filed in other court proceedings, (b) seeks judicial
24  notice that any exhibit to the Burke Declaration consists solely of a Delisting Petition, or (c)
25  asserts that any such record or exhibit is relevant to the remaining issues.  See Pl. Request at 2.

28  SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH           - 13 -

1    Even in those relatively few instances where a petitioner filed a court action involving a
2 list-based designation, plaintiff errs in asserting that, if some of the records or information sought
3 by plaintiff were previously divulged, or if plaintiff could obtain such records or information
4 through other means, that would defeat the privacy interests at issue under Exemptions 6 and
5 7(C). In Schiffer v. FBI, 78 F.3d 1405 (9th Cir. 1996), the Ninth Circuit affirmed the FBI's use
6 of Exemption 7(C) to withhold information that had been used in litigation and was thus made
7 public, noting that the Supreme Court "explicitly rejected" the argument that the use of
8 information in one trial "necessarily diminishes the privacy interests at stake." Id. at 1410-11,
9 citing DOJ v. Reporters Comm., 489 U.S. at 769.

10   Similarly, in Fiduccia v. DOJ, 185 F.3d 1035 (9th Cir. 1999), the Ninth Circuit held that
11 information at issue there was protected from disclosure "regardless of whether it had one time
12 been made public." Among the documents sought in Fiduccia were FBI records relating to
13 searches of third parties. Plaintiff asserted that the public interest in FBI searches of their homes
14 outweighed any privacy concerns. Id. at 1046-47. The agency issued a Glomar response to
15 those FOIA requests, even though the agency itself had disclosed to the press that it had searched
16 the home of one individual and the second had spoken to the press about the search of her home.
17 Id. at 1047. The Court held that "these individuals did not lose their statutory interest in privacy
18 by reason of the earlier publicity," whether by their own press releases or those of the FBI. Id. at
19 1047. The Court concluded that the individuals' privacy interests "outweighed (categorically,
20 regardless of individual circumstances) the FOIA purpose of contributing significantly to
21 understanding of the operations or activities of the government." Id. at 1047-48 (internal
22 quotations omitted).

23   For these reasons, plaintiff's assertion that some information regarding Delisting
24 Petitions may be available through other means does not defeat Treasury's application of the
25 FOIA Exemptions to these records.

**CONCLUSION**

For these reasons, and those stated in Treasury's initial memorandum, the Court should grant summary judgment to Treasury on all remaining issues in the case. The Delisting Petitions are protected in their entirety by Exemptions 7(A) and 7(F). Thus, although other FOIA exemptions also protect information in the Delisting Petitions, the Court need not address Treasury's use of these other exemptions for those records. Plaintiff does not challenge Treasury's processing of the other records, which were released in redacted form.

Dated: July 9, 2008                    Respectfully submitted,

/s/
PETER T. WECHSLER (MA # 330559)

SUMMARY JUDGMENT REPLY MEMORANDUM   No. C 07-2590 PJH                - 15 -