1

2

3

4

5

6            UNITED STATES DISTRICT COURT

7            NORTHERN DISTRICT OF CALIFORNIA

8

9   LAWYERS' COMMITTEE FOR CIVIL
    RIGHTS OF SAN FRANCISCO BAY
    AREA,
10

11           Plaintiff,                    No. C 07-2590 PJH

12      v.                                 **ORDER DENYING DEFENDANT'S
                                           MOTION FOR SUMMARY JUDGMENT**
13  UNITED STATES DEPARTMENT OF
    THE TREASURY,
14

15           Defendant.
    _____/

16        Defendant's motion for summary judgment came on for hearing before this court on

17  July 23, 2008.  Plaintiff Lawyers' Committee for Civil Rights of San Francisco Bay Area

18  ("LCCR") appeared through its counsel, Thomas Burke.  Defendant United States

19  Department of Treasury ("defendant" or "Treasury") appeared through its counsel, Peter

20  Wechsler.  Having read the parties' papers and carefully considered their arguments and

21  the relevant legal authority, and good cause appearing, the court DENIES defendant's

22  motion for summary judgment.

23                          **BACKGROUND**

24        This is an action brought under the Freedom of Information Act, 5 U.S.C. § 552

25  ("FOIA").  Plaintiff LCCR seeks declaratory and injunctive relief, requiring Treasury to

26  disclose numerous documents.

27        Specifically, on August 16, 2005, LCCR submitted a FOIA request to Treasury,

28  which included ten requests related to the Specially Designated Nationals List (SDN list)

that is maintained and administered by Treasury's Office of Foreign Assets Controls

("OFAC").  OFAC's SDN list is a publicly available list of suspected terrorists, drug

traffickers, and other "specially designated nationals," and includes individuals, banks,

companies, and other entities deemed to be a threat to national security.  Private

businesses such as banks, mortgage companies, landlords, and employers screen

potential customers and applicants against the SDN list.  If an applicant's name is on the

list – or is similar to a name on the SDN list – then an alert is generated, and businesses

and/or employers may refuse to conduct business or employ the customer or applicant.

The list casts a fairly wide net, and includes common names like Sanchez, Gonzalez, Ali,

and Hussein.

In its FOIA request, LCCR sought disclosure of the following OFAC records from

2000 to the present:

(1) The number and nature of inquiries made to the OFAC compliance
hotline by companies regarding a possible name match to the SDN list
or other watchlist;

(2) The distribution of calls to the OFAC compliance hotline based on
industry (including but not limited to banks, travel/tourism agencies,
insurance companies, credit reporting agencies, nonprofit
organizations, and money service businesses);

(3) The number of calls received by the OFAC compliance hotline that
resulted in an actual name match to the SDN list or other watchlist;

(4) The number and nature of inquiries from companies/individuals about
a credit report submitted by an applicant stating that the applicant
might be on a government watchlist;

(5) The number and nature of complaints from individuals whose names were
flagged as similar to a name on the SDN list or other watchlist and any
OFAC responses to such complaints;

(6) The number and nature of complaints from individuals whose credit reports
contained an alert regarding a possible name match to the SDN list or other
watchlist, and any OFAC responses to those complaints;

(7) Policies or measures taken to protect the civil rights and privacy
interests of individuals whose names are flagged as similar to a name
on the SDN list or other watchlist;

(8) Procedures for individuals to remove their names from the SDN list or
other watchlist or to establish that they are not actually on the

2

watchlist;

(9)     Policies and procedures used by OFAC to determine whether an individual about whom the agency has received an inquiry is actually the same person identified on a government watchlist; and

(10)    Policies and procedures used by OFAC once it has determined that an individual is actually on a government watchlist.

On August 29, 2005, an OFAC director acknowledged receipt of LCCR's request, and notified LCCR that it was experiencing a substantial backlog of FOIA requests, and that its response would be delayed. LCCR subsequently filed a complaint with this court in May 2007, asserting one FOIA claim, seeking injunctive relief requiring Treasury to release the requested records and a declaration that Treasury had violated FOIA. At the time that LCCR filed its complaint, Treasury had not responded to its FOIA request.

Shortly thereafter, on July 20, 2007, Treasury responded to LCCR's FOIA request, and produced several documents it deemed responsive. Treasury then filed a motion to dismiss the complaint on July 27, 2007, arguing that LCCR's complaint should be dismissed for lack of subject matter jurisdiction given its July 20, 2007 response to LCCR's FOIA request. On October 3, 2007, LCCR filed its opposition to Treasury's motion, contending that its FOIA claim was not mooted by Treasury's response because both Treasury's search and its response were inadequate. LCCR also requested discovery regarding Treasury's search and response. Subsequently, on October 18, 2007, this court held a case management conference, at which it noted that Treasury's motion to dismiss was mooted by plaintiff's challenge to the adequacy of the search, and set a further briefing schedule for the motion which would be treated as one for summary judgment. Treasury filed a reply on October 31, 2007, which was accompanied by the Third Canter Declaration addressing the search conducted by OFAC. LCCR filed a sur-reply on November 14, 2007.

The court found the Third Canter Declaration submitted by Treasury in support of its motion inadequate because it did not sufficiently explain and describe OFAC's search for responsive documents at the hearing on the motions. The court noted that it was not

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

sufficient for Treasury to simply assert that OFAC division directors were provided with a

list of plaintiff's FOIA requests and asked to search for responsive documents.

Accordingly, the court ordered Treasury to submit a supplemental declaration regarding the

adequacy of the search, and deferred ruling on the parties' motions until it had reviewed the

supplemental declaration.  In response, Treasury filed the Fourth Canter Declaration on

January 11, 2008.

On February 14, 2008, the court issued its order granting in part and denying in part

Treasury's motion for summary judgment and denying plaintiff's motion for discovery.  The

court also entered judgment, as it turns out, precipitously.  Although the court found several

of LCCR's requests incomprehensible and/or improper, the court required Treasury to

disclose certain documents, as responsive to LCCR's FOIA requests nos. 5 and 6, which

asked for records regarding:

> (5)    The number and nature of complaints from individuals whose names
> were flagged as similar to a name on the SDN list or other watchlist
> and any OFAC responses to such complaints;
>
> (6)    The number and nature of complaints from individuals whose credit
> reports contained an alert regarding a possible name match to the
> SDN list or other watchlist, and any OFAC responses to those
> complaints

The documents that the court ordered be disclosed included some in electronic form,

specifically:  (1) the inquiries and/or complaints associated with six data entries revealed by

OFAC's search of the electronic database for calls to the congressional liaison; (2) the

letters associated with 67 data entries resulting from OFAC's search of the FACDB; and (3)

53 entries resulting from OFAC's search of the electronic database for its website.

Additionally, the court ordered that delisting petitions, which are applications (in paper form)

filed by an individual acknowledging that his or her name is on the SDN list and seeking to

remove his or her name from the SDN list, be disclosed.

On March 21, 2008, both parties filed documents with the court notifying it that a

dispute had arisen regarding Treasury's redaction of certain documents subject to

disclosure by the court's February 14, 2008 order.  On March 25, 2008, the court held a

4

United States District Court

For the Northern District of California

1    telephonic case management conference and issued an order vacating the judgment and

2    setting a briefing schedule.  It ordered the parties to meet and confer regarding the

3    redacted and withheld documents.  Assuming the parties were unable to resolve the

4    dispute as to the withheld documents, the court ordered Treasury to file a motion for

5    summary judgment and set a briefing schedule.  The court further determined, and the

6    parties agreed, that no further administrative exhaustion regarding Treasury's claimed

7    exemptions was necessary prior to the motion for summary judgment.

8         Treasury's motion for summary judgment as to exemptions it claims under FOIA with

9    respect to 346 delisting petitions followed, and is currently before the court.  Following the

10   July 23, 2008 hearing, the court took the motion under submission, but ordered Treasury to

11   submit three randomly selected delisting petitions in order to ascertain whether certain

12   delisting petitions submitted by LCCR in conjunction with its opposition to the motion were

13   representative of the category of delisting petitions.  *See* Burke Decl., Exhs. A and B; Kabat

14   Decl., Exh. A.[1]  Specifically, the court ordered Treasury to submit three delisting petitions,

15   including the first petition belonging to an applicant with a name beginning with "A," the last

16   applicant with a name beginning with "N," and the first applicant with the name beginning

17   with "R."

18        Treasury submitted the petitions, which were not disclosed to LCCR, to the court on

19   July 29, 2008.  The "petitions" each consisted of one-page letters from individuals to OFAC,

20   and were very dissimilar to the exhibits provided by LCCR.  They appeared to the court to

21   be incomplete.  Additionally, it was apparent to the court that Treasury had misunderstood

22

23        [1]At the hearing, the court expressly noted that it was *not* requesting submission of the
     sample petitions from Treasury for the purpose of conducting an *in camera* review, such as
24   that expressly prohibited by the Ninth Circuit.  *Wiener v. FBI*, 943 F.2d 972, 977-79 (9th Cir.
     1991) (holding that the submission of a Vaughn index or more detailed affidavits should occur
25   *before any in camera review* of the delisting petitions takes place).  Rather the samples were
     intended to be used as comparators given Treasury's objections that the samples submitted
26   by plaintiff were not representative.

27        The court notes that although Treasury has labeled its post-hearing July 29, 2008, and
     August 6, 2008 submissions as "in camera" submissions, the court has not conducted the type
28   of in camera review detailed in *Wiener.*

United States District Court

For the Northern District of California

1    its request to provide sample petitions by erroneously limiting the petitions submitted to the

2    court to *individual* - as opposed to entity - applicants.  Accordingly, on July 31, 2008, during

3    a further telephonic conference with the parties, the court clarified that its request pertained

4    to petitions submitted by *entities* as well as individuals.  The court ordered Treasury to

5    submit three random *entity* delisting petitions, including the first entity with the name

6    beginning with "A," the last entity with the name beginning with "N," and the first entity with

7    the name beginning with "R."  The court also requested that Treasury confirm that the July

8    29, 2008 submissions that it provided the court constituted complete petitions, and to

9    update those petitions as necessary.

