UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAWYERS COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA,

        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
THE TREASURY,

        Defendant.
_____/

No. C 07-2590 PJH

**ORDER RE: SUPPLEMENTAL ISSUES**

    Currently before the court are two issues that have arisen following the court's September 30, 2008 order denying defendant's motion for summary judgment, and its November 25, 2008 clarification order. Pursuant to the court's April 6, 2009 minute order following a telephonic conference, on April 13, 2009, defendant United States Department of the Treasury ("Treasury") filed its brief (which it refers to as a "status report"). It also filed a declaration from Marshall H. Fields, Jr., an assistant director at Treasury's Office of Foreign Assets Control ("OFAC"), a Vaughn index, and numerous redacted delisting petitions. On April 20, 2009, plaintiff Lawyers Committee for Civil Rights of the San Francisco Bay Area ("LCCR") filed a response and a declaration from Thomas Burke, LCCR's counsel. Having reviewed the parties' papers and the relevant legal authorities, the court rules as follows.

## DISCUSSION

The two issues currently before the court are:

(1)    whether the identities and other identifying information of delisting petitioners may be redacted pursuant to exemptions 7(A) and 7(F) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(7)(A) & (F);

and

(2) whether questionnaires provided by Treasury to petitioners submitting delisting petitions should be disclosed pursuant to LCCR's FOIA requests.

**A.    Questionnaires**

On February 14, 2008, the court issued its order granting in part and denying in part Treasury's first motion for summary judgment and denying LCCR's motion for discovery. The court required Treasury to disclose certain documents as responsive to LCCR's FOIA requests nos. 5 and 6, which asked for records regarding:

(5) The number and nature of complaints from individuals whose names were flagged as similar to a name on the SDN list or other watchlist and any OFAC responses to such complaints;

(6) The number and nature of complaints from individuals whose credit reports contained an alert regarding a possible name match to the SDN list or other watchlist, and any OFAC responses to those complaints.

Among the documents that the court ordered disclosed were "delisting petitions," which Treasury represented were applications in paper form filed by individuals acknowledging that their names were on the SDN list and seeking to remove their names from the SDN list.

Following the February 14, 2008 order, Treasury filed another motion for summary judgment claiming that it was entitled to withhold the delisting petitions in their entirety pursuant to eight FOIA exemptions: 2, 3, 4, 6, 7(A), 7(C), 7(D), and 7(F). In that motion, Treasury attempted to reargue the court's conclusion that LCCR was entitled to the delisting petitions, an issue the court declined to reconsider in its September 30, 2008 order denying Treasury's second motion for summary judgment.[1]

Throughout the case, the court has experienced a fair amount of difficulty

---

[1] The court rejected Treasury's argument that LCCR was not entitled to the delisting petitions because its FOIA request and complaint targeted only "false matches" or mistakes with respect to the SDN list, and that the delisting petitions are "in fact *not* communications concerning a false match, but are instead "applications *acknowledging* that persons *are included* on the SDN list and requesting that their names be removed."

2

ascertaining the scope of and obtaining a "complete" delisting petition from Treasury. As detailed in the court's September 30, 2008 order, after the July 23, 2008 hearing, the court took the motion under submission, and ordered Treasury to submit three randomly selected delisting petitions in order to ascertain whether certain delisting petitions submitted by LCCR in conjunction with its opposition to the motion were representative of delisting petitions generally. Specifically, the court ordered Treasury to submit three delisting petitions, including the first petition belonging to an applicant with a name beginning with "A," the last applicant with a name beginning with "N," and the first applicant with the name beginning with "R."

Treasury submitted the petitions, which were not disclosed to LCCR, to the court on July 29, 2008. The "petitions" each consisted of one-page letters from individuals to OFAC, and were very dissimilar to the exhibits provided by LCCR. They appeared to the court to be incomplete. Additionally, it was apparent to the court that Treasury had misunderstood its request to provide sample petitions by erroneously limiting the petitions submitted to the court to *individual* - as opposed to entity - applicants. Accordingly, on July 31, 2008, during a further telephonic conference with the parties, the court clarified that its request pertained to petitions submitted by *entities* as well as individuals. The court ordered Treasury to submit three random *entity* delisting petitions, including the first entity with the name beginning with "A," the last entity with the name beginning with "N," and the first entity with the name beginning with "R."