10        Accordingly, on August 6, 2008, Treasury submitted three additional delisting

11   petitions from entities.  One of those delisting petitions similarly consisted of a one-page

12   letter to OFAC.  Although that sample suggests prior related correspondence, Treasury

13   stated that "no [supporting] documents accompanied" that delisting petition.  Treasury also

14   confirmed that there were no supporting documents for the individual delisting petitions that

15   it submitted July 29, 2008.

16        Treasury did, however, submit supporting documents for the remaining two entity

17   delisting petitions.  The majority of those documents were untranslated, and appear to be in

18   German and/or Russian.  Accordingly, the court, fluent in neither, was unable to ascertain

19   the contents of the untranslated documents.  Like the three individual delisting petitions

20   submitted by Treasury, the three entity delisting petitions differ substantially from those

21   submitted as exhibits by LCCR.

22                                       **DISCUSSION**

23   **A.    Legal Standards**

24          **1.    The Statute**

25   The pertinent statute, 5 U.S.C. § 552(b) provides that:

26          (b) This section does not apply to matters that are--

27                (1) (A) specifically authorized under criteria established by an
                  Executive order to be kept secret in the interest of national
28

**United States District Court**

For the Northern District of California

defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

*(2) related solely to the internal personnel rules and practices of an agency;*

*(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;*

*(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;*

*(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;*

*(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;*

*(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings,* (B) would deprive a person of a right to a fair trial or an impartial adjudication, *(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,* (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or *(F) could reasonably be expected to endanger the life or physical safety of any individual;*

. . . .

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected

1  by the exemption in this subsection under which the
2  deletion is made. If technically feasible, the amount of the
   information deleted, and the exemption under which the
3  deletion is made, shall be indicated at the place in the
   record where such deletion is made.[2]

4  ## 2.    FOIA Exemptions and Judicial Review Generally

5      As a general rule, all FOIA determinations should be resolved on summary

6  judgment.  *See Nat'l Wildlife Fed'n v. U.S. Forest Service,* 861 F.2d 1114 (9th Cir. 1988);

7  O'Reilly, Federal Information Disclosure, § 8:21 (2007 Suppl.) (numerous citations);

8  *Sakamoto v. U.S. Environmental Protection Agency*, 443 F.Supp.2d 1182, 1188  (N.D. Cal.

9  2006).

10     FOIA reflects "a general philosophy of full agency disclosure unless information is

11 exempted under clearly delineated statutory language."  *Lane v. Department of Interior*,

12 523 F.3d 1128, 1137 (9th Cir. 2008) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352,

13 360-61 (1976)).  Congress set forth nine categories of documents that are exempt from

14 FOIA's disclosure requirement.  5 U.S.C. § 552(b)(1)-(9).  Unlike the broadly construed

15 disclosure provisions of FOIA, its statutory exemptions "must be narrowly construed."  *Lion

16 Raisins v. United States Dept. of Agriculture*, 354 F.3d 1072, 1079 (9th Cir. 2004) (citations

17 omitted).  The agency resisting public disclosure has "the burden of proving the applicability

18 of an exception."  *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996).

19 "That burden remains with the agency when it seeks to justify the redaction of identifying

20 information in a particular document as well as when it seeks to withhold an entire

21 document."  *United States Dep't. of State v. Ray*, 502 U.S. 164, 173 (1991).

22     Because the agency has sole access to the withheld documents, the ordinary rules

23 of discovery do not operate in a FOIA case to "give each party access to the evidence upon

24 which the court will rely in resolving the dispute between them."  *Favish v. Office of

25 Independent Counsel,*  217 F.3d 1168, 1175 (9th Cir. 2000) (citing *Wiener*, 943 F.2d at

26 977).  "'This lack of knowledge by the party seeking disclosure seriously distorts the

27 ────────────

28     [2]The exemptions claimed by Treasury are italicized.

8

United States District Court
For the Northern District of California

1   traditional adversary nature of our legal system[ ].' " *Id.* (quoting *Vaughn v. Rosen*, 484 F.2d

2   820, 824 (D.C. Cir. 1973)).   To correct this imbalance, the courts devised the Vaughn index

3   requirement, which may be imposed on government agencies seeking to withhold

4   documents requested under FOIA.   *Id.*

5       The court may rely solely on government affidavits in resolving a summary judgment

6   motion as to exemptions "so long as the affiants are knowledgeable about the information

7   sought and the affidavits are detailed enough to allow the court to make an independent

8   assessment of the government's claim."  *Lane,* 523 F.3d at 1135 -1136 (quoting *Lion*

9   *Raisins*, 354 F.3d at 1079). "If the affidavits contain reasonably detailed descriptions of the

10  documents and allege facts sufficient to establish an exemption,'the district court need look

11  no further.' " *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987) (quoting *Church of*

12  *Scientology of Calif. v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979)).

13      However, in camera inspection may be appropriate if the "preferred alternative to in

14  camera review – government testimony and detailed affidavits – has first failed to provide a

15  sufficient basis for a decision."  *Lane*, 523 F.3d at 1136.  In *Church of Scientology*, the

16  Ninth Circuit held that the district court's in camera viewing of the disputed documents, in

17  combination with "somewhat conclusory" affidavits, constituted an adequate factual basis,

18  because the "small number of documents requested, and their relative brevity, made these

19  cases appropriate instances for exercise of the district court's inspection prerogative." *Id.*

20  (discussing *Church of Scientology*, 611 F.2d at 743).

21      In camera inspection, however, is "not a substitute for the government's burden of

22  proof, and should not be resorted to lightly," due to the ex parte nature of the process and

23  the potential burden placed on the court.  *Lane*, 523 F.3d at 1136.  In camera review is not

24  to be used as a substitute for or an inadequate Vaughn index.  *Powell v. United States*

25  *Dept. of Justice*, 584 F.Supp. 1508, 1512-1513 (N.D. Cal. 1984).  Moreover, since the

26  exemptions to FOIA are intended "to relieve the district courts of potentially onerous in

27  camera inspections of documents," *MacPherson v. IRS*, 803 F.2d 479, 482 (9th Cir.1986),

28

1   district courts need not and should not make in camera inspections where the government

2   has sustained its burden of proof on the claimed exemption by public testimony or

3   affidavits. *Lewis*, 823 F.3d at 378 (government testimony and detailed affidavits are the

4   "preferred alternative" to in camera review).

5   **B.    Treasury's Motion**

6          At the outset, the court notes that Treasury utilizes a fair amount of space in its

7   motion papers addressing issues that have already been resolved by the court in its

8   February 14, 2008 order.  First, Treasury devotes several pages to the adequacy of its

9   search for responsive documents, an issue which the court previously resolved in

10  Treasury's favor. *See* February 14, 2008 Order at 15-16 ("Based upon [the Third and

11  Fourth Canter Declarations], the court concludes that Treasury's search was indeed

12  reasonably calculated to uncover all relevant documents as to all FOIA requests, and

13  GRANTS Treasury summary judgment on this basis.").  The court finds it unnecessary to

14  revisit the issue.

15         Second, notwithstanding the court's February 14, 2008 order, Treasury argues that

16  LCCR is *not* entitled to the delisting petitions because its FOIA request and complaint

17  targets only "false matches" or mistakes with respect to the SDN list. *See* Reply at 1-3 &

18  n.1.  Treasury asserts that the delisting petitions "are not responsive to [LCCR's] FOIA

19  request" because delisting petitions are in fact *not* communications concerning a false

20  match, but are instead "applications *acknowledging* that persons *are included* on the SDN

21  list and requesting that their names be removed."  Reply at 3 n.1, 2.  The court, however,

22  declines to reconsider its prior conclusion that even though LCCR's FOIA requests 5 and 6

23  may have been inartfully written, liberally construed, the requests encompass the delisting

24  petitions. *See* February 14, 2008 Order at 15.

25         Additionally, although Treasury's opening motion papers address its redaction of

26  certain documents that this court ordered Treasury to disclose, those documents are no

27  longer at issue since LCCR concedes in its opposition that the redactions were appropriate.

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Accordingly, the only issue remaining concerns Treasury's claimed exemptions with

2   respect to the delisting petitions.

3          **1.     Absence of a Vaughn Index**

4          Courts generally rely on a Vaughn index in ruling on claimed exemptions to FOIA.

5   *Lewis*, 823 F.2d at 380 (citing *Vaughn*, 484 F.2d at 827).   The Vaughn "index functions to

6   restore the adversary process to some extent, and to permit more effective judicial review

7   of the agency's decision."   *Wiener*, 943 F.2d at 977.  To fulfill its purpose, a Vaughn index

8   must "identify[ ] each document withheld, the statutory exemption claimed, and [provide] a

9   particularized explanation of how disclosure of the particular document would damage the

10  interest protected by the claimed exemption."  *Id.* at 977.

11         Vaughn indices, however, are not required in all FOIA cases.  *Id.* at 978 n. 5.  For

12  example, when the affidavit submitted by an agency is sufficient to establish that the

13  requested documents should not be disclosed, a Vaughn index is not required.  *Minier,* 88

14  F.3d at 804 (*citing Lewis,* 823 F.2d at 380).  Additionally, when a claimed FOIA exemption

15  is based on a general exclusion, such as Exemption 7(A)'s criminal investigation exclusion,

16  which is dependent on the category of the requested records rather than the individual

17  subject matters contained within each document, a Vaughn index is unnecessary.  *See*

18  *Lewis*, 823 F.2d at 380; *see also Campbell v. Dept. of Health & Human Services*, 682 F.2d

19  256, 265 (D.C. Cir. 1982) (government is required to provide affidavits but not Vaughn

20  index to establish applicability of Exemption 7(A)).