The court also requested that Treasury confirm that the July 29, 2008 submissions that it provided the court constituted "complete petitions," and to update those petitions as necessary. It clarified that the single letter submitted by Treasury was not sufficient, and that it viewed the delisting petitions to also include attachments and exhibits to the letters submitted.[2]

---

[2]Accordingly, on August 6, 2008, Treasury submitted three additional delisting petitions from entities. One of those delisting petitions similarly consisted of a one-page letter to OFAC. Although that sample suggests prior related correspondence, Treasury stated that "no

3

In the course of the post-September 2008 disclosures, Treasury revealed to LCCR that after receiving a delisting petition, it sometimes subsequently forwards a "questionnaire" to the petitioner, seeking supplemental information. Specifically, the Fields declaration explains:

> In many cases, after OFAC receives a delisting petition, [it] will send a written request that the petitioner submit supplemental information to assist OFAC in making a determination regarding the delisting petition. Although this request is sometimes referred to as a 'questionnaire,' it is a letter specifically tailored to account for the circumstances of each petitioner's designation. In certain cases there may be subsequent exchanges of information between OFAC and a petitioner.

Fields Decl. ¶ 24.

Treasury refuses to disclose the questionnaires, contending that it does not consider "such supplemental correspondence" to be part of the delisting petition. *Id.* It also does not consider the questionnaire to be a "response" to the petition, but contends that a "response" is the actual letter that grants or denies the petition. *Id.* LCCR responds that Treasury continues to change the definition of a delisting petition throughout the course of the case, and that liberally construed, its FOIA requests cover the questionnaires.

Liberally construing LCCR's FOIA requests nos. 5 and 6, the court finds that the questionnaires, which are sent as a follow-up to the initial application submitted by the petitioner, constitute a "response" as specified by the FOIA requests. *Truitt v. Dep't of State,* 897 F.2d 540, 544-45 (D.C. Cir. 1990); *Zemansky v. United States EPA*, 767 F.2d 569, 571 (9th Cir. 1985). Additionally, any subsequent petitioner responses to the questionnaires constitute a part of petitioner's "complaint," which this court has construed to include delisting petitions. This is in spite of the fact that Treasury continues to remind the

---

[supporting] documents accompanied" that delisting petition. Treasury also confirmed that there were no supporting documents for the individual delisting petitions that it submitted July 29, 2008.

Treasury did, however, submit supporting documents for the remaining two entity delisting petitions. The majority of those documents were untranslated, and appeared to be in German and/or Russian. Accordingly, the court, fluent in neither, was unable to ascertain the contents of the untranslated documents.

court that LCCR's FOIA requests nos. 5 and 6 request "complaints" not "delisting petitions," and that it continues to argue for a narrow construction of these requests. Notwithstanding LCCR's inartfully crafted FOIA requests, the court has already liberally construed the requests to include delisting petitions, and having done so, also liberally construes the requests to include the questionnaires and any responses. For these reasons, Treasury is ordered to disclose the questionnaires and any responses to the questionnaires as well.

**B.    Exemption 7(F):  Endangering Life or Physical Safety**

Exemption 7(F) includes records or information compiled for law enforcement purposes, "but only to the extent that the production of such law enforcement records or information could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). In its September 30, 2008 order, the court noted that unlike the other section 7 exemptions, there is a dearth of circuit law, Ninth Circuit or otherwise, regarding exemption 7(F). It however found another district court case on the issue persuasive, and noted that it is clear that in order to qualify for the 7(F) exemption, an agency must establish *non-conclusory* reasons why disclosure of a category of withheld documents would reasonably be expected to endanger the life or physical safety of any individual. *See Los Angeles Times Communications, LLC v. Department of Army*, 442 F.Supp.2d 880, 898-900 (C.D. Cal. 2006) (emphasis added). Accordingly,

> [t]he test is not whether the court personally agrees in full with the [agency's] evaluation of the danger - rather, the issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the [Agency] is expert and given by Congress a special role.