21         In cases where a Vaughn index is not required, an agency "may meet its burden by

22  submitting a detailed affidavit showing that the information logically falls within the claimed

23  exemptions."  *Minier*, 88 F.3d at 800 (internal quotation marks and citation omitted). "In

24  evaluating a claim for exemption, a district court must accord 'substantial weight' to

25  [agency] affidavits, provided the justifications for nondisclosure are not controverted by

26  contrary evidence in the record or by evidence of [agency] bad faith." *Id.*  Because the court

27  and the plaintiff do not have the opportunity to view the documents themselves, the

28

11

United States District Court

For the Northern District of California

1    submission must be "detailed enough for the district court to make a *de novo* assessment

2    of the government's claim of exemption." *Id.* (citing *Maricopa Audubon Soc'y v. United*

3    *States Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997)).

4         Here, Treasury determined that there were 346 delisting petitions, 291 of which were

5    still "pending" and 55 which were "closed" or "concluded."  5th Canter Decl. ¶ 25.  Treasury

6    then reviewed 102 of the petitions, which it contends constituted a "representative sample,"

7    to determine which FOIA exemptions if any applied to the petitions.[3]  *Id.* at ¶ 24.  Based on

8    this review, Treasury concluded that eight exemptions applied to the delisting petitions:

9    Exemptions 2, 3, 4, 6, 7(A), 7(C), 7(D), and 7(F).[4]  Treasury, however, did not submit a

10   Vaughn index with respect to the delisting petitions.

11        It asserts that it has not submitted a Vaughn index in this case because the alleged

12   exemptions apply *categorically*, or in other words, to the entire category of delisting

13   petitions, and also because the Fifth Canter Declaration sufficiently establishes that the

14   petitions need not be disclosed.[5]  The Fifth Canter Declaration is described in more detail

15   below in conjunction with the court's discussion of each of the asserted exemptions.

16

17        [3]OFAC has not explained *why* the 102 petitions it reviewed were representative of the
18   346 petitions as a whole; nor has it explained whether those 102 petitions were open or closed
     petitions.

19        [4]Although it is not clear from its papers, Treasury clarified at the July 23, 2008 hearing
20   that it is not asserting Exemption 5 with respect to the delisting petitions.

21        [5]Plaintiffs, in their opposition, have not presented a formal argument regarding the
     necessity of a Vaughn index generally, but have implied that one is necessary in this case in
22   several places throughout their brief.  *See, e.g.,* Oppos. at 1 ("[w]ithout providing LCCR or this
     Court with a Vaughn index or a particular showing of the allegedly sensitive information that
23   purportedly appears in each of the individual petitions, OFAC asserts a variety of exemptions
     to releasing *any portion of any* delisting petitions regardless of the particular circumstances
24   raised in each"); Oppos. at 2 (contending that OFAC made a "wholly inadequate and improper
     evidentiary showing" in support of its claimed exemptions); Oppos. at 14 ("OFAC is
25   impermissibly and generically categorizing the delisting petitions as a whole and offering no
     Vaughn index or particularized showing"); Oppos. at 25 ("OFAC's failure to provide a Vaughn
26   index or make a particularized showing as to the contents of the individual delisting petitions
     renders it impossible for LCCR or this Court to determine, in advance, the scope and propriety
27   of OFAC's assertion of . . . exemptions [2, 4, and 5] as to certain of the information in the
     delisting petition").

28

United States District Court
For the Northern District of California

1

2

**2.     Categorical Application**

Treasury's motion papers and the Fifth Canter Declaration are unclear as to which

exemptions it asserts apply categorically to the delisting petitions.  Nowhere in Treasury's

papers does it specifically identify which exemptions it contends apply categorically.  To

make things even more confusing, Treasury also asserts that not only do some of the

exemptions apply to the entire category of delisting petitions, but certain exemptions also

apply to the delisting petitions in their entirety, that is, to every word in every petition, a

separate issue which the court discusses in more detail below.

Exemptions 7(A) and 7(F) are the exemptions that Treasury discusses in greatest

detail in its papers, and the only ones that it explicitly and unequivocally states apply both

categorically and to the petitions in their entirety.  *See, e.g.,* Def. Motion at 4, ll. 9-11

("OFAC determined that Exemptions 7(A) and 7(F) protected each of the delisting petitions

in its entirety; and that Exemptions 2, 3, 4, 6, 7(C), and 7(D) also applied to information in

the petitions.").  In fact, Treasury argues that, for these reasons, the court need not reach

the second group of exemptions, and it thus has addressed them in a much more cursory

fashion than 7(A) and 7(F).

Other than Exemptions 7(A) and 7(F), the court finds Treasury's papers and

arguments both ambiguous and inconsistent regarding which of the exemptions it claims

apply categorically.  For example, in its opening brief, Treasury cites authority for the

proposition that Exemption 3 can be applied categorically, but does not specify or discuss

whether it contends that exemption should be applied categorically *in this case.*  Moreover,

the Fifth Canter Declaration suggests that Treasury is not asserting that Exemption 3

applies categorically.  *See* Def. Motion at 30, ll 9-10, 34, ll. 4-5; *cf.* 5th Canter Decl. at ¶ 36

("OFAC asserted Exemption 3 to protect *certain* Delisting Petitions covered by the . . . []

Kingpin Act."); Def. Motion at 31, l. 7 ("Treasury Properly Invoked Exemption 3 for *Some*

Delisting Petitions"); at 4, ll. 9-11.

Yet another example of ambiguity may be found in Treasury's reply, where it notes

13

United States District Court

For the Northern District of California

that "[i]n particular, the *subcategories* of Exemption 7 have been applied to records by

category." Reply at 11, ll. 3-4. Treasury, however, fails to provide authority for applying the

other exemptions that it is invoking, including 2, 3, 4, and 6, categorically.[6] And, again,

most significantly, other than Exemptions 7(A) and 7(F), Treasury fails to follow-up and

specify in its reply *which* exemptions it contends apply categorically in this case.

The Fifth Canter Declaration is no more enlightening. It suggests only that Treasury

is seeking to apply Exemptions 7(A) and 7(F) categorically, and offers *no* explanation as to

why or whether any of the other exemptions should be applied categorically. *See* 5th

Canter Decl. at ¶ 50 (noting that release of Exemption 7(A) should be applied to both

pending and closed delisting petitions because release of any of the petitions would

jeopardize investigations and prosecutorial efforts); ¶ 59 (noting that "OFAC determined

that *each* of the delisting petitions is subject, in its entirety, to Exemptions 7(A) and 7(F),

and that *the other exemptions above also apply to information in some or all of the delisting

petitions*") (emphasis added).

Given the ambiguity, the court attempted to clarify Treasury's position at the July 23,

2008 hearing. The inquiry unsurprisingly revealed even more inconsistencies in Treasury's

position. At the hearing, Treasury asserted that it was its position that *all* of the

exemptions, including non-section 7 exemptions, *may* apply to the petitions *categorically*,

but that *only* exemptions 7(A) and 7(F) applied to the petitions both *categorically* and *in

their entirety.*

The court, however, need not resolve the numerous inconsistencies in Treasury's

position because it concludes that Treasury has failed to demonstrate that *any* of the

---

[6]In its reply, Treasury simply asserts that "[b]ecause Exemptions 7(A) and 7(F) apply
to each of the delisting petitions in its entirety, the court need not determine whether other
exemptions also apply." *See* Reply at 10-12. Then, in summary, Treasury states that it
"properly applied the FOIA exemptions to the pending and closed delisting petitions by
category of records, rather than on a document-by-document basis." *Id.* This statement
however is illustrative of the ambiguity in Treasury's papers in so far as Treasury completely
ignores the fact that it has cited to no authority, and none appears to exist, for applying a
number of the exemptions that it asserts categorically.

**United States District Court**

For the Northern District of California

1    exemptions may be applied categorically in this case, including exemptions 7(A) and 7(F).

2         Treasury bears the burden to demonstrate that an exemption may be applied

3    categorically, or to a class of documents. *Bevis v. Dept. of State*, 801 F.2d 1386, 1389

4    (D.C. Cir. 1986)*; see also In re Department of Justice*, 999 F.2d 1302, 1309 (8th Cir. 1993)

5    (discussing *Bevis* and *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235-36 (1978)).

6    In order to apply an exemption categorically, there must be some indicia that the individual

7    documents within the class of documents are similar; and that the agency has reviewed

8    and ensured that the individual documents it seeks to include in the class of documents are

9    indeed similar. *See id.; see also Campbell*, 682 F.2d at 265*; Institute for Justice v.*

10   *Executive Office*, 1998 WL 164965 at *5-7 (N.D. Cal. 1998). Numerous courts have held,

11   and this court agrees, that proper utilization of the categorical approach requires the

12   agency to: (1) define functional categories of documents; (2) conduct a document-by-

13   document review to assign documents to proper categories; and (3) explain to the court

14   how release of *each category* would interfere with enforcement proceedings. *Id.; accord*

15   James T. O'Reilly, Federal Information Disclosure § 7:18 (2000 ed. & 2008 suppl.). Thus,

16   "although [an agency] need not justify *its withholding* on a document-by-document basis in

17   court, the [agency] must itself review each document to determine the category to which it

18   properly belongs." *Bevis*, 801 F.2d at 1389-90). "Absent individual scrutiny, the categories

19   would be no more than smaller versions of the 'blanket exemptions' disapproved of by

20   Congress in its 1974 amendments of FOIA." *Id.* (quoting *Robbins Tire*, 437 U.S. at 236);

21   *see also Campbell*, 682 F.2d at 265 ("[t]he hallmark of an acceptable . . . category is . . .