*Id.*

Existing authority supports categorical application of the Exemption 7 subsections. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235-36 (1978) (allowing categorical application of Exemption 7(A) to witness statements obtained by the NLRB in conjunction with its investigation of defendant's alleged unfair labor practices following a contested representation election); *United States Dep't of Justice v. Reporters Comm. for Freedom of*

5

*the Press*, 489 U.S. 749, 777-79 (1989) (concluding that a categorical approach was appropriate for Exemption 7(C) as well as 7(A), and holding that rap sheets could be categorically withheld under 7(C)); *United States Dep't of Justice v. Landano*, 508 U.S. 165, 178-180 (1993) (suggesting that Exemption 7(D) may also be applied categorically); *see also Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987) (involving Exemption 7(A)); *Lion Raisins v. United States Dep't. of Agriculture*, 354 F.3d 1072, 1079 (9th Cir. 2004); *In re Department of Justice*, 999 F.2d 1302, 1308 (8th Cir. 1993) (discussing pertinent Supreme Court cases).

It is Treasury's burden to demonstrate that an exemption may be applied categorically, or to a class of documents. *Bevis v. Dept. of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)*; see also In re Department of Justice*, 999 F.2d at 1309 (discussing *Bevis* and *Robbins Tire*, 437 U.S. at 235-36). In order to apply an exemption categorically, there must be some indicia that the individual documents within the class of documents are similar; and that the agency has reviewed and ensured that the individual documents it seeks to include in the class of documents are indeed similar. *See id.; see also Campbell v. Dept. of Health & Human Services*, 682 F.2d 256, 265 (D.C. Cir. 1982)*; Institute for Justice v. Executive Office*, 1998 WL 164965 at *5-7 (N.D. Cal. 1998). In its September 30, 2008 order, the court noted that numerous courts have held, and that it agrees, that proper utilization of the categorical approach requires the agency to: (1) define functional categories of documents; (2) conduct a document-by-document review to assign documents to proper categories; and (3) explain to the court how release of *each category* would interfere with enforcement proceedings. *Id.; accord* James T. O'Reilly, Federal Information Disclosure § 7:18 (2000 ed. & 2008 suppl.). Thus, "although [an agency] need not justify *its withholding* on a document-by-document basis in court, the [agency] must itself review each document to determine the category to which it properly belongs." *Bevis*, 801 F.2d at 1389-90).

Treasury's Vaughn index confirms that Treasury has asserted Exemption 7(F) to

1  withhold names, addresses, telephone numbers, dates of birth, and other identifying
2  information from almost all of the delisting petitions.  Although Treasury did not provide the
3  court with specific numbers, it appears from the court's review that it has asserted
4  Exemption 7(F) with respect to at least 125 of the 166 delisting petitions listed in its Vaughn
5  index.[3]  Presumably because of the number of petitions for which it has asserted 7(F),
6  Treasury has not provided the court with all of the delisting petitions for which the
7  exemption has been asserted, but instead has submitted four "sample" petitions, Vaughn
8  index nos. 82, 97, 118, and 134.[4]

9  Treasury argues that it is entitled to redact the identities and identifying information
10  under Exemption 7(F) because the petitioners were either designated pursuant to OFAC's
11  narcotics-trafficking programs or otherwise cooperated with the government in sensitive law
12  enforcement or national security investigations.  Fields Decl. at ¶¶ 34-38.  It notes that
13  releasing the identities and identifying information, given past harassment, murders, and
14  attacks, could reasonably be expected to endanger the life or physical safety of petitioners.
15  *Id.*

16  LCCR counters that Treasury fails to identify with reasonable specificity the persons
17  who would be endangered by release of the information, let alone the precise manner in
18  which such persons would be endangered.  It argues that Treasury is simply making the
19  same arguments that the court previously rejected with respect to its categorical assertion
20  of 7(D), and that its 7(F) "cooperation" argument is simply an "end-run" around the
21  heightened proof requirements of Exemption 7(D).  It asserts that Treasury has simply
22  abandoned its prior 7(D) arguments given the particularized showing required for that
23  exemption, *see Landano*, 508 U.S. at 181, and "dressed up" the 7(D) arguments under

---

[3] LCCR states that Treasury has actually asserted 7(F) with respect to 87.7% or 129 out of 147 petitions.  *See* Response at 2.

[4] Treasury failed to provide the court with the corresponding numbers on the Vaughn index for *any* of the petitions that it submitted to the court.  In the future, to the extent that Treasury submits delisting petitions as exhibits, it is required to provide the court with the corresponding Vaughn index number.

7

7(F).