22   that it is *functional*; it allows the court to trace a rational link between the nature of the

23   document and the purpose of the exemption").

24        Treasury seeks to withhold the delisting petitions on a categorical basis, but has

25   failed to make an appropriate showing entitling it to categorical withholding. Treasury has

26   failed entirely to define functional categories of documents. Treasury itself admits that, at a

27   minimum, there are different sub-categories of delisting petitions, for example, open versus

28

United States District Court
For the Northern District of California

1   closed petitions.  However, Treasury failed to show that open and closed delisting petitions

2   functionally belong to the same category. *See Bevis*, 801 F.2d at 1389-90.  Moreover, the

3   court further finds that Treasury has not shown that the delisting petitions as a whole -

4   whether open *or* closed – functionally belong to the same category.  The delisting petitions

5   reviewed by this court, both with LCCR's opposition to the summary judgment motion and

6   pursuant to this court's order following the hearing, varied significantly, thus defying any

7   conclusion that categorical withholding of the petitions is appropriate, regardless of whether

8   they are open or closed.

9        Moreover, not only did Treasury fail to define functional categories of documents,

10   but it also admittedly did not review all of the delisting petitions that it seeks to withhold to

11   ensure that they were properly categorized. *See id.*  In fact, it explains that it reviewed only

12   102 of the 346 petitions to determine which exemptions applied to the documents. *See* 5th

13   Canter Decl. at ¶ 24.  This simply is not sufficient to enable Treasury to conclude that the

14   other 244 petitions should fall into the same category as the 102 that it reviewed. *See*

15   *Bevis*, 801 F.2d at 1389-90.

16        Furthermore, there is no authority that supports categorical application of several of

17   the exemptions asserted by Treasury - including Exemptions 2, 4, and 6.  Existing authority

18   generally supports categorical application of only the Exemption 7 subsections. *See*

19   *Robbins Tire*, 437 U.S. at 235-36 (allowing categorical application of Exemption 7(A) to

20   witness statements obtained by the NLRB in conjunction with its investigation of

21   defendant's alleged unfair labor practices following a contested representation election);

22   *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,

23   777-79 (1989) (concluding that a categorical approach was appropriate for Exemption 7(C)

24   as well as 7(A), and holding that rap sheets could be categorically withheld under 7(C));

25   *United States Dep't of Justice v. Landano*, 508 U.S. 165, 178-180 (1993) (suggesting that

26   Exemption 7(D) may also be applied categorically); *see also Lewis,* 823 F.2d at 375

27   (involving Exemption 7(A)); *Lion Raisins*, 354 F.3d at 1072 (same); *In re Department of*

28

United States District Court

For the Northern District of California

1    *Justice*, 999 F.2d at 1308 (discussing pertinent Supreme Court cases).  There are,

2    however, a few cases in which courts, including the Supreme Court, have implied that other

3    specific exemptions may be applied categorically.  *See, e.g., Reporters Comm. for*

4    *Freedom of the Press*, 489 U.S. at 779 (noting that in *FTC v. Grolier, Inc.*, 462 U.S. 19

5    (1983), court supported categorical application with respect to Exemption 5)); *Church of*

6    *Scientology v. Internal Revenue Service*, 792 F.2d 146, 152-53 (D.C. Cir. 1986)

7    (suggesting that Exemption 3 could be applied categorically under circumstances of that

8    case).

9         Accordingly, Treasury's motion is DENIED to the extent that it seeks to apply any of

10   the asserted exemptions categorically to the delisting petitions.

11        **3.      Section 7 Exemptions Threshold**

12        Section 552(b)(7) exempts from disclosure records or information "compiled for law

13   enforcement purposes," but only to the extent that disclosure will result in one of six

14   enumerated harms.  In determining whether any of the subsections to Exemption 7 apply,

15   the court must first determine whether the delisting petitions were "compiled for law

16   enforcement purposes."  *John Doe Agency v. John Doe Corporation*, 493 U.S. 146, 152-53

17   (1989); *Church of Scientology Intern. v. Internal Revenue Service*, 995 F.2d 916, 919 (9th

18   Cir. 1993).

19        This determination requires "an examination of the agency itself to determine

20   whether the agency may exercise a law enforcement function."  *Church of Scientology*, 611

21   F.2d at 748.  The Ninth Circuit has held that law enforcement agencies such as the FBI

22   should be accorded special deference in an Exemption 7 determination.  *See Binion v. U.S.*

23   *Dept. of Justice*,  695 F.2d 1189, 1193-1194 (9th Cir. 1983); *Church of Scientology,* 611

24   F.2d at 748.  In the Ninth Circuit, an agency with a clear law enforcement mandate such as

25   the FBI need establish only a "rational nexus" between its law enforcement duties and the

26   document for which the Exemption 7 is claimed.  *Id.* (citing *Church of Scientology*, 611 F.2d

27   at 748).  An agency can have a "law enforcement purpose" even though it also has another

28

17

United States District Court

For the Northern District of California

1    purpose.  O'Reilly, *supra* at § 17:9 (noting "the Navy does not have a law enforcement

2    mandate, but it can compile documents for a law enforcement purpose").

3    An agency with both administrative and law enforcement functions must demonstrate that

4    its purpose in compiling the particular document fell within its sphere of enforcement

5    activity.  *Church of Scientology,* 611 F.2d at 748.  Information need not have been originally

6    compiled for law enforcement purposes in order to qualify for the "law enforcement"

7    exemption, so long as it was compiled for law enforcement purposes at the time the FOIA

8    request was made.  *Lion Raisins*, 354 F.3d at 1081-82 (citing *John Doe,* 493 U.S. at 155).

9           Treasury contends that the section 7 threshold is satisfied because the delisting

10   petitions were compiled for law enforcement purposes.  It asserts that OFAC, an office

11   within Treasury's Office of Terrorism and Financial Intelligence, has been designated by

12   statute as a law enforcement agency.  *See* 31 U.S.C. § 313(a)(6).  It notes that OFAC's

13   functions include combating terrorist financing and offenses threatening the integrity of

14   financial systems.  5th Canter Decl. ¶¶ 12, 45.  Specifically, Treasury notes that the SDN

15   list at issue here is a component of the twenty economic sanctions programs that OFAC

16   administers against foreign governments, entities, and individuals.  *Id.* at ¶ 16.  It attests

17   that "[t]he delisting petitions received by OFAC were received in connection with OFAC's

18   performance of its law enforcement mission, including the designation process and OFAC's

19   consideration of delisting. . . ."  5th Canter Decl. ¶ 46.

20          LCCR counters that the threshold for section 7 exemptions is not satisfied because

21   Treasury has not met its burden to show that the delisting petitions were "compiled" for law

22   enforcement purposes.  It argues that the fact that the petitions were not "compiled" by

23   OFAC, but were actually compiled by third parties contesting OFAC's designation, prevents

24   Treasury from satisfying the threshold.  LCCR further argues that the delisting petitions are

25   not maintained in order to enforce criminal laws, but for the exact opposite reason:  to notify

26   OFAC regarding mistakes in its enforcement.

27          LCCR does not dispute that OFAC has been designated a law enforcement agency.

28

United States District Court
For the Northern District of California

1    Accordingly, there need only be a "rational nexus" between OFAC's law enforcement duties

2    and the delisting petitions. *Binion*, 695 F.2d at 1193. The court finds that such a nexus

3    exists given that OFAC's purpose for compiling the petitions is in conjunction with the

4    administration of its sanction-based list programs.

5          The real dispute therefore concerns whether the petitions, typically authored by third

6    parties, may be considered "compiled" for law enforcement purposes. The Supreme

7    Court's decision in *John Doe* answers this question affirmatively. 493 U.S. at 153. In *John*

8    *Doe*, the Court clarified that "compiled" documents include documents that have been

9    "collected and assembled from various sources or other documents." *Id.* Thus, even

10   though the delisting petitions were prepared by third parties and maintained and collected

11   by OFAC, they may nevertheless be considered "compiled" by OFAC for purposes of

12   section 552(b)(7), and thus satisfy the threshold test for section 7 exemptions.

13         **4.      Exemptions 7(A) and 7(F)**

14         The court turns first to two of the section 7 exemptions, 7(A) and 7(F), because

15   those are the only two that Treasury clearly contends apply both categorically to all

16   delisting petitions and also each petition in its entirety. As noted, Treasury focuses the

17   majority of its discussion on these two exemptions, and it is also Treasury's position that

18   the court need only reach these two exemptions. *See, e.g.,* Def. Opening Motion at 1, ll 9-

19   11 ("First, Exemptions 7(A) and 7(F) protect the delisting petitions in their entirety. As a

20   result, although Exemptions 2, 3, 4, 6, 7(C), and 7(D) also protect information in the

21   petitions . . ., the court need not address Treasury's use of these other exemptions.").

22         **a.      Application of Exemptions 7(A) and 7(F) to Documents in their**
           **Entirety/ Segregability of Petitions**

23

24         Section 552(b) provides that "[a]ny *reasonably segregable portion of a record* shall

25   be provided to any person requesting such record after deletion of the portions which are

26   exempt." (Emphasis added). The doctrine of segregability applies to all FOIA exemptions.

27   *See Church of Scientology*, 611 F.2d at 743-44 (holding that it was error for the district

28   court to simply approve the withholding of an entire document that the court had

                                        19

1   determined was exempt under Exemption 7(D) because it was an investigatory record

2   compiled for law enforcement purposes, without first entering a finding regarding the

3   segregability of non-exempt portions of the document).