LCCR argues that the Fields declaration is insufficient under *either* 7(D) or 7(F) because it fails to provide anything more than general or categorical claims that the numerous delisting petitioners are informants or confidential sources. LCCR suggests that Fields was required to provide information on a petition-by-petition basis. LCCR further argues that Fields does not explain how he obtained the information that the affected delisting petitioners were covered by 7(F).

Previously, regarding Exemption 7(F), Treasury submitted the Fifth Canter Declaration, which provided in pertinent part:

> The release of the delisting petitions would reasonably be expected to expose individuals (including the applicant but also other individuals who have provided statements and/or other information pursuant to a delisting petition or are mentioned in the petition) to threats against their life and would endanger their physical safety. Such danger is presented by the mere fact that an individual applied for delisting as others may infer by such action that such individual has provided information related to his or her associates.

Cantor Decl. ¶ 58.

In its September 30, 2008 order, the court concluded that Treasury had not demonstrated that it was entitled to categorically withhold the delisting petitions under any of the exemptions, including 7(F). Specifically, the court found that

> Treasury . . . failed to make an appropriate showing entitling it to categorical withholding. Treasury has failed entirely to define functional categories of documents. Treasury itself admits that, at a minimum, there are different sub-categories of delisting petitions, for example, open versus closed petitions. However, Treasury failed to show that open and closed delisting petitions functionally belong to the same category. *See Bevis*, 801 F.2d at 1389-90. Moreover, the court further finds that Treasury has not shown that the delisting petitions as a whole - whether open *or* closed – functionally belong to the same category. The delisting petitions reviewed by this court, both with LCCR's opposition to the summary judgment motion and pursuant to this court's order following the hearing, varied significantly, thus defying any conclusion that categorical withholding of the petitions is appropriate, regardless of whether they are open or closed.
>
> Moreover, not only did Treasury fail to define functional categories of documents, but it also admittedly did not review all of the delisting petitions that it seeks to withhold to ensure that they were properly categorized. *See id.* In fact, it explains that it reviewed only 102 of the 346 petitions to determine which exemptions applied to the documents. *See* 5th Canter Decl. at ¶ 24. This simply is not sufficient to enable Treasury to conclude that the

other 244 petitions should fall into the same category as the 102 that it reviewed. *See Bevis*, 801 F.2d at 1389-90.

September 30, 2008 Order at 15-16.

The court further found that even if Treasury could categorically withhold the documents under 7(F), the Fifth Canter Declaration did not adequately demonstrate that Treasury was entitled to withholding under 7(F). It found the Canter declaration to include conclusory, unsupported speculation, and held that Treasury was required, but had failed, to provide the court with sufficient information to understand the basis for its conclusion regarding 7(F).

Treasury's current brief and supporting documents differ in several significant ways from its prior papers and position. First, it is not seeking to withhold entire documents under 7(F), but has segregated out the information that it contends is exempt under 7(F) - the identities and other identifying information of petitioners. *Cf.* September 30, 2008 Order at 20-22. Second, Treasury has provided the court with a Vaughn index.

Third, Treasury has made the type of showing required for categorical withholding under 7(F). The functional category includes those delisting petitions from petitioners who were designated pursuant to OFAC's narcotic's trafficking program or who cooperated or provided sensitive information to the U.S. government. Fields Decl. ¶ 34. Contrary to its prior summary judgment papers, the Vaughn index that Treasury has now provided to the court also confirms that it has conducted a document-by-document review to ensure that only those delisting petitions satisfying the above criteria are placed in this particular category. Finally, as discussed below, Treasury has adequately explained why the redaction of identifying information in the above category of documents is appropriate under 7(F).

Unlike the prior Canter declaration, the court finds that the current Fields declaration provides sufficient *non-conclusory* reasons why disclosure of the identities and identifying information from delisting petitions authored by petitioners who were designated pursuant to OFAC's narcotics trafficking program or who cooperated or provided sensitive

9

information to the U.S. government could reasonably be expected to endanger the life or physical safety of any individual under 7(F).

With respect to the potential danger or harm, Fields explains that such petitioners may be associated with "individuals and entities . . . involved in violent activities," and that release of their identities exposes them "to a risk of reprisal by members of violent organizations who suspect[] that the petitioners provided information regarding the organization or associates."  Fields Decl. at ¶ 36.  Fields further describes the individuals and organizations as "sophisticated and ruthless," and notes that they "will potentially assassinate any person they perceive to threaten the organization's interests." *Id.* In terms of the likelihood of such danger, Fields attests that "OFAC is aware that criminal narcotics organizations and their members closely track the SDN list." *Id.* at ¶ 38.