4        The burden is on the *agency* to establish that all reasonably segregable portions of a

5   document have been segregated and disclosed.  *Pacific Fisheries Inc. v. United States*,

6   593 F.3d 1143, 1148-49 (9th Cir. 2008) (reiterating that "[c]ourts must apply that burden

7   with an awareness that the plaintiff, who does not have access to the withheld materials, is

8   at a distinct disadvantage in attempting to controvert the agency's claims").  In fact, the

9   Ninth Circuit has held that it is reversible error for the district court "to simply approve the

10  withholding of an entire document without entering a finding on segregability, or the lack

11  thereof," with respect to that document.  *Wiener,* 943 F.2d at 988 (quoting *Church of*

12  *Scientology*, 611 F.2d at 744)). The district court is required "to make a specific finding that

13  no information contained in each document or substantial portion of a document withheld is

14  segregable."  *Id.*  Non-exempt portions of a document must be disclosed unless the court

15  finds that they are inextricably intertwined with exempt portions to such a degree that

16  separating the two would "impose significant costs on the agency and produce an edited

17  document with little informational value."  *Willamette Indus., Inc. v. United States*, 689 F.2d

18  865, 867-68 (9th Cir. 1982) (citing *Mead Data Cent., Inc. v. United States Dep't of the Air*

19  *Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

20       It is not sufficient for an agency to simply conclude that there is no segregable

21  information without explaining its reasons for such a conclusion.  *Mead Data Cent.,*566

22  F.2d at, 261.  "[U]nless the segregability provision of FOIA is to be nothing more than a

23  precatory precept, agencies must be required to provide the reasons behind their

24  conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the

25  courts."  *Id.*  In addition to a statement of its reasons, an agency should also describe what

26  proportion of the information in a document is non-exempt and how that material is

27  dispersed throughout the document.  *Id.* (noting that "[i]f a document itself contains many

28

20

United States District Court

For the Northern District of California

pages of information, and there are logically divisible sections for which the proportion and

distribution description would differ significantly," the agency should describe the document

"by section rather than as a whole").

> For example, if only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases might be accepted. *Id.* On the other extreme, if a large proportion of the information in a document is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information.

*Id.; accord National Resources Defense Council v. United States Dept. of Defense*, 388

F.Supp.2d 1086, 1096-97 (C.D. Cal. 2005).

In support of its position that the delisting petitions should be withheld in their

entirety under these exemptions, Treasury simply asserts that "OFAC determined that

there was no reasonably segregable information that could be released."  5th Canter Decl.

at ¶ 59.  Nowhere in Treasury's declarations or its opening or reply papers has it *explained*

why segregation is not possible in this case, and why each delisting petition must be

withheld in its entirety.

Instead, in its reply, Treasury states in its headings that Exemptions 7(A) and 7(F)

"apply to each delisting petition in its *entirety*," but then completely fails to address the law

relevant to the doctrine of segregability, and erroneously makes arguments that are

relevant to other issues in its motion, but not to segregability.  For example, regarding

Exemption 7(A), Treasury confuses the issue of segregability with the

*categorical* application of the exemption.  *See* Reply at 7-8 (arguing that "[u]nder Exemption

7(A) as amended, the issue is not whether 'release of a *particular* document would actually

interfere with an enforcement proceeding' but instead whether 'disclosure of particular

*kinds* of investigatory records' would 'generally interfere' with 'particular kinds of

enforcement proceedings'").  However, the inquiry regarding the segregability of exempt

and non-exempt material within the documents themselves is not the same as the inquiry

United States District Court
For the Northern District of California

1    regarding whether a class of documents may be withheld.  In other words, this court could

2    determine that exemption 7(A) applied categorically to a class of documents, e.g., the

3    delisting petitions, but Treasury would still be required to demonstrate that the "reasonably

4    segregable portions" of the documents within that class of documents had been produced.

5    *See, e.g., Pacific Fisheries*, 593 F.3d at 1148-49.  Treasury further confuses the type of

6    showing that an agency is generally required to make in order to withhold documents under

7    exemption 7(A) with the issue of segregability.  *See* Reply at 7-8.

8         Treasury makes a similarly inapposite argument regarding exemption 7(F).  *See*

9    Reply at 9.  Again, as with exemption 7(A), instead of addressing the segregability of the

10   petitions, Treasury addresses the type of showing required generally under exemption 7(F).

11   Reply at 9-10.  Treasury argues that it need not show the "precise facts" that if disclosed

12   would create a danger to a person's life or safety.  However, that misstates the showing

13   that is required to withhold entire documents.  Instead, the showing that Treasury is

14   required to make, and that it ignores, is a showing that it is impossible for it to segregate

15   non-exempt information within the petitions.

16        Treasury's conclusory assertion that "OFAC determined that there was no

17   reasonably segregable information that could be released," fails to carry its burden.  *See*

18   *Wiener*, 943 F.2d at 988.  To satisfy its burden, Treasury was required to provide the court

19   with its *reasons* - as opposed to its simple conclusion – for its inability to segregate non-

20   exempt portions of the documents, and also to provide the court with a description of "what

21   proportion of the information in a document is non-exempt, and how that material is

22   dispersed throughout the document."  *See Mead Data Cent.*, 566 F.2d at 261.  Treasury

23   has provided the court with neither.  Accordingly, Treasury's motion with respect to

24   Exemptions 7(A) and 7(F) generally fails for these reasons, as well as the additional

25   specific reasons that follow.

26        **b.    Exemption 7(A):  Interference with Enforcement Proceedings**

27   Exemption 7(A) applies to records or information compiled for law enforcement

28

22

United States District Court

For the Northern District of California

purposes, "but only to the extent that the production of such law enforcement records or information *could reasonably be expected to interfere with enforcement proceedings.*" (Emphasis added).

Treasury argues that 7(A) applies to all the delisting petitions, pending and closed. As for the pending delisting petitions, Treasury asserts that disclosure could interfere with law enforcement proceedings because release may: (1) have a chilling effect on the willingness of applicants and/or witnesses and other sources to provide reliable information; (2) reveal the size, scope, and direction of the investigation, enabling targets to destroy or alter evidence and/or tamper with witnesses; (3) could result in the inappropriate or unrestricted use of information by third parties once released; and (4) could impact OFAC's ability to obtain cooperation from other witnesses and members of networks under investigation. As for the closed delisting petitions, Treasury asserts that disclosure could jeopardize other pending or future investigations.

In support, the Fifth Canter Declaration explains:

> 49. . . . . Release of these Delisting Petitions could have a chilling effect on the willingness of designated persons, witnesses, and other sources to provide the reliable, detailed information that is crucial to OFAC's consideration of a Delisting Petition. Additionally, the investigation processes used with respect to a delisting determination are in some cases similar to those used for a designation. Disclosing a Delisting Petition prior to completion of OFAC's review could reveal the direction of the investigation and could result in tampering with witnesses or other informational sources relevant to the inquiry.

> 50. OFAC determined that release of the Delisting Petitions, whether pending or concluded, would jeopardize the pending investigation and/or any future investigations or prosecutive efforts that have already begun or are anticipated. Once a release is made to a party under the FOIA, his or her use and dissemination of the information to third parties is unrestricted. OFAC also determined that release of these Delisting Petitions that were concluded would jeopardize other pending investigations of related persons or entities and any future investigations or prosecutive efforts that have already begun or are anticipated. OFAC's designation and delisting processes necessarily involve the investigation of networks of individuals and entities (i.e., familial or business networks) that are closely related. OFAC's ability to investigate one individual and/or entity and its relationship to a larger network is a key tool of its sanctions programs. For these reasons, OFAC determined that each Delisting Petition, whether pending or concluded, should be withheld in full under Exemption 7(A).

23

United States District Court

For the Northern District of California

1      LCCR contends that Treasury has improperly categorized the delisting petitions as a

2  whole, should have prepared a Vaughn index as to this exemption, and that Treasury's

3  declaration in support of this exemption is too generalized.  LCCR also argues that

4  Treasury has not demonstrated interference with a *specific* pending or contemplated law

5  enforcement proceeding.  LCCR contends that with respect to those delisting petitions

6  where enforcement proceedings are pending or are indeed likely to commence, Treasury

7  has not shown that disclosure could reasonably be expected to harm or interfere with those

8  proceedings.  It argues that Treasury must make a more particularized showing of harm or

9  interference.

10      In addition to the above conclusions regarding Treasury's failure to make an

11  adequate showing of non-segregability, and its failure to show that it is entitled to

12  categorical application of the exemption to the pending and closed delisting petitions, the

13  court further concludes that Treasury's claim with respect to Exemption 7(A) fails because

14  Treasury has not made a sufficient showing that disclosure of the delisting petitions could

15  reasonably interfere with pending enforcement proceedings.

16      Initially, the court emphasizes that Treasury has repeatedly confused the type of

17  showing required for the categorical application of exemption 7(A) (and, as discussed

18  above, regarding the segregability of exempt information within a particular document), with

19  the type of showing required for application of exemption 7(A) to the petitions generally.

20  These are separate issues.  There is no dispute that provided an adequate showing,

21  exemption 7(A) may indeed apply categorically to a class of documents.  As noted above,

22  in *Robbins Tire*, the Supreme Court recognized that exemption 7(A) could be invoked

23  categorically.  In so holding, it stated that  "Congress did not intend to prevent the federal

24  courts from determining that, with respect to particular kinds of enforcement proceedings,

25  disclosure of *particular kinds* of investigatory records while a case is pending would

26  generally 'interfere with law enforcement proceedings.'" 437 U.S. at 236 (emphasis added);

27  *accord John Doe*, 493 U.S. at 156 (quoting *Robbins*, 437 U.S. at 224) ("Congress

28

24

United States District Court

For the Northern District of California

1    recognized that law enforcement agencies had legitimate needs to keep certain records

2    confidential, lest the agencies be hindered in their investigations or placed at a

3    disadvantage when it came time to present their cases.").