For the above reasons, the court concludes that Treasury is entitled to categorically redact under Exemption 7(F) the identities and other identifying information of petitioners who were designated pursuant to OFAC's narcotics trafficking program or who cooperated or provided sensitive information to the U.S. government.  Because Treasury has demonstrated sufficient harm under 7(F), the court need not consider whether it has met the heightened standard required under Exemption 7(D).

**C.     Exemption 7(A):  Interference with Enforcement Proceedings**

Unlike Exemption 7(F), Treasury has asserted 7(A) with respect to a much smaller number of delisting petitions.  It has submitted all nine of the delisting petitions for which it asserts 7(A) as Exhibit B, including Vaughn index nos. 29, 43, 55, 82, 108, 140, 155, 158, and 160.  Treasury seeks to redact exactly the same type of information under 7(A) that it does under 7(F) – the petitioner's identity and other identifying information.

Treasury argues that it is entitled to redact such information because it has determined that release of the information "could reasonably be expected to interfere" with pending and ongoing law enforcement investigations or "OFAC's reconsideration process." Treasury then reiterates many of the same arguments that it made in its summary

judgment motion, including several that were already rejected by the court in its September 30, 2008 order. Treasury also states that Exemption 7(A) may be applied to a category of documents rather than on a document-by-document basis.

In response, LCCR argues that Treasury's current showing cures none of the deficiencies previously noted by the court with respect to this exemption, and is actually even more conclusory and less-detailed than the prior Canter declaration and related showing.

In its September 30, 2008 order, the court set forth its holding regarding Treasury's 7(A) claim, along with the relevant standards, which continue to apply. That order provides in pertinent part:

> There is no dispute that provided an adequate showing, exemption 7(A) may indeed apply categorically to a class of documents. As noted above, in *Robbins Tire*, the Supreme Court recognized that exemption 7(A) could be invoked categorically. In so holding, it stated that "Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of *particular kinds* of investigatory records while a case is pending would generally 'interfere with law enforcement proceedings.'" 437 U.S. at 236 (emphasis added); *accord John Doe*, 493 U.S. at 156 (quoting *Robbins*, 437 U.S. at 224) ("Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases.").
>
> The categorical application issue, however, is distinct from the type of showing that Treasury is required to make to demonstrate that Exemption 7(A) applies to the delisting petitions generally. In order to withhold documents pursuant to 7(A), the agency must establish "that disclosure of those documents would interfere with pending enforcement proceedings." *Lion Raisins*, 354 F.3d at 1081-82 (quoting *Lewis,* 823 F.2d at 379). The Ninth Circuit has held that the agency must explain "*in detail* . . . how releasing each of the withheld documents would interfere with the government's ongoing criminal investigation." *Id.* at 1084 (emphasis added). "The submission must provide as much factual support for [the agency's] position as possible without jeopardizing the government's legitimate law enforcement interest in withholding the documents, and it must be 'detailed enough for the district court to make a de novo assessment of the government's claim of exemption.'" *Id.* (quoting *Maricopa Audubon Soc'y*, 108 F.3d at 1092).

////

////

In *Lion Raisins,* the Ninth Circuit reversed the district court where the plaintiff, an independent handler of California raisins, sought to obtain under FOIA, documents related to the USDA's criminal investigation of it. The USDA withheld investigative reports prepared by the Agricultural Marketing Services of the USDA ("AMS") and the Office of the Inspector General ("OIG") under Exemption 7(A). The district court granted summary judgment to the USDA, and the Ninth Circuit reversed and remanded to the district court with instructions to require submission of detailed public declarations, testimony, or other material in support of its claim that Exemption 7(A) applied to the documents. *Id.* at 852. The court held that the sole affidavit from the AUSA in support of the USDA's claimed exemption was not sufficient. *Id.; see also Lewis*, 823 F.2d at 378 (generalized affidavits are not sufficient to establish a 7(a) exemption).