4         The categorical application issue, however, is distinct from the type of showing that

5    Treasury is required to make to demonstrate that Exemption 7(A) applies to the delisting

6    petitions generally.  In order to withhold documents pursuant to 7(A), the agency must

7    establish "that disclosure of those documents would interfere with pending enforcement

8    proceedings."  *Lion Raisins*, 354 F.3d at 1081-82 (quoting *Lewis,* 823 F.2d at 379).  The

9    Ninth Circuit has held that the agency must explain "*in detail . . .* how releasing each of the

10   withheld documents would interfere with the government's ongoing criminal investigation."

11   *Id.* at 1084 (emphasis added).  "The submission must provide as much factual support for

12   [the agency's] position as possible without jeopardizing the government's legitimate law

13   enforcement interest in withholding the documents, and it must be 'detailed enough for the

14   district court to make a de novo assessment of the government's claim of exemption.'"  *Id.*

15   (quoting *Maricopa Audubon Soc'y*, 108 F.3d at 1092).

16        In *Lion Raisins,* the Ninth Circuit reversed the district court where the plaintiff, an

17   independent handler of California raisins, sought to obtain under FOIA, documents related

18   to the USDA's criminal investigation of it.  The USDA withheld investigative reports

19   prepared by the Agricultural Marketing Services of the USDA ("AMS") and the Office of the

20   Inspector General ("OIG") under Exemption 7(A).  The district court granted summary

21   judgment to the USDA, and the Ninth Circuit reversed and remanded to the district court

22   with instructions to require submission of detailed public declarations, testimony, or other

23   material in support of its claim that Exemption 7(A) applied to the documents. *Id.* at 852.

24   The court held that the sole affidavit from the AUSA in support of the USDA's claimed

25   exemption was not sufficient.  *Id.; see also Lewis*, 823 F.2d at 378 (generalized affidavits

26   are not sufficient to establish a 7(a) exemption).

27        Contrary to Treasury's arguments otherwise, the Ninth Circuit's holding in *Lion*

28

United States District Court

For the Northern District of California

1    *Raisins* regarding the type of showing necessary under 7(A) comports with FOIA law

2    generally, and also with the 1986 amendments to FOIA (which the court notes *preceded*

3    the court's decision in *Lion Raisins*).  A leading treatise recognizes that:

> Analysis under the 1986 amendments may proceed in two parts.  While there
> is an active proceeding, the exemption will apply, but courts will have to apply
> a two-step test of finding a proceeding which investigated a particular target
> and then deciding if it is reasonable to believe that interference could occur.
> The affidavit should show *either a concrete proceeding or one which is*
> *legitimately in prospect.*  A concrete prospective law enforcement proceeding
> must be established by the agency.  There must be a reasonable chance of
> an enforcement proceeding.

James T. O'Reilly, Federal Information Disclosure § 17:18, Burdens of Proof (2000 ed.);

*see also id.* at § 17:141 (June 2008 suppl.) (citing *Lion Raisins* regarding detail required

with respect to agency's factual showing).

    Had Treasury indeed properly categorized all of the delisting petitions in this case,

which the court has concluded that it did not, it is true that it would not have been

necessary for Treasury to make the detailed showing set forth in *Lion Raisins* with respect

to *each individual delisting petition*.  *See Lewis*, 823 F.2d at 380 (discussing *Robbins Tire*,

437 U.S. at 224-25); *Bevis*, 801 F.2d at 1389-90.  However, Treasury was still required, at

a minimum, to make the type of particularized showing set forth by the Ninth Circuit in

*Lewis* and in *Lion Raisins* with respect to any appropriate *category* of documents.  Even if

the court were to assume that the delisting petitions were properly categorized in this case,

it finds that Treasury has nevertheless failed to make a sufficient showing that the category,

e.g., the delisting petitions, are covered by Exemption 7(A).

    The conclusory Fifth Canter Declaration is inadequate in this respect.  The

declaration does not enable the court to conclude that disclosure of the delisting petitions

could reasonably interfere with a pending law enforcement action.  Specifically, the

declaration does not explain *how* disclosure of the petitions is likely to jeopardize other

pending proceedings.  It also fails to describe the harm that would allegedly result from

third parties' possession of the information in the petitions.  Significantly, the potential

"chilling effect" and related consequences that Treasury asserts might result from

United States District Court

For the Northern District of California

1   disclosure are also speculative and unsupported by an adequate explanation or rationale.

2   *See, e.g., City of Chicago v. United States Dept. of Treasury*, 287 F.3d 628, 634 (7th Cir.

3   2002), *opinion amended on other grounds*, 297 F.3d 672 (7th Cir. 2002) (rejecting agency's

4   claimed exemption under 7(A) where potential for interference with law enforcement action

5   was merely speculative).  In sum, the conclusory, unsupported statements will not suffice to

6   make the requisite showing, as set forth in *Lewis* and *Lion Raisins*.  Because the Fifth

7   Canter Declaration does not provide the court with sufficient detail to make an independent

8   assessment of the government's claim of exemption, and for all of the above reasons,

9   Treasury's motion for summary judgment as to Exemption 7(A) is DENIED.

10          **c.      Exemption 7(F):  Endangering life or physical safety**

11          Exemption 7(F) includes records or information compiled for law enforcement

12   purposes, "but only to the extent that the production of such law enforcement records or

13   information *could reasonably be expected to endanger the life or physical safety of any*

14   *individual.*" (Emphasis added).

15          Treasury argues that it may categorically withhold the petitions under 7(F) because

16   to require it to specify its objections in greater detail would require disclosure of the very

17   information that Treasury seeks to withhold.  Regarding Exemption 7(F), the Fifth Canter

18   Declaration provides:

19              The release of the delisting petitions would reasonably be expected to expose
                individuals (including the applicant but also other individuals who have
20              provided statements and/or other information pursuant to a delisting petition
                or are mentioned in the petition) to threats against their life and would
21              endanger their physical safety.  Such danger is presented by the mere fact
                that an individual applied for delisting as others may infer by such action that
22              such individual has provided information related to his or her associates.

23   Cantor Decl. ¶ 58.

24          In support of its argument that 7(F) applies here, Treasury cites to *Brunetti v. FBI,* a

25   district court case out of the D.C. Circuit.  357 F.Supp.2d 97, 109 (D.D.C. 2004).  In

26   *Brunetti*, a prisoner who was convicted of numerous RICO violations in connection with his

27   activities with the La Cosa Nostra organization, propounded a FOIA request for all FBI

28

27

United States District Court

For the Northern District of California

1   records that referenced him. *Id.* The FBI withheld four documents in their entirety that

2   related to individuals or informers who cooperated with the FBI in obtaining his conviction.

3   *Id.* The district court held that 7(F) applied, and agreed with the FBI that "given the violent

4   nature of the La Cosa Nostra organization, the individuals could be endangered as a result

5   of their cooperation with the FBI against [the prisoner] and the organization if their identities

6   were to be made known." *Id.* Treasury argues that this court, like the *Brunetti* court,

7   should similarly defer to OFAC's assessment regarding danger to individuals.

8         LCCR responds that OFAC cannot withhold all of the delisting petitions in their

9   entirety under 7(F). In an argument relevant to segregability, LCCR argues that OFAC has

10   not set forth a single reason why *redactions* in particular documents would not be sufficient

11   to satisfy 7(F). LCCR even concedes that such redactions may be appropriate, but notes

12   that it is impossible to know which redactions would be appropriate given that Treasury has

13   not provided a Vaughn index.

14        LCCR further notes that OFAC has publicly identified the delisted individuals and

15   entities on its website and in press releases, and argues that such disclosure is a greater

16   threat to the lives and safety of the individuals than disclosure pursuant to LCCR's FOIA

17   request. LCCR also suggests that OFAC's endangerment concerns are pretext, and that it

18   is really attempting to shield itself from the adverse publicity that may ensue if mistakes

19   regarding its SDN list are exposed. In support, it cites to a case in which a district court

20   held that photographs and videotapes possessed by Department of Defense (DOD)

21   depicting abuse of detainees in Guantanamo Bay and Iraq, when redacted, were not

22   exempted from production under 7(F). *American Civil Liberties Union v. Department of*

23   *Defense*, 389 F.Supp.2d 547 (S.D.N.Y. 2005). The court held that the photographs did not

24   qualify for the exemption in spite of the government's argument that their production would

25   incite violence against troops. *Id.* The court reasoned that the publication of the

26   photographs was central to purposes of FOIA because they initiated debate about improper

27   and unlawful conduct of "rogue" soldiers and command structure that failed to exercise

28

1   discipline over the troops.  *Id.*

2        For the reasons set forth above, the court concludes that Treasury has not

3   demonstrated that it is entitled to categorically withhold all of the delisting petitions under

4   7(F).  Moreover, like Exemption 7(A), the court further concludes that even if Treasury

5   could categorically withhold the documents under this exemption, the Fifth Canter

6   Declaration is similarly inadequate to demonstrate that Treasury is entitled to withholding

7   under 7(F).

8        Unlike the other section 7 exemptions, there is a dearth of circuit law, Ninth Circuit or

9   otherwise, regarding exemption 7(F).  Nevertheless, looking at other persuasive authority, it

10  is clear that in order to qualify for the 7(F) exemption, an agency must establish *non-*

11  *conclusory* reasons why disclosure of a category of withheld documents would reasonably

12  be expected to endanger the life or physical safety of any individual.  *See Los Angeles*

13  *Times Communications, LLC v. Department of Army*, 442 F.Supp.2d 880, 898-900 (C.D.