Contrary to Treasury's arguments otherwise, the Ninth Circuit's holding in *Lion Raisins* regarding the type of showing necessary under 7(A) comports with FOIA law generally, and also with the 1986 amendments to FOIA (which the court notes *preceded* the court's decision in *Lion Raisins*). A leading treatise recognizes that:

> Analysis under the 1986 amendments may proceed in two parts. While there is an active proceeding, the exemption will apply, but courts will have to apply a two-step test of finding a proceeding which investigated a particular target and then deciding if it is reasonable to believe that interference could occur. The affidavit should show *either a concrete proceeding or one which is legitimately in prospect.* A concrete prospective law enforcement proceeding must be established by the agency. There must be a reasonable chance of an enforcement proceeding.

James T. O'Reilly, Federal Information Disclosure § 17:18, Burdens of Proof (2000 ed.); *see also id.* at § 17:141 (June 2008 suppl.) (citing *Lion Raisins* regarding detail required with respect to agency's factual showing).

Had Treasury indeed properly categorized all of the delisting petitions in this case, which the court has concluded that it did not, it is true that it would not have been necessary for Treasury to make the detailed showing set forth in *Lion Raisins* with respect to *each individual delisting petition*. *See Lewis*, 823 F.2d at 380 (discussing *Robbins Tire*, 437 U.S. at 224-25); *Bevis*, 801 F.2d at 1389-90. However, Treasury was still required, at a minimum, to make the type of particularized showing set forth by the Ninth Circuit in *Lewis* and in *Lion Raisins* with respect to any appropriate *category* of documents. Even if the court were to assume that the delisting petitions were properly categorized in this case, it finds that Treasury has nevertheless failed to make a sufficient showing that the category, e.g., the delisting petitions, are covered by Exemption 7(A).

Much like portions of its second summary judgment motion, the court finds Treasury's position regarding 7(A) ambiguous and inconsistent. Treasury has failed to clarify whether it seeks to apply the exemption categorically or simply on a petition-by-

12

petition basis to the nine delisting petitions set forth in the Vaughn index. Unlike 7(F), Treasury's Vaughn index confirms that 7(A) applies to only a few petitions. Nevertheless, without specifying whether it seeks categorical application of 7(A) to petitions *in this case*, in its brief, Treasury generally reiterates that the exemption may be applied on a categorical basis. Brief at 5. Either way, Treasury's claim of exemption fails.

Unlike Exemption 7(F), Treasury has again failed to make any showing, let alone a particularized one, that 7(A) should apply categorically. It has not defined a functional category of documents; nor has it provided any details regarding the proceedings with which release of the information will interfere. In fact, comparison of Treasury's prior Canter declaration with the Fields declaration confirms that, if anything, Treasury's showing regarding 7(A) has diminished.

Previously, the court found the Fifth Canter Declaration insufficient. That declaration provided:

> 49. . . . . Release of these Delisting Petitions could have a chilling effect on the willingness of designated persons, witnesses, and other sources to provide the reliable, detailed information that is crucial to OFAC's consideration of a Delisting Petition. Additionally, the investigation processes used with respect to a delisting determination are in some cases similar to those used for a designation. Disclosing a Delisting Petition prior to completion of OFAC's review could reveal the direction of the investigation and could result in tampering with witnesses or other informational sources relevant to the inquiry.
>
> 50. OFAC determined that release of the Delisting Petitions, whether pending or concluded, would jeopardize the pending investigation and/or any future investigations or prosecutive efforts that have already begun or are anticipated. Once a release is made to a party under the FOIA, his or her use and dissemination of the information to third parties is unrestricted. OFAC also determined that release of these Delisting Petitions that were concluded would jeopardize other pending investigations of related persons or entities and any future investigations or prosecutive efforts that have already begun or are anticipated. OFAC's designation and delisting processes necessarily involve the investigation of networks of individuals and entities (i.e., familial or business networks) that are closely related. OFAC's ability to investigate one individual and/or entity and its relationship to a larger network is a key tool of its sanctions programs. For these reasons, OFAC determined that each Delisting Petition, whether pending or concluded, should be withheld in full under Exemption 7(A).