14  Cal. 2006) (emphasis added).  One district court from this circuit has summarized, and this

15  court agrees, that

16          [t]he test is not whether the court personally agrees in full with the [agency's]
            evaluation of the danger-rather, the issue is whether on the whole record the
17          Agency's judgment objectively survives the test of reasonableness, good
            faith, specificity, and plausibility in this field of foreign intelligence in which the
18          [Agency] is expert and given by Congress a special role.
    *Id.*
19
20       Although existing case law does support affording a fair degree of deference to the

21  agency in its Exemption 7(F) determination, this deference is not without limits.  As with

22  Exemption 7(A), conclusory, unsupported statements will not suffice.  Treasury's affidavit

    must enable the court to understand its basis for arriving at its conclusion.  It does not do
23
    so in this case.  Treasury's assertion regarding danger to an applicant upon release of the
24
    delisting petitions is nothing more than unsupported speculation, and for this reason, the
25
    court DENIES summary judgment as to Exemption 7(F) as well .
26
         Although the court DENIES Treasury's motion as it pertains to Exemptions 7(A) and
27
28  7(F), the court notes that there may be a cognizable basis for redacting certain *portions* of

United States District Court

For the Northern District of California

1   some of the petitions under 7(A) and 7(F), including the identities of sources and witnesses.

2

3       However, because the court finds that Treasury is not entitled to relief under

4   Exemptions 7(A) and 7(F) – the exemptions that Treasury contended mooted the need for

5   review of the other six asserted exemptions – the court indeed has found it necessary to

6   address the other exemptions as well, and has done so below.

7       **5.       Exemptions 6 and 7(C)**: **Invasion of Privacy**

8       Treasury also seeks to withhold information contained within the delisting petitions

9   under Exemptions 6 and 7(C).

10      Exemption 7(C) protects *law enforcement records* whose disclosure "could

11  reasonably be expected to constitute an *unwarranted invasion of personal privacy.*"  5

12  U.S.C. § 552(b)(7)(C) (emphasis added).  Similarly, Exemption 6 protects "*personnel and*

13  *medical files and similar files* the disclosure of which would constitute a *clearly unwarranted*

14  *invasion of personal privacy*."  5 U.S.C. § 552(b)(6) (emphasis added).  Although they are

15  somewhat similar, the Supreme Court has repeatedly emphasized that there is significance

16  in the different language used in the two exemptions.  Exemption 6's requirement of a

17  "clearly unwarranted" invasion is more difficult for the government to meet than 7(C)'s

18  "unwarranted" invasion.  *See FBI v. Abramson*, 456 U.S. 615, 629 (1982); *Department of*

19  *Air Force v. Rose*, 425 U.S. 352, 378-79 n.16 (1976); *see also Rosenfeld v. United States*

20  *Dep't of Justice*, 57 F.3d 803, 812 (9th Cir. 1995) (stating that exemption 6 requires a

21  showing of a more intrusive invasion of privacy than exemption 7(C))*; Hunt v. F.B.I.*, 972

22  F.2d 286, 288 (9th Cir. 1992) (stating that exemption 6 is not co-extensive with exemption

23  7(C)).  Accordingly, the threshold for withholding under 7(C) is lower than under Exemption

24  6.  *See id.; see also* O'Reilly, Federal Information Disclosure at § 17:67.

25      Under exemption 7(C), the agency need only show that disclosure could

26  reasonably be expected to constitute an unwarranted invasion of privacy.  *Rosenfeld*, 57

27  F.3d at 812 (noting that exemption 6 requires a showing of a more intrusive invasion of

28

**United States District Court**
For the Northern District of California

1  privacy than exemption 7(C)).  In determining under Exemption 7(C) whether the

2  production of responsive law enforcement records or information could "reasonably be

3  expected to constitute an unwarranted invasion of personal privacy," the public interest in

4  disclosure of the responsive information must be weighed against the privacy interests.  *Id.*

5  The Supreme Court has defined "similar file," as used by Exemption 6 broadly as

6  government records containing "information which applies to a particular individual."  *Minnis*

7  *v. Dept. of Agriculture*, 737 F.2d 784, 786 (9th Cir. 1984) (quoting *United States Dep't of*

8  *State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).  Exemption 6 is intended to

9  protect individuals from the injury and embarrassment that can result from the unnecessary

10  disclosure of personal information.  *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225,

11  1228 (9th Cir. 1991); *see also Dobronski v. F.C.C.*, 17 F.3d 275 (9th Cir. 1994) (applying

12  exemption 6 to sick leave records); *Van Bourg, Allen, Weinberg & Roger v. N.L.R.B.*, 728

13  F.2d 1270, 1273 (9th Cir. 1984) (applying Exemption 6 to names and addresses of

14  employees eligible to vote for a union).  To determine whether Exemption 6 applies, the

15  court balances four factors: (1) the plaintiff's interest in disclosure; (2) the public interest in

16  disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any

17  alternative means of obtaining the requested information.  *Church of Scientology*, 611 F.2d

18  at 746; *see also Van Bourg*, 728 F.2d 1270 at 1273 (setting forth same factors).

19  In balancing the privacy interests, "[t]he sole cognizable public interest for FOIA is

20  the interest to open agency action to the light of public scrutiny, to inform the citizenry

21  about what their government is up to."  *Rosenfeld*, 57 F.3d at 811.  The Ninth Circuit has

22  held that there may be a strong public interest in revealing the names of the subjects

23  investigated by law enforcement agencies.  *Id.* at 811-12.

24  The parties disputed several legal issues in their papers, including the parties'

25  burdens with respect to Exemption 6, and the impact of prior publication of information

26  contained in the petitions.  Specifically, Treasury argued in its motion papers that it is

27  LCCR's burden under Exemption 6 to demonstrate that disclosure of the personal

28

1    information would serve the public interest and would outweigh the privacy interests of the

2    third parties.  This, however, is not the case.  The burden remains on the agency to justify

3    any withholdings under Exemption 6 since the presumption in favor of disclosure under this

4    exemption is as strong as that with other exemptions.  *See News-Press v. United States*

5    *Dept. of Homeland Sec.*, 489 F.3d 1173, 1198 (11th Cir. 2007); O'Reilly, Federal

6    Information Disclosure § 16:25 (citing *National Ass'n of Home Builders v. Norton*, 309 F.3d

7    26, 32 (D.C. Cir. 2002)).  In fact, federal courts, have generally concluded that an agency's

8    burden under Exemption 6 of showing that disclosure would constitute a clearly

9    unwarranted invasion of personal privacy is an "onerous" one.  *News-Press*, 489 F.3d at

10   1198 (citing several other circuit court cases).

11          Additionally, LCCR argued that the information contained in the petitions is not

12   private because OFAC has already publicly identified the individuals and entities seeking

13   delisting as "global terrorists."  However, contrary to LCCR's argument, the Ninth Circuit

14   has held that simply because certain documents that would normally be subject to

15   Exemptions 7(C) and Exemption 6 have already been publicized does not mean they must

16   be disclosed by the agency.  *Fiduccia v. United States Dep't of Justice,* 185 F.3d 1035,

17   1046-47 (9th Cir. 1999).  That is because a person may still have a privacy interest in

18   information that has already been publicized.  *Id.*  Nor is one's privacy interest in potentially

19   embarrassing information lost by the possibility that someone could reconstruct that data

20   from public files.  *Id.*

21          Moreover, the Ninth Circuit has also held that an individual has a privacy interest in

22   "not being associated unwarrantedly with alleged criminal activity."  *Schiffer v. F.B.I.*, 78

23   F.3d 1405, 1410 (9th Cir. 1996).  The fact that the public may already be aware of the

24   allegations does not lessen one's privacy interest.  *Lane*,  523 F.3d at 1137.  Where an

25   agency is able to establish that the privacy interests of third parties will be implicated, the

26   requestor must show that "the public interest sought to be advanced is a significant one"

27   and that "the information [sought] is likely to advance that interest."  *Id.* (quoting *Favish*,

28

United States District Court
For the Northern District of California

541 U.S. at 172).

Treasury concedes that neither Exemption 6 nor 7(c) apply to the delisting petitions in their entirety. Accordingly, it is Treasury's burden to demonstrate to *which* portions of the petitions Exemptions 6 and 7(C) indeed apply. In order for the court to make such a determination, a Vaughn index is required. Treasury, however, chose not to submit a Vaughn index, thus failing to demonstrate the information that these exemptions applied to, and did so presumably because it believed that it was entitled to judgment based on Exemptions 7(A) and 7(F). Having determined, though, that is not the case, the court is unable to resolve the applicability of the above exemptions absent a Vaughn index, and for this reason, summary judgment as to Exemptions 6 and 7(C) is DENIED. Additionally, for the reasons set forth above, the court concludes that Treasury has not demonstrated that it is entitled to categorically withhold of all of the delisting petitions under either Exemption 6 or 7(C).

However, the court does not find the claim of exemption to be entirely without merit. Undoubtedly the petitions contain some private information that should not be disclosed. Considering the fact that LCCR concedes that certain information should be redacted from the petitions under these exemptions, and the substantial judicial resources already expended on this FOIA request, the court concludes that the most appropriate next step is to require the parties to meet and confer regarding the scope of Exemption 6 and 7(C) redactions to the delisting petitions. At this meet and confer, the parties should attempt to resolve the *types* of information that Treasury may redact under these exemptions. If the parties are able to come to such an agreement, that will likely alleviate the need for Treasury to prepare an index in conjunction with the meet and confer. However, in the event that the parties are unable to agree on the types of information that may be redacted pursuant to these exemptions, then an index will be necessary to enable the parties and the court if necessary to determine which portions of the documents are indeed segregable.

### 6.    Exemption 7(D):  Confidential Sources

Treasury also seeks to withhold information contained within the delisting petitions under Exemption 7(D), which protects information that would disclose the identity of a confidential source.  In accordance with Exemption 7(D), a source is "confidential" if he "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  *Rosenfeld*, 57 F.3d at 814 (quoting *Landano*, 508 U.S. at 165).  The focus, therefore, is not whether "the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential."  *Id.*  "The confidentiality determination depends on the circumstances under which the subject provided the requested information."  *Id.*

Treasury argues that in order to facilitate its SDN-related investigations, it must obtain cooperation from sources under either an express or an implied promise of confidentiality, and that without such confidentiality, the sources would not cooperate for fear of retribution against themselves and/or their families.  LCCR concedes that to the extent *actual* confidential sources exist – including paid informants and certain confidential witnesses - and are named in the documents, it would not object to redactions of this information, but that it is impossible to determine the necessary redactions without a Vaughn index.

LCCR is correct that there can be no presumption of *implied* confidentiality to sources that provided information in the course of an agency investigation.  *Rosenfeld*, 57 F.3d at 814-15 (discussing *Landano*, 505 U.S. at 1212).  In *Rosenfeld*, a case decided following the Supreme Court's decision in *Landano*, the Ninth Circuit affirmed the district court's decision denying summary judgment to the FBI on the applicability of Exemption 7(D).  *Id.*  It rejected the government's argument that sources mentioned in FBI documents had received express assurances of confidentiality where there was no evidence in the record that sources had indeed received such express assurances.  *Id.*  Similarly, the court

1   rejected that government's argument that FBI sources inherently receive a promise

2   confidentiality.  *Id.*

3       The court DENIES summary judgment regarding Exemption 7(D) for the same

4   reasons as those set forth above with respect to Exemptions 6 and 7(C), and also orders

5   the parties to meet and confer under the same conditions as those set forth above.

6   Additionally, as set forth above, the court concludes that this exemption may not be applied

7   to the petitions categorically.

8       **7.     Exemption 2**

9       Treasury further seeks to withhold information contained within the delisting petitions

10  under Exemption 2, which protects matters that are "related solely to the internal personnel

11  rules and practices of an agency."  Exemption 2 protects from FOIA disclosure "matters

12  that are . . . related solely to the internal rules and practices of an agency."  5 U.S.C. §

13  552(b)(2).  It protects internal information, the disclosure of which would risk circumvention

14  of a legal requirement ("high 2" information), in addition to internal information of a less

15  significant nature, such as administrative routing notations and agency rules and practices

16  ("low 2" information).

17      The Ninth Circuit has held that Exemption 2 excludes from disclosure "law

18  enforcement materials, disclosure of which may risk circumvention of agency regulation."

19  *See Hardy v. Bureau of Alcohol, Tobacco & Firearms,* 631 F.2d 653, 656 (9th Cir. 1980).

20  "'Law enforcement' materials involve methods of enforcing the laws, however interpreted."

21  *Id.* at 657. "Materials that solely concern law enforcement are exempt under Exemption 2 if

22  disclosure may risk circumvention of agency regulation." *Id.*

23      In opposition, LCCR simply states that OFAC's failure to provide a Vaughn index or

24  to make a particularized showing as to the contents of the individual delisting petitions

25  renders it impossible for LCCR or the court to determine the scope and propriety of this

26  exemption.

27      The court DENIES summary judgment regarding Exemption 2 for the same reasons

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    as those set forth above with respect to Exemptions 6 and 7(C), and also orders the parties

2    to meet and confer under the same conditions as those set forth above.  Additionally, as

3    set forth above, the court concludes that this exemption may not be applied to the petitions

4    categorically.

5        **8.    Exemption 3**

6        Treasury additionally seeks to withhold information contained in the petitions under

7    Exemption 3.  That exemption, which permits the withholding of matters specifically

8    exempted from disclosure by another statute, applies where such statute (A) requires that

9    the matters be withheld from the public in such a manner as to leave no discretion on the

10   issue, or (B) establishes particular criteria for withholding or refers to particular types of

11   matters to be withheld.  5 U.S.C. § 552(b)(3).  Specifically, Treasury argues that

12   information contained in the delisting petitions is exempt from disclosure under Exemption

13   3(B) in conjunction with the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901-

14   1908 ("the Kingpin Act").

15       Under Exemption 3, the government must show that the statute on which it relies

16   qualifies as an exempting statute and that the material being withheld falls within the

17   exempting statute's coverage.  *Cal-Almond, Inc. v. U.S. Dept. of Agriculture*, 960 F.2d 105,

18   108 (9th Cir. 1992).  The Ninth Circuit has held that "only explicit nondisclosure statutes . . .

19   will be sufficient to qualify under the exemption."  *Id.* (quoting *Church of Scientology v. U.S.

20   Postal Service,* 633 F.2d 1327, 1329 (9th Cir. 1980)).

21       LCCR responds that OFAC's failure to provide a Vaughn index or to make a

22   particularized showing as to the contents of the individual delisting petitions renders it

23   impossible for LCCR or the court to determine the scope and propriety of Exemption 3.  It

24   additionally argues that the delisting petitions were not obtained for the purpose of

25   enforcing the Kingpin Act, but instead were prepared and obtained to protest the Act's

26   enforcement for individuals and entities claiming that they were not actually kingpins.

27       Again, the court DENIES summary judgment for the same reasons as those set forth

28

36

United States District Court

For the Northern District of California

1   above with respect to Exemptions 6 and 7(C), and also orders the parties to meet and

2   confer under the same conditions as those set forth above.  The court notes that although

3   the applicability of the Kingpin Act presents a legal issue for the court, it is unable to resolve

4   the issue given the fact that Treasury has not provided it with a Vaughn index and/or further

5   explanation regarding which petitions, and which information contained in the petitions, are

6   indeed covered by the Kingpin Act.  That information is necessary before the court can

7   make even the legal determination regarding the Act's applicability.  Additionally, as set

8   forth above, the court concludes that this exemption may not be applied to the petitions

9   categorically.

10          **9.     Exemption 4**

11          Treasury also argues that information in the petitions is protected under Exemption

12   4, which applies to "trade secrets and commercial or financial information obtained from a

13   person [that is] privileged or confidential."  Exemption 4 is available to prevent disclosure of

14   (1) commercial and financial information, (2) obtained from a person or by the government,

15   (3) that is privileged or confidential.  *GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d

16   1109, 1112 (9th Cir. 1994).  Information qualifies as "confidential" for the purposes of

17   Exemption 4 if disclosure is likely to have either of the following effects: "(1) to impair the

18   Government's ability to obtain necessary information in the future; or (2) to cause

19   substantial harm to the competitive position of the person from whom the information was

20   obtained."  *Id.*

21          Treasury contends the exemption applies to certain portions of the petitions that

22   contain the petitioners' commercial and/or financial information that, if made public, could

23   result in fraud and/or identity theft.  In response, LCCR again simply states that OFAC's

24   failure to provide a Vaughn index or to make a particularized showing as to the contents of

25   the individual delisting petitions renders it impossible for LCCR or the court to determine

26   the scope and propriety of Exemption 4.

27          The court DENIES summary judgment for the same reasons as those set forth

28

37

1    above with respect to Exemptions 6 and 7(C), and also orders the parties to meet and

2    confer under the same conditions as those set forth above.  Additionally, as set forth

3    above, the court concludes that this exemption may not be applied to the petitions

4    categorically.

5    **C.    LCCR's Request for Judicial Notice**

6            LCCR filed a request that the court judicially notice pursuant to Federal Rule of

7    Evidence 201 certain documents attached to its supporting declarations, which were filed in

8    other district court cases.  Among those documents are several delisting petitions.

9    Treasury has objected - not because the documents are of the type that may not be

10   judicially noticed - but on the basis of relevance.  Additionally, Treasury argues that while

11   this court may take judicial notice that the documents were filed, it may not judicially notice

12   the facts contained in those documents.

13           The court OVERRULES Treasury's objections.  The court may judicially notice under

14   Rule 201 the fact that the documents are part of another court's records, were filed in the

15   course of those proceedings, and that certain assertions were made in the documents, but

16   may not judicially notice the truth of the statements or assertions contained in those

17   documents.  *See Lee v. County of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001).

18   Given the fact that Treasury failed to submit a Vaughn index, and also given the fact that

19   Treasury seeks to treat the delisting petitions categorically, the court further finds that the

20   judicially noticed documents are indeed relevant, at a minimum, to the court's assessment

21   of the type of information contained in a delisting petition, and whether delisting petitions are

22   unique and/or may be treated categorically for purposes of the exemptions asserted by

23   Treasury.

24                                    **CONCLUSION**

25           For the reasons set forth above, the court DENIES Treasury's motion for summary

26   judgment, and ORDERS disclosure of the delisting petitions, subject to the parties meeting

27   and conferring regarding the scope of the appropriate redactions as required above

28

**United States District Court**
For the Northern District of California

38

pursuant to exemption 2, 3, 4, 6, 7(C), and 7(D).  The parties should meet and confer in good faith and make every effort to agree upon the appropriate redactions.  Given the amount of judicial resources already expended on this case, the court STRONGLY encourages the parties to resolve the only remaining issue – the scope of the redactions.  If the parties are unable to resolve this issue, they should notify the court immediately. However, before the court will further address any dispute regarding redactions, Treasury is advised that it will be required to prepare and submit a comprehensive Vaughn index.  The court will not revisit the applicability of exemptions 7(A) and 7(F), although Treasury may redact names of witnesses and sources from the petitions.

The parties shall notify the court no later than **November 3, 2008** by joint status statement, whether they have agreed upon the redactions or whether yet another briefing schedule is required.

**IT IS SO ORDERED.**

Dated: September 30, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California