The current Fields declaration is even less helpful. It provides in pertinent part:

13

> 30. OFAC asserted Exemption 7(A) and other exemptions to withhold information from nine delisting petitions that are related to an open and pending investigation where releasing the petitioner's name and other identifying information could reasonably be expected to interfere with such investigations or OFAC's reconsideration process. . . .
>
> . . . .
>
> 32. In assertion Exemption 7(A) [sic] to redact the petitioner's name or other identifying information from these Delisting Petitions, OFAC determined that release of such information would jeopardize the pending investigation, any investigation of a related individual or entity that is pending, or any future investigations or prosecutive efforts that are anticipated, or OFAC's reconsideration process. . . .

The court finds that Treasury has failed to demonstrate that Exemption 7(A) applies categorically to petitioners' identities and other identifying information. Moreover, with the exception of one petition, Vaughn index no. 29, which on its face indicates the presence of an investigation, the court also finds that Treasury has failed to make a sufficient showing with respect to the remaining eight delisting petitions for which it has individually asserted this exemption. As was the case previously, Treasury did not bother to translate into English for the court three of the petitions - Vaughn index nos. 155, 158, and 160, so the court is unable to make a determination as to those petitions; and Treasury has therefore failed to satisfy its burden with respect to those petitions. The remaining five petitions do not on their faces provide sufficient information regarding an ongoing or pending investigation.

Nor has Treasury explained how the eight individual petitions satisfy this exemption in the Fields declaration or in its Vaughn index. *See* Fields Decl. ¶ 30. This is in spite of the court's explanation regarding the inadequacies in the prior Canter declaration. The court specifically noted in its September 30, 2008 order that:

> The declaration does not enable the court to conclude that disclosure of the delisting petitions could reasonably interfere with a pending law enforcement action. Specifically, the declaration does not explain *how* disclosure of the petitions is likely to jeopardize other pending proceedings. It also fails to describe the harm that would allegedly result from third parties' possession of the information in the petitions. Significantly, the potential "chilling effect" and related consequences that Treasury asserts might result from disclosure are also speculative and unsupported by an adequate explanation or rationale. *See, e.g., City of Chicago v. United States Dept. of Treasury*, 287 F.3d 628,

14

634 (7th Cir. 2002), *opinion amended on other grounds*, 297 F.3d 672 (7th Cir. 2002) (rejecting agency's claimed exemption under 7(A) where potential for interference with law enforcement action was merely speculative). In sum, the conclusory, unsupported statements will not suffice to make the requisite showing, as set forth in *Lewis* and *Lion Raisins*. Because the Fifth Canter Declaration does not provide the court with sufficient detail to make an independent assessment of the government's claim of exemption, and for all of the above reasons, Treasury's motion for summary judgment as to Exemption 7(A) is DENIED.

Nothing has changed since the September 30, 2008 order, and, with the exception of the petition listed as Vaughn index no. 29, the court DENIES Treasury's claim that Exemption 7(A) should apply categorically to the delisting petitions, and further DENIES its claim that the exemption applies to eight of the nine individual petitions, Vaughn index nos. 43, 55, 82, 108, 140, 155, 158, and 160, for which it was asserted. If 7(A) was the only exemption currently at issue, the court would order that Treasury disclose unredacted versions of those eight petitions. However, the court notes that with respect to all eight of those petitions, Treasury has also asserted Exemption 7(F), for which the court has GRANTED the very redactions it also requests under 7(A).

Given that Treasury has been provided with numerous opportunities to develop and litigate its claim of exemption under 7(A) in the course of this case – six declarations and a Vaughn index – the court DENIES any claim of exemption under 7(A). **Treasury will not be permitted to redact or withhold any further information or petitions under 7(A), and the court will not revisit or address any more claimed exemptions under 7(A).**

## CONCLUSION

The court GRANTS Treasury's request to categorically redact under Exemption 7(F) the identities and other identifying information of petitioners who were designated pursuant to OFAC's narcotics trafficking program or who cooperated or provided sensitive information to the U.S. government. With the exception of the petition listed as Vaughn index no. 29, the court DENIES Treasury's claim that Exemption 7(A) should apply categorically to the delisting petitions, and further DENIES its claim that the exemption applies to eight of the nine individual petitions, Vaughn index nos. 43, 55, 82, 108, 140,

15

155, 158, and 160, for which it was asserted.

The court further concludes that Treasury is required to disclose the questionnaires and any responses to the questionnaires as responsive to LCCR's FOIA requests nos. 5 and 6.

**IT IS SO ORDERED.**

IT IS SO ORDERED.

Dated: May 11, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